IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY, | § § § § § § § § § § | CASE NO. _____ |
| *Plaintiff*, | | |
| v. | | |
| XTO ENERGY, INC. | | |
| *Defendant.* | | |

## BERKLEY NATIONAL INSURANCE COMPANY'S ORIGINAL COMPLAINT

Berkley National Insurance Company files this Original Complaint against Defendant XTO Energy, Inc., and respectfully shows the Court the following:

### I.   PARTIES

1.     Plaintiff Berkley National Insurance Company ("Berkley") is an Iowa corporation. Its principal place of business is Urbandale, Iowa.

2.     Defendant XTO Energy Inc. ("XTO") is a Delaware corporation with its principal place of business in Fort Worth, Texas. XTO may be served with process by serving its registered agent, Corporation Service Company, 1709 N. 19th Street, Suite 3, Bismarck, ND 58501-2121. Service is requested at this time.

### II.   JURISDICTION

3.     This action is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs. The parties to this lawsuit reside in different states and there is complete diversity. Therefore, this Court has subject matter of jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4.      This court has personal jurisdiction over Defendant XTO because it was transacting business in the State of North Dakota on and before June 18, 2016.

### III.     VENUE

5.      Venue is proper in the District of North Dakota, Western Division, because a substantial part of the matters, events, and omissions which form the basis of the occurrence for which XTO seeks insurance coverage occurred in the District of North Dakota, Western Division. 28 U.S.C. § 1391(b)(2). Related lawsuits, discussed below, are pending in this venue.

### IV.     FACTS

*The Accident*

6.      This lawsuit concerns contract and insurance claims stemming from an explosion and fire at the Ryan 14X-09E well (the "Well") on June 18, 2016. Defendant XTO was the lease operator of the Well.

7.      Several people were injured in the explosion, resulting in two ongoing lawsuits: *Mary Stassinos et al. v. XTO Energy Inc. et al.*; civil no. 1:17-CV-138, and *Richard Maheu et al. v. XTO Energy Inc. et al.*; civil no. 1:17-CV-102, both pending in the District of North Dakota, Western Division (the "Lawsuits").

*The MSA*

8.      XTO contracted with Missouri Basin Well Service, Inc. ("Missouri Basin") through a Master Service Agreement ("MSA"). XTO entered into similar or identical contracts with its other contractors: Sherwood Enterprises, Inc. ("SEI"), Most Wanted Well Service, LLC ("MWWS"), Badlands Consulting, LLC, Petroleum Experience, Inc., Weatherford International, LLC, and KLX Energy Services, LLC/KLX Energy Holdings, LLC.

9.    In relevant part, the MSA states:

II.   Definitions.

. . . .

2.3    "Contractor Group" shall mean individually or in any combination Contractor, its Affiliates, any Subcontractor of Contractor, and their respective directors, officers, employees, representatives, agents, licensees, invitees and assignees.

. . . .

2.8    "XTO Group" shall mean individually or in any combination XTO, its Affiliates, co-owners or co-lessees (whether of a fee, lease, mineral lease or otherwise) at the Site, joint interest owners, joint venturers, partners, contractors and subcontractors other than Contractor or its Subcontractors and all of their respective directors, officers, employees, representatives, agents, licensees and invitees.

. . . .

X.    RELEASE, DEFENSE, INDEMNITY AND HOLD HARMLESS

10.1    Contractor's Obligations.

10.1.1    Contractor hereby agrees to release, defend, indemnify and hold the XTO Group harmless from and against any and all claims, demands, and causes of action of every kind and character (including without limitation, fines, penalties, remedial obligations, court costs and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity) (collectively the "Indemnifiable Claims") arising out of, without limitation, any physical or mental injury, illness, and/or death of any one or more members of the Contractor Group, and/or loss of or damage to property or interests in property of any one or more members of the Contractor Group in any manner incident to, connected with or arising out of the performance of the Work.  This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the XTO Group.

. . . .

3

10.1.3 Contractor agrees that its indemnity obligations herein will be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the XTO Group and shall provide waivers of subrogation against all members of the XTO Group. To the extent that applicable law prohibits the monetary limits of insurance required or the indemnities voluntarily assumed hereunder, the requirements will automatically be revised to conform, in the maximum extent permitted, with applicable law.

10.2 XTO's Obligations.

10.2.1 XTO hereby agrees to release, defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the XTO Group, and/or loss of or damage to property or interests in property of any one or more members of the XTO Group in any manner incident to, connected with or arising out of the performance of the Work. This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the Contractor Group.

. . . .

10.2.3 XTO agrees that any indemnity obligations herein will either be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the Contractor Group and shall provide waivers of subrogation against all members of the Contractor Group; or XTO may be self-insured. To the extent that the applicable law prohibits monetary limits of insurance required or the indemnities voluntarily assumed hereunder, the requirements will automatically be revised to conform, to the maximum extent permitted, with applicable law.

. . . .

XI.    Insurance.

   11.1    Coverages   Subject to the provisions of Section 11.2, Contractor
           will secure and maintain, and will require its Subcontractors to
           secure and maintain, during the term of this Agreement the
           following insurance coverages with limits not less than the
           amounts specified, and with companies satisfactory to XTO who
           are authorized to do business in the jurisdiction where the Work is
           to be performed, and will furnish certificates of such insurance
           satisfactory to XTO before commencing the Work; provided,
           however, that no waiver of the provisions of this Article XI will
           occur to any extent merely from a failure on the part of XTO to
           object or complain about Contractor's failure to furnish certificates
           of insurance satisfactory to XTO.

   . . . .

   11.1.2  Commercial    General    Liability    Insurance    INCLUDING
           CONTRACTUAL LIABILITY, with minimum limits of liability
           for injury, death, or property damage of $1,000,000 combined
           single limit per occurrence, and an aggregate annual limit of not
           less than $2,000,000.

   . . . .

   11.2    Actual Insurance.    Notwithstanding the minimum coverages
           specified in Sections 11.1.1 – 11.1.5 above, should Contractor
           maintain on a general, blanket, comprehensive or similar basis any
           insurance, including but not limited to excess liability insurance or
           contractual liability insurance, in amounts greater than such
           minimums, then the actual insurance which Contractor shall
           provide hereunder will be such larger amounts carried by
           Contractor (or indicated in any certificate of insurance furnished
           by Contractor) and not the minimums referenced in Sections 11.1.1
           – 11.1.5 above.

   . . . .

   11.4    Primary Coverage and Additional Insured.   ALL INSURANCE
           AND COVERAGES LISTED IN THIS ARTICLE XI WILL
           EXTEND TO AND PROTECT THE XTO GROUP TO THE
           FULL EXTENT AND AMOUNT OF SUCH COVERAGE,
           INCLUDING EXCESS OR UMBRELLA INSURANCES. ALL
           INSURANCE POLICIES LISTED IN THIS ARTICLE XI WILL
           BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION
           FROM, ANY OTHER INSURANCE OR SELF-INSURANCE
           PROGRAMS MAINTAINED BY OR ON BEHALF OF OR

BENEFITING THE XTO GROUP. THE LIMITS AND COVERAGES OF THE INSURANCE OBTAINED BY CONTRACTOR WILL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR UNDER THIS AGREEMENT. ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES WILL NAME THE XTO GROUP AS AN ADDITIONAL INSURED. ALL OF THE CONTRACTOR'S INSURANCE POLICIES WILL CONTAIN A WAIVER ON THE PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE XTO GROUP.

*The Policies*

10.    Berkley issued Energy Commercial General Liability policy no. EGL001672010

to Missouri Basin, effective April 13, 2016–17, with a $1,000,000 liability limit per occurrence

(the "CGL Policy").

11.    In relevant part, the CGL Policy states:

## I.    NAMED INSUREDS AND INSUREDS

. . . .

### B.    Insureds

Each of the following is an INSURED with respect to the coverages set forth in Section II.A. Bodily Injury and Property Damage Liability, Section II.C. Personal and Advertising Injury Liability, and Section II.D. Medical Payments of this policy:

#### 1.    Additional Insured:

Any person or organization with whom YOU agree in a written contract or written agreement to add as an Additional Insured on your policy or to provide liability insurance for, but only with respect to liability arising out of YOUR operations or liability arising out of premises owned by or rented to YOU.

In addition, the written contract or written agreement requiring YOU to include a person or organization as an Additional Insured must be in effect during the policy period and executed before the BODILY INJURY, PROPERTY DAMAGE, or PERSONAL AND ADVERTISING INJURY occurred. Furthermore, the insurance provided will not exceed the lesser of:

**a.** The coverage, terms, and/or limits of this policy; or

**b.** The coverage, terms, and/or limits required by said written contract or written agreement.

. . . .

## VII. <u>EXCLUSIONS</u>

. . . .

### B.  Bodily Injury and Property Damage Liability Exclusions

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II.A. Bodily Injury and Property Damage Liability;

This policy does not apply to:

. . . .

### 2.  <u>Contractual Liability</u>:

**BODILY INJURY** or **PROPERTY DAMAGE** for which the **INSURED** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This Exclusion does not apply to liability for damages:

**a.** That the insured would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an **INSURED CONTRACT**, provided the **BODILY INJURY** or **PROPERTY DAMAGE** occurs after the execution of the contract or agreement.

. . . .

### 13. <u>Pollution</u>:

**a.** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**:

(1) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any **INSURED**. . . .

. . . .

7

## IX. DEFINITIONS

. . . .

**INSURED CONTRACT** means:

**a.** That part of any written contract or written agreement pertaining to **YOUR** business under which **YOU** assume the liability of another party to pay for **BODILY INJURY** or **PROPERTY DAMAGE** to a third person or organization.

. . . .

**YOU** means the **NAMED INSURED(S)**.

12.     Berkley also issued Energy Commercial Umbrella Liability policy no. EUL001670910 to Missouri Basin, effective April 13, 2016–17, with a $25,000,000 liability limit per occurrence (the "Umbrella Policy").

13.     In relevant part, the Umbrella Policy states:

## I.   COVERAGES

### A. Coverage A – Excess Follow Form Liability Insurance

Subject to all of the terms and conditions applicable to Coverage A – Excess Follow Form Liability Insurance, **WE** will pay on behalf of the **INSURED**, those damages or **POLLUTION CLEAN UP COSTS** covered by this policy in excess of the total applicable limits of **UNDERLYING INSURANCE**. With respect to Coverage A, the terms and conditions of **UNDERLYING INSURANCE** are made a part of this policy, except with respect to:

1. Any contrary provision continued in this policy; or

2. Any provision in this policy for which a similar provision is not contained in **UNDERLYING INSURANCE**.

With respect to the exceptions stated above, nothing contained therein will serve to make this policy broader that the **UNDERLYING INSURANCE**.

If **UNDERLYING INSURANCE** does not apply to damages or **POLLUTION CLEAN UP COSTS**, for reasons other than exhaustion of applicable Limits Of Insurance by payment of **CLAIMS**, settlements, or judgments, then Coverage A does not apply to those damages or **POLLUTION CLEAN UP COSTS**.

**B. Coverage B – Umbrella Liability Insurance**

Subject to all of the terms and conditions applicable to Coverage B – Umbrella Liability Insurance, WE will pay on behalf of the INSURED, those damages the INSURED becomes legally obligated to pay by reason of liability imposed by law or assumed under an INSURED CONTRACT because of BODILY INJURY, PROPERTY DAMAGE, or PERSONAL AND ADVERTISING INJURY covered by this policy. WE will pay such damages in excess of the SELF-INSURED RETENTION specified on the Declarations Page or the amount payable by OTHER INSURANCE, whichever is greater.

Coverage B will not apply to any PAYMENT OBLIGATION, CLAIM, or SUIT for which insurance is afforded under UNDERLYING INSURANCE or would have been afforded except for the exhaustion of the limits of UNDERLYING INSURANCE.

**III. NAMED INSUREDS AND INSUREDS**

**A. Coverage A – Excess Follow Form Liability Insurance**

With respect to Coverage A – Excess Follow Form Liability Insurance, the following persons and organization qualify as INSUREDS:

1. The NAMED INSURED shown on the Declarations Page; and

2. Other persons or organizations qualifying as an INSURED in UNDERLYING INSURANCE, but not beyond any limitation imposed under any written contract or written agreement.

*Coverage Demands*

14.    Plaintiffs in the Lawsuits are employees of SEI and MWWS. Because SEI and MWWS are contractors of XTO, Plaintiffs are members of "XTO Group" as defined by the MSA.

15.    Because Plaintiffs in the Lawsuits are members of "XTO Group," XTO is obligated under the MSA to defend and indemnify Missouri Basin for the claims in the Lawsuits. XTO has acknowledged its contractual obligation to defend and indemnify Missouri Basin.

16.    On February 16, 2018, Missouri Basin tendered defense and indemnity for the Lawsuits to XTO per the indemnity clauses of the MSA. In its response dated July 24, 2018, XTO accepted Missouri Basin's tender. However, XTO asserted that Berkley is responsible for

Missouri Basin's liability because Berkley must indemnify XTO and the other contractors as additional insureds. XTO contends that "any defense and indemnity obligation that XTO may owe to Missouri Basin must be satisfied by Missouri Basin's own insurers."

17.    In a letter to Berkley dated June 29, 2018, XTO demanded defense and indemnity for itself and "XTO Group"—contractors Badlands Consulting, LLC (employee Tom Jones), Petroleum Experience, Inc. (employee Alan Kolden), Weatherford International, LLC, KLX Energy Services, LLC, KLX Energy Holdings, LLC (hereinafter collectively referred to as the "Contractors"), and Berkley's own insured, Missouri Basin—based upon alleged additional insured status under the Berkley Policies.

## V.    CLAIM FOR RELIEF

18.    Berkley incorporates the preceding paragraphs by reference as if they were repeated in this paragraph.

19.    Berkley seeks a declaratory judgment that Berkley has no obligation under the Policies to defend or indemnify XTO or the Contractors as additional insureds under the CGL Policy or Umbrella Policy for the claims made in the Lawsuits, for which XTO has assumed contractual responsibility per the MSA.

20.    In paragraph 10.2.1 of the MSA, XTO agreed "to release" Missouri Basin from and against any and all indemnifiable claims, defined as any and all claims, demands, and causes of action of every kind and character arising out of, without limitation, injury to or death of employees of XTO's contractors. This release extends to and includes any claims that Missouri Basin is obligated to name "XTO Group" as additional insureds on its policies (which alleged additional insured obligation is denied, in any event) in connection with injury claims brought by members of the XTO Group. Again, the CGL Policy limits additional insured coverage to "[t]he coverage, terms, and/or limits required by" the MSA, and the Umbrella Policy follows form.

10

Because XTO released Missouri Basin from any obligation to name "XTO Group" as additional insureds in connection with injury claims brought by members of the XTO Group, "XTO Group" does not qualify as additional insureds on the Policies for claims made in the Lawsuits.

21.     The MSA does not require Missouri Basin to provide additional insured coverage to XTO for claims of the XTO Group.  XTO agreed to release Missouri Basin and provide defense and indemnity to Missouri Basin, with primary coverage insuring those obligations, in connection with claims of the XTO Group. The MSA only requires Missouri Basin to provide additional insured coverage for those claims for which Missouri Basin assumed responsibility, by agreeing to provide defense and indemnity to XTO. Because Missouri Basin did not assume responsibility for claims of the XTO Group, it is not required to provide additional insured coverage to XTO for the claims made in the Lawsuits. The CGL Policy limits additional insured coverage to "[t]he coverage, terms, and/or limits required by" the MSA, and the Umbrella Policy follows form.  Because Missouri Basin does not owe contractual indemnity to "XTO Group" for the claims made in the Lawsuits, "XTO Group" do not qualify as additional insureds on the Policies.

22.     Additionally, the Contractors, whose tenders XTO has accepted and in turn tendered to Berkley, do not qualify as additional insureds on the Policies.  The CGL Policy only affords additional insured status to those "with whom" the named insured, Missouri Basin, has contractually agreed to name as an additional insured.  Missouri Basin contracted with XTO only, and has no contractual relationship with any other members of the "XTO Group."  Because XTO's other contractors are not entities "with whom" Missouri Basin contracted, they do not qualify as additional insureds on the CGL Policy.

23.     Furthermore, neither XTO nor the Contractors, whose tenders XTO has accepted and in turn tendered to Berkley, qualify as additional insureds on the CGL Policy.  The CGL Policy affords additional insured status "only with respect to liability arising out of [Missouri Basin's] operations."  However, Missouri Basin is a defendant in the Lawsuits.  Neither XTO's nor Contractors' liability can arise out of Missouri Basin's operations, i.e. vicarious liability, when Missouri Basin's liability for its operations will already be assessed in the Lawsuits. Because XTO's and its Contractors' liability cannot arise out of Missouri Basin's operations when Missouri Basin is a defendant, neither XTO nor Contractors qualify as additional insureds on the CGL Policy.

24.     Because the Umbrella Policy follows form to the CGL Policy, the Contractors also do not qualify as additional insureds on the Umbrella Policy.

25.     XTO has no coverage under the CGL Policy or the Umbrella policy for its contractual obligations to others, including Missouri Basin, as the definition of "insured contract" is not met.

26.     Berkley further seeks a declaratory judgment that XTO's contractual defense and indemnity obligation to Missouri Basin for the claims in the Lawsuits applies on a primary basis.

27.     Berkley further seeks a declaratory judgment that XTO has an obligation to indemnify Missouri Basin, Berkley's named insured, at least up to the $51,000,000 in insurance limits, the minimum amount that both XTO and Missouri Basin obtained to support their mutual indemnity obligations.  This includes "actual insurance," including excess coverages, obtained pursuant to MSA paragraph 10.2.3 and article XI.  *See* TEX. CIV. PRAC. & REM. CODE § 127.005. If this Act does not apply, Berkley seeks a declaratory judgment that XTO's obligation to Missouri Basin is unlimited.

28.     Berkley further seeks a declaratory judgment that XTO is required to waive subrogation against all members of "Contractor Group"—including Missouri Basin—pursuant to MSA paragraph 10.2.3.

29.     Berkley further seeks a declaratory judgment that, regardless of whether XTO or Contractors qualify as insureds, the Policy does not cover the claims made by Plaintiffs in the Lawsuits due to application of the CGL Policy's "Pollution" exclusion and the Umbrella Policy's incorporation of that exclusion. The claims at issue arose out of the release or escape of fluids and gases which qualify as pollutants, at or from a site which was owned or occupied by, or rented or loaned to, XTO, which alleges it is an insured.

## VI.     ATTORNEYS' FEES

30.     Berkley seeks its reasonable and necessary attorney fees. 28 U.S.C. § 2202.

## VII.     JURY DEMAND

31.     Berkley hereby demands a trial by jury on any contested issues of material fact. Along with the filing of the Original Complaint, Berkley tenders the requisite jury fee to the Clerk of the Court.

## VIII.     PRAYER

32.     Accordingly, Berkley prays that the Court issue declaratory judgment against Defendant XTO that:

    a.    Neither XTO nor its contractors qualify as additional insureds on Berkley's Policies.

    b.    Berkley has no duty to defend or indemnify XTO or its Contractors from the claims made in the Lawsuits.

    c.    XTO has an obligation to indemnify Missouri Basin to at least $51,000,000 for the claims made in the Lawsuits.

    d.    XTO has an obligation to waive subrogation against Missouri Basin.

13

33.    Berkley further prays for judgment awarding costs of suit and reasonable attorneys' fees, and for such other relief as the Court deems equitable and just to Berkley.

Dated this 28th day of September, 2018.

Respectfully submitted,

*/s/ Thomas C. Wright*
Thomas C. Wright
Attorney-in-charge
Texas Bar No. 22059400
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas  77056
(713) 572-4321
(713) 572-4320 (facsimile)
wright@wrightclosebarger.com

Troy A. Wolf (#05792)
FISHER BREN & SHERIDAN, LLP
3137 32nd Avenue South, Suite 212
Fargo, ND 58103
Telephone: 701-205-4242
Fax:  701-364-5603
twolf@fisherbren.com

Susan A. Daigle (#4459)
DAIGLE RAYBURN LLC
600 Jefferson Street, Suite 1200
P. O. Box 3667
Lafayette, Louisiana 70501
Telephone: 337-234-7000
Facsimile: 337-237-0344
susan@djrlawfirm.com

**ATTORNEYS FOR PLAINTIFF,
BERKLEY NATIONAL INSURANCE
COMPANY**

14