# EXHIBIT G



# Berkley National Insurance Company
### Urbandale, Iowa

## Energy Commercial General Liability Declarations

| | |
|---|---|
| **Policy Number: EGL001672010** | Billing Method: Agency |
| Previous Policy Number: | Pay Plan: 4-Pay |

| | |
|---|---|
| **Named Insured and Mailing Address** | **Agency Name and Address** |
| Missouri Basin Well Service, Inc. | USI Insurance Services, LLC (Mountain) |
| P.O. Box 458 | 305 S.W. Wyoming Blvd |
| Belfield, ND 58622 | Suite 100 |
| | Mills, WY 82644 |
| | 307.266.6568 |

(See Named Insured Schedule for a complete list of Named Insureds)

| | |
|---|---|
| **Policy Period:** | **Form of Business:**  Corporation |
| From: 04/13/2016    To: 04/13/2017 | |
| 12:01 A.M. Standard Time at your mailing address shown above. | **Audit Period**: Annual |

**Limits of Liability:**

| | | |
|---|---|---:|
| General Aggregate Limit | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Personal & Advertising Injury Limit | $ | 1,000,000 |
| Damage to Premises Rented to You Limit | $ | 100,000 |
| Medical Expense Limit | $ | 5,000 |

**Forms and Endorsements:**    See Schedule of Forms and Endorsements

| | | |
|---|---|---|
| **Estimated Premium:** | $ |  |
| **Terrorism Additional Premium:** | $ | |
| **Deposit Premium:** | $ | |

**Name and Address of Administrative Office:**

Berkley Oil & Gas Specialty Services, LLC
10375 Richmond, Suite 1900
Houston, TX 77042
Phone No.: ..    **See Claims Notice for Claims contact information**

**THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

MBI00006

**This policy is issued by one of the following stock companies as indicated on the Declarations Page.**

**Berkley Regional Insurance Company**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**Berkley National Insurance Company**
**11201 Douglas Avenue**
**Urbandale, Iowa 50322**

**StarNet Insurance Company**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**Administrative Office for the companies listed above:**

**Berkley Oil & Gas Specialty Services, LLC**
**10375 Richmond Avenue, Suite 1900**
**Houston, Texas 77042**

**THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE DECLARATIONS PAGE.**

**Berkley Regional Insurance Company**

**W. Robert Berkley, Jr.**
**President**

**Ira S. Lederman**
**Secretary**

**Berkley National Insurance Company**

**Craig Weldon Sparks**
**President**

**Ty Collin Simmons**
**Secretary**

**StarNet Insurance Company**

**W. Robert Berkley, Jr.**
**President**

**Ira S. Lederman**
**Secretary**

**IN THE EVENT YOU SUFFER A LOSS OR ACCIDENT, YOU SHOULD CONTACT YOUR AGENT IMMEDIATELY**

---

MBI00007

PN 2600 09 13

# PRIVACY NOTICE

Berkley National Insurance Company (the "Company"), a member company of the W.R. Berkley Corporation ("Berkley") group of companies and each other member of the Berkley group of companies ("Affiliates") understands our customers' concern about privacy of their information collected by the Company. Our Company is dedicated to protecting the confidentiality and security of nonpublic personal information we collect about our customers in accordance with applicable laws and regulations. This notice refers to the Company by using the terms US, WE, or OUR. This notice describes our privacy policy, and describes how we treat the nonpublic personal information about our customers that we receive from them ("Information").

**Why We Collect and How We Use Information.**

We collect and use Information for business purposes with respect to our insurance products and services and other business relations involving our customers. We gather this Information to evaluate your request for insurance, to evaluate your insurance claims, to administer, maintain, or review your insurance policy, and to process your insurance transactions. We also accumulate certain information about you as may be required or permitted by law.

Your insurance agent or broker also collects this Information and may use it to help with your overall insurance program or to market additional products and services to you. We may also use Information to offer you other products or services that we or our Affiliates provide.

**How We Collect Information.**

Most Information collected by us is provided by you or your insurance agent or broker to us. We obtain Information from (i) applications or other forms submitted by you, your insurance agent or broker or your authorized representatives to us and our Affiliates, and (ii) your transactions with us or our Affiliates. We may also obtain Information from other sources such as (i) consumer reporting agencies, (ii) other institutions or information services providers, (iii) employers, (iv) other insurers, or (v) your family members.

**Information We Disclose**

We disclose any Information which we believe is necessary to conduct our business as permitted by applicable law or where required by applicable law. This disclosure may include (i) Information we receive from you on applications or other forms provided to us and our Affiliates, such as names, addresses, social security numbers, assets, employer information, salaries, etc. (ii) Information about your transactions with us and our Affiliates, such as policy coverages, premiums, payment history, etc., and (iii) Information we receive from a consumer reporting agency, such as credit worthiness and credit history.

**To Whom We Disclose Information**

We may, as permitted or required by applicable law, disclose your Information to nonaffiliated third parties, such as (i) your insurance agent or broker, (ii) independent claims adjusters, (iii) insurance support organizations, (iv) processing companies, (v) actuarial organizations, (vi) law firms, (vii) other insurance companies involved in an insurance transaction with you, (viii) law enforcement, regulatory, or governmental agencies, (ix) courts or parties therein pursuant to a subpoena or court order, (x) businesses with whom we have a marketing agreement, or (xi) our Affiliates.

We may share Information with our Affiliates so that they may offer you products and services from the Berkley group of companies or to analyze our book of business and to consolidate necessary information. We do not disclose Information to other companies or organizations not affiliated with us for the purpose of using Information to sell their products or services to you. For example, we do not sell your name to unaffiliated mail order or direct marketing companies.

**How We Protect Information**

We require our employees to protect the confidentiality of Information as required by applicable law. Access to Information by our employees is limited to administering, offering, servicing, processing or maintaining of our products and services. We also maintain physical, electronic and procedural safeguards designed to protect Information. When we share or provide Information to other persons or organizations, we contractually obligate them, if required by law, to treat Information as confidential and conform to our privacy policy and applicable laws and regulations.

MBI00008

**Correction and Access to Information**

Upon our receipt of your written request to us at P.O. Box 420029, Houston, TX 77242, we will, generally, make available information for your review. If you believe the Information we have about you is incorrect or inaccurate, you may request that we make any necessary corrections, additions or deletions. If we agree with your belief, we will correct our records if required by applicable law. If we do not agree, you may submit to us a short statement of dispute, which we will include in any future disclosure by us of such Information if required by applicable law.

**Requirements for Privacy Notice**

This privacy notice is being provided due to recently enacted federal and state laws and regulations establishing new privacy standards and requires us to provide this privacy policy. For additional information regarding our privacy policy, please write to us at P.O. Box 420029, Houston, TX 77242.

Adopted: June 1, 2001

MBI00009

Policy Number:   EGL001672010                          Transaction Number:  001
Effective Date:   04/13/2016

# Schedule of Forms and Endorsements

**Forms and Endorsements that apply to this policy:**

| | |
|---|---|
| EGL1001 10 14 | Declarations Page |
| EIL1014 03 10 | Signature Page |
| PN 2600 09 13 | Privacy Notice |
| EIL1002 03 10 | Schedule of Forms and Endorsements |
| EGL1006 03 10 | Classification Schedule |
| EIL1003 03 10 | Named Insured Schedule |
| EGL1000 10 14 | Energy Commercial General Liability Policy |
| EGL1200 03 10 | Employee Benefits Liability Coverage |
| EGL1202 03 10 | Stop Gap Employers Liability Coverage |
| EGL2124 03 10 | North Dakota Changes - Cancellation and Nonrenewal |
| EGL2162 01 15 | Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |
| EIL2337 03 10 | North Dakota Changes - Examination of Your Books and Records |
| EGL1903 10 14 | Notice of Cancellation to Third Parties |
| EIL2504 06 13 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

MBI00010

Policy Number:  EGL001672010
Effective Date:  04/13/2016

Transaction Number:  001

# Classification Schedule

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

The premium shown on the Declarations Page was based on operation(s) and exposure(s) shown in schedule below:

### SCHEDULE

| Class Code | State | Class Code Description | Rates Per | Exposure Basis | Exposure Value | Prem/Ops | Prod/Comp Ops | Estimated Premium |
|---|---|---|---|---|---|---|---|---|
| BG112 | ND | Employee Benefits Liability | Each | Flat | 1 | $ | Included | $ |
| BG208 | ND | Contractors Equipment - excluding automobiles - rented to others without operators | 1,000 | Gross Sales | $ 7,800,000 | $ | Included | $ |
| BG151 | ND | Oil or Natural Gas Lease Operations | 1,000 | Payroll | $ 1,000,000 | $ | Included | $ |
| BG793 | ND | Truckers | 1,000 | Payroll | $ 2,000,000 | $ | Included | $ |
| BG152 | ND | Roustabouts | 1,000 | Payroll | $ 6,400,000 | $ | $ | $ |
| BG161 | ND | Well servicing by contractors | 1,000 | Payroll | $ 25,300,000 | $ | $ | $ |
| BG111 | ND | Stop Gap Liability | 1,000 | Payroll | $ 100,000,000 | $ | Included | $ |
| BG539 | ND | Land | Each | Per Acre | 46 | $ | Included | $ |
| BG585 | ND | Subcontracted Work | 1,000 | Cost | $ 1,200,000 | $ | $ | $ |
| BG590 | ND | Contractors Permanent Yards | 1,000 | Payroll | $ 5,100,000 | $ | Included | $ |
| BGO53 | ND | Operated Wells - 12,501+ Feet - Producing | Each | Per Well | 29 | $ | Included | $ |
| | | | | | | | **Estimated Annual Premium:** | |
| | | | | | Final Premium is subject to an Annual Policy Minimum of: | | | |

MBI00011

Policy Number:  EGL001672010

Transaction Number:  001

Effective Date:  04/13/2016

# Named Insured

### SCHEDULE

Missouri Basin Well Service, Inc.
MBI Energy Rentals, Inc.
Yellowfin Partners II, LLC
Missouri Basin Well Service Inc. dba MBI Energy Services
Mid West Crane Service, Inc.
WW Oilfield Services, LLC
MBI Energy Logistics, LLC
Yellowfin Partners I, LLC
Yankee Fishing & Rentals, Inc.
Dodge Water Depot, LLC
MBI Energy Services, Inc. (fka Well Service Holdings, Inc.)
Yankee Consulting, LLC
High Plains, Inc.
MBWS Ultimate Holdco, Inc.
MBI Real Estate, LLC
Rod's Hot Oil Service, Inc.

MBI00012



# ENERGY COMMERCIAL GENERAL LIABILITY POLICY

"Focusing On Your Energy Business"

## DEFINED TERMS

This policy contains certain words and phrases that have special meaning.  These defined terms appear within this policy as **BOLDED AND CAPITALIZED**.  As an example, **WE**, **US**, and **OUR**, refer to the company listed on the Declarations Page that insures **YOU**.  **YOU** will find a list of these defined terms beginning on Page 25.  For **YOUR** convenience, **WE** have provided an index of important topics beginning on Page 31.

## ABOUT THIS ENERGY COMMERCIAL GENERAL LIABILITY POLICY

This policy is specifically designed to insure companies in the oil and gas or energy business.  This policy provides commercial general liability coverage to **YOU** and **YOUR** energy-related and other businesses.  This policy describes who is covered, what is covered, and when and where there is coverage, as well as supplementary payments.  This policy includes a time element pollution coverage grant with separate requirements, including reporting requirements, to trigger coverage.  As with any insurance policy, there are certain limitations and exclusions to the coverage.  **YOU** also have certain obligations and requirements which **YOU** must comply with in order to maintain the benefits afforded under this policy.  Lastly, there are endorsements to the policy that change the terms, conditions, and exclusions in the policy.

**YOU must read the entire policy to understand the terms, conditions, coverages, limitations, and exclusions contained in this policy.**

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00013



# ENERGY COMMERCIAL GENERAL LIABILITY POLICY

"Focusing On Your Energy Business"

## TABLE OF CONTENTS

I.   NAMED INSUREDS AND INSUREDS ..................................................................................... 3
    A.   NAMED INSUREDS ........................................................................................................... 3
    B.   INSUREDS ....................................................................................................................... 3
    C.   IN REM ACTION(S) ........................................................................................................... 5
II.  COVERAGES AND DUTY TO DEFEND ................................................................................ 5
    A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY ............................................................ 5
    B.   POLLUTION CLEAN UP COSTS .......................................................................................... 5
    C.   PERSONAL AND ADVERTISING INJURY LIABILITY ................................................................. 6
    D.   MEDICAL PAYMENTS ....................................................................................................... 6
    E.   DUTY TO DEFEND ........................................................................................................... 6
III. WHEN THERE IS COVERAGE ............................................................................................. 6
IV.  COVERAGE TERRITORY .................................................................................................... 7
V.   LIMITS OF INSURANCE ...................................................................................................... 8
VI.  SUPPLEMENTARY PAYMENTS ........................................................................................... 8
VII. EXCLUSIONS ..................................................................................................................... 9
    A.   BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS, AND PERSONAL AND ADVERTISING INJURY EXCLUSIONS ... 9
    B.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY EXCLUSIONS .......................................... 13
    C.   POLLUTION CLEAN UP COSTS EXCLUSIONS ...................................................................... 17
    D.   PERSONAL AND ADVERTISING INJURY LIABILITY EXCLUSIONS ............................................... 17
    E.   MEDICAL PAYMENTS EXCLUSIONS .................................................................................... 19
VIII. GENERAL CONDITIONS ..................................................................................................... 20
IX.  DEFINITIONS ..................................................................................................................... 25
X.   INDEX ............................................................................................................................... 31

MBI00014

# ENERGY COMMERCIAL GENERAL LIABILITY POLICY

**I.**   **NAMED INSUREDS AND INSUREDS**

**A.   Named Insureds**

Each of the following is an **INSURED** if designated on the Declarations Page of this policy as a **NAMED INSURED** or satisfies the provisions in Section I.A.6. Newly Acquired or Formed Organizations:

1. **Individual**:

   If **YOU** are an Individual – **YOU** and **YOUR** spouse are **INSUREDS**, but only with respect to the conduct of a business of which **YOU** are the sole owner.

2. **Partnership or Joint Venture**:

   If **YOU** are a Partnership or Joint Venture – **YOU**, **YOUR MEMBERS**, **YOUR** partners, and their spouses are **INSUREDS**, but only with respect to the liability arising out of **YOUR** interest, or the conduct of **YOUR** business.

3. **Limited Liability Company**:

   If **YOU** are a Limited Liability Company – **YOU** and **YOUR MEMBERS** are **INSUREDS**, but only with respect to the conduct of **YOUR** business.  **YOUR MANAGERS** are also **INSUREDS**, but only with respect to their duties as **YOUR MANAGERS**.

4. **Other Organization**:

   If **YOU** are an organization other than a Partnership, Joint Venture, or Limited Liability Company – **YOU** are an **INSURED**, but only with respect to the conduct of **YOUR** business.

5. **Trust**:

   If **YOU** are a Trust – **YOU** and **YOUR** trustees are **INSUREDS**, but only with respect to their duties as trustees to **YOU**.

6. **Newly Acquired or Formed Organizations**:

   Any Newly Acquired or Formed Organization (other than a Partnership or Joint Venture) over which **YOU** maintain ownership or majority interest will qualify as a **NAMED INSURED** if there is no other similar insurance available to that organization.  However:

   a. Coverage under this provision is afforded only until the 120th day after **YOU** acquire or form the organization or the end of the policy period, whichever is earlier; and

   b. Section II.A. Bodily Injury and Property Damage Liability and Section II.B. Pollution Clean Up Costs do not apply to **BODILY INJURY** or **PROPERTY DAMAGE** that occurred, or **POLLUTION CLEAN UP COSTS** from a **POLLUTION INCIDENT** that commenced, before **YOU** acquired or formed the organization.  Section II.C. Personal and Advertising Injury Liability does not apply to **PERSONAL AND ADVERTISING INJURY** arising out of an offense committed before **YOU** acquired or formed the organization.

If **YOU** own a **NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property, then **YOU** are a **NAMED INSURED**, but only with respect to liability arising out of **YOUR NON-OPERATING WORKING INTEREST** in such oil, gas, or other mineral property.

No person or organization is an **INSURED** with respect to the conduct of any current or past Partnership or Joint Venture, or Limited Liability Company that is not shown as a **NAMED INSURED** on the Declarations Page.

**B.   Insureds**

Each of the following is an **INSURED** with respect to the coverages set forth in Section II.A. Bodily Injury and Property Damage Liability, Section II.C. Personal and Advertising Injury Liability, and Section II.D. Medical Payments of this policy:

1. **Additional Insured**:

   Any person or organization with whom **YOU** agree in a written contract or written agreement to add as an Additional Insured on **YOUR** policy or to provide liability insurance for, but only with respect to liability arising out of **YOUR** operations or liability arising out of premises owned by or rented to **YOU**.

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission
© Berkley Oil & Gas, 2014

MBI00015

In addition, the written contract or written agreement requiring **YOU** to include a person or organization as an Additional Insured must be in effect during the policy period and executed before the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurred. Furthermore, the insurance provided will not exceed the lesser of:

a.   The coverage, terms, and/or limits of this policy; or

b.   The coverage, terms, and/or limits required by said written contract or written agreement.

2.   **Employees and Volunteer Workers**:

**YOUR EMPLOYEES**, but only for acts within the scope of their employment by **YOU** or while performing duties related to the conduct of **YOUR** business; and **VOLUNTEER WORKERS**, but only while acting at **YOUR** direction and performing duties related to the conduct of **YOUR** business.

However, neither **YOUR EMPLOYEES** nor **VOLUNTEER WORKERS** are **INSUREDS** for:

a.   **BODILY INJURY** or **PERSONAL AND ADVERTISING INJURY**:

    (1)   To **YOU**, to **YOUR** partners or **MEMBERS** (if **YOU** are a Partnership or Joint Venture), to **YOUR MEMBERS** (if **YOU** are a Limited Liability Company), to another **EMPLOYEE** while in the course of his or her employment or performing duties related to the conduct of **YOUR** business, or to other **VOLUNTEER WORKERS** while performing duties related to the conduct of **YOUR** business;

    (2)   To the spouse, child, parent, or sibling of that co-**EMPLOYEE** or **VOLUNTEER WORKER** as a consequence of Subparagraph a.(1) above;

    (3)   For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Subparagraphs a.(1) or (2) above; or

    (4)   Arising out of his or her providing or failing to provide professional health care services.

With respect to **BODILY INJURY** only, the limitation in Subparagraph a. above does not apply to:

    (1)   **YOU** or **YOUR** directors, **MANAGERS**, **MEMBERS**, **EXECUTIVE OFFICERS**, partners, or supervisors as **INSUREDS**; or

    (2)   **YOUR EMPLOYEES**, as **INSUREDS**, with respect to such damages because of first aid services administered by such an **EMPLOYEE**.

b.   **PROPERTY DAMAGE** to property:

    (1)   Owned, occupied, or used by; or

    (2)   Rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by;

    **YOU**, any of **YOUR EMPLOYEES**, **VOLUNTEER WORKERS**, any partner or **MEMBER** (if **YOU** are a Partnership or Joint Venture), or any of **YOUR MEMBERS** (if **YOU** are a Limited Liability Company).

3.   **Executive Officers and Directors**:

**EXECUTIVE OFFICERS** and Directors to the extent that **YOU** have **EXECUTIVE OFFICERS** and Directors, but only with respect to their duties as **YOUR EXECUTIVE OFFICERS** or directors.

4.   **Legal Representative**:

**YOUR LEGAL REPRESENTATIVE** if **YOU** die, but only with respect to duties as **YOUR LEGAL REPRESENTATIVE**. The **LEGAL REPRESENTATIVE** will have all **YOUR** rights and duties under this policy.

5.   **Non-operating Working Interest Owner**:

A person or organization owning a **NON-OPERATING WORKING INTEREST**, but only when **YOU** have agreed in a written contract or written agreement (including, but not limited to, a Joint Operating Agreement) to provide insurance coverage for the benefit of the person or organization owning a **NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property in which **YOU** are the **OPERATOR**. In addition, the written contract or written agreement requiring **YOU** to include a **NON-OPERATING WORKING INTEREST** must be in effect during the policy period and executed before the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurred. However, the person or organization owning a **NON-OPERATING WORKING INTEREST** is an **INSURED**, only with respect to liability arising out of the **NON-OPERATING WORKING INTEREST**. Furthermore, the insurance provided will not exceed the lesser of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Berkley Oil & Gas, 2014

MBI00016

**a.** The coverage, terms, and/or limits of this policy; or

**b.** The coverage, terms, and/or limits required by said written contract or written agreement.

**6.** <u>Permissive User of Mobile Equipment</u>:

With respect to **MOBILE EQUIPMENT** registered in **YOUR** name under a motor vehicle registration law:

**a.** Persons driving such equipment on a public road with **YOUR** permission; and

**b.** Persons or organizations responsible for the conduct of such persons described in Subparagraph a. above, but only with respect to the operation of the equipment and only if no other insurance of any kind is available to them.

However, no person or organization is an **INSURED** with respect to **BODILY INJURY** to any co-**EMPLOYEE** of the person driving the equipment, or **PROPERTY DAMAGE** to any property owned or occupied by or loaned or rented to **YOU** or in **YOUR** charge, or the charge of the employer of any person who is an **INSURED** under this provision.

**7.** <u>Real Estate Manager</u>:

Any person (other than **YOUR EMPLOYEE** or **VOLUNTEER WORKER**) or organization while acting as **YOUR** Real Estate Manager, but only with respect to their duties as **YOUR** Real Estate Manager.  However, Real Estate Manager does not include any person or organization providing services to **YOU** with regard to **YOUR** oil and gas leases including, without limitation, the person commonly referred to as a landman.

**8.** <u>Stockholders</u>:

To the extent that **YOU** have Stockholders, they and their spouses, but only with respect to their liability as Stockholders.

**9.** <u>Temporary Custodian</u>:

Any person or organization having proper temporary custody of **YOUR** property if **YOU** die, but only:

**a.** With respect to liability arising out of the maintenance or use of that property; and

**b.** Until **YOUR LEGAL REPRESENTATIVE** has been appointed.

**C.** In Rem Action(s)

In Rem Action(s) against any watercraft owned or operated by, rented by, chartered by, or loaned to the **INSURED** will in all respects be treated in the same manner as though the action were In Personam against that **INSURED**.

**II.** **COVERAGES AND DUTY TO DEFEND**

**A.** Bodily Injury and Property Damage Liability

**WE** will pay the amounts that an **INSURED** becomes legally obligated to pay as damages because of **BODILY INJURY** or **PROPERTY DAMAGE** caused by an **OCCURRENCE** to which this policy applies.

**B.** Pollution Clean Up Costs

**WE** will pay the amounts that **YOU** incur as **POLLUTION CLEAN UP COSTS** because of a **POLLUTION INCIDENT** which has commenced at or from **YOUR OIL OR GAS SITE** or **YOUR WORK** at an **OIL OR GAS SITE**, provided the following **ELIGIBLE POLLUTION INCIDENT** requirements are met:

**1.** The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;

**2.** The **POLLUTION INCIDENT** is abrupt and instantaneous and can be identified as having first commenced on a specific date during the policy period;

**3.** **YOU** must take reasonable action to end the **POLLUTION INCIDENT** as soon as possible;

**4.** The **POLLUTION INCIDENT** was known by any **INSURED, AGENT, OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and

**5.** The **POLLUTION INCIDENT** must meet the following reporting requirements:

**a.** The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS** no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**; or

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00017

    **b.** If **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS** no later than 120 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

**YOU** must meet all of the **ELIGIBLE POLLUTION INCIDENT** requirements as an absolute condition precedent to coverage, regardless of whether or not **WE** are prejudiced by the failure of those requirements being met.

**C. Personal and Advertising Injury Liability**

    **WE** will pay the amounts that an **INSURED** becomes legally obligated to pay as damages because of a **PERSONAL AND ADVERTISING INJURY** caused by an offense to which this policy applies.

**D. Medical Payments**

    **1.** **WE** will pay medical expenses for **BODILY INJURY** caused by an **OCCURRENCE**:

        **a.** On premises **YOU** own or rent;

        **b.** On ways next to premises **YOU** own or rent; or

        **c.** Because of **YOUR** operations;

        provided that:

          **(1)** The **OCCURRENCE** takes place in the Coverage Territory and during the policy period;

          **(2)** The expenses are incurred and reported to **US** within one year of the date of the **OCCURRENCE**; and

          **(3)** The injured person submits to examination, at **OUR** expense, by physicians of **OUR** choice as often as **WE** reasonably require.

    **2.** **WE** will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. **WE** will pay reasonable and necessary expenses for:

        **a.** First aid administered at the time of an **OCCURRENCE**;

        **b.** Necessary medical, surgical, x-ray, and dental services, including prosthetic devices; and

        **c.** Necessary ambulance, hospital, professional nursing, and funeral services.

**E. Duty to Defend**

    **WE** will have the right and Duty to Defend the **INSURED**, including without limitation, to appoint counsel to represent the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, to which this policy applies. However, **WE** will have no Duty to Defend the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS**, to which this policy does not apply.

    **WE** may, at **OUR** discretion, investigate any **OCCURRENCE**, **POLLUTION INCIDENT**, or offense and settle any **CLAIM** or **SUIT** that may result. But:

    **1.** The amount **WE** will pay for damages or **POLLUTION CLEAN UP COSTS** is limited as described in Section V. Limits Of Insurance; and

    **2.** **OUR** right and Duty to Defend ends when **WE** have used up the applicable limit of insurance in the payment of judgments or settlements under Section II.A. Bodily Injury and Property Damage Liability, Section II.C. Personal and Advertising Injury Liability, or medical expenses under Section II.D. Medical Payments or **POLLUTION CLEAN UP COSTS** paid under Section II.B. Pollution Clean Up Costs.

**Other than as provided pursuant to Section VI. Supplementary Payments, WE have no other obligation or liability to pay sums or perform any acts or services.**

**III.**   **WHEN THERE IS COVERAGE**

    **A.** This policy applies to Bodily Injury and Property Damage Liability only if:

        **1.** The **BODILY INJURY** or **PROPERTY DAMAGE** is caused by an **OCCURRENCE** that takes place in the Coverage Territory described in Section IV. Coverage Territory during the policy period; and

---

    *Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
*© Berkley Oil & Gas, 2014*     

MBI00018

2.   Prior to the policy period, no **INSURED**, nor any of the **INSURED's EMPLOYEES, EXECUTIVE OFFICERS**, directors, owners, or **AGENTS**, knew that the **BODILY INJURY** or **PROPERTY DAMAGE** had occurred, in whole or in part.

If such an **INSURED** knew of any **BODILY INJURY** or **PROPERTY DAMAGE** prior to the policy period, then any continuation, change, or resumption of such **BODILY INJURY** or **PROPERTY DAMAGE** during or after the policy period will not be covered.

**B.**   This policy applies to Pollution Clean Up Costs only if:

The **POLLUTION CLEAN UP COSTS** are caused by an **ELIGIBLE POLLUTION INCIDENT** that takes place in the Coverage Territory described in Section IV. Coverage Territory and first commences on a specific date during the policy period;

**C.**   This policy applies to Personal and Advertising Injury Liability only if:

1.   The **PERSONAL AND ADVERTISING INJURY** is caused by an offense arising out of **YOUR** business, but only if the offense was committed in the Coverage Territory described in Section IV. Coverage Territory during the policy period; and

2.   Prior to the policy period, no **INSURED**, nor any of the **INSURED's EMPLOYEES, EXECUTIVE OFFICERS**, directors, owners, or **AGENTS**, knew that the **PERSONAL AND ADVERTISING INJURY** had occurred, in whole or in part.

If such an **INSURED** knew of any **PERSONAL AND ADVERTISING INJURY** prior to the policy period, then any continuation, change, or resumption of such **PERSONAL AND ADVERTISING INJURY** during or after the policy period will not be covered.

**D.**   **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** will be deemed to have been known to have occurred at the earliest time when any **INSURED** or any **EMPLOYEE, EXECUTIVE OFFICER**, director, owner, or **AGENT**:

1.   Reports all, or any part, of the **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** to **BERKLEY OIL & GAS** or any insurer;

2.   Receives a written or verbal demand or **CLAIM** for damages because of the **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY**; or

3.   Becomes aware by any other means that **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** has occurred or has begun to occur.

Subsection D. above does not apply to **BODILY INJURY** and **PROPERTY DAMAGE** resulting from an **ELIGIBLE POLLUTION INCIDENT**.

**E.**   Notwithstanding any other provision of this policy, **BODILY INJURY** and **PROPERTY DAMAGE** caused by an **ELIGIBLE POLLUTION INCIDENT** are only covered by this policy if the **ELIGIBLE POLLUTION INCIDENT** first commenced on a specific date during the policy period.

**F.**   Damages because of **BODILY INJURY** include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **BODILY INJURY**.

## IV.   COVERAGE TERRITORY

This policy applies to **CLAIMS** or **SUITS**, arising from **OCCURRENCES** or offenses, in the United States of America (including its territories and possessions), United States Federal Lease Blocks (including state waters), Puerto Rico, and Canada.  It also applies to International waters and airspace, as long as the injury or damage occurs in the course of travel or transportation between the United States of America (including its territories and possessions), United States Federal Lease Blocks (including state waters), Puerto Rico, and Canada.  Coverage also applies to other parts of the world for injury or damages arising out of:

**A.**   Goods or products made or sold by **YOU**;

**B.**   Activities of a person whose home is in the United States of America (including its territories and possessions), Puerto Rico, and Canada, but is away for a short time period on **YOUR** business; or

**C.**   **PERSONAL AND ADVERTISING INJURY** offenses that take place through the Internet or other similar electronic means of communication;

as long as the **INSURED's** liability to pay damages is determined in a **SUIT** on the merits in the United States of America (including its territories and possessions), Puerto Rico, or Canada.

---

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
*© Berkley Oil & Gas, 2014*

MBI00019

## V.   LIMITS OF INSURANCE

**A.**   The Limits Of Insurance shown on the Declarations Page and the terms below fix the most **WE** will pay regardless of the number of:

  **1.**   **INSUREDS**;

  **2.**   **CLAIMS** made or **SUITS** brought; or

  **3.**   Persons or organizations making **CLAIMS** or bringing **SUITS**.

**B.**   The General Aggregate Limit is the most **WE** will pay for the sum of:

  **1.**   Medical expenses under Section II.D. Medical Payments;

  **2.**   Damages under Section II.A. Bodily Injury and Property Damage Liability, except damages because of **BODILY INJURY** or **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**;

  **3.**   **POLLUTION CLEAN UP COSTS** under Section II. B. Pollution Clean Up Costs; and

  **4.**   Damages under Section II.C. Personal and Advertising Injury Liability.

**C.**   The Products-Completed Operations Aggregate Limit is the most **WE** will pay under Section II.A. Bodily Injury and Property Damage Liability for damages because of **BODILY INJURY** and **PROPERTY DAMAGE** included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

**D.**   Subject to Subsection B. above, the Personal and Advertising Injury Limit is the most **WE** will pay under Section II.C. Personal and Advertising Injury Liability for the sum of all damages because of all **PERSONAL AND ADVERTISING INJURY** sustained by any one person or organization.

**E.**   Subject to Subsection B. or C. above, whichever applies, the Each Occurrence Limit is the most **WE** will pay for the sum of:

  **1.**   Damages under Section II.A. Bodily Injury and Property Damage Liability;

  **2.**   **POLLUTION CLEAN UP COSTS** under Section II.B. Pollution Clean Up Costs; and

  **3.**   Medical expenses under Section II.D. Medical Payments;

  because of all **BODILY INJURY**, **PROPERTY DAMAGE**, and **POLLUTION CLEAN UP COSTS** arising out of any one **OCCURRENCE** or **POLLUTION INCIDENT**. The Each Occurrence Limit will apply to all **BODILY INJURY**, **PROPERTY DAMAGE**, and **POLLUTION CLEAN UP COSTS** arising out of any one **NAMED STORM**.

**F.**   Subject to Subsection E. above, the Damage To Premises Rented To You Limit is the most **WE** will pay under Section II. A. Bodily Injury and Property Damage Liability for damages because of **PROPERTY DAMAGE** to any one premises, while rented to **YOU**, or in the case of damage by fire, while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner.

**G.**   Subject to Subsection E. above, the Medical Payments Limit is the most **WE** will pay under Section II.D. Medical Payments for all medical expenses because of **BODILY INJURY** sustained by any one person.

**The Limits Of Insurance of this policy apply to the policy period shown on the Declarations Page. If the existing policy period is extended after issuance for an additional period that is less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.**

## VI.   SUPPLEMENTARY PAYMENTS

**A.**   **WE** will pay, with respect to any **CLAIM** **WE** investigate or settle, or any **SUIT** against an **INSURED** **WE** defend:

  **1.**   **Bail Bonds**:

  Up to $2,000 for the cost of Bail Bonds. **WE** do not have to furnish these Bail Bonds.

  **2.**   **Bonds to Release Attachments**:

  The cost of Bonds to Release Attachments, but only for bond amounts within the applicable limit of insurance. **WE** do not have to furnish these bonds.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00020

3. **Control of Well Expenses**:

Up to $50,000 for **CONTROL OF WELL EXPENSES** related to **CONTROL OF WELL ACTIVITIES** required to be undertaken by or on behalf of the **NAMED INSURED** because of a **CONTROL OF WELL INCIDENT** arising from **YOUR PRODUCING WELL** on dry land.

4. **Court Costs**:

All Court Costs taxed against the **INSURED** in the **SUIT**. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **INSURED**.

5. **Expenses**:

All Expenses **WE** incur. Expenses, pursuant to Paragraph 5., include media expenses that **WE** incur in an amount not to exceed $10,000 if **WE** choose at **OUR** option to incur media expenses.

6. **Investigation and Defense Expenses Incurred by You at Our Request**:

All reasonable and necessary expenses incurred by the **INSURED** at **OUR** request to assist **US** in the investigation or defense of the **CLAIM** or **SUIT**, including actual loss of earnings up to $1,000 a day because of time off from work.

7. **Prejudgment Interest**:

Prejudgment Interest awarded against the **INSURED** on that part of the judgment **WE** pay. If **WE** make an offer to pay the applicable limit of insurance, **WE** will not pay any Prejudgment Interest based on that period of time after the offer.

8. **Post Judgment Interest**:

All interest on the full amount of any judgment that accrues after entry of the judgment and before **WE** have paid, offered to pay, or deposited in court, the part of the judgment that is within the applicable limit of insurance.

B. **Indemnitee Defense Expenses**

If an **INDEMNITEE** of the **INSURED** is named as a party to a **SUIT**, **WE** will defend that **INDEMNITEE** if all of the following conditions have been met:

1. The **SUIT** against the **INDEMNITEE** seeks damages for which the **INSURED** has assumed the liability of the **INDEMNITEE** in a written contract or written agreement that is an **INSURED CONTRACT**;

2. This policy applies to such liability assumed by the **INSURED**;

3. The obligation to defend, or the cost of the defense of, that **INDEMNITEE**, has also been assumed by the **INSURED** in the same **INSURED CONTRACT**;

4. The **INDEMNITEE** agrees to cooperate with **US** and allows **US** to conduct and control the defense of the **INDEMNITEE** including, but not limited to, appointing counsel;

5. The **INDEMNITEE** agrees to and does immediately send **US** copies of any demands, notices, summonses, or legal papers received in connection with the **SUIT**; and

6. The **INDEMNITEE** provides **US** with written authorization to obtain records and other information related to the **SUIT**.

If all conditions are not met, then **WE** will still defend the **INDEMNITEE** but the attorneys' fees and litigation expenses that **WE** incur will be deemed to be damages because of **BODILY INJURY** or **PROPERTY DAMAGE** and will reduce the applicable limit of insurance.

**OUR** obligation to make any Supplementary Payments, as respects Subsections A. and B. above, ends when **WE** have used up the applicable limit of insurance through payments of judgments, settlements, or **POLLUTION CLEAN UP COSTS**. Supplementary Payments will not reduce the applicable limit of insurance. Supplementary Payments do not include any fine or other penalty.

VII. **EXCLUSIONS**

A. **Bodily Injury, Property Damage, Pollution Clean Up Costs, and Personal and Advertising Injury Exclusions**

The following Exclusions apply to Section II.A. Bodily Injury and Property Damage Liability, B. Pollution Clean Up Costs, and C. Personal and Advertising Injury Liability;

This policy does not apply to:

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00021

1. <u>Acid Rain</u>:

   a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, suspected presence, physical exposure, or threat of exposure to **ACID RAIN**.

   b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

      (1) Any **CLAIM**, **SUIT**, request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE**, or in any way respond to or assess the effects of **ACID RAIN**; or repair, replace, or improve any property as a result of such effects; or

      (2) Any **CLAIM**, **SUIT**, request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **ACID RAIN**; or repairing, replacing, or improving any property as a result of such effects.

2. <u>Asbestos, Lead, Radioactive Material, or Silica and Silica-Related Dust</u>:

   a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, or suspected:

      (1) Ingestion of, inhalation of, absorption of, presence of, physical exposure to, threatened exposure to, contact with, threatened contact with, or existence of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST** in any form, including, but not limited to, goods or products containing any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**;

      (2) Use of any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST** in constructing or manufacturing any good, product, or structure;

      (3) Removal of any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST** from any good, product, or structure; or

      (4) The manufacture, intellectual development, sale, transportation, storage, or disposal of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**, or goods or products containing any form of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**.

   b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

      (1) Any **CLAIM**, **SUIT**, request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE**, or in any way respond to or assess the effects of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**; or repair, replace, or improve any property as a result of such effects; or

      (2) Any **CLAIM**, **SUIT**, request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **ASBESTOS**, **LEAD**, **RADIOACTIVE MATERIAL**, or **SILICA** and **SILICA-RELATED DUST**; or repairing, replacing, or improving any property as a result of such effects.

   This Exclusion does not apply to **RADIOACTIVE MATERIAL** while used in well logging or measuring tools.

3. <u>Control of Well Expenses</u>:

   **CONTROL OF WELL EXPENSES** arising out of a **CONTROL OF WELL INCIDENT**.

   This Exclusion does not apply to:

   a. **CONTROL OF WELL EXPENSES** expressly provided for in Section VI.A.3. Control of Well Expenses.

   b. Damages caused by **YOUR WORK** resulting in a **CONTROL OF WELL INCIDENT**, unless:

      (1) **YOU** are the **OPERATOR** or own a **NON-OPERATING WORKING INTEREST** in the well;

      (2) **YOU** have assumed liability for a **CONTROL OF WELL INCIDENT** by contract or agreement for the well, including, but not limited to, a turnkey work agreement; or

MBI00022

    (3) **YOU** or someone on **YOUR** behalf was obligated to obtain Control of Well or other similar insurance, regardless of whether such insurance is in force or the limits of liability are available.

4. <u>Employment-Related Practices</u>:

    a. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS, PERSONAL AND ADVERTISING INJURY,** or any other damages sustained at any time by any person, whether or not sustained in the course of employment by an **INSURED,** arising directly or indirectly out of any employment-related act, omission, policy, practice, or representation directed at such person, occurring in whole or in part at any time, including any:

        (1) Arrest, detention, or imprisonment;

        (2) Breach of any express or implied covenant;

        (3) Coercion, criticism, humiliation, prosecution, or retaliation;

        (4) Defamation or disparagement;

        (5) Demotion, discipline, evaluation, or reassignment;

        (6) Discrimination, harassment, or segregation;

        (7) Eviction, invasion, or other violation of any right of occupancy;

        (8) Failure or refusal to advance, compensate, employ, or promote;

        (9) Invasion or other violation of any right of privacy or publicity;

        (10) Termination of employment; or

        (11) Other employment-related act, omission, policy, practice, representation, or relationship in connection with any **INSURED** at any time.

    b. Any damages sustained by the spouse, child, parent, or sibling of such a person as a consequence of damages to that person at whom any Employment-Related Practice as described in Subparagraph a. is directed.

This Exclusion applies whether the **INSURED** may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

5. <u>Enhancement, Maintenance, or Capital Expenditures</u>:

Any loss, cost, or expense incurred by **YOU** or others after an **OCCURRENCE** or **POLLUTION INCIDENT,** for any:

    a. Enhancement or maintenance of any property; or

    b. Expenditure or improvement that would qualify as a **CAPITAL EXPENDITURE.**

6. <u>Fines or Penalties</u>:

Any criminal, civil, or administrative fine or penalty. This Exclusion does not apply to punitive or exemplary damages, if insuring such damages is legal and not against public policy under the law of the jurisdiction pursuant to which this policy is construed.

7. <u>Fungi or Bacteria</u>:

    a. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **FUNGI** or Bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

    b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

        (1) Any **CLAIM, SUIT,** request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE,** or in any way respond to or assess the effects of **FUNGI** or Bacteria; or repair, replace, or improve any property as a result of such effects; or

        (2) Any **CLAIM, SUIT,** request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing,

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00023

treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **FUNGI** or Bacteria; or repairing, replacing, or improving any property as a result of such effects.

8. Government Identified Contaminated Site:

   **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** arising out of any **GOVERNMENT IDENTIFIED CONTAMINATED SITE**.

9. Nuclear Energy:

   a. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY**:

      (1) With respect to which an **INSURED** under this policy also has status as an **INSURED** under a Nuclear Energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would have had status as an **INSURED** under any such policy but for its termination upon exhaustion of its limits of insurance; or

      (2) Arising out of the **NUCLEAR HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which:

         (a) Any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amending that Act; or

         (b) Any **INSURED** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency of the United States of America with any person or organization.

   b. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** arising out of **NUCLEAR HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**:

      (1) If the **NUCLEAR MATERIAL**:

         (a) Is at any **NUCLEAR FACILITY** owned by, or operated by, or on behalf of, any **INSURED**;

         (b) Has been discharged or dispersed from that **NUCLEAR FACILITY**;

         (c) Is contained in **NUCLEAR SPENT FUEL** or **NUCLEAR WASTE** at any time transported, handled, stored, disposed of, processed, treated, possessed, or used by or on behalf of any **INSURED**; or

      (2) In any way related to the furnishing by an **INSURED** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **NUCLEAR FACILITY**.  But if such facility is located within the United States of America (including its possessions or territories) or Canada, this Subparagraph (2), applies only to **NUCLEAR PROPERTY DAMAGE** to such **NUCLEAR FACILITY** and any property there at.

10. Recall of Products, Work, or Impaired Property:

    Any loss, cost, or expense incurred by **YOU** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

    a. **YOUR PRODUCT**;

    b. **YOUR WORK**; or

    c. **IMPAIRED PROPERTY**;

    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

11. Recording and Distribution of Material or Information in Violation of Law:

    **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law;

    b. The CAN-SPAM Act of 2003 including any amendment of or addition to such law;

    c. The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transactions Act (FACTA); or

MBI00024

    **d.** Any federal, state, or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

**12.** <u>War</u>:

    **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY**, however caused, arising out of **WAR**.

**13.** <u>Workers' Compensation or Similar Laws</u>:

    Any obligation of the **INSURED** under any state or federal Workers' Compensation, disability benefits, or unemployment compensation law or any similar law.

Exclusions in Paragraphs 10. and 12. above, do not apply to damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner. A separate limit of insurance applies to this coverage as described in Section V. Limits Of Insurance.

**B.** **Bodily Injury and Property Damage Liability Exclusions**

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II.A. Bodily Injury and Property Damage Liability;

This policy does not apply to:

**1.** <u>Aircraft, Auto, or Watercraft</u>:

    **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft owned or operated by, rented by, chartered by, or loaned to any **INSURED**. Use includes operation and **LOADING OR UNLOADING**.

    This Exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **INSURED**, if the **OCCURRENCE** which caused the **BODILY INJURY** or **PROPERTY DAMAGE** involved the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft that is owned or operated by, rented by, chartered by, or loaned to any **INSURED**.

    This Exclusion does not apply to:

    **a.** A watercraft while ashore on premises **YOU** own or rent;

    **b.** A watercraft **YOU** do not own that is:

        **(1)** Less than 100 feet long; and

        **(2)** Not being used by **YOU** to carry persons or property for a charge;

    **c.** Parking an **AUTO** on, or on the ways next to, premises **YOU** own or rent, provided the **AUTO** is not owned by or rented or loaned to **YOU** or any **INSURED**;

    **d.** Liability assumed under any **INSURED CONTRACT** for the ownership, maintenance, or use of aircraft or watercraft. However, this Exclusion will apply to:

        **(1)** Watercraft under bareboat or demise charter agreements, and;

        **(2)** **BODILY INJURY, PROPERTY DAMAGE**, or any other loss, cost, or expense that may be recoverable under the **INSURED**'s or **OPERATOR**'s Hull, Protection & Indemnity coverage, including **CLAIMS** for contractual liability; Marine Operators/Charterer's Liability coverage, or any similar marine insurance coverages on owned, operated, chartered, or brokered watercraft; or

    **e.** **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

        **(1)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **MOBILE EQUIPMENT** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

        **(2)** The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of **MOBILE EQUIPMENT**.

MBI00025

2. **Contractual Liability:**

   **BODILY INJURY** or **PROPERTY DAMAGE** for which the **INSURED** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

   This Exclusion does not apply to liability for damages:

   a. That the **INSURED** would have in the absence of the contract or agreement; or

   b. Assumed in a contract or agreement that is an **INSURED CONTRACT**, provided the **BODILY INJURY** or **PROPERTY DAMAGE** occurs after the execution of the contract or agreement.

3. **Damage to Impaired Property or Property Not Physically Injured:**

   **PROPERTY DAMAGE** to **IMPAIRED PROPERTY** or property that has not been physically injured, arising out of:

   a. A defect, deficiency, inadequacy, or dangerous condition in **YOUR PRODUCT** or **YOUR WORK**; or

   b. A delay or failure by **YOU** or anyone acting on **YOUR** behalf to perform a contract or agreement in accordance with its terms.

   This Exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **YOUR PRODUCT** or **YOUR WORK** after it has been put to its intended use.

4. **Damage to Property:**

   **PROPERTY DAMAGE** to:

   a. Property **YOU** own, rent, or occupy including any loss, costs, or expenses incurred by **YOU** or any other person or organization, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.   This Exclusion does not apply to **UNDERGROUND OILFIELD EQUIPMENT** of others if **YOU** are an **OILFIELD SERVICES CONTRACTOR**;

   b. Premises **YOU** sell, give away, or abandon, if the **PROPERTY DAMAGE** arises out of any part of those premises;

   c. Property loaned to **YOU**;

   d. Personal property in the care, custody, or control of the **INSURED**.   This Exclusion does not apply to **UNDERGROUND OILFIELD EQUIPMENT** of others if **YOU** are an **OILFIELD SERVICES CONTRACTOR**;

   e. That particular part of real property on which **YOU** or any contractors or subcontractors working directly or indirectly on **YOUR** behalf are performing operations, if the **PROPERTY DAMAGE** arises out of those operations.   This Exclusion does not apply to **PROPERTY DAMAGE** to **UNDERGROUND RESOURCES** or the **WELL BORE**, for which **YOU** have no ownership interest; however, this Exclusion will apply to **PROPERTY DAMAGE** to that specific part of the **WELL BORE** on which **YOU** are actually working; or

   f. That particular part of any property that must be restored, repaired, or replaced because **YOUR WORK** was incorrectly performed on it.

   Subparagraphs a. and c. of this Exclusion do not apply to **PROPERTY DAMAGE** (other than damage by fire) to premises, including the contents of such premises, rented to **YOU** for a period of 7 or fewer consecutive days.   A separate limit of insurance applies to Damage To Premises Rented To You as described in Section V. Limits Of Insurance.

   Subparagraph b. of this Exclusion does not apply if the premises are **YOUR WORK** and were never occupied, rented, or held for rental by **YOU**.

   Subparagraphs c., d., e., and f. of this Exclusion do not apply to liability assumed under a sidetrack agreement.

   Subparagraph f. of this Exclusion does not apply to **PROPERTY DAMAGE** included in the **PRODUCTS–COMPLETED OPERATIONS HAZARD**.

5. **Damage to Your Product:**

   Any **PROPERTY DAMAGE** to **YOUR PRODUCT** arising out of it or any part of it.

6. **Damage to Your Work:**

   Any **PROPERTY DAMAGE** to **YOUR WORK** arising out of it or any part of it and included in the **PRODUCTS–COMPLETED OPERATIONS HAZARD**.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00026

Section VII. Exclusions

This Exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **YOUR** behalf by a subcontractor.

7. <u>Disclosure of or Access to Confidential or Personal Information and Data-Related Liability</u>:

   **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

   a. Any disclosure of or access to any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

   b. The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **ELECTRONIC DATA**.

   This Exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by **YOU** or others arising out of that which is described in Subparagraph a. or b. above.

8. <u>Employers' Liability</u>:

   **BODILY INJURY** to:

   a. An **EMPLOYEE** of the **INSURED** arising out of and in the course of:

      (1) Employment by the **INSURED**; or

      (2) Performing duties related to the conduct of the **INSURED**'s business; or

   b. The spouse, child, parent, or sibling of that **EMPLOYEE** as a consequence of Subparagraph a. above.

   This Exclusion applies whether the **INSURED** may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This Exclusion does not apply to liability assumed by the **INSURED** under an **INSURED CONTRACT**.

9. <u>Expected or Intended Injury</u>:

   **BODILY INJURY** or **PROPERTY DAMAGE** expected or intended from the standpoint of the **INSURED**.

   This Exclusion does not apply to **BODILY INJURY** or **PROPERTY DAMAGE** resulting from the use of reasonable force to protect persons or tangible property.

10. <u>Liquor Liability</u>:

    **BODILY INJURY** or **PROPERTY DAMAGE** for which any **INSURED** may be held liable by reason of:

    a. Causing or contributing to the intoxication of any person;

    b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    c. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

    This Exclusion applies only if **YOU** are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

11. <u>Mobile Equipment</u>:

    Any **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

    a. The transportation of **MOBILE EQUIPMENT** by an **AUTO** owned or operated by or rented or loaned to any **INSURED**; or

    b. The use of **MOBILE EQUIPMENT** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunt activity.

12. <u>Personal and Advertising Injury</u>:

    **BODILY INJURY** arising out of **PERSONAL AND ADVERTISING INJURY**.

13. <u>Pollution</u>:

    a. **BODILY INJURY** or **PROPERTY DAMAGE** arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**:

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00027

(1) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any **INSURED**. However, this Subparagraph (1) does not apply to:

    (a) **BODILY INJURY** if sustained within a building and caused by smoke, fumes, vapor, or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (b) **BODILY INJURY** or **PROPERTY DAMAGE** for which **YOU** may be held liable, if **YOU** are a contractor and the owner or lessee of such premises, site, or location has been added to **YOUR** policy as an Additional Insured with respect to **YOUR** ongoing operations performed for that Additional Insured at that premises, site, or location; and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any **INSURED**, other than that Additional Insured;

    (c) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke, or fumes from a **HOSTILE FIRE**; or

    (d) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of an **ELIGIBLE POLLUTION INCIDENT**;

(2) At or from any premises, site, or location which is or was at any time used by or for any **INSURED** or others for the handling, storage, disposal, processing, or treatment of **WASTE**;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as **WASTE** by or for:

    (a) Any **INSURED**; or

    (b) Any person or organization for whom **YOU** may be legally responsible;

(4) At or from any premises, site, or location on which any **INSURED** or any contractors or subcontractors working directly or indirectly on any **INSURED'S** behalf are performing operations if the **POLLUTANTS** are brought on or to the premises, site, or location in connection with such operations by such **INSURED**, contractor, or subcontractor. However, this Subparagraph (4) does not apply to:

    (a) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of **MOBILE EQUIPMENT** or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them.

    This exception, does not apply if the **BODILY INJURY** or **PROPERTY DAMAGE** arises out of the intentional discharge, dispersal, or release of the fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such **INSURED**, contractor, or subcontractor;

    (b) **BODILY INJURY** or **PROPERTY DAMAGE** sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by **YOU** or on **YOUR** behalf by a contractor or subcontractor;

    (c) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke, or fumes from a **HOSTILE FIRE**; or

    (d) **BODILY INJURY** or **PROPERTY DAMAGE** arising out of an **ELIGIBLE POLLUTION INCIDENT**;

(5) At or from any premises, site, or location on which any **INSURED** or any contractors or subcontractors working directly or indirectly on any **INSURED**'s behalf are performing operations if the operations are to identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE**, or in any way respond to or assess the effects of **POLLUTANTS**; or

(6) At or from any **UNDERGROUND STORAGE TANK**.

**b.** Any loss, cost, or expense arising out of any:

(1) Request, demand, order, or statutory or regulatory requirement that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE**, or in any way respond to or assess the effects of **POLLUTANTS**; or

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00028

(2) CLAIM, SUIT, or proceeding by or on behalf of a governmental authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of POLLUTANTS.

However, this Subparagraph b. does not apply to liability for damages because of PROPERTY DAMAGE that the INSURED would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such CLAIM or SUIT by or on behalf of a governmental authority.

Exclusions in Paragraphs 1., 3. through 6., 8., 10., 11., and 13. above do not apply to damage by fire to premises while rented to YOU or temporarily occupied by YOU with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section V. Limits Of Insurance as shown on the Declarations Page.

C. **Pollution Clean Up Costs Exclusions**

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II. B. Pollution Clean Up Costs;

This policy does not apply to:

1. <u>Aircraft, Auto, or Watercraft</u>:

   POLLUTION CLEAN UP COSTS arising out of the ownership, maintenance, use, or entrustment to others of any Aircraft, AUTO, or Watercraft owned or operated by, rented by, chartered by, or loaned to any INSURED.  As respects this Exclusion, use includes operation and LOADING OR UNLOADING.

2. <u>Expected or Intended Injury</u>:

   POLLUTION CLEAN UP COSTS expected or intended from the standpoint of the INSURED.

3. <u>Failure to Comply with Laws</u>:

   POLLUTION CLEAN UP COSTS arising out of or resulting from any failure to comply with any law, statute, regulation, ordinance, governmental directive, or order; provided that such failure is a willful or deliberate act or omission by or on behalf of the INSURED.

4. <u>Waste</u>:

   POLLUTION CLEAN UP COSTS arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of POLLUTANTS which are or were at any time transported, handled, stored, treated, disposed of, or processed as WASTE.

5. <u>Waste Site, Abandoned Premises, or Underground Storage Tanks</u>:

   POLLUTION CLEAN UP COSTS arising out of or in any way related to any actual, alleged, or threatened POLLUTION INCIDENT at, from, or related to any:

   a. WASTE SITE;

   b. Premises, site, or location any INSURED has sold, given away, or abandoned; or

   c. UNDERGROUND STORAGE TANKS.

D. **Personal and Advertising Injury Liability Exclusions**

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II.C. Personal and Advertising Injury Liability;

This policy does not apply to:

1. <u>Breach of Contract</u>:

   PERSONAL AND ADVERTISING INJURY arising out of a Breach of Contract, except an implied contract to use another's advertising idea in YOUR ADVERTISEMENT.

2. <u>Contractual Liability</u>:

   PERSONAL AND ADVERTISING INJURY for which the INSURED has assumed liability in a contract or agreement.  This Exclusion does not apply to liability for damages that the INSURED would have in the absence of the contract or agreement.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00029

3. **Criminal Acts:**

   PERSONAL AND ADVERTISING INJURY arising out of any Criminal Act or fraudulent conduct committed by, with the consent or knowledge of, or at the direction of the INSURED.

4. **Electronic Chatrooms or Bulletin Boards:**

   PERSONAL AND ADVERTISING INJURY arising out of an Electronic Chatroom or Bulletin Board the INSURED hosts, owns, or over which the INSURED exercises control.

5. **Infringement of Copyright, Patent, Trademark, or Trade Secret:**

   PERSONAL AND ADVERTISING INJURY arising out of the Infringement of Copyright, Patent, Trademark, Trade Secret, or other intellectual property rights. Under this Exclusion, such other intellectual property rights do not include the use of another's advertising idea in YOUR ADVERTISEMENT.

   However, this Exclusion does not apply to infringement, in YOUR ADVERTISEMENT, of copyright, trade dress, or slogan.

6. **Insureds In Media and Internet Type Businesses:**

   a. PERSONAL AND ADVERTISING INJURY committed by an INSURED whose business is:

      (1) Advertising, broadcasting, webcasting, publishing, or telecasting;

      (2) Designing or determining content of websites for others; or

      (3) An Internet search, access, content, or service provider.

   b. PERSONAL AND ADVERTISING INJURY arising out of:

      (1) Controlling, creating, designing, or developing of another's Internet site;

      (2) Controlling, creating, designing, developing, determining, or providing the content or material of another's Internet site;

      (3) Controlling, facilitating, or providing, or failing to control, facilitate, or provide, access to the Internet, or another's Internet site; or

      (4) Publication of content or material on or from the Internet, other than material developed by YOU or at YOUR location.

   However, this Exclusion does not apply to Paragraphs a., b., and c. of the definition of PERSONAL AND ADVERTISING INJURY. For the purposes of this Exclusion, the placing of frames, borders, links, or advertising, for YOU or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing, or telecasting.

7. **Knowing Violation of Rights of Another:**

   PERSONAL AND ADVERTISING INJURY caused by or at the direction of the INSURED with the knowledge that the act would violate the rights of another and would inflict PERSONAL AND ADVERTISING INJURY.

8. **Material Published with Knowledge of Falsity:**

   PERSONAL AND ADVERTISING INJURY arising out of oral or written publication, in any manner, of material, if done by or at the direction of the INSURED with knowledge of its falsity.

9. **Material Published Prior to Policy Period:**

   PERSONAL AND ADVERTISING INJURY arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

10. **Pollution:**

    PERSONAL AND ADVERTISING INJURY arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of POLLUTANTS at any time.

11. **Pollution-Related:**

    Any loss, cost, or expense arising out of any:

MBI00030

Section VII. Exclusions

a.  Request, demand, order, or statutory or regulatory requirement that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, neutralize, **MITIGATE**, or in any way respond to or assess the effects of **POLLUTANTS**; or

b.  **CLAIM**, **SUIT**, or proceeding by or on behalf of a governmental authority for damages because of identifying, abating, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, neutralizing, mitigating, or in any way responding to or assessing the effects of **POLLUTANTS**.

12. **Quality or Performance of Goods – Failure to Conform to Statements:**

**PERSONAL AND ADVERTISING INJURY** arising out of the failure of goods, products, or services to conform to any statement of quality or performance made in **YOUR ADVERTISEMENT**.

13. **Unauthorized Use of Another's Name or Product:**

**PERSONAL AND ADVERTISING INJURY** arising out of the Unauthorized Use of Another's Name or Product in **YOUR** e-mail address, domain name, **METATAG**, or any other similar tactics to mislead another's potential customers.

14. **Wrong Description of Prices:**

**PERSONAL AND ADVERTISING INJURY** arising out of the wrong description of the price of goods, products, or services stated in **YOUR ADVERTISEMENT**.

15. **Disclosure of or Access to Confidential or Personal Information:**

**PERSONAL AND ADVERTISING INJURY** arising out of any disclosure of or access to any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information.

This Exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by **YOU** or others arising out of any disclosure of or access to any person's or organization's confidential or personal information.

E.  **Medical Payments Exclusions**

The following Exclusions apply to Section II.D. Medical Payments;

**WE** will not pay medical expenses for **BODILY INJURY**:

1.  **Any Insured:**

To any **INSURED**, except **VOLUNTEER WORKERS**.

2.  **Athletic Activities:**

To a person injured while practicing, instructing, or participating in any physical exercises, games, sports, or athletic contests.

3.  **Bodily Injury and Property Damage Coverage Exclusions:**

Excluded under Section II. A. Bodily Injury and Property Damage Liability.

4.  **Hired Person:**

To a person hired to do work for or on behalf of any **INSURED** or a tenant of any **INSURED**.

5.  **Injury on Normally Occupied Premises:**

To a person injured on that part of premises **YOU** own or rent that the person normally occupies.

6.  **Products-Completed Operations Hazard:**

Included within the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

7.  **Workers' Compensation or Similar Laws:**

To a person, whether or not an **EMPLOYEE** of any **INSURED**, if benefits for the **BODILY INJURY** are payable or must be provided under a Workers' Compensation or disability benefits law or a similar law.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00031

## VIII.   GENERAL CONDITIONS

### A.   Bankruptcy

Bankruptcy or insolvency of the **INSURED** or of the **INSURED**'s estate will not relieve **US** of **OUR** obligations under this policy.

### B.   Cancellation

1. The first **NAMED INSURED** shown on the Declarations Page may cancel this policy by mailing or delivering to **US** advance written notice of Cancellation.

2. **WE** may cancel this policy by mailing or delivering to the first **NAMED INSURED** written notice of Cancellation at least:

   a. 10 days before the effective date of Cancellation if **WE** cancel for nonpayment of premium; or

   b. 60 days before the effective date of Cancellation if **WE** cancel for any other reason.

3. **WE** will mail or deliver **OUR** notice to the first **NAMED INSURED**'s last mailing address known to **US**.

4. Notice of Cancellation will state the effective date of Cancellation.  The policy period will end on that date.

5. If this policy is cancelled, **WE** will send the first **NAMED INSURED** any premium refund due.  If **WE** cancel, the refund will be pro rata.  If the first **NAMED INSURED** cancels, the refund may be less than pro rata.  The Cancellation will be effective even if **WE** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### C.   Changes

This policy contains all the agreements between **YOU** and **US** concerning the insurance afforded.  The first **NAMED INSURED** shown on the Declarations Page is authorized to make Changes in the terms of this policy with **OUR** consent.  This policy's terms can be amended or waived only by endorsement issued by **US** and made a part of this policy.

### D.   Duties in the Event of Occurrence, Offense, Claim, or Suit

1. **YOU** must see to it that **BERKLEY OIL & GAS** is notified as soon as practicable of any **OCCURRENCE** or any offense which may result in a **CLAIM**.  To the extent possible, notice should include:

   a. How, when, and where the **OCCURRENCE** or offense took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the **OCCURRENCE** or offense.

2. If a **CLAIM** is made or **SUIT** is brought against any **INSURED**, **YOU** must:

   a. Immediately record the specifics of the **CLAIM** or **SUIT** and the date received; and

   b. Notify **US** and see to it that **BERKLEY OIL & GAS** receives written notice of the **CLAIM** or **SUIT** as soon as practicable.

3. **YOU** and any other involved **INSURED** must:

   a. Immediately send **BERKLEY OIL & GAS** copies of any demands, notices, summonses, or legal papers received in connection with the **CLAIM** or **SUIT**;

   b. Authorize **BERKLEY OIL & GAS** to obtain records and other information;

   c. Cooperate with **BERKLEY OIL & GAS** in the investigation or settlement of the **CLAIM** or defense against the **SUIT**; and

   d. Assist **BERKLEY OIL & GAS** upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of injury or damage to which this policy may also apply.

4. No **INSURED** will, except at that **INSURED**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent of **BERKLEY OIL & GAS**.

5. If a **CONTROL OF WELL INCIDENT** occurs, **YOU** agree, at **YOUR** own cost or expense, subject to Section VI. Supplementary Payments, A.3. Control of Well Expenses, to promptly and diligently take any steps legally required or necessary to engage in **CONTROL OF WELL ACTIVITIES** to remedy the problem.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00032

In the event of a **CLAIM**, call 1.877.515.CLMS (1.877.515.2567).

E. **Duties in the Event of a Pollution Incident**

   1.  **YOU** must take reasonable steps to **MITIGATE** the damage because of the **POLLUTANTS** and commence the clean up of **POLLUTANTS**. Any cost, expense, or payment incurred for the clean up of **POLLUTANTS** must be reasonable and necessary.

   2.  **YOU** must notify **BERKLEY OIL & GAS** no later than 90 days (or 120 days if **YOU** are a **NON-OPERATING WORKING INTEREST** owner) from the date when any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** first gained knowledge of the **POLLUTION INCIDENT**. The notice should include:

      a.  The date and time the **POLLUTION INCIDENT** commenced;

      b.  The date and time the **POLLUTION INCIDENT** was first discovered by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** and the identification of the person who first discovered the **POLLUTION INCIDENT**;

      c.  Where the **POLLUTION INCIDENT** took place;

      d.  The identification and quantity of the **POLLUTANTS** involved in the **POLLUTION INCIDENT**; and

      e.  The nature and location of any injury or damage arising out of the **POLLUTION INCIDENT**.

   3.  If a **CLAIM** is made or **SUIT** is brought against any **INSURED** arising out of a **POLLUTION INCIDENT**, **YOU** must:

      a.  Immediately record the specifics of the **CLAIM** or **SUIT** and the date received; and

      b.  Notify **US** and see to it that **BERKLEY OIL & GAS** receives written notice of the **CLAIM** or **SUIT** as soon as practicable.

   4.  **YOU** and any other involved **INSURED** must:

      a.  Immediately send **BERKLEY OIL & GAS** copies of any demands, notices, summonses, or legal papers received in connection with the **CLAIM** or **SUIT**;

      b.  Authorize **BERKLEY OIL & GAS** to obtain records and other information;

      c.  Cooperate with **BERKLEY OIL & GAS** in the investigation or settlement of the **CLAIM** or defense against the **SUIT**; and

      d.  Assist **BERKLEY OIL & GAS** upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of **POLLUTION CLEAN UP COSTS**, injury or damage to which this policy may also apply.

In the event of a **POLLUTION INCIDENT**, call 1.877.515.CLMS (1.877.515.2567).

F. **Examination of Your Books and Records**

   **WE** may examine and audit **YOUR** books and records as they relate to this policy at any time during the policy period and up to three years afterward.

G. **Independent Counsel**

   In the event **YOU** are entitled by law to select Independent Counsel to defend **YOU** at **OUR** expense, the attorney fees and all other litigation expenses **WE** must pay to that counsel are limited to the rates **WE** actually pay to counsel **WE** retain in the ordinary course of **OUR** business in the defense of **CLAIMS** or **SUITS** in the community where the **CLAIM** or **SUIT** is being defended. Additionally, **WE** may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending **CLAIMS** or **SUITS** similar to the one against **YOU**, and to require such counsel to have malpractice insurance coverage. As respects any such counsel, **YOU** agree that **YOU** and that counsel will respond timely to **OUR** request for information regarding the **CLAIM** or **SUIT** to the extent allowable by law. Furthermore, the **INSURED** may at any time, by its signed consent, freely and fully waive its right to select Independent Counsel.

H. **Inspections and Surveys**

   1.  **WE** have the right to:

      a.  Make Inspections and Surveys at any time;

      b.  Give **YOU** reports on the conditions **WE** find; and

MBI00033

   c.   Recommend changes.

2. WE are not obligated to make any inspections, surveys, reports, or recommendations, and any such actions WE do undertake relate only to insurability and the premiums to be charged. WE do not make safety inspections. WE do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. In addition, WE do not warrant that conditions:

   a.   Are safe or healthful; or

   b.   Comply with laws, regulations, codes, or standards.

3. Paragraphs 1. and 2. of this condition apply not only to US, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports, or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports, or recommendations WE may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels, or elevators.

**I.   Legal Action Against Us**

No person or organization has a right under this policy:

1. To join US as a party or otherwise bring US into a SUIT asking for damages or POLLUTION CLEAN UP COSTS from an INSURED; or

2. To sue US on this policy unless all of its terms have been fully complied with.

A person or organization may sue US to recover on an AGREED SETTLEMENT or on a final judgment against an INSURED; but WE will not be liable for damages or POLLUTION CLEAN UP COSTS that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.

**J.   Nonrenewal**

If WE decide not to renew this policy, WE will mail or deliver to the first NAMED INSURED shown on the Declarations Page written notice of the Nonrenewal not less than 60 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

**K.   Other Insurance**

If other valid and collectible insurance is available to the INSURED for a loss WE cover under Section II.A. Bodily Injury and Property Damage Liability, Section II.B. Pollution Clean Up Costs, or Section II.C. Personal and Advertising Injury Liability of this policy, OUR obligations are limited as follows:

1. **Primary Insurance:**

   This policy is primary except when Paragraph 2. Excess Insurance below applies. If this policy is primary, OUR obligations are not affected unless any of the Other Insurance is also primary. Then, WE will share with all other policies by the method described in Paragraph 3. Method of Sharing below.

2. **Excess Insurance:**

   a.   This policy is excess over:

      (1)  **Any Other Insurance**:

         Any of the Other Insurance, whether primary, excess, contingent, or on any other basis:

         (a)  **Your Work**:

            That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for YOUR WORK;

         (b)  **Fire**:

            That is Fire insurance for premises rented to YOU or temporarily occupied by YOU with permission of the owner;

         (c)  **Tenant**:

            That is insurance purchased by YOU to cover YOUR liability as a Tenant for PROPERTY DAMAGE to premises rented to YOU or temporarily occupied by YOU with permission of the owner;

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00034

**(d)  Aircraft, Auto, or Watercraft:**

If the loss arises out of the ownership, maintenance, or use of any Aircraft, **AUTO**, or Watercraft to the extent not subject to Section VII.B.1. and Section VII.C.1. Aircraft, Auto, or Watercraft Exclusions;

**(e)  Non-operating Working Interest:**

That is available to any person or organization owning a **NON-OPERATING WORKING INTEREST**. However, this policy will be primary and **NON-CONTRIBUTORY** if **YOU** and the **NON-OPERATING WORKING INTEREST** owner have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will be primary and **NON-CONTRIBUTORY**, or if **YOU** and the **NON-OPERATING WORKING INTEREST** owner have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will provide insurance coverage for the benefit of the person or organization owning a **NON-OPERATING WORKING INTEREST**;

**(f)  Operators Extra Expense/Control of Well:**

That is Operators Extra Expense, Control of Well, or similar insurance;

**(g)  Pollution:**

That is Pollution liability insurance or any Other Insurance to cover a **POLLUTION INCIDENT**;

**(h)  Additional Insured:**

That is available to any person or organization that is an Additional Insured.  However, with respect to the person or organization made an Additional Insured for liability arising out of **YOUR** operations, or liability arising out of premises owned by or rented to **YOU**, this policy will be primary and **NON-CONTRIBUTORY** if **YOU** and the Additional Insured have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will be primary and **NON-CONTRIBUTORY**.

**(2)  Any Other Primary Insurance:**

**(a)**  Any Other Primary Insurance available to **YOU** covering liability for damages or **POLLUTION CLEAN UP COSTS** arising out of the premises or operations, or the products and completed operations, for which **YOU** have been added as an Additional Insured; or

**(b)**  Any Other Primary Insurance available to **YOU** covering liability for damages or **POLLUTION CLEAN UP COSTS** arising out of **YOUR NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property, for which **YOU** and the **OPERATOR** have agreed prior to loss, in a written contract or written agreement (including, but not limited to, a Joint Operating Agreement) in effect during the policy period, that the **OPERATOR's** policy will be primary and **NON-CONTRIBUTORY**, or that **YOU** and the **OPERATOR** have agreed prior to loss, in a written contract or written agreement (including, but not limited to, a Joint Operating Agreement) in effect during the policy period, that the **OPERATOR's** policy will provide insurance coverage for the benefit of **YOU** as the person or organization owning a **NON-OPERATING WORKING INTEREST**.

**b.**  When this insurance is excess, **WE** will have no duty under Section II.E. Duty to Defend to defend the **INSURED** against any **SUIT** if any other insurer has a Duty to Defend the **INSURED** against that **SUIT**.  If no other insurer defends, **WE** will undertake to do so, but **WE** will be entitled to the **INSURED's** rights against all those other insurers.

**c.**  When this policy is excess over Other Insurance, **WE** will pay only **OUR** share of the amount of the loss, if any, that exceeds the sum of:

**(1)**  The total amount that all such Other Insurance would pay for the loss in the absence of this policy; and

**(2)**  The total of all deductible and self-insured amounts under all that Other Insurance.

**d.**  **WE** will share the remaining loss, if any, with any Other Insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits Of Insurance shown on the Declarations Page of this policy.

**3.  Method of Sharing:**

If all of the Other Insurance permits contribution by equal shares, **WE** will follow this method also.  Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.  If any of the Other Insurance does not permit contribution by equal shares, **WE** will contribute by

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00035

limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## L. Premiums

The first **NAMED INSURED** shown on the Declarations Page:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums **WE** pay.

## M. Premium Audit

**1.** **WE** will compute all premiums for this policy in accordance with **OUR** rules and rates.

**2.** Premium shown in this policy as estimated premium is a deposit premium only. At the close of each audit period, **WE** will compute the earned premium for that period and send notice to the first **NAMED INSURED**. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the deposit and audit premiums paid for the policy period is greater than the earned premium, **WE** will return the excess to the first **NAMED INSURED**.

**3.** The first **NAMED INSURED** must keep records of the information **WE** need for premium computation, and send **US** copies at such times as **WE** may request.

## N. Representations

By accepting this policy, **YOU** agree that:

**1.** The statements on the Declarations Page are accurate and complete;

**2.** Those statements are based upon representations **YOU** made to **US**;

**3.** **WE** have issued this policy in reliance upon **YOUR** representations; and

**4.** **YOUR** failure to disclose all hazards or prior **OCCURRENCES**, **POLLUTION INCIDENTS**, or offenses existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards, prior **OCCURRENCES**, **POLLUTION INCIDENTS**, or offenses is not intentional or willful.

## O. Separation of Insureds

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this policy to the first **NAMED INSURED**, this policy applies:

**1.** As if each **NAMED INSURED** were the only **NAMED INSURED**; and

**2.** Separately to each **INSURED** against whom **CLAIM** is made or **SUIT** is brought.

## P. Transfer of Rights of Recovery Against Others to Us and Waiver of Subrogation

If the **INSURED** has rights to recover all or part of any payment **WE** have made under this policy, those rights are transferred to **US**. The **INSURED** must do nothing, after the **OCCURRENCE**, **POLLUTION INCIDENT**, or offense, to impair them. At **OUR** request, the **INSURED** will bring **SUIT** or transfer those rights to **US** and help **US** enforce them.

However, **WE** agree to waive **OUR** right of recovery against any person or organization with whom **YOU** have agreed, by written contract or written agreement in effect during the policy period and executed before the **OCCURRENCE**, **POLLUTION INCIDENT**, or offense, to waive those rights of recovery.

## Q. Use of Titles

The titles to the various sections, subsections, paragraphs, subparagraphs, and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand, or otherwise affect the provisions of such sections, subsections, paragraphs, subparagraphs, and endorsements.

MBI00036

## IX.  DEFINITIONS

**ACID RAIN** means rain containing high concentrations of acids, including, but not limited to, sulfur dioxide and nitrogen oxides.

**ADVERTISEMENT** means a notice that is broadcast or published to the general public or specific market segments about **YOUR** goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this Definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding websites, only that part of a website that is about **YOUR** goods, products, or services for the purposes of attracting customers or supporters is considered an **ADVERTISEMENT**.

**AGENT** means a person or persons authorized by **YOU** to act on **YOUR** behalf in relation to **YOUR** oil, gas, or other mineral properties.

**AGREED SETTLEMENT** means a settlement and release of liability signed by **US**, the **INSURED**, and the claimant or the claimant's **LEGAL REPRESENTATIVE**.

**ASBESTOS** means **ASBESTOS** in any form, including, but not limited to, asbestos-containing products, asbestos fibers, and asbestos dust, and including its presence or use in any alloy, by-product, or other material or **WASTE**.

**AUTO** means:

    **a.** A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, **AUTO** does not include **MOBILE EQUIPMENT**.

**BERKLEY OIL & GAS** means the entity that performs underwriting and claims services for this policy.

**BODILY INJURY** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. **BODILY INJURY** includes mental anguish or other mental injury to that person sustaining physical injury.

**CAPITAL EXPENDITURE** means either money voluntarily spent or a charge voluntarily incurred for additions, improvements, repairs, or betterments to equipment or real property. **CAPITAL EXPENDITURE** includes, but is not limited to, money spent or a charge incurred for the purpose of complying with any order or request of any regulatory agency that is intended, in whole or in part, to prevent or **MITIGATE** future **POLLUTION INCIDENTS**.

**CLAIM** means a request or demand received by **YOU** for monetary damages or **POLLUTION CLEAN UP COSTS**.

**CONTROL OF WELL ACTIVITIES** means:

    **a.** Controlling or bringing under control;

    **b.** Drilling of any relief, replacement, or substitute well or hole for; or

    **c.** Extinguishing a fire in, at, or from;

any oil, gas, mineral, geothermal, or water well(s) and/or hole where a **CONTROL OF WELL INCIDENT** has taken place.

**CONTROL OF WELL EXPENSES** means costs or expenses of controlling or bringing under control any oil, gas, mineral, geothermal, or water well(s) and/or hole, up to and including, without limitation:

    **a.** Expenses incurred in extinguishing fire in or from such well(s); and

    **b.** Costs and expenses incurred in drilling relief oil, gas, mineral, geothermal, or water well(s);

and/or hole(s) whether or not such relief well(s) or hole(s) is successful.

**CONTROL OF WELL INCIDENT** means an unintended flow of drilling fluid, oil, gas, or water from any oil, gas, mineral, geothermal, or water well(s) and/or hole, that cannot be controlled by a blowout preventer, storm chokes, other equipment, or control measures.

**ELECTRONIC DATA** means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media which are used with electronically controlled equipment.

**ELIGIBLE POLLUTION INCIDENT** means any **POLLUTION INCIDENT** that meets the following requirements:

    **a.** The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;

    **b.** The **POLLUTION INCIDENT** is abrupt and instantaneous and can be identified as having first commenced on a specific date during the policy period;

    **c.** **YOU** must take reasonable action to end the **POLLUTION INCIDENT** as soon as possible;

    **d.** The **POLLUTION INCIDENT** was known by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and

    **e.** The **POLLUTION INCIDENT** must meet the following reporting requirements:

        **(1)** The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS** no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**; or

        **(2)** If **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS** no later than 120 days from

*Includes copyrighted material of Insurance Services Office, Inc.,
with its permission*
© Berkley Oil & Gas, 2014

MBI00037

the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

**EMPLOYEE** includes a **LEASED WORKER**. **EMPLOYEE** does not include a **TEMPORARY WORKER**.

**EXECUTIVE OFFICER** means a person holding any of the officer positions created by **YOUR** charter, constitution, by-laws, or any other similar governing document.

**FUNGI** means any type or form of fungus, including mold or mildew or any mycotoxins, spores, scents, or byproducts produced or released by **FUNGI**.

**GOVERNMENT IDENTIFIED CONTAMINATED SITE** means any premises, site, or location that has been placed on, proposed for placement, or otherwise identified with the National Priorities List of the Comprehensive Environmental Response, Compensation, and Liability Act; Superfund Amendments and Reauthorization Act, or any other similar state or national governmental authority's legislation creating a priority list for the clean up of **POLLUTANTS**.

**HOSTILE FIRE** means one which becomes uncontrollable or breaks out from where it was intended to be.

**IMPAIRED PROPERTY** means tangible property, other than **YOUR PRODUCT** or **YOUR WORK**, that cannot be used or is less useful because:

    **a.** It incorporates **YOUR PRODUCT** or **YOUR WORK**, that is known or thought to be defective, deficient, inadequate, or dangerous; or

    **b.** **YOU** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment, or removal of **YOUR PRODUCT** or **YOUR WORK**, or **YOUR** fulfilling the terms of the contract or agreement.

**INDEMNITEE** means a person or organization that **YOU** have agreed under a written contract or written agreement to indemnify or hold harmless.

**INSURED** means a person or organization qualifying as an **INSURED** in Section I. Named Insureds And Insureds.

**INSURED CONTRACT** means:

    **a.** That part of any written contract or written agreement pertaining to **YOUR** business under which **YOU** assume the liability of another party to pay for **BODILY INJURY** or **PROPERTY DAMAGE** to a third person or organization. Paragraph a. does not include that part of any contract or agreement:

        **(1)** That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

            **(a)** Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

            **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

        **(2)** Under which the **INSURED**, if an architect, engineer, or surveyor, assumes liability for an injury or damage arising out of the **INSURED**'s rendering or failure to render **PROFESSIONAL SERVICES**, including those listed in (1)(b) above and supervisory, inspection, architectural, or engineering activities.

    **b.** That part of any written contract or written agreement, such as a Joint Operating Agreement, which requires the **INSURED** to share in the payment of expenses resulting from legal liability for **BODILY INJURY** or **PROPERTY DAMAGE** to a third person or organization because of an **OCCURRENCE** during this policy period based upon the **INSURED**'s obligation to pay a percentage of expenses. However, the obligation to pay expenses will be limited to the **INSURED**'s ownership interest.

    **c.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **YOU** or temporarily occupied by **YOU** with permission of the owner is not an **INSURED CONTRACT**;

    **d.** A sidetrack agreement;

    **e.** An easement or license agreement;

    **f.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

    **g.** An elevator maintenance agreement.

**LEAD** means **LEAD** in any form, including, but not limited to, lead-containing products, and lead dust, and including its presence or use in any product, alloy, by-product, or other material or **WASTE**.

**LEASED WORKER** means a person leased to **YOU** by a labor leasing firm under a written agreement between **YOU** and the labor leasing firm, to perform duties related to the conduct of **YOUR** business. **LEASED WORKER** does not include a **TEMPORARY WORKER**.

**LEGAL REPRESENTATIVE** means any person, executor, or trustee appointed by **YOU**, or by operation of law or a court, to act on **YOUR** behalf after **YOUR** death.

**LOADING OR UNLOADING** means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an Aircraft, **AUTO**, or Watercraft;

    **b.** While it is in or on an Aircraft, **AUTO**, or Watercraft; or

    **c.** While it is being moved from an Aircraft, **AUTO**, or Watercraft to the place where it is finally delivered;

but **LOADING OR UNLOADING** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the Aircraft, **AUTO**, or Watercraft.

**MANAGERS** means the individual or individuals designated in **YOUR** governing documents to act as **MANAGER**.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00038

**MEMBERS** means persons or entities designated in **YOUR** governing documents as **MEMBERS** or other such terminology that establishes ownership.

**METATAG** means hidden or embedded text or code that is not seen by persons viewing the website, but that operates to attract search engines to that site.

**MITIGATE** means take the actions necessary to avoid additional damages, loss, cost, or expense.

**MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:
  a.  Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;
  b.  Vehicles maintained for use solely on or next to premises **YOU** own or rent;
  c.  Vehicles that travel on crawler treads;
  d.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
      (1)  Power cranes, shovels, loaders, diggers, or drills; or
      (2)  Road construction or resurfacing equipment such as graders, scrapers, or rollers;
  e.  Vehicles not described in Paragraph a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
      (1)  Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or
      (2)  Cherry pickers and similar devices used to raise or lower workers;
  f.  Vehicles not described in Paragraph a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.   However, self-propelled vehicles with the following types of permanently attached equipment are not **MOBILE EQUIPMENT** but will be considered **AUTOS**:
      (1)  Equipment designed primarily for:
          (a)  Snow removal;
          (b)  Road maintenance, but not construction or resurfacing; or
          (c)  Street cleaning;
      (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
      (3)  Air compressors, pumps, and generators including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.

However, **MOBILE EQUIPMENT** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.   Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **AUTOS**.

**NAMED INSURED** means a person or organization qualifying as a **NAMED INSURED** in Section I.A. Named Insureds of this policy.

**NAMED STORM** means a storm system that has been declared a tropical storm or hurricane and assigned a name by the National Hurricane Center or the Central Pacific Hurricane Center of the National Weather Service (hereafter referred to as NHC and CPHC). For purposes of this policy, a **NAMED STORM** begins at the time a Watch or Warning is issued by the NHC or CPHC for the area in which the affected premises are located, and ends 72 hours after the termination of the last Watch or Warning issued for that area by the NHC or CPHC.

**NON-CONTRIBUTORY** means that other available insurance will apply as excess and will not contribute as primary to the insurance provided by this policy.

**NON-OPERATING WORKING INTEREST** means an interest in the ownership of and participation in the operating expenses of an oil, gas, or other mineral property, that is owned by a person or organization who is not designated as **OPERATOR** of that property and who is without operating rights of that property.

**NUCLEAR FACILITY** means any:
  a.  **NUCLEAR REACTOR;**
  b.  Equipment or device designed or used for separating the isotopes of plutonium or uranium; processing or utilizing **NUCLEAR SPENT FUEL;** or handling, processing or packaging **NUCLEAR WASTE;**
  c.  Equipment or device used for the processing, fabricating, or alloying of **NUCLEAR MATERIAL,** if at any time the total amount of such material in the custody of the **INSURED** at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233, or any combination thereof; or two hundred-fifty (250) grams of uranium 235; or
  d.  Structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **NUCLEAR WASTE;**
and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations.

**NUCLEAR HAZARDOUS PROPERTIES** means radioactive, toxic, or explosive properties.

**NUCLEAR MATERIAL** means by-product material, source material, special **NUCLEAR MATERIAL,** or naturally occurring **RADIOACTIVE MATERIAL,** including, but not limited to, that naturally occurring **RADIOACTIVE MATERIAL** referred to as NORM or the technically enhanced naturally occurring **RADIOACTIVE MATERIAL** referred to as TNORM.   By-product material, source material, or special **NUCLEAR MATERIAL** have the meaning given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

**NUCLEAR PROPERTY DAMAGE** includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Berkley Oil & Gas, 2014

MBI00039

**NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**NUCLEAR SPENT FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**.

**NUCLEAR WASTE** means any **WASTE** material containing **NUCLEAR MATERIAL,** other than tailings or **WASTES** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content; and resulting from the operation by any person or organization of any **NUCLEAR FACILITY** described in Paragraphs a. and b. of the definition of **NUCLEAR FACILITY.**

**OCCURRENCE** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**OIL OR GAS SITE** means any site, location, or premises at which **YOU** or any person or organization acting on **YOUR** behalf is conducting oil, gas, or other mineral exploration or production activities. **OIL OR GAS SITE** does not include any location used for office or administrative purposes or storage or maintenance of any vehicles or equipment.

**OIL OR GAS SITE CONTRACTOR** means any person or entity that has been contracted by **YOU** or on **YOUR** behalf to operate, maintain, test, or gauge any well, tank, or other equipment related to any of **YOUR** oil, gas, or other mineral properties.

**OILFIELD SERVICES CONTRACTOR** means any person or entity that is primarily engaged in performing oil and gas field services for others on a contract or fee basis.  Services included are: well surveying; running, cutting, and pulling casing tubes and rods; cementing wells; shooting wells; perforating well casings; acidizing and chemically treating wells; cleaning out, bailing, and swabbing wells; fishing for tools; servicing wells; well logging; and well testing. Oilfield service does not include the drilling of wells.

**OPERATOR** means any person or entity that is designated to manage, control, and operate oil, gas, or other mineral properties.

**OUR** means the company listed on the Declarations Page of this policy that insures **YOU.**

**PERSONAL AND ADVERTISING INJURY** means injury, including consequential **BODILY INJURY,** arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in **YOUR ADVERTISEMENT;** or
g. Infringing upon another's copyright, trade dress, or slogan in **YOUR ADVERTISEMENT.**

**POLLUTANTS** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and **WASTE.**

**POLLUTION CLEAN UP COSTS** means reasonable and necessary expenses incurred to:

a. Investigate an **ELIGIBLE POLLUTION INCIDENT;**
b. Abate, remove, dispose, treat, neutralize, or immobilize **POLLUTANTS;** or
c. Monitor for the effect of the **POLLUTANTS** related to an **ELIGIBLE POLLUTION INCIDENT** and subsequent to such event;

that are submitted to **US** within one year of completion of any particular work of cleaning up **POLLUTANTS** related to an **ELIGIBLE POLLUTION INCIDENT.**
Reasonable and necessary expenses shall not include:

a. Any additional loss, cost, or expense incurred for the processing, reclamation, recovery, separation, or salvage of oil or gas in order to sell, distribute, use, or store the oil or gas;
b. Any loss, cost, or expense for the removal of wreckage or debris of **YOUR** oil or gas platform, arising from a **NAMED STORM;** or
c. **YOUR CONTROL OF WELL EXPENSES.**

**POLLUTION INCIDENT** means the emission, discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS.**

**PRODUCING WELL** means an oil or gas well(s) and/or hole(s) that has been actively producing oil or gas as intended for use, sale, or distribution.  **PRODUCING WELL** does include an oil or gas well(s) and/or hole(s) that has been temporarily shut in.

**PRODUCTS-COMPLETED OPERATIONS HAZARD**

a. Includes all **BODILY INJURY** and **PROPERTY DAMAGE** occurring away from premises **YOU** own or rent and arising out of **YOUR PRODUCT** or **YOUR WORK** except:
   (1) Products that are still in **YOUR** physical possession; or
   (2) Work that has not yet been completed or abandoned. However, **YOUR WORK** will be deemed completed at the earliest of the following times:
       (a) When all of the work called for in **YOUR** contract has been completed;
       (b) When all of the work to be done at the job site has been completed if **YOUR** contract calls for work at more than one job site; or
       (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00040

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:
   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by **YOU**, and that condition was created by the **LOADING OR UNLOADING** of that vehicle by any **INSURED**;
   (2) The existence of tools, uninstalled equipment, or abandoned or unused materials; or
   (3) Products or operations for which the classification in **OUR** rules indicates that such products or completed operations are not subject to Products-Completed Operations Hazard Limit.

**PROFESSIONAL SERVICES** means technical or unique functions performed by persons or organizations whose occupation is the rendering of such services and for which such services are rendered pursuant to a license, certificate, or other credential issued by federal, state, or local governments. **PROFESSIONAL SERVICES**, include, but are not limited to: accounting; architecture; dentistry; engineering; funeral and embalming services; landscape architecture; land surveying; legal; medicine, including nursing and allied health professions; optometry; pharmacy; real estate; real estate appraising; preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or supervisory or inspection activities performed as part of any related architectural or engineering activities.

**PROPERTY DAMAGE** means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **OCCURRENCE** that caused it.
For the purposes of this policy, **ELECTRONIC DATA** is not tangible property.

**RADIOACTIVE MATERIAL** means any solid, liquid, or gaseous substance which emits radiation, including, but not limited to, naturally occurring **RADIOACTIVE MATERIAL** (NORM) or technically enhanced naturally occurring **RADIOACTIVE MATERIAL** (TNORM).

**SILICA** means silicon dioxide (occurring in crystalline, amorphous, and impure forms), silica particles, and silica dust, or silica compounds.

**SILICA-RELATED DUST** means a mixture or combination of **SILICA** and other dust or particles.

**SUIT** means a civil proceeding where **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND**

**ADVERTISING INJURY** to which this policy applies are alleged. **SUIT** includes:
   a. An arbitration proceeding in which damages or **POLLUTION CLEAN UP COSTS** are claimed and to which the **INSURED** must submit or does submit with **OUR** consent; or
   b. Any other alternative dispute resolution proceeding in which damages or **POLLUTION CLEAN UP COSTS** are claimed and to which the **INSURED** submits with **OUR** consent.

**TEMPORARY WORKER** means a person who is furnished to **YOU** to substitute for a permanent **EMPLOYEE** on leave or to meet seasonal or short-term workload conditions.

**UNDERGROUND OILFIELD EQUIPMENT** means any drill bit, tool, pump, production tubing, or other drilling or well servicing machinery, or equipment located beneath the surface of the earth in any well or hole or beneath the surface of any body of water. **UNDERGROUND OILFIELD EQUIPMENT** is not equipment that is above ground such as a monkey board.

**UNDERGROUND RESOURCES** means oil, gas, water, or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water.

**UNDERGROUND STORAGE TANK** means any tank, vessel, or storage facility, including associated piping and equipment connected to such tank, vessel, or storage facility, buried below the surface of the ground or water, or which at any time had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of the tank is below the surface of the ground or water.

**US** means the company listed on the Declarations Page of this policy that insures **YOU**.

**VOLUNTEER WORKER** means a person who is not **YOUR EMPLOYEE**, and who donates his or her work and acts at the direction of and within the scope of duties determined by **YOU**, and is not paid a fee, salary, or other compensation by **YOU** or anyone else for their work performed for **YOU**.

**WAR** means a declared **WAR**, undeclared **WAR**, or civil **WAR**; warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**WASTE** means discarded, unusable, or unwanted substances or materials and includes materials to be disposed of, recycled, reconditioned, or reclaimed. Fluids or substances at **YOUR OIL OR GAS SITE** including, but not limited to, drilling mud, saltwater, and produced fluids, injected or recovered from the **WELL BORE** at

MBI00041

**YOUR OIL OR GAS SITE**, will not be included in the meaning of **WASTE**.

**WASTE SITE** means a site or any part of a site which is or was used for handling, treatment, storage, disposal, or processing of **WASTE**. Saltwater injection wells or saltwater disposal wells at premises **YOU** own, lease, or rent shall not be included in the meaning of **WASTE SITE**.

**WE** means the company listed on the Declarations Page of this policy that insures **YOU**.

**WELL BORE** means any oil, gas, mineral, geothermal or water well, hole, or formation; strata; or area; along with any permanently attached casing, tubing, or piping in or through which exploration for or production of any substance is carried on.

**YOU** means the **NAMED INSURED(S)**.

**YOUR** means belonging to the **NAMED INSURED**.

**YOUR PRODUCT**
a. Means:
    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:
        (a) **YOU**;
        (b) Others trading under **YOUR** name; or
        (c) A person or organization whose business or assets **YOU** have acquired; and
    (2) Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.
b. Includes:
    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of **YOUR PRODUCT**; and
    (2) The providing of or failure to provide warnings or instructions.
c. Does not include vending machines or other property rented to or located for the use of others but not sold.

**YOUR WORK**
a. Means:
    (1) Work or operations performed by **YOU** or on **YOUR** behalf; and
    (2) Materials, parts, or equipment furnished in connection with such work or operations.
b. Includes:
    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of **YOUR WORK**; and
    (2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Berkley Oil & Gas, 2014

MBI00042

## X.     INDEX

Acid Rain..........................................................10, 25
Additional Insured ....................................3, 4, 16, 23
Agreed Settlement .................................................22, 25
Aircraft......................................................13, 17, 23, 26
Asbestos..........................................................10, 25
Athletic Activities ......................................................19
Auto............................................13, 15, 17, 23, 25, 26, 27
Breach of Contract ....................................................17
Cancellation..............................................................20
Capital Expenditures ...........................................11, 25
Care, Custody, or Control ....................................4, 14
Contractual Liability................................13, 14, 17
Control of Well Activities ....................................9, 20, 25
Control of Well Expenses.......................9, 10, 20, 25, 28
Control of Well Incident .........................9, 10, 20, 25
Coverage Territory........................................6, 7
Criminal Acts ............................................................18
Cross Liability............................................................24
Damage to Impaired Property.................................14
Damage to Property............................................4, 14
Damage to Your Product.........................................14
Damage to Your Work..............................................14
Definitions..................................................................25
Duties in the Event of a Pollution Incident.............21
Duties in the Event of Occurrence .........................20
Duty to Defend .....................................................5, 6, 23
Electronic Data................................................15, 25, 29
Eligible Pollution Incident ...................5, 6, 7, 16, 25, 28
Employee ........................................4, 5, 7, 15, 19, 26, 29
Employers' Liability ...................................................15
Employment-Related Practices................................11
Excess....................................................22, 23, 24, 27
Executive Officer ............................................4, 7, 26
Expected or Intended Injury .............................15, 17
Fines or Penalties .............................................9, 11
Fungi or Bacteria.....................................11, 12, 26
Government Identified Contaminated Site ...........12, 26
Hired Person .............................................................19
Hostile Fire ........................................................16, 26
Impaired Property...................................12, 14, 26
In Rem.........................................................................5
Indemnitee ..........................................................9, 26
Insured Contract..........................9, 13, 14, 15, 26
Lead...........................................................................10, 26
Leased Worker..........................................................26

Legal Representative ....................................4, 5, 25, 26
Limits of Insurance ....................6, 8, 13, 14, 17, 23, 24
Loading or Unloading ...............................13, 17, 26, 29
Medical Expenses.............................................6, 8, 19
Mobile Equipment .............................5, 13, 15, 16, 25, 27
Named Insured(s) ................3, 9, 20, 22, 24, 26, 27, 30
Named Storm ................................................8, 27, 28
Newly Acquired Organization.....................................3
Non-Contributory ..............................................23, 27
Non-operating Working Interest ..........3, 4, 6, 10, 21, 23, 25, 27
Nonrenewal................................................................22
Notice of Occurrence .........................................6, 20
Nuclear..............................................................12, 27, 28
Oil or Gas Site......................................5, 6, 21, 25, 28, 29
Oil or Gas Site Contractor ....................5, 21, 25, 28
Oilfield Services Contractor ...............................14, 28
Operator(s)..............................4, 5, 10, 13, 21, 23, 25, 27, 28
Other Insurance ...............................................5, 22, 23
Permissive User of Mobile Equipment ......................5
Premium Audit............................................................24
Primary Non-Contributory ........................................23
Producing Well ....................................................9, 28
Products-Completed Operations Hazard ...........8, 14, 19, 28, 29
Professional Services.........................................26, 29
Punitive Damages.....................................................11
Radioactive Material...........................................10, 27, 29
Real Estate Managers................................................5
Separation of Insureds..............................................24
Silica..................................................................10, 29
Supplementary Payments ...........................1, 6, 8, 9, 20
Temporary Worker ..............................................26, 29
Underground Oilfield Equipment.........................14, 29
Underground Resources......................................14, 29
Underground Storage Tanks...............................16, 17, 29
Unintended Errors .....................................................24
Volunteer Worker .................................................4, 5, 19, 29
Waiver of Subrogation...............................................24
War..................................................................13, 29
Waste.....................................12, 16, 17, 25, 26, 27, 28, 29, 30
Waste Site............................................................17, 30
Watercraft.............................................5, 13, 17, 23, 26
Well Bore..............................................................14, 29, 30
Your Product ...........................................12, 14, 26, 28, 30
Your Work.......................................5, 10, 12, 14, 22, 26, 28, 30

MBI00043

| Policy Number: | EGL001672010 | Transaction Number: | 001 |
| Effective Date: | 04/13/2016 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Employee Benefits Liability Coverage

## This endorsement provides claims-made coverage.

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

### SCHEDULE

| Coverage | Limit of Insurance: | | Each Employee Deductible: | Premium: |
|---|---|---|---|---|
| Employee Benefits Programs: | $ 1,000,000 | Each Employee | $ 1,000 | ■ |
| | $ 2,000,000 | Aggregate | | |
| Retroactive Date: | 04/13/2013 | | | |

**A.** For the purposes of the coverage provided by this endorsement, the following is added to Section II. Coverages and Duty To Defend:

**Employee Benefits Liability**

**WE** will pay those sums that the **NAMED INSURED** becomes legally obligated to pay as damages because of any act, error, or omission of the **INSURED**, or of any other person for whose acts the **INSURED** is legally liable, to which this policy applies.

**B.** For the purposes of the coverage provided by this endorsement, Section II. Coverages and Duty To Defend, Subsection E. Duty to Defend is replaced by the following:

**WE** will have the right and Duty to Defend the **INSURED**, including without limitation, to appoint counsel to represent the **INSURED** against any **CLAIM** or **SUIT** seeking damages as provided in this Employee Benefits Liability Coverage.  However, **WE** will have no Duty to Defend the **INSURED** against any **CLAIM** or **SUIT** to which this Employee Benefits Liability Coverage does not apply.

**WE** may, at **OUR** discretion, investigate any report of an act, error, or omission and settle any **CLAIM** or **SUIT** that may result. But:

**1.** The amount **WE** will pay for damages is limited as described in Paragraph E. of this endorsement; and

**2.** **OUR** right and Duty to Defend ends when **WE** have used up the applicable limit of insurance in the payment of judgments or settlements.

**Other than as provided pursuant to Paragraph F. of this endorsement, WE have no other obligation or liability to pay sums or perform any acts or services.**

**C.** For the purposes of the coverage provided by this endorsement, Section I. Named Insureds And Insureds is replaced by the following:

**1.   Named Insureds**

Each of the following is an **INSURED** if designated on the Declarations Page as a **NAMED INSURED**, or satisfies the provisions within this endorsement under Paragraph C. 1. Named Insureds, (f) Newly Acquired or Formed Organizations:

**a.   Individual:**

If **YOU** are an Individual – **YOU** and **YOUR** spouse are **INSUREDS**, but only with respect to the conduct of a business of which **YOU** are the sole owner.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00044

b.  **Partnership or Joint Venture**:

If **YOU** are a Partnership or Joint Venture – **YOU**, **YOUR MEMBERS**, **YOUR** partners, and their spouses are **INSUREDS**, but only with respect to the liability arising out of **YOUR** interest or the conduct of **YOUR** business.

c.  **Limited Liability Company**:

If **YOU** are a Limited Liability Company – **YOU** and **YOUR MEMBERS** are **INSUREDS**, but only with respect to the conduct of **YOUR** business.  **YOUR MANAGERS** are also **INSUREDS**, but only with respect to their duties as **YOUR MANAGERS**.

d.  **Other Organization**:

If **YOU** are an organization other than a Partnership, Joint Venture, or Limited Liability Company – **YOU** are an **INSURED**, but only with respect to the conduct of **YOUR** business.

e.  **Trust**:

If **YOU** are a Trust – **YOU** and **YOUR** trustees are **INSUREDS**, but only with respect to their duties as trustees to **YOU**.

f.  **Newly Acquired or Formed Organizations**:

Any Newly Acquired or Formed Organization (other than a Partnership or Joint Venture) over which **YOU** maintain ownership or majority interest will qualify as a **NAMED INSURED** if there is no other similar insurance available to that organization.  However:

(1)  Coverage under this provision is afforded only until the 120th day after **YOU** acquire or form the organization or the end of the policy period, whichever is earlier; and

(2)  Coverage under this provision does not apply to any act, error, or omission that was committed before **YOU** acquired or formed the organization.

**No person or organization is an INSURED with respect to the conduct of any current or past Partnership or Joint Venture, or Limited Liability Company that is not shown as a NAMED INSURED on the Declarations Page.**

2.  Insureds

Each of the following is also an **INSURED**:

a.  **Employees**:

Each of **YOUR EMPLOYEES** who is or was authorized to administer **YOUR EMPLOYEE BENEFIT PROGRAM**.

b.  **Executive Officers and Directors**:

**EXECUTIVE OFFICERS** and directors to the extent that **YOU** have **EXECUTIVE OFFICERS** and directors, but only with respect to their duties as **YOUR EXECUTIVE OFFICERS** or directors.

c.  **Legal Representative**:

**YOUR LEGAL REPRESENTATIVE** if **YOU** die, but only with respect to duties as **YOUR LEGAL REPRESENTATIVE**.  The **LEGAL REPRESENTATIVE** will have all **YOUR** rights and duties under this endorsement.

d.  **Stockholders**:

To the extent that **YOU** have Stockholders, they and their spouses, but only with respect to their liability as Stockholders.

e.  **Temporary Authorized Administrators**:

Any persons, organizations, or **EMPLOYEES** having proper temporary authorization to administer **YOUR EMPLOYEE BENEFIT PROGRAM** if **YOU** die, but only until **YOUR LEGAL REPRESENTATIVE** is appointed.

D.  For the purposes of the coverage provided by this endorsement, the following is added to Section III. When There Is Coverage:

1.  This endorsement applies to damages only if:

a.  The act, error, or omission is negligently committed in the **ADMINISTRATION** of **YOUR EMPLOYEE BENEFIT PROGRAM**;

b.  The act, error, or omission did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00045

      c.   A **CLAIM** for damages, because of an act, error, or omission is first made against any **INSURED**, in accordance with Paragraph D., Subparagraph 2. of this endorsement, during the policy period or an Extended Reporting Period **WE** provide under Paragraph I. of this endorsement.

   2.  A **CLAIM** seeking damages will be deemed to have been made at the earlier of the following times:

      a.   When notice of such **CLAIM** is received and recorded by any **INSURED** or by **US**, whichever comes first; or

      b.   When **WE** make settlement in accordance with Paragraph B. of this endorsement.

      A **CLAIM** received and recorded by the **INSURED** within 60 days after the end of the policy period will be considered to have been received within the policy period if no subsequent policy is available to cover the **CLAIM**.

   3.  All **CLAIMS** for damages made by an **EMPLOYEE** because of any act, error, omission, or a series of related acts, errors, or omissions, including damages claimed by such **EMPLOYEE**'s dependents and beneficiaries, will be deemed to have been made at the time the first of those **CLAIMS** is made against any **INSURED**.

E.   For the purposes of the coverage provided by this endorsement, Section V. Limits Of Insurance is replaced by the following:

   1.  **Limits Of Insurance**

      a.   The Limits Of Insurance shown in the Schedule and the rules below fix the most **WE** will pay regardless of the number of:

         (1)  **INSUREDS**;

         (2)  **CLAIMS** made or **SUITS** brought;

         (3)  Persons or organizations making **CLAIMS** or bringing **SUITS**;

         (4)  Acts, errors, or omissions; or

         (5)  Benefits included in **YOUR EMPLOYEE BENEFIT PROGRAM**.

      b.   The Aggregate Limit is the most **WE** will pay for all damages because of acts, errors, or omissions negligently committed in the **ADMINISTRATION** of **YOUR EMPLOYEE BENEFITS PROGRAM**.

      c.   Subject to the Aggregate Limit, the Each Employee Limit is the most **WE** will pay for all damages sustained by any one **EMPLOYEE**, including damages sustained by such **EMPLOYEE**'s dependents and beneficiaries, as a result of:

         (1)  An act, error, or omission; or

         (2)  A series of related acts, errors, or omissions;

      negligently committed in the **ADMINISTRATION** of **YOUR EMPLOYEE BENEFIT PROGRAM**.

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the **EMPLOYEE BENEFIT PROGRAM**.

      **The Limits Of Insurance of this endorsement apply to the policy period shown on the Declarations Page. If the existing policy to which this endorsement is attached, is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.**

   2.  **Deductible**

      a.   **OUR** obligation to pay damages on behalf of the **INSURED** applies only to the amount of damages in excess of the Deductible amount stated in the Schedule as applicable to Each Employee. The Limits Of Insurance shall not be reduced by the amount of this Deductible.

      b.   The Deductible amount stated in the Schedule applies to all damages sustained by any one **EMPLOYEE**, including such **EMPLOYEE**'s **DEPENDENTS** and beneficiaries, because of all acts, errors, or omissions to which this endorsement applies.

      c.   The terms of this endorsement, including those with respect to:

         (1)  **OUR** right and Duty to Defend any **SUITS** seeking those damages; and

         (2)  **YOUR** duties, and the duties of any other involved **INSURED**, in the event of an act, error, omission, or **CLAIM** apply irrespective of the application of the Deductible amount.

      d.   **WE** may pay any part or all of the Deductible amount to effect settlement of any **CLAIM** or **SUIT** and, upon notification of the action taken, **YOU** shall promptly reimburse **US** for such part of the Deductible amount as **WE** have paid.

---

       *Includes copyrighted material of Insurance Services Office, Inc.,*      
*with its permission.*

© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00046

**F.** For the purposes of the coverage provided by this endorsement, all provisions within Section VI. Supplementary Payments apply except the following:

   **1.** Subsection A., Paragraph 1. Bail Bonds;

   **2.** Subsection A., Paragraph 3. Control of Well Expenses; and

   **3.** Subsection B. Indemnitee Defense Expenses.

**G.** For the purposes of the coverage provided by this endorsement, the following Exclusions apply:

**Exclusions**

This endorsement does not apply to:

   **1.** **Available Benefits**:

     Any **CLAIM** for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the **INSURED**, from the applicable funds accrued or other collectible insurance.

   **2.** **Bodily Injury, Property Damage, Pollution Clean Up Costs, or Personal and Advertising Injury**:

     BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS, or PERSONAL AND ADVERTISING INJURY.

   **3.** **Dishonest, Fraudulent, Criminal, or Malicious Act**:

     Damages arising out of any intentional, dishonest, fraudulent, criminal, or malicious act, error, or omission, committed by any **INSURED**, including the willful or reckless violation of any statute.

   **4.** **Employment-Related Practices**:

     Damages arising out of wrongful termination of employment, discrimination, or other Employment-Related Practices.

   **5.** **ERISA**:

     Damages for which any **INSURED** is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state, or local laws.

   **6.** **Failure to Perform a Contract**:

     Damages arising out of failure of performance of contract by any insurer.

   **7.** **Inadequacy of Performance of Investment/Advice Given With Respect to Participation**:

     Any **CLAIM** based upon:

     **a.** Failure of any investment to perform;

     **b.** Errors in providing information on past performance of investment vehicles; or

     **c.** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the **EMPLOYEE BENEFIT PROGRAM**.

   **8.** **Insufficiency of Funds**:

     Damages arising out of an Insufficiency of Funds to meet any obligations under any plan included in the **EMPLOYEE BENEFIT PROGRAM**.

   **9.** **Taxes, Fines, or Penalties**:

     Taxes, Fines, or Penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

   **10.** **Workers' Compensation or Similar Laws**:

     Any **CLAIM** arising out of **YOUR** failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security, or disability benefits law or any similar law.

**H.** For the purposes of the coverage provided by this endorsement, Section VIII. General Conditions is changed as follows:

   **1.** Subsection D. Duties in the Event of Occurrence, Offense, Claim, or Suit is replaced by the following:

MBI00047

**Duties in the Event of an Act, Error, Omission, Claim, or Suit:**

a. **YOU** must see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** is notified as soon as practicable of an act, error, or omission which may result in a **CLAIM**. To the extent possible, notice should include:

  (1) What the act, error, or omission was and when it occurred; and

  (2) The names and addresses of anyone who may suffer damages as a result of the act, error, or omission.

b. If a **CLAIM** is made or **SUIT** is brought against any **INSURED**, **YOU** must:

  (1) Immediately record the specifics of the **CLAIM** or **SUIT** and the date received; and

  (2) Notify **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable.

  **YOU** must see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** receives written notice of the **CLAIM** or **SUIT** as soon as practicable.

c. **YOU** and any other involved **INSURED** must:

  (1) Immediately send **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** copies of any demands, notices, summonses, or legal papers received in connection with the **CLAIM** or **SUIT**;

  (2) Authorize **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** to obtain records and other information;

  (3) Cooperate with **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** in the investigation or settlement of the **CLAIM** or defense against the **SUIT**; and

  (4) Assist **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC**, upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of an act, error, or omission to which this policy may also apply.

d. No **INSURED** will, except at that **INSURED**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense without **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** consent.

2. Subsection K. Other Insurance is replaced by the following:

If other valid and collectible insurance is available to the **INSURED** for a loss **WE** cover under this endorsement, **OUR** obligations are limited as follows:

a. <u>**Primary Insurance**</u>:

  This insurance is primary except when Subparagraph (b) Excess Insurance below applies. If this insurance is primary, **OUR** obligations are not affected unless any of the Other Insurance is also primary. Then, **WE** will share with all that Other Insurance by the method described in Subparagraph (c) Method of Sharing below.

b. <u>**Excess Insurance**</u>:

  (1) This policy is excess over any of the Other Insurance, whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this policy and that applies to an act, error, or omission on other than a claims-made basis, if:

    (a) No Retroactive Date is shown in the Schedule of this policy; or

    (b) The Other Insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this policy.

  (2) When this insurance is excess, **WE** will have no Duty to Defend the **INSURED** against any **SUIT** if any other insurer has a Duty to Defend the **INSURED** against that **SUIT**. If no other insurer defends, **WE** will undertake to do so, but **WE** will be entitled to the **INSURED**'s rights against all those other insurers.

  (3) When this policy is excess over Other Insurance, **WE** will pay only **OUR** share of the amount of the loss, if any, that exceeds the sum of the total amount that all such Other Insurance would pay for the loss in absence of this policy; and the total of all deductible and self-insured amounts under all that Other Insurance.

  (4) **WE** will share the remaining loss, if any, with any Other Insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits Of Insurance shown in the Schedule of this endorsement.

MBI00048

   c.  **Method Of Sharing**:

If all of the Other Insurance permits contribution by equal shares, **WE** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the Other Insurance does not permit contribution by equal shares, **WE** will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

I.  For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**Extended Reporting Period**

1.  **YOU** will have the right to purchase an Extended Reporting Period, as described below, if:

   a.  This endorsement is canceled or not renewed; or

   b.  **WE** renew or replace this endorsement with insurance that:

      (1)  Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2)  Does not apply to an act, error, or omission on a claims-made basis.

2.  The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to **CLAIMS** for acts, errors, or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be cancelled.

3.  An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

**YOU** must give **US** a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless **YOU** pay the additional premium promptly when due.

**WE** will determine the additional premium in accordance with **OUR** rules and rates. In doing so, **WE** may take into account the following:

   a.  The **EMPLOYEE BENEFIT PROGRAMS** insured;

   b.  Previous types and amounts of insurance;

   c.  Limits Of Insurance available under this endorsement for future payment of damages; and

   d.  Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for **CLAIMS** first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4.  If the Extended Reporting Period is in effect, **WE** will provide an extended reporting period aggregate limit of insurance described below, but only for **CLAIMS** first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits Of Insurance.

Paragraph E. 1. Limits Of Insurance, (b) of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph E. 1. Limits Of Insurance, (c) of this endorsement.

J.  For the purposes of the coverage provided by this endorsement, the following definitions are added to Section IX. Definitions:

**ADMINISTRATION** means:

   a.  Providing information to **EMPLOYEES**, including their dependents and beneficiaries, with respect to eligibility for or scope of **EMPLOYEE BENEFIT PROGRAMS**;

   b.  Handling records in connection with the **EMPLOYEE BENEFIT PROGRAM**; or

   c.  Effecting, continuing, or terminating any **EMPLOYEE**'s participation in any benefit included in the **EMPLOYEE BENEFIT PROGRAM**.

However, **ADMINISTRATION** does not include handling payroll deductions.

**CAFETERIA PLANS** means plans authorized by applicable law to allow **EMPLOYEES** to elect to pay for certain benefits with pre-tax dollars.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00049

**EMPLOYEE BENEFIT PROGRAM** means a program providing some or all of the following benefits to **EMPLOYEES**, whether provided through a **CAFETERIA PLAN** or otherwise:

    a.    Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an **EMPLOYEE** may subscribe to such benefits and such benefits are made generally available to those **EMPLOYEES** who satisfy the plan's eligibility requirements;

    b.    Profit sharing plans, **EMPLOYEE** savings plans, **EMPLOYEE** stock ownership plans, pension plans, and stock subscription plans, provided that no one other than an **EMPLOYEE** may subscribe to such benefits and such benefits are made generally available to all **EMPLOYEES** who are eligible under the plan for such benefits;

    c.    Unemployment insurance, social security benefits, workers' compensation, and disability benefits;

    d.    Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    e.    Any other similar benefits designated in the Schedule or added thereto by endorsement.

K.    For the purposes of the coverage provided by this endorsement, the Definitions of **CLAIM**, **EMPLOYEE**, **INSURED**, **NAMED INSURED**, and **SUIT** in Section IX. Definitions are replaced by the following:

**CLAIM** means any demand, or **SUIT**, made by an **EMPLOYEE** or an employee's dependents and beneficiaries, for damages as the result of an act, error, or omission.

**EMPLOYEE** means a person actively employed, formerly employed, on leave of absence, disabled, or retired.  **EMPLOYEE** includes a **LEASED WORKER**.  **EMPLOYEE** does not include a **TEMPORARY WORKER**.

**INSURED** means a person or organization qualifying as an **INSURED** in Paragraph C. of this endorsement.

**NAMED INSURED** means a person or organization qualifying as a **NAMED INSURED** in Paragraph C.1. Named Insured(s) of this endorsement.

**SUIT** means a civil proceeding in which damages because of an act, error, or omission, to which this insurance applies, are alleged. **SUIT** includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the **INSURED** must submit or does submit with **OUR** consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **INSURED** submits with **OUR** consent.

MBI00050

Policy Number: EGL001672010        Transaction Number: 001

Effective Date: 04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Stop Gap – Employers Liability Coverage Endorsement

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

## SCHEDULE

| State(s): | ☒ North Dakota | ☐ Ohio | ☐ Washington | ☐ Wyoming |
|---|---|---|---|---|
| **Limits Of Insurance:** | | | | |
| Bodily Injury By Accident | $ | 1,000,000 | Each Accident | |
| Bodily Injury By Disease | $ | 1,000,000 | Aggregate Limit | |
| Bodily Injury By Disease | $ | 1,000,000 | Each Employee | |

**A.** The following is added to Section II. Coverages And Duty To Defend:

**Stop Gap – Employers Liability**

**1.** **WE** will pay those sums that the **NAMED INSURED** becomes legally obligated by the Law of the state(s), indicated in the Schedule above, to pay as damages because of **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** to **YOUR EMPLOYEE** to which this policy applies. **WE** will have the right and Duty to Defend the **INSURED** against any **SUIT** seeking those damages. However, **WE** will have no Duty to Defend the **INSURED** against any **SUIT** seeking damages to which this policy does not apply. **WE** may, at **OUR** discretion, investigate any accident and settle any **CLAIM** or **SUIT** that may result. But:

**a.** The amount **WE** will pay for damages is limited as described in Section V. Limits Of Insurance; and

**b.** **OUR** right and Duty to Defend ends when **WE** have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

**No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.**

**2.** This policy applies to **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** only if:

**a.** The:

**(1)** **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** takes place in the Coverage Territory;

**(2)** **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** arises out of and in the course of the injured **EMPLOYEE'S** employment by **YOU**; and

**(3)** **EMPLOYEE**, at the time of the injury, was covered under a workers' compensation policy and subject to a **WORKERS' COMPENSATION LAW** of the state(s) indicated in the Schedule above; and

**b.** The:

**(1)** **BODILY INJURY BY ACCIDENT** is caused by an accident that occurs during the policy period; or

**(2)** **BODILY INJURY BY DISEASE** is caused by or aggravated by conditions of employment by **YOU** and the injured **EMPLOYEE'S** last day of last exposure to the conditions causing or aggravating such **BODILY INJURY BY DISEASE** occurs during the policy period.

---

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00051

**(3)** The damages **WE** will pay, where recovery is permitted by law, include damages:

**(a)** For:

**(i)** Which **YOU** are liable to a third party by reason of a **CLAIM** or **SUIT** against **YOU** by that third party to recover the damages claimed against such third party as a result of injury to **YOUR EMPLOYEE**;

**(ii)** Care and loss of services; and

**(iii)** Consequential **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** to a spouse, child, parent, or sibling of the injured **EMPLOYEE**;

> provided that these damages are the direct consequence of **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** that arises out of and in the course of the injured **EMPLOYEE**'s employment by **YOU**; and

**(b)** Because of **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** to **YOUR EMPLOYEE** that arises out of and in the course of employment, claimed against **YOU** in a capacity other than as employer.

**c. Exclusions**

> The following Exclusions apply to Stop Gap – Employers Liability;
>
> This policy does not apply to:

**(1)** <u>Intentional Injury</u>:

> **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** intentionally caused or aggravated by **YOU**, or **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** resulting from an act which is determined to have been committed by **YOU** if it was reasonable to believe that an injury is substantially certain to occur.

**(2)** <u>Fines or Penalties</u>:

> Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

**(3)** <u>Statutory Obligations</u>:

> Any obligation of the **INSURED** under a workers' compensation, disability benefits, unemployment compensation law, or any similar law.

**(4)** <u>Contractual Liability</u>:

> Liability assumed by **YOU** under any contract or agreement.

**(5)** <u>Violation of Law</u>:

> **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** suffered or caused by any **EMPLOYEE** while employed in violation of law with **YOUR** actual knowledge or the actual knowledge of any of **YOUR EXECUTIVE OFFICERS**.

**(6)** <u>Termination, Coercion, or Discrimination</u>:

> Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against, or termination of any **EMPLOYEE**, or arising out of other employment or personnel decisions concerning the **INSURED**.

**(7)** <u>Failure to Comply with Workers' Compensation Law</u>:

> **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** to an **EMPLOYEE** when **YOU** are:

**(a)** Deprived of common law defenses; or

**(b)** Otherwise subject to penalty;

> because of **YOUR** failure to secure **YOUR** obligations or other failure to comply with any **WORKERS' COMPENSATION LAW**.

**(8)** <u>Violation of Age Laws or Employment of Minors</u>:

> **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** suffered or caused by any person:

**(a)** Knowingly employed by **YOU** in violation of any law as to age; or

---

 *Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00052

**(b)** Under the age of 14 years, regardless of any such law.

**(9)** <u>Federal Laws</u>:

Any premium, assessment, penalty, fine, benefit, liability, or other obligation imposed by or granted pursuant to:

**(a)** The Federal Employer's Liability Act (45 USC Section 51-60);

**(b)** The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

**(c)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(d)** The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

**(e)** The Defense Base Act (42 USC Sections 1651-1654);

**(f)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

**(g)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(h)** Any other workers' compensation, unemployment compensation, or disability laws, or any similar law; or

**(i)** Any subsequent amendments to the laws listed above.

**(10)** <u>Punitive Damages</u>:

Multiple, exemplary, or punitive damages.

**(11)** <u>Crew Members</u>:

**BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** Section VI. Supplementary Payments provisions apply to Stop Gap Employers Liability as well as to Section II.A. Bodily Injury and Property Damage Liability, B, Pollution Clean Up Costs, and C. Personal and Advertising Injury.

**C.** For the purposes of this endorsement, Section I. Named Insureds and Insureds, is deleted and replaced by the following:

**Named Insureds**

Each of the following is an **INSURED** if designated on the Declarations Page of this policy as a **NAMED INSURED**:

**1.** <u>Individual</u>:

If **YOU** are an individual - **YOU** and **YOUR** spouse are **INSUREDS**, but only with respect to the conduct of a business of which **YOU** are the sole owner.

**2.** <u>Partnership or Joint Venture</u>:

If **YOU** are a Partnership or Joint Venture - **YOU**, **YOUR MEMBERS**, **YOUR** partners, and their spouses are **INSUREDS**, but only with respect to the liability arising out of **YOUR** interest, or the conduct of **YOUR** business.

**3.** <u>Limited Liability Company</u>:

If **YOU** are a Limited Liability Company - **YOU** and **YOUR MEMBERS** are **INSUREDS**, but only with respect to the conduct of **YOUR** business. **YOUR MANAGERS** are also **INSUREDS**, but only with respect to their duties as **YOUR MANAGERS**.

**4.** <u>Other Organization</u>:

If **YOU** are an organization other than a Partnership, Joint Venture, or Limited Liability Company – **YOU** are an **INSURED**, but only with respect to the conduct of **YOUR** business.

**No person or organization is an INSURED with respect to the conduct of any current or past Partnership, Joint Venture or Limited Liability Company that is not shown as a NAMED INSURED on the Declarations Page.**

**D.** For the purposes of this endorsement, Section V. Limits Of Insurance, is deleted and replaced by the following:

**Limits Of Insurance**

**1.** The Limits Of Insurance shown in the Schedule of this endorsement and the rules below fix the most **WE** will pay regardless of the number of:

MBI00053

a.   **INSUREDS**;

b.   **CLAIMS** made or **SUITS** brought; or

c.   Persons or organizations making **CLAIMS** or bringing **SUITS**.

2.   The Bodily Injury By Accident – Each Accident Limit shown in the Schedule above is the most **WE** will pay for all damages covered by this policy because of **BODILY INJURY BY ACCIDENT** to one or more **EMPLOYEES** in any one accident.

3.   The Bodily Injury By Disease – Aggregate Limit shown in the Schedule above is the most **WE** will pay for all damages covered by this policy and arising out of **BODILY INJURY BY DISEASE**, regardless of the number of **EMPLOYEES** who sustain **BODILY INJURY BY DISEASE**.

4.   Subject to Paragraph D.3. of this endorsement, the Bodily Injury By Disease – Each Employee Limit shown in the Schedule above is the most **WE** will pay for all damages because of **BODILY INJURY BY DISEASE** to any one **EMPLOYEE**.

**The Limits Of Insurance of this policy apply to the policy period shown on the Declarations Page.  If the existing policy period is extended after issuance for an additional period that is less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.**

E.   For the purposes of this endorsement, Section VIII. General Conditions, Subsection D. Duties in the Event of Occurrence, Offense, Claim, or Suit is deleted and replaced by the following:

**Duties in the Event of Injury, Claim, or Suit**

1.   **YOU** must see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** or **OUR** agent is notified as soon as practicable of a **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** which may result in a **CLAIM**. To the extent possible, notice should include:

a.   How, when, and where the **BODILY INJURY BY ACCIDENT** or **BODILY INJURY BY DISEASE** took place;

b.   The names and addresses of any injured persons and witnesses; and

c.   The nature and location of any injury.

2.   If a **CLAIM** is made or **SUIT** is brought against any **INSURED**, **YOU** must:

a.   Immediately record the specifics of the **CLAIM** or **SUIT** and the date received; and

b.   Notify **US** and see to it that **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** receives written notice of the **CLAIM** or **SUIT** as soon as practicable.

3.   **YOU** and any other involved **INSURED** must:

a.   Immediately send **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** copies of any demands, notices, summonses, or legal papers received in connection with the injury, **CLAIM**, proceeding or **SUIT**;

b.   Authorize **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** to obtain records and other information;

c.   Cooperate with and assist **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC**, as **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** may request, in the investigation or settlement of the **CLAIM** or defense against the **SUIT**;

d.   Assist **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC**, upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of injury to which this policy may also apply; and

e.   Do nothing after an injury occurs that would interfere with **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** right to recover from others.

4.   No **INSURED** will, except at that **INSURED**'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent of **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC**.

F.   For the purposes of this endorsement, Section IV. Coverage Territory, is deleted and replaced by the following:

This policy applies to **CLAIMS** or **SUITS** arising from **OCCURRENCES** or offenses, in the United States of America (including its territories and possessions), United States Federal Lease Blocks managed by the Minerals Management Services (including state waters), Puerto Rico, and Canada.  It also applies to International waters and airspace, as long as the injury or damage occurs in the course of travel or transportation between the United States of America (including its territories and possessions), United States Federal Lease Blocks managed by the Minerals Management Services (including state waters), Puerto Rico, and Canada. Coverage also applies to other parts of the world for injury or damages arising out of activities of a person whose home is in the United States of

---

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00054

America (including its territories and possessions), Puerto Rico, and Canada, but is away for a short time period on **YOUR** business, as long as an **INSURED**'s liability to pay damages is determined in a **SUIT** on the merits in the United States of America (including its territories and possessions), Puerto Rico, or Canada.

**G.**  The following are added to Section IX. Definitions:

**WORKERS' COMPENSATION LAW** means the **WORKERS' COMPENSATION LAW** and any Occupational Disease Law of the state(s), indicated in the Schedule above,. This does not include provisions of any law providing non-occupational disability benefits.

**BODILY INJURY BY ACCIDENT** means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not **BODILY INJURY BY ACCIDENT** unless it results directly from **BODILY INJURY BY ACCIDENT**.

**BODILY INJURY BY DISEASE** means a disease sustained by a person, including death. **BODILY INJURY BY DISEASE** does not include a disease that results directly from an accident.

For the purposes of this endorsement, the definition of **BODILY INJURY** does not apply.

---

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00055

Policy Number: EGL001672010                    Transaction Number:  001

Effective Date:  04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# North Dakota Changes – Cancellation and Nonrenewal

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

A.   The following replaces Section VIII. General Conditions, Subsection B. Cancellation, Paragraphs 2. and 3.:

    **2.   Policies In Effect:**

a.   If this policy has been in effect for less than 90 days, **WE** may cancel the policy for any reason by mailing to the first **NAMED INSURED**, and agent, if any, written notice of cancellation at least 10 days before the effective date of Cancellation.

b.   If this policy has been in effect for 90 days or more, is a renewal of a policy **WE** issued, is a policy issued for a term longer than one year or is a continuous policy, **WE** may cancel the policy only for one or more of the following reasons:

(1)   Nonpayment of premiums;

(2)   Misrepresentation or fraud made by the **INSURED** or with the **INSURED's**  knowledge in obtaining the policy or in pursuing a **CLAIM** under the policy;

(3)   The **INSURED's** actions that have substantially increased or substantially changed the risk insured;

(4)   The **INSURED's** refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

(5)   Substantial change in the risk assumed, except to the extent that **WE** should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6)   Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

(7)   A determination by the insurance commissioner that the continuation of the policy could place **US** in violation of North Dakota insurance laws;

(8)   Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at 62 years of age or older or to any person who is disabled according to social security standards;

(9)    A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to covered property or the occupancy thereof which substantially increases any hazard insured against; or

        **WE** will mail written notice of cancellation to the first **NAMED INSURED**, and agent, if any, at least:

(a)   10 days before the effective date of cancellation for nonpayment of premium; or

(b)   30 days before the effective date of cancellation for any reason stated in Paragraphs 2.b.(2) through (9) above.

        However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs 2.b.(1) through (9) above.

        If **WE** cancel for a reason listed in Paragraphs 2.b.(1) through (9) above, the notice of Cancellation will state **OUR** reasons for Cancellation.

**3.**   **WE** will mail **OUR** notice, by first-class mail, to the first **NAMED INSURED** and agent, if any, at the last mailing address known to **US**.

**B.**   The following is added and supersedes any provision to the contrary to Section VIII. General Conditions, Subsection J. Nonrenewal:

---

MBI00056

**Nonrenewal**

1. If **WE** elect not to renew this policy, **WE** will mail to the last known address of the first **NAMED INSURED** shown in the Declarations Page, and agent, if any, a notice of intention not to renew at least:

a. 60 days prior to the expiration date of the policy, except as provided in Paragraph b. below; or

b. 90 days prior to the expiration date of the policy when the policy provides professional liability coverage for legal and medical services.

    The notice of Nonrenewal will state our reason for Nonrenewal.

2. **WE** will mail **OUR** notice, by first-class mail, to the first **NAMED INSURED** and agent, if any, at the last mailing address known to **US**.

3. **WE** need not mail or deliver this notice if you have:

a. Insured elsewhere;

b. Accepted replacement coverage; or

c. Requested or agreed to Nonrenewal.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00057

Policy Number: EGL001672010                 Transaction Number: 001

Effective Date: 04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

A.  The following exclusion is added:

This insurance does not apply to:

<u>Terrorism</u>

**ANY INJURY OR DAMAGE** arising, directly or indirectly, out of a **CERTIFIED ACT OF TERRORISM**, or out of an **OTHER ACT OF TERRORISM** that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the Coverage Territory. However, with respect to an **OTHER ACT OF TERRORISM**, this exclusion applies only when one or more of the following are attributed to such act:

1.  The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, **WE** will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2.  Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a.  Physical injury that involves a substantial risk of death; or

b.  Protracted and obvious physical disfigurement; or

c.  Protracted loss of or impairment of the function of a bodily member or organ; or

3.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an **OTHER ACT OF TERRORISM** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B.  For the purposes of this endorsement, the following definitions are added to Section IX. Definitions:

1.  **ANY INJURY OR DAMAGE** means any injury or damage covered under this policy including, but not limited to, **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** as may be defined in this policy.

---

EGL2162  01 15           *Includes copyrighted material of Insurance Services Office, Inc.,*           Page 1 of 2
                         *with its permission.*
                         *© Berkley Oil & Gas, 2015*

MBI00058

2. **CERTIFIED ACT OF TERRORISM** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **CERTIFIED ACT OF TERRORISM** include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property, or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   3. **OTHER ACT OF TERRORISM** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a **CERTIFIED ACT OF TERRORISM**.

   Multiple incidents of an **OTHER ACT OF TERRORISM** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission.*
© Berkley Oil & Gas, 2015

MBI00059

Policy Number:  EGL001672010                    Transaction Number:  001

Effective Date:  04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# North Dakota Changes – Examination of Your Books and Records

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy
Energy Commercial Umbrella Liability Policy

The Examination of Your Books and Records provision in the General Conditions Section of each policy is replaced by the following:

**Examination Of Your Books And Records**

1.  Except as provided in Paragraph 2. below, **WE** may examine and audit **YOUR** books and records as they relate to this policy at any time during the policy period and up to three years afterward.

2.  Any audit conducted to determine the premium due or to be refunded must be completed within 180 days after:

    a.  The expiration date of the policy; or

    b.  The anniversary date, if this is a continuous policy or a policy written for a term longer than one year;

    unless **YOU** agree in writing to extend the audit period.

MBI00060

Policy Number:  EGL001672010

Transaction Number:  001

Effective Date:  04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Notice of Cancellation to Third Parties

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

## SCHEDULE

| |
|---|
| Number of Days Notice: 60 |

| |
|---|
| Schedule of Person(s) or Organization(s):<br>Any Person or Organization:<br><br>1. Required by written contract to receive such notice, and<br><br>2. As evidenced by list on file with Berkley Oil & Gas |

**A.**   As respects the Persons or Organizations shown in the schedule above, the following replaces Section VIII. General Conditions, Subsection B. Cancellation, Paragraphs 2. and 3:

 **2.**   **a.**   10 days before the effective date of the Cancellation if **WE** cancel for nonpayment of premium; or

   **b.**   The Number of Days Notice required for Cancellation for any reason other than nonpayment of premium is amended to the number of days shown in the Schedule above.

**3.**   Notice of Cancellation will be mailed to the person(s) or organization(s) listed in the Schedule above.

MBI00061

Policy Number:  EGL001672010

Transaction Number:  001

Effective Date:  04/13/2016

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of **YOUR** policy. You should read **YOUR** policy and review **YOUR** Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as Specially Designated Nationals and Blocked Persons. This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that **YOU** or any other **INSURED**, or any person or entity claiming the benefits of this policy has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this policy will be considered a blocked or frozen contract and all provisions of this policy are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

MBI00062