# EXHIBIT H



# Berkley National Insurance Company
## Urbandale, Iowa

## Energy Commercial Umbrella Liability Declarations

**Policy Number: EUL001670910**
Previous Policy Number:

Billing Method: Agency
Pay Plan: 4-Pay

| | |
|---|---|
| **Named Insured and Mailing Address**<br>Missouri Basin Well Service, Inc.<br>P.O. Box 458<br>Belfield, ND 58622 | **Agency Name and Address**<br>USI Insurance Services, LLC (Mountain)<br>305 S.W. Wyoming Blvd<br>Suite 100<br>Mills, WY 82644<br>307.266.6568 |

(See Named Insured Schedule for a complete list of Named Insureds)

**Policy Period:**
From: 04/13/2016     To: 04/13/2017
12:01 A.M. Standard Time at your mailing address shown above.

**Form of Business:**  Corporation

**Audit Period:**

| Limits of Insurance: | | | |
|---|---|---|---|
| Each Occurrence Limit | | $ | 25,000,000 |
| Personal & Advertising Injury Limit (Any One Person Or Organization) | | $ | 25,000,000 |
| Other Aggregate Limit (Except COVERED AUTOS and Products-Completed Operations) | | $ | 25,000,000 |
| Products-Completed Operations Aggregate Limit | | $ | 25,000,000 |

**Self-Insured Retention:**     $10,000

**Forms and Endorsements:**     See Schedule of Forms and Endorsements

Estimated Premium:  $
Terrorism Additional Premium:  $
Deposit Payment:  $

**Name and Address of Administrative Office:**
Berkley Oil & Gas Specialty Services, LLC
10375 Richmond, Suite 1900
Houston, TX 77042
Phone No.:  ..          **See Claims Notice for Claims contact information**

**THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

MBI00063

**This policy is issued by one of the following stock companies as indicated on the Declarations Page.**

**Berkley Regional Insurance Company**
1209 Orange Street
Wilmington, Delaware 19801

**Berkley National Insurance Company**
11201 Douglas Avenue
Urbandale, Iowa 50322

**StarNet Insurance Company**
1209 Orange Street
Wilmington, Delaware 19801

**Administrative Office for the companies listed above:**

**Berkley Oil & Gas Specialty Services, LLC**
10375 Richmond Avenue, Suite 1900
Houston, Texas 77042

**THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE DECLARATIONS PAGE.**

**Berkley Regional Insurance Company**

**W. Robert Berkley, Jr.**
**President**

**Ira S. Lederman**
**Secretary**

**Berkley National Insurance Company**

**Craig Weldon Sparks**
**President**

**Ty Collin Simmons**
**Secretary**

**StarNet Insurance Company**

**W. Robert Berkley, Jr.**
**President**

**Ira S. Lederman**
**Secretary**

**IN THE EVENT YOU SUFFER A LOSS OR ACCIDENT, YOU SHOULD CONTACT YOUR AGENT IMMEDIATELY**

MBI00064

PN 2600 09 13

# PRIVACY NOTICE

Berkley National Insurance Company (the "Company"), a member company of the W.R. Berkley Corporation ("Berkley") group of companies and each other member of the Berkley group of companies ("Affiliates") understands our customers' concern about privacy of their information collected by the Company. Our Company is dedicated to protecting the confidentiality and security of nonpublic personal information we collect about our customers in accordance with applicable laws and regulations. This notice refers to the Company by using the terms US, WE, or OUR. This notice describes our privacy policy, and describes how we treat the nonpublic personal information about our customers that we receive from them ("Information").

**Why We Collect and How We Use Information.**

We collect and use Information for business purposes with respect to our insurance products and services and other business relations involving our customers. We gather this Information to evaluate your request for insurance, to evaluate your insurance claims, to administer, maintain, or review your insurance policy, and to process your insurance transactions. We also accumulate certain information about you as may be required or permitted by law.

Your insurance agent or broker also collects this Information and may use it to help with your overall insurance program or to market additional products and services to you. We may also use Information to offer you other products or services that we or our Affiliates provide.

**How We Collect Information.**

Most Information collected by us is provided by you or your insurance agent or broker to us. We obtain Information from (i) applications or other forms submitted by you, your insurance agent or broker or your authorized representatives to us and our Affiliates, and (ii) your transactions with us or our Affiliates. We may also obtain Information from other sources such as (i) consumer reporting agencies, (ii) other institutions or information services providers, (iii) employers, (iv) other insurers, or (v) your family members.

**Information We Disclose**

We disclose any Information which we believe is necessary to conduct our business as permitted by applicable law or where required by applicable law. This disclosure may include (i) Information we receive from you on applications or other forms provided to us and our Affiliates, such as names, addresses, social security numbers, assets, employer information, salaries, etc. (ii) Information about your transactions with us and our Affiliates, such as policy coverages, premiums, payment history, etc., and (iii) Information we receive from a consumer reporting agency, such as credit worthiness and credit history.

**To Whom We Disclose Information**

We may, as permitted or required by applicable law, disclose your Information to nonaffiliated third parties, such as (i) your insurance agent or broker, (ii) independent claims adjusters, (iii) insurance support organizations, (iv) processing companies, (v) actuarial organizations, (vi) law firms, (vii) other insurance companies involved in an insurance transaction with you, (viii) law enforcement, regulatory, or governmental agencies, (ix) courts or parties therein pursuant to a subpoena or court order, (x) businesses with whom we have a marketing agreement, or (xi) our Affiliates.

We may share Information with our Affiliates so that they may offer you products and services from the Berkley group of companies or to analyze our book of business and to consolidate necessary information. We do not disclose Information to other companies or organizations not affiliated with us for the purpose of using Information to sell their products or services to you. For example, we do not sell your name to unaffiliated mail order or direct marketing companies.

**How We Protect Information**

We require our employees to protect the confidentiality of Information as required by applicable law. Access to Information by our employees is limited to administering, offering, servicing, processing or maintaining of our products and services. We also maintain physical, electronic and procedural safeguards designed to protect Information. When we share or provide Information to other persons or organizations, we contractually obligate them, if required by law, to treat Information as confidential and conform to our privacy policy and applicable laws and regulations.

MBI00065

**Correction and Access to Information**

Upon our receipt of your written request to us at P.O. Box 420029, Houston, TX 77242, we will, generally, make available information for your review. If you believe the Information we have about you is incorrect or inaccurate, you may request that we make any necessary corrections, additions or deletions. If we agree with your belief, we will correct our records if required by applicable law. If we do not agree, you may submit to us a short statement of dispute, which we will include in any future disclosure by us of such Information if required by applicable law.

**Requirements for Privacy Notice**

This privacy notice is being provided due to recently enacted federal and state laws and regulations establishing new privacy standards and requires us to provide this privacy policy. For additional information regarding our privacy policy, please write to us at P.O. Box 420029, Houston, TX 77242.

Adopted: June 1, 2001

MBI00066

Policy Number:   EUL001670910                          Transaction Number:  001
Effective Date:   04/13/2016

# Schedule of Forms and Endorsements

**Forms and Endorsements that apply to this policy:**

| | |
|---|---|
| EUL6001 10 14 | Declarations Page |
| EIL1014 03 10 | Signature Page |
| PN 2600 09 13 | Privacy Notice |
| EIL1002 03 10 | Schedule of Forms and Endorsements |
| EIL1003 03 10 | Named Insured Schedule |
| EUL6004 03 10 | Schedule of Underlying Insurance |
| EUL6000 10 14 | Energy Commercial Umbrella Liability Policy |
| EUL6618 03 10 | North Dakota Changes - Cancellation and Nonrenewal |
| EUL6911 01 15 | Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |
| EIL2337 03 10 | North Dakota Changes - Examination of Your Books and Records |
| EIL2504 06 13 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

MBI00067

Policy Number:  EUL001670910

Transaction Number:  001

Effective Date:  04/13/2016

# Named Insured

### SCHEDULE

Missouri Basin Well Service, Inc.
MBWS Ultimate Holdco, Inc.
Rod's Hot Oil Service, Inc.
Yankee Fishing & Rentals, Inc.
WW Oilfield Services, LLC
Dodge Water Depot, LLC
MBI Energy Logistics, LLC
MBI Energy Services, Inc. (fka Well Service Holdings, Inc.)
Mid West Crane Service, Inc.
MBI Energy Rentals, Inc.
Yellowfin Partners II, LLC
MBI Real Estate, LLC
Yankee Consulting, LLC
High Plains, Inc.
Missouri Basin Well Service Inc. dba MBI Energy Services
Yellowfin Partners I, LLC

MBI00068

Policy Number:   EUL001670910

Effective Date:   4/13/2016

Transaction Number: 001

# Schedule of Underlying Insurance

## Commercial General Liability

**Company**

Berkley National Insurance Company

**Policy Number**

EGL001672010

**Policy Period**

4/13/2016 to 4/13/2017

**Applicable Limits**

| | | |
|---|---|---|
| $ 2,000,000 | General Aggregate |
| $ 2,000,000 | Products-Completed Operations Aggregate |
| $ 1,000,000 | Personal and Advertising Injury |
| $ 1,000,000 | Each Occurrence |

## Automobile Liability

**Company**

Berkley National Insurance Company

**Policy Number**

ECA3131286-10

**Policy Period**

4/13/2016 to 4/13/2017

**Applicable Limits**

| | | |
|---|---|---|
| $ 1,000,000 Each Accident | Bodily Injury by Accident Combined Single Limit |

## Employers Liability *(not applicable to New York Insureds)*

**Company**

Berkley National Insurance Company

**Policy Number**

EWC3131371-10

**Policy Period**

4/13/2016 to 4/13/2017

**Applicable Limits**

| | | |
|---|---|---|
| $ 1,000,000 Each Accident | Bodily Injury by Accident |
| $ 1,000,000 Each Policy | Bodily Injury by Disease |
| $ 1,000,000 Each Employee | Bodily Injury by Disease |

MBI00069



# ENERGY COMMERCIAL UMBRELLA LIABILITY POLICY

"Focusing On Your Energy Business"

## DEFINED TERMS

This policy contains certain words and phrases that have special meaning.  These defined terms appear within this policy as **BOLDED AND CAPITALIZED**.  As an example, **WE**, **US**, and **OUR**, refer to the company listed on the Declarations Page that insures **YOU**.  **YOU** will find a list of these defined terms beginning on Page 21.  For **YOUR** convenience, **WE** have provided an index of important topics beginning on Page 27.

## ABOUT THIS ENERGY COMMERCIAL UMBRELLA LIABILITY POLICY

This policy is specifically designed to insure companies in the oil and gas or energy business.  This policy provides commercial umbrella liability coverage to **YOU** and **YOUR** energy-related and other businesses.  This policy describes who is covered, what is covered, and when and where there is coverage, as well as supplementary payments.  This policy includes a time element pollution coverage grant with separate requirements, including reporting requirements, to trigger coverage.  As with any insurance policy, there are certain limitations and exclusions to the coverage.  **YOU** also have certain obligations and requirements which **YOU** must comply with in order to maintain the benefits afforded under this policy.  Lastly, there are endorsements to the policy that change the terms, conditions, and exclusions in the policy.

**YOU must read the entire policy to understand the terms, conditions, coverages, limitations, and exclusions contained in this policy.**

MBI00070



# ENERGY COMMERCIAL UMBRELLA LIABILITY POLICY

"Focusing On Your Energy Business"

### TABLE OF CONTENTS

I.  COVERAGES ...................................................................................................................................3
    A.  Coverage A – Excess Follow Form Liability Insurance .............................................................3
    B.  Coverage B – Umbrella Liability Insurance .............................................................................3
II.  WHEN THERE IS COVERAGE ........................................................................................................3
III.  NAMED INSUREDS AND INSUREDS .............................................................................................4
    A.  Coverage A – Excess Follow Form Liability Insurance .............................................................4
    B.  Coverage B – Umbrella Liability Insurance .............................................................................4
IV.  COVERAGE TERRITORY ...............................................................................................................6
V.  LIMITS OF INSURANCE ..................................................................................................................6
VI.  SUPPLEMENTARY PAYMENTS AND DEFENSE ..........................................................................7
VII.  EXCLUSIONS ..................................................................................................................................9
    A.  Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance Exclusions ...........9
    B.  Coverage A – Excess Follow Form Liability Insurance Exclusions ..........................................12
    C.  Coverage B – Umbrella Liability Insurance Exclusions ..........................................................13
VIII.  GENERAL CONDITIONS ..............................................................................................................16
IX.  DEFINITIONS .................................................................................................................................21
X.  INDEX ............................................................................................................................................27

MBI00071

Section I. Coverages
Section II. When There Is Coverage

# ENERGY COMMERCIAL UMBRELLA LIABILITY POLICY

## I.   COVERAGES

### A.   Coverage A – Excess Follow Form Liability Insurance

Subject to all of the terms and conditions applicable to Coverage A – Excess Follow Form Liability Insurance, WE will pay on behalf of the INSURED, those damages or POLLUTION CLEAN UP COSTS covered by this policy in excess of the total applicable limits of UNDERLYING INSURANCE.  With respect to Coverage A, the terms and conditions of UNDERLYING INSURANCE are made a part of this policy, except with respect to:

1.   Any contrary provision contained in this policy; or

2.   Any provision in this policy for which a similar provision is not contained in UNDERLYING INSURANCE.

With respect to the exceptions stated above, nothing contained therein will serve to make this policy broader than the UNDERLYING INSURANCE.

If UNDERLYING INSURANCE does not apply to damages or POLLUTION CLEAN UP COSTS, for reasons other than exhaustion of applicable Limits Of Insurance by payment of CLAIMS, settlements, or judgments, then Coverage A does not apply to those damages or POLLUTION CLEAN UP COSTS.

### B.   Coverage B – Umbrella Liability Insurance

Subject to all of the terms and conditions applicable to Coverage B – Umbrella Liability Insurance, WE will pay on behalf of the INSURED, those damages the INSURED becomes legally obligated to pay by reason of liability imposed by law or assumed under an INSURED CONTRACT because of BODILY INJURY, PROPERTY DAMAGE, or PERSONAL AND ADVERTISING INJURY covered by this policy.  WE will pay such damages in excess of the SELF-INSURED RETENTION specified on the Declarations Page or the amount payable by OTHER INSURANCE, whichever is greater.

Coverage B will not apply to any PAYMENT OBLIGATION, CLAIM, or SUIT for which insurance is afforded under UNDERLYING INSURANCE or would have been afforded except for the exhaustion of the limits of UNDERLYING INSURANCE.

WE have no obligation under the above Coverages with respect to any CLAIM or SUIT settled without OUR consent.

Other than as provided pursuant to Section VI. Supplementary Payments And Defense, WE have no other obligation or liability to pay sums or perform acts or services.

## II.   WHEN THERE IS COVERAGE

### A.   This policy applies to Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance only if:

1.   BODILY INJURY or PROPERTY DAMAGE:

   a.   Is caused by an OCCURRENCE that takes place in the Coverage Territory described in Section IV. Coverage Territory during the policy period; and

   b.   Prior to the policy period, no INSURED, nor any of the INSURED'S EMPLOYEES, EXECUTIVE OFFICERS, directors, owners, or AGENTS, knew that the BODILY INJURY or PROPERTY DAMAGE had occurred, in whole or in part.

   If such an INSURED knew of any BODILY INJURY or PROPERTY DAMAGE prior to the policy period, then any continuation, change, or resumption of such BODILY INJURY or PROPERTY DAMAGE during or after the policy period will not be covered.

2.   The POLLUTION CLEAN UP COSTS are caused by an ELIGIBLE POLLUTION INCIDENT that takes place in the Coverage Territory described in Section IV. Coverage Territory and first commences on a specific date during the policy period.

3.   PERSONAL AND ADVERTISING INJURY:

   a.   Is caused by an offense arising out of YOUR business, but only if the offense was committed in the Coverage Territory described in Section IV. Coverage Territory during the policy period; and

MBI00072

    **b.** Prior to the policy period, no **INSURED**, nor any of the **INSURED'S EMPLOYEES**, **EXECUTIVE OFFICERS**, directors, owners, or **AGENTS**, knew that the **PERSONAL AND ADVERTISING INJURY** had occurred, in whole or in part.

    If such an **INSURED** knew of any **PERSONAL AND ADVERTISING INJURY** prior to the policy period, then any continuation, change, or resumption of such **PERSONAL AND ADVERTISING INJURY** during or after the policy period will not be covered.

**B.** **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** will be deemed to have been known to have occurred at the earliest time when any **INSURED** or any of the **INSURED'S EMPLOYEES**, **EXECUTIVE OFFICERS**, directors, owners, or **AGENTS**:

    **1.** Reports all, or any part, of the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** to **BERKLEY OIL & GAS** or any insurer;

    **2.** Receives a written or verbal demand or **CLAIM** for damages because of the **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY**; or

    **3.** Becomes aware by any other means that **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** has occurred or has begun to occur.

Subsection B. above does not apply to **BODILY INJURY** and **PROPERTY DAMAGE** resulting from an **ELIGIBLE POLLUTION INCIDENT**.

**C.** Notwithstanding any other provision of this policy, **BODILY INJURY** and **PROPERTY DAMAGE** caused by an **ELIGIBLE POLLUTION INCIDENT** are only covered by this policy if the **ELIGIBLE POLLUTION INCIDENT** first commenced on a specific date during the policy period.

**D.** Damages because of **BODILY INJURY** include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **BODILY INJURY**.

## III.   NAMED INSUREDS AND INSUREDS

**A.** **Coverage A – Excess Follow Form Liability Insurance**

With respect to Coverage A — Excess Follow Form Liability Insurance, the following persons and organizations qualify as **INSUREDS**:

    **1.** The **NAMED INSURED** shown on the Declarations Page; and

    **2.** Other persons or organizations qualifying as an **INSURED** in **UNDERLYING INSURANCE**, but not beyond any limitation imposed under any written contract or written agreement.

**B.** **Coverage B – Umbrella Liability Insurance**

With respect to Coverage B – Umbrella Liability Insurance, the following persons and organizations qualify as **INSUREDS**:

    **1.** **Named Insureds**

    Each of the following is an **INSURED** if designated on the Declarations Page of this policy as a **NAMED INSURED** or satisfies the provisions in Section III.B.1.f. Newly Acquired or Formed Organizations:

        **a.** <u>Individual</u>:

        If **YOU** are an Individual – **YOU** and **YOUR** spouse are **INSUREDS**, but only with respect to the conduct of a business of which **YOU** are the sole owner.

        **b.** <u>Partnership or Joint Venture</u>:

        If **YOU** are a Partnership or Joint Venture – **YOU**, **YOUR MEMBERS**, **YOUR** partners, and their spouses are **INSUREDS**, but only with respect to the liability arising out of **YOUR** interest, or the conduct of **YOUR** business.

        **c.** <u>Limited Liability Company</u>:

        If **YOU** are a Limited Liability Company – **YOU** and **YOUR MEMBERS** are **INSUREDS**, but only with respect to the conduct of **YOUR** business. **YOUR MANAGERS** are also **INSUREDS**, but only with respect to their duties as **YOUR MANAGERS**.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
*© Berkley Oil & Gas, 2014*

MBI00073

Section I.B. Umbrella Liability Insurance

d.  **Other Organization**:

If **YOU** are an organization other than a Partnership, Joint Venture, or Limited Liability Company – **YOU** are an **INSURED**, but only with respect to the conduct of **YOUR** business.

e.  **Trust**:

If **YOU** are a Trust – **YOU** and **YOUR** trustees are **INSUREDS**, but only with respect to their duties as trustees to **YOU**.

f.  **Newly Acquired or Formed Organizations**:

Any Newly Acquired or Formed Organization (other than a Partnership or Joint Venture) over which **YOU** maintain ownership or majority interest will qualify as a **NAMED INSURED** if there is no other similar insurance available to that organization.  However:

(1)  Coverage under this provision is afforded only until the 120th day after **YOU** acquire or form the organization or the end of the policy period, whichever is earlier; and

(2)  Section I.B. Coverage B – Umbrella Liability Insurance does not apply to **BODILY INJURY** or **PROPERTY DAMAGE** that occurred, **POLLUTION CLEAN UP COSTS** from a **POLLUTION INCIDENT** that commenced, or **PERSONAL AND ADVERTISING INJURY** arising out of an offense committed before **YOU** acquired or formed the organization.

If **YOU** own a **NON-OPERATING WORKING INTEREST** in any oil, gas, or other mineral property, then **YOU** are a **NAMED INSURED**, but only with respect to liability arising out of **YOUR NON-OPERATING WORKING INTEREST** in such oil, gas, or other mineral property.

No person or organization is an **INSURED** with respect to the conduct of any current or past Partnership or Joint Venture, or Limited Liability Company that is not shown as a **NAMED INSURED** on the Declarations Page.

2.  **Insureds**

Each of the following is an **INSURED** with respect to Section 1.B. Coverage B – Umbrella Liability Insurance:

a.  **Employees and Volunteer Workers**:

**YOUR EMPLOYEES**, but only for acts within the scope of their employment by **YOU** or while performing duties related to the conduct of **YOUR** business; and **VOLUNTEER WORKERS**, but only while acting at **YOUR** direction and performing duties related to the conduct of **YOUR** business.

However, neither **YOUR EMPLOYEES** nor **VOLUNTEER WORKERS** are **INSUREDS** for:

(1)  **BODILY INJURY** or **PERSONAL AND ADVERTISING INJURY**:

(a)  To **YOU**, to **YOUR** partners or **MEMBERS** (if **YOU** are a Partnership or Joint Venture), to **YOUR MEMBERS** (if **YOU** are a Limited Liability Company), to another **EMPLOYEE** while in the course of his or her employment or performing duties related to the conduct of **YOUR** business, or to other **VOLUNTEER WORKERS** while performing duties related to the conduct of **YOUR** business;

(b)  To the spouse, child, parent, or sibling of that co-**EMPLOYEE** or **VOLUNTEER WORKER** as a consequence of Subparagraph a.(1)(a) above;

(c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Subparagraphs a.(1)(a) or a.(1)(b) above; or

(d)  Arising out of his or her providing or failing to provide professional health care services.

With respect to **BODILY INJURY** only, the limitation in Subparagraph a.(1) above does not apply to:

(a)  **YOU** or **YOUR** directors, **MANAGERS, MEMBERS, EXECUTIVE OFFICERS**, partners, or supervisors as **INSUREDS**; or

(b)  **YOUR EMPLOYEES**, as **INSUREDS**, with respect to such damages because of first aid services administered by such an **EMPLOYEE**.

(2)  **PROPERTY DAMAGE** to property:

(a)  Owned, occupied, or used by; or

MBI00074

    **(b)** Rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by;

    **YOU**, any of **YOUR EMPLOYEES**, **VOLUNTEER WORKERS**, any partner or **MEMBER** (if **YOU** are a Partnership or Joint Venture), or any of **YOUR MEMBERS** (if **YOU** are a Limited Liability Company).

**b. Executive Officers and Directors**:

    **EXECUTIVE OFFICERS** and Directors to the extent that **YOU** have **EXECUTIVE OFFICERS** and Directors, but only with respect to their duties as **YOUR EXECUTIVE OFFICERS** or directors.

**c. Legal Representative**:

    **YOUR LEGAL REPRESENTATIVE** if **YOU** die, but only with respect to duties as **YOUR LEGAL REPRESENTATIVE**. The **LEGAL REPRESENTATIVE** will have all **YOUR** rights and duties under this policy.

**d. Real Estate Manager**:

    Any person (other than **YOUR EMPLOYEE** or **VOLUNTEER WORKER**) or organization while acting as **YOUR** Real Estate Manager, but only with respect to their duties as **YOUR** Real Estate Manager. However, Real Estate Manager does not include any person or organization providing services to **YOU** with regard to **YOUR** oil and gas leases including, without limitation, the person commonly referred to as a landman.

**e. Stockholders**:

    To the extent that **YOU** have Stockholders, they and their spouses, but only with respect to their liability as Stockholders.

**f. Temporary Custodian**:

    Any person or organization having proper temporary custody of **YOUR** property if **YOU** die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until **YOUR LEGAL REPRESENTATIVE** has been appointed.

**3. In Rem Action(s)**

    In Rem Action(s) against any watercraft owned or operated by, rented by, chartered by, or loaned to the **INSURED** will in all respects be treated in the same manner as though the action were In Personam against that **INSURED**.

## IV.   COVERAGE TERRITORY

**A. Coverage A – Excess Follow Form Liability Insurance**

    With respect to Coverage A – Excess Follow Form Liability Insurance, this policy applies anywhere that the applicable **UNDERLYING INSURANCE** applies.

**B. Coverage B – Umbrella Liability Insurance**

    With respect to Coverage B – Umbrella Liability Insurance, this policy applies anywhere, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

## V.   LIMITS OF INSURANCE

**A.** With respect to Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance, the Limits Of Insurance shown on the Declarations Page and the terms below fix the most **WE** will pay, regardless of the number of:

    **1. INSUREDS**;

    **2. CLAIMS** made or **SUITS** brought;

    **3.** Coverages provided under this policy;

    **4.** Persons or organizations making **CLAIMS** or bringing **SUITS**; or

MBI00075

    5.   **AUTOS** involved.

B.   The Limits Of Insurance of this policy will apply as follows:

   1.   The Each Occurrence Limit stated on the Declarations Page is the most **WE** will pay for all damages arising out of any one **OCCURRENCE** or offense, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, even if such damages or **POLLUTION CLEAN UP COSTS** are covered, in whole or in part, under both Coverage A and Coverage B. The Each Occurrence Limit will apply to all **BODILY INJURY, PROPERTY DAMAGE**, and **POLLUTION CLEAN UP COSTS** arising out of any one **NAMED STORM**.

      Any amount paid for damages arising out of an **OCCURRENCE** or offense, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, will reduce the amount of the applicable aggregate limit of insurance available for payment of damages arising out of all other **OCCURRENCES** or offenses, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**.

      If the applicable aggregate limit of insurance has been reduced by payment of damages or payment of **POLLUTION CLEAN UP COSTS** to an amount that is less than the Each Occurrence Limit stated on the Declarations Page, the remaining aggregate limit of insurance is the most that will be available for payment of damages arising out of all other **OCCURRENCES** or offenses, or **POLLUTION CLEAN UP COSTS** arising out of all other **ELIGIBLE POLLUTION INCIDENTS**, that are subject to that aggregate limit.

   2.   Subject to Subsection B.1. above, the limit stated on the Declarations Page for the Products-Completed Operations Aggregate is the most **WE** will pay for all damages under both Coverage A and Coverage B combined because of **BODILY INJURY** and **PROPERTY DAMAGE** included within the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

   3.   Subject to Subsection B.1. above, the limit stated on the Declarations Page for the Other Aggregate is the most **WE** will pay for all damages or **POLLUTION CLEAN UP COSTS** under both Coverage A and Coverage B combined except for:

      a.   Damages covered under the **PRODUCTS-COMPLETED OPERATIONS HAZARD**; and

      b.   Damages covered in **UNDERLYING INSURANCE** to which no underlying aggregate limit applies.

C.   Coverage A applies only in excess of the greater of the actual limits of **UNDERLYING INSURANCE** or the Limits Of Insurance shown on the Schedule of **UNDERLYING INSURANCE** forming a part of this policy.

D.   With respect to Coverage A – Excess Follow Form Liability Insurance only and subject to Subsections B.1., B.2., B.3., and C. above:

   1.   This policy will drop down to become immediately excess of the reduced underlying limit if the limits of **UNDERLYING INSURANCE** have been reduced solely by payment of:

      a.   Damages for which coverage is afforded under this policy; or

      b.   **POLLUTION CLEAN UP COSTS** for which coverage is afforded under EGL1000 Energy Commercial General Liability Policy.

   2.   This policy will continue in force as **UNDERLYING INSURANCE** if the limits of **UNDERLYING INSURANCE**, have been exhausted solely by payment of:

      a.   Damages for which coverage is afforded under this policy; or

      b.   **POLLUTION CLEAN UP COSTS** for which coverage is afforded under the **UNDERLYING INSURANCE** of EGL1000 Energy Commercial General Liability Policy.

**The Limits Of Insurance of this policy apply to the policy period shown on the Declarations Page. If the existing policy period is extended after issuance for an additional period that is less than 12 months, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.**

## VI.   SUPPLEMENTARY PAYMENTS AND DEFENSE

   A.   Subject to all of the terms and conditions of this policy, **WE** will have the right and duty to defend the **INSURED**, including without limitation, to appoint counsel to represent the **INSURED**:

MBI00076

1. Under Coverage A – Excess Follow Form Liability Insurance, against any **CLAIM** or **SUIT** seeking damages or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, to which this coverage applies, if the applicable underlying limits and the total applicable limits of any **OTHER INSURANCE** have been exhausted by payment of judgments, settlements, or related loss, cost, or expense (if such loss, cost, or expense reduces such limits); or

2. Under Coverage B – Umbrella Liability Insurance, against a **CLAIM** or **SUIT** to which this policy applies.

B. **WE** will have no duty to defend the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS**:

1. To which this policy does not apply; or

2. If any other insurer has a duty to defend.

C. When **WE** have the duty to defend, **WE** may, at **OUR** discretion, investigate any **OCCURRENCE**, **POLLUTION INCIDENT**, or offense and settle any **CLAIM** or **SUIT** that may result.  In all other cases, **WE** may, at **OUR** discretion, participate in the investigation of any **OCCURRENCE**, **POLLUTION INCIDENT**, or offense or the defense and settlement of any **CLAIM** or **SUIT**. But:

1. The amount **WE** will pay for damages or **POLLUTION CLEAN UP COSTS** is limited as described in Section V. Limits Of Insurance; and

2. **OUR** right and duty to defend ends when **WE** have used up the applicable limit of insurance in the payment of judgments or settlements.

D. Subject to all of the terms and conditions of this policy, under Coverage A – Excess Follow Form Liability Insurance or Coverage B – Umbrella Liability Insurance:

**WE** will pay, with respect to any **CLAIM** **WE** investigate or settle, or any **SUIT** against an **INSURED** **WE** defend:

1. **Bail Bonds**:

Up to $2,000 for the cost of Bail Bonds.  **WE** do not have to furnish these Bail Bonds.

2. **Bonds to Release Attachments**:

The cost of Bonds to Release Attachments, but only for bond amounts within the applicable limit of insurance.  **WE** do not have to furnish these bonds.

3. **Court Costs**:

All Court Costs taxed against the **INSURED** in the **SUIT**.  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **INSURED**.

4. **Expenses**:

All Expenses **WE** incur.

5. **Investigation and Defense Expenses Incurred by You at Our Request**:

All reasonable and necessary expenses incurred by the **INSURED** at **OUR** request to assist **US** in the investigation or defense of the **CLAIM** or **SUIT**, including actual loss of earnings up to $1,000 a day because of time off from work.

6. **Prejudgment Interest**:

Prejudgment Interest awarded against the **INSURED** on that part of the judgment **WE** pay.  If **WE** make an offer to pay the applicable limit of insurance, **WE** will not pay any Prejudgment Interest based on that period of time after the offer.

7. **Post Judgment Interest**:

All interest on the full amount of any judgment that accrues after entry of the judgment and before **WE** have paid, offered to pay, or deposited in court, the part of the judgment that is within the applicable limit of insurance.

**OUR** duty to defend and **OUR** obligation to make any supplementary payments, as respects Subsections A., B., C., and D. above, ends when **WE** have used up the applicable limit of insurance through payments of judgments, settlements, or **POLLUTION CLEAN UP COSTS**.  Supplementary payments will not reduce the applicable limit of insurance.  Supplementary payments do not include any fine or other penalty.

MBI00077

## VII. EXCLUSIONS

**A. Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance Exclusions**

The following Exclusions apply to Section I.A. Coverage A – Excess Follow Form Liability Insurance and Section I.B. Coverage B – Umbrella Liability Insurance:

This policy does not apply to:

1. **Acid Rain:**

   a. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, suspected presence, physical exposure, or threat of exposure to **ACID RAIN.**

   b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

      (1) Any **CLAIM, SUIT,** request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE,** or in any way respond to or assess the effects of **ACID RAIN;** or repair, replace, or improve any property as a result of such effects; or

      (2) Any **CLAIM, SUIT,** request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **ACID RAIN;** or repairing, replacing, or improving any property as a result of such effects.

2. **Asbestos, Lead, Radioactive Material, or Silica and Silica-Related Dust:**

   a. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged, or suspected:

      (1) Ingestion of, inhalation of, absorption of, presence of, physical exposure to, threatened exposure to, contact with, threatened contact with, or existence of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST** in any form, including, but not limited to, goods or products containing any form of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST;**

      (2) Use of any form of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST** in constructing or manufacturing any good, product, or structure;

      (3) Removal of any form of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST** from any good, product, or structure; or

      (4) The manufacture, intellectual development, sale, transportation, storage, or disposal of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST,** or goods or products containing any form of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST.**

   b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

      (1) Any **CLAIM, SUIT,** request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or **MITIGATE,** or in any way respond to or assess the effects of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST;** or repair, replace, or improve any property as a result of such effects; or

      (2) Any **CLAIM, SUIT,** request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **ASBESTOS, LEAD, RADIOACTIVE MATERIAL,** or **SILICA** and **SILICA-RELATED DUST;** or repairing, replacing, or improving any property as a result of such effects.

   Under Coverage A – Excess Follow Form Liability Insurance, this Exclusion does not apply to **RADIOACTIVE MATERIAL** found in well logging or measuring tools.

3. **Auto-Related and Auto Financial Responsibility Laws:**

   Any liability, loss, cost, expense, or obligation of any **INSURED** under any state or federal law for:

   a. Medical payments;

*Includes copyrighted material of Insurance Services Office, Inc.,*
   *with its permission*
   *© Berkley Oil & Gas, 2014*

MBI00078

b. No-fault;

c. Personal injury protection;

d. Underinsured or uninsured motorists; or

e. Any other Auto-Related or Auto Financial Responsibility Law.

4. **Damage to Your Product**:

Any **PROPERTY DAMAGE** to **YOUR PRODUCT** arising out of it or any part of it.

5. **Disclosure of or Access to Confidential or Personal Information and Data-Related Liability**:

**BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

a. Any disclosure of or access to any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

b. The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **ELECTRONIC DATA**.

This Exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by **YOU** or others arising out of that which is described in Subparagraph a. or b. above.

6. **Employee Retirement Income Security Laws**:

Any liability, loss, cost, expense, or obligation of any **INSURED** under the United States of America Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or any similar law, as now constituted or hereafter amended.

7. **Employment-Related Practices**:

a. **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS, PERSONAL AND ADVERTISING INJURY,** or any other damages sustained at any time by any person, whether or not sustained in the course of employment by an **INSURED**, arising directly or indirectly out of any employment-related act, omission, policy, practice, or representation directed at such person, occurring in whole or in part at any time, including any:

(1) Arrest, detention, or imprisonment;

(2) Breach of any express or implied covenant;

(3) Coercion, criticism, humiliation, prosecution, or retaliation;

(4) Defamation or disparagement;

(5) Demotion, discipline, evaluation, or reassignment;

(6) Discrimination, harassment, or segregation;

(7) Eviction, invasion, or other violation of any right of occupancy;

(8) Failure or refusal to advance, compensate, employ, or promote;

(9) Invasion or other violation of any right of privacy or publicity;

(10) Termination of employment; or

(11) Other employment-related act, omission, policy, practice, representation, or relationship in connection with any **INSURED** at any time.

b. Any damages sustained by the spouse, child, parent, or sibling of such a person as a consequence of damages to that person at whom any Employment-Related Practice as described in Subparagraph a. is directed.

This Exclusion applies whether the **INSURED** may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

8. **Enhancement, Maintenance, or Capital Expenditures**:

Any loss, cost, or expense incurred by **YOU** or others after an **OCCURRENCE** or **POLLUTION INCIDENT**, for any:

a. Enhancement or maintenance of any property; or

MBI00079

b. Expenditure or improvement that would qualify as a **CAPITAL EXPENDITURE**.

9. Fungi or Bacteria:

    a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **FUNGI** or Bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

    b. Any loss, cost, or expense including, but not limited to, defense costs, **CLAIM** expenses, bonds, or fees arising out of:

        (1) Any **CLAIM**, **SUIT**, request, demand, or order that any **INSURED** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, **MITIGATE**, or in any way respond to or assess the effects of **FUNGI** or Bacteria; or repair, replace, or improve any property as a result of such effects; or

        (2) Any **CLAIM**, **SUIT**, request, demand, or order by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **FUNGI** or Bacteria; or repairing, replacing, or improving any property as a result of such effects.

10. Government Identified Contaminated Site:

**BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of any **GOVERNMENT IDENTIFIED CONTAMINATED SITE**.

11. Medical Expense:

Any liability, loss, cost, expense, or obligation of any **INSURED** under any Medical Expense coverage.

12. Nuclear Energy:

    a. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY**:

        (1) With respect to which an **INSURED** under this policy also has status as an **INSURED** under a Nuclear Energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would have had status as an **INSURED** under any such policy but for its termination upon exhaustion of its limits of insurance; or

        (2) Arising out of the **NUCLEAR HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which:

            (a) Any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amending that Act; or

            (b) Any **INSURED** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency of the United States of America with any person or organization.

    b. **BODILY INJURY**, **PROPERTY DAMAGE**, **POLLUTION CLEAN UP COSTS**, or **PERSONAL AND ADVERTISING INJURY** arising out of **NUCLEAR HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**:

        (1) If the **NUCLEAR MATERIAL**:

            (a) Is at any **NUCLEAR FACILITY** owned by, or operated by, or on behalf of, any **INSURED**;

            (b) Has been discharged or dispersed from that **NUCLEAR FACILITY**;

            (c) Is contained in **NUCLEAR SPENT FUEL** or **NUCLEAR WASTE** at any time transported, handled, stored, disposed of, processed, treated, possessed, or used by or on behalf of any **INSURED**; or

        (2) In any way related to the furnishing by an **INSURED** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **NUCLEAR FACILITY**. But if such facility is located within the United States of America (including its possessions or territories) or Canada, this Subparagraph (2), applies only to **NUCLEAR PROPERTY DAMAGE** to such **NUCLEAR FACILITY** and any property there at.

MBI00080

13. **Recall of Products, Work, or Impaired Property:**

Any loss, cost, or expense incurred by **YOU** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

a. **YOUR PRODUCT;**

b. **YOUR WORK;** or

c. **IMPAIRED PROPERTY;**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

14. **Recording and Distribution of Material or Information in Violation of Law:**

**BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003 including any amendment of or addition to such law;

c. The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law including the Fair and Accurate Credit Transactions Act (FACTA); or

d. Any federal, state, or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

15. **Securities or Financial Activities:**

Any loss, cost, or expense incurred by **YOU** for:

a. Any violation of any securities law or similar law, as now constituted or hereafter amended;

b. The providing or failure to provide financial, economic, or investment advice or management services;

c. Any representation made in relation to the price or value of any security, debt, insurance policy, bank deposit, financial interest, or instrument;

d. Any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit, financial interest, or instrument; or

e. An **INSURED**'s financial or security interest in property arising from loans made in connection with the property.

16. **Trade or Economic Sanctions:**

The extent that Trade or Economic Sanctions or other laws or regulations prohibit **US** from providing insurance, including, but not limited to, the payment of **CLAIMS.**

17. **War:**

**BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY,** however caused, arising out of **WAR.**

18. **Workers' Compensation or Similar Laws:**

Any obligation of the **INSURED** under any state or federal Workers' Compensation, disability benefits, or unemployment compensation law or any similar law.

B. **Coverage A – Excess Follow Form Liability Insurance Exclusions**

The following Exclusions apply to Section I.A. Coverage A – Excess Follow Form Liability Insurance;

This policy does not apply to:

1. **Below Ground Water Resources:**

Damages arising out of a **POLLUTION INCIDENT** affecting **BELOW GROUND WATER RESOURCES** or **POLLUTION CLEAN UP COSTS,** or any other loss, cost, or expense to investigate, quantify, test for, sample, monitor, abate, remove, dispose, clean up, treat, detoxify, decontaminate, neutralize, or immobilize **BELOW GROUND WATER RESOURCES.**

MBI00081

2. **Voluntary Pollution Clean Up Costs**:

POLLUTION CLEAN UP COSTS voluntarily incurred by or on behalf of any **INSURED**. This Exclusion does not apply to POLLUTION CLEAN UP COSTS resulting from an **ELIGIBLE POLLUTION INCIDENT** for which **YOU** are legally liable.

3. **Non-Concurrency**:

Whenever the policy period of any **UNDERLYING INSURANCE** is non-concurrent with the policy period of this policy, notwithstanding anything contained in this policy to the contrary, it is understood and agreed that the limits of **UNDERLYING INSURANCE** shall not be deemed eroded or exhausted by any payments for **OCCURRENCES** which commenced or first took place prior to the inception date of this policy, and shall be deemed reduced or exhausted only by payment of damages or POLLUTION CLEAN UP COSTS, in connection with **OCCURRENCES** which occur solely during the policy period.

C. **Coverage B – Umbrella Liability Insurance Exclusions**

The following Exclusions apply to Section I.B. Coverage B – Umbrella Liability Insurance:

This policy does not apply to:

1. **Aircraft, Auto, or Watercraft**:

BODILY INJURY or PROPERTY DAMAGE arising out of the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft owned or operated by, rented by, chartered by, or loaned to any **INSURED**. Use includes operation and **LOADING OR UNLOADING**.

This Exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **INSURED**, if the **OCCURRENCE** which caused the **BODILY INJURY** or **PROPERTY DAMAGE** involved the ownership, maintenance, use, or entrustment to others of any Aircraft, **AUTO**, or Watercraft that is owned or operated by, rented by, chartered by, or loaned to any **INSURED**.

2. **Breach of Contract**:

PERSONAL AND ADVERTISING INJURY arising out of a Breach of Contract.

3. **Contractual Liability**:

BODILY INJURY, PROPERTY DAMAGE, or PERSONAL AND ADVERTISING INJURY for which the **INSURED** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

4. **Control of Well**:

BODILY INJURY, PROPERTY DAMAGE, or CONTROL OF WELL EXPENSES arising out of a CONTROL OF WELL INCIDENT.

5. **Criminal Acts**:

PERSONAL AND ADVERTISING INJURY arising out of any Criminal Act or fraudulent conduct committed by, with the consent or knowledge of, or at the direction of the **INSURED**.

6. **Damage to Impaired Property or Property Not Physically Injured**:

PROPERTY DAMAGE to IMPAIRED PROPERTY or property that has not been physically injured, arising out of:

a. A defect, deficiency, inadequacy, or dangerous condition in **YOUR PRODUCT** or **YOUR WORK**; or

b. A delay or failure by **YOU** or anyone acting on **YOUR** behalf to perform a contract or agreement in accordance with its terms.

7. **Damage to Property**:

PROPERTY DAMAGE to:

a. Property **YOU** own, rent, or occupy including any loss, costs, or expenses incurred by **YOU** or any other person or organization, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

b. Premises **YOU** sell, give away, or abandon, if the **PROPERTY DAMAGE** arises out of any part of those premises;

c. Property loaned to **YOU**;

d. Personal property in the care, custody, or control of the **INSURED**;

MBI00082

e. That particular part of real property on which **YOU** or any contractors or subcontractors working directly or indirectly on **YOUR** behalf are performing operations, if the **PROPERTY DAMAGE** arises out of those operations; or

f. That particular part of any property that must be restored, repaired, or replaced because **YOUR WORK** was incorrectly performed on it.

**8. Damage to Your Work:**

Any **PROPERTY DAMAGE** to **YOUR WORK** arising out of it or any part of it and included in the **PRODUCTS-COMPLETED OPERATIONS HAZARD**.

**9. Electronic Chatrooms or Bulletin Boards:**

**PERSONAL AND ADVERTISING INJURY** arising out of an Electronic Chatroom or Bulletin Board the **INSURED** hosts, owns, or over which the **INSURED** exercises control.

**10. Employee Benefits:**

Any liability, damage, loss, cost, or expense imposed on any **INSURED** as a Fiduciary Administrator, or other party of interest, arising out of any **EMPLOYEE BENEFITS PROGRAM**, record handling in connection with any **EMPLOYEE BENEFITS PROGRAM**, or effecting or terminating any **EMPLOYEE**'s participation in any plan included in any **EMPLOYEE BENEFITS PROGRAM**.

**11. Employee, Volunteer, or Worker Injury:**

a. Any injury to an **EMPLOYEE** of any **INSURED** arising out of and in the course of employment by the **INSURED**;

b. Any injury to the spouse, child, parent, or sibling of that **EMPLOYEE** as a consequence to Subparagraph a. above; or

c. Any injury to a **VOLUNTEER WORKER** or **TEMPORARY WORKER** of any **INSURED** arising out of and in the course of employment by the **INSURED** or performing duties related to the conduct of the **INSURED**'s business.

This Exclusion applies whether the **INSURED** may be liable as an employer or in any other capacity, or to any obligation to share damages with or repay someone else who must pay damages because of an injury.

**12. Expected or Intended Injury:**

**BODILY INJURY** or **PROPERTY DAMAGE** expected or intended from the standpoint of the **INSURED**.

**13. Fines or Penalties:**

Any criminal, civil, or administrative fine or penalty.

**14. Infringement of Copyright, Patent, Trademark, or Trade Secret:**

**PERSONAL AND ADVERTISING INJURY** arising out of the Infringement of Copyright, Patent, Trademark, Trade Secret, or other intellectual property rights.

**15. Insureds In Media and Internet Type Businesses:**

a. **PERSONAL AND ADVERTISING INJURY** committed by an **INSURED** whose business is:

(1) Advertising, broadcasting, webcasting, publishing, or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content, or service provider.

b. **PERSONAL AND ADVERTISING INJURY** arising out of:

(1) Controlling, creating, designing, or developing of another's Internet site;

(2) Controlling, creating, designing, developing, determining, or providing the content or material of another's Internet site;

(3) Controlling, facilitating, or providing, or failing to control, facilitate, or provide, access to the Internet, or another's Internet site; or

(4) Publication of content or material on or from the Internet, other than material developed by **YOU** or at **YOUR** location.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00083

16. **Knowing Violation of Rights of Another**:

PERSONAL AND ADVERTISING INJURY caused by or at the direction of the INSURED with the knowledge that the act would violate the rights of another and would inflict PERSONAL AND ADVERTISING INJURY.

17. **Liquor Liability**:

BODILY INJURY or PROPERTY DAMAGE for which any INSURED may be held liable by reason of:

a. Causing or contributing to the intoxication of any person;

b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

18. **Material Published with Knowledge of Falsity**:

PERSONAL AND ADVERTISING INJURY arising out of oral or written publication, in any manner, of material, if done by or at the direction of the INSURED with knowledge of its falsity.

19. **Material Published Prior to Policy Period**:

PERSONAL AND ADVERTISING INJURY arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

20. **Mobile Equipment**:

Any BODILY INJURY or PROPERTY DAMAGE arising out of:

a. The transportation of MOBILE EQUIPMENT by an AUTO owned or operated by or rented or loaned to any INSURED; or

b. The use of MOBILE EQUIPMENT in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunt activity.

21. **Personal and Advertising Injury**:

BODILY INJURY arising out of PERSONAL AND ADVERTISING INJURY.

22. **Pollution**:

a. BODILY INJURY, PROPERTY DAMAGE, or PERSONAL AND ADVERTISING INJURY arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of POLLUTANTS.

b. This policy does not apply to any loss, cost, or expense arising out of any:

(1) Request, demand, order, or statutory or regulatory requirement that any INSURED or others, identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or MITIGATE, or in any way respond to or assess the effects of POLLUTANTS; or

(2) CLAIM, SUIT, or proceeding by or on behalf of a governmental authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating, or in any way responding to or assessing the effects of POLLUTANTS.

This Exclusion applies regardless of whether or not the POLLUTION INCIDENT was accidental, expected, gradual, intended, preventable, or sudden.

23. **Professional Services**:

BODILY INJURY, PROPERTY DAMAGE, or PERSONAL AND ADVERTISING INJURY arising out of the providing of or failing to provide any PROFESSIONAL SERVICES.

24. **Quality or Performance of Goods – Failure to Conform to Statements**:

PERSONAL AND ADVERTISING INJURY arising out of the failure of goods, products, or services to conform to any statement of quality or performance made in YOUR ADVERTISEMENT.

25. **Removal of Wreck**:

Any loss, cost, or expense for the removal of wreckage or debris.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission © Berkley Oil & Gas, 2014*

MBI00084

26. <u>Unauthorized Use of Another's Name or Product</u>:

PERSONAL AND ADVERTISING INJURY arising out of the Unauthorized Use of Another's Name or Product in YOUR e-mail address, domain name, metatag, or any other similar tactics to mislead another's potential customers.

27. <u>Wrong Description of Prices</u>:

PERSONAL AND ADVERTISING INJURY arising out of the wrong description of the price of goods, products, or services stated in YOUR ADVERTISEMENT.

28. <u>Disclosure of or Access to Confidential or Personal Information</u>:

PERSONAL AND ADVERTISING INJURY arising out of any disclosure of or access to any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information.

This Exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by YOU or others arising out of any disclosure of or access to any person's or organization's confidential or personal information.

## VIII.   GENERAL CONDITIONS

### A.   Appeals

If the UNDERLYING INSURER or INSURED elects not to appeal a judgment in excess of the underlying limits or SELF-INSURED RETENTION, WE may do so at OUR own expense.  WE will be liable for taxable costs and prejudgment and Post Judgment Interest.

### B.   Bankruptcy

1. Bankruptcy or insolvency of the INSURED or of the INSURED's estate will not relieve US of OUR obligations under this policy.

2. Bankruptcy of the UNDERLYING INSURER will not relieve US of OUR obligations under this policy.

However, this policy will not replace the UNDERLYING INSURANCE in the event of Bankruptcy or insolvency of the UNDERLYING INSURER.  This policy will apply as if the UNDERLYING INSURANCE were in full effect.

### C.   Cancellation

1. The first NAMED INSURED shown on the Declarations Page may cancel this policy by mailing or delivering to US advance written notice of Cancellation.

2. WE may cancel this policy by mailing or delivering to the first NAMED INSURED written notice of Cancellation at least:

   a.   10 days before the effective date of Cancellation if WE cancel for nonpayment of premium; or

   b.   60 days before the effective date of Cancellation if WE cancel for any other reason.

3. WE will mail or deliver OUR notice to the first NAMED INSURED's last mailing address known to US.

4. Notice of Cancellation will state the effective date of Cancellation.  The policy period will end on that date.

5. If this policy is cancelled, WE will send the first NAMED INSURED any premium refund due.  If WE cancel, the refund will be pro rata.  If the first NAMED INSURED cancels, the refund may be less than pro rata.  The Cancellation will be effective even if WE have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### D.   Changes

This policy contains all the agreements between YOU and US concerning the insurance afforded.  The first NAMED INSURED shown on the Declarations Page is authorized to make Changes in the terms of this policy with OUR consent.  This policy's terms can be amended or waived only by endorsement issued by US and made a part of this policy.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00085

Section VIII General Conditions

E.  **Duties in the Event of Occurrence, Offense, Claim, or Suit**

1.  YOU must see to it that BERKLEY OIL & GAS is notified as soon as practicable of any OCCURRENCE or any offense which may result in a CLAIM. To the extent possible, notice should include:

    a.  How, when, and where the OCCURRENCE or offense took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the OCCURRENCE or offense.

2.  If a CLAIM is made or SUIT is brought against any INSURED, YOU must:

    a.  Immediately record the specifics of the CLAIM or SUIT and the date received; and

    b.  Notify US and see to it that BERKLEY OIL & GAS receives written notice of the CLAIM or SUIT as soon as practicable.

3.  YOU and any other involved INSURED must:

    a.  Immediately send BERKLEY OIL & GAS copies of any demands, notices, summonses, or legal papers received in connection with the CLAIM or SUIT;

    b.  Authorize BERKLEY OIL & GAS to obtain records and other information;

    c.  Cooperate with BERKLEY OIL & GAS in the investigation or settlement of the CLAIM or defense against the SUIT; and

    d.  Assist BERKLEY OIL & GAS, upon request, in the enforcement of any right against any person or organization which may be liable to the INSURED because of injury or damage to which this policy may also apply.

4.  No INSURED will, except at that INSURED's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without consent of BERKLEY OIL & GAS.

5.  If a CONTROL OF WELL INCIDENT occurs, YOU agree, at YOUR own cost or expense, to promptly and diligently take any steps legally required or necessary to engage in CONTROL OF WELL ACTIVITIES to remedy the problem.

In the event of a CLAIM, call 1.877.515.CLMS (1.877.515.2567).

F.  **Duties in the Event of a Pollution Incident**

1.  YOU must take reasonable steps to MITIGATE the damage because of the POLLUTANTS and commence the clean up of POLLUTANTS. Any cost, expense, or payment incurred for the clean up of POLLUTANTS must be reasonable and necessary.

2.  YOU must notify BERKLEY OIL & GAS no later than 90 days (or 120 days if YOU are a NON-OPERATING WORKING INTEREST owner) from the date when any INSURED, AGENT, OPERATOR, or OIL OR GAS SITE CONTRACTOR first gained knowledge of the POLLUTION INCIDENT. The notice should include:

    a.  The date and time the POLLUTION INCIDENT commenced;

    b.  The date and time the POLLUTION INCIDENT was discovered by any INSURED, AGENT, OPERATOR, or OIL OR GAS SITE CONTRACTOR and the identification of the person who first discovered the POLLUTION INCIDENT;

    c.  Where the POLLUTION INCIDENT took place;

    d.  The identification and quantity of the POLLUTANTS involved in the POLLUTION INCIDENT; and

    e.  The nature and location of any injury or damage arising out of the POLLUTION INCIDENT.

3.  If a CLAIM is made or SUIT is brought against any INSURED arising out of a POLLUTION INCIDENT, YOU must:

    a.  Immediately record the specifics of the CLAIM or SUIT and the date received; and

    b.  Notify US and see to it that BERKLEY OIL & GAS receives written notice of the CLAIM or SUIT as soon as practicable.

4.  YOU and any other involved INSURED must:

    a.  Immediately send BERKLEY OIL & GAS copies of any demands, notices, summonses, or legal papers received in connection with the CLAIM or SUIT;

MBI00086

b. Authorize **BERKLEY OIL & GAS** to obtain records and other information;

c. Cooperate with **BERKLEY OIL & GAS** in the investigation or settlement of the **CLAIM** or defense against the **SUIT**; and

d. Assist **BERKLEY OIL & GAS** upon request, in the enforcement of any right against any person or organization which may be liable to the **INSURED** because of **POLLUTION CLEAN UP COSTS**, injury or damage to which this policy may also apply.

In the event of a **POLLUTION INCIDENT**, call 1.877.515.CLMS (1.877.515.2567).

G. **Examination of Your Books and Records**

**WE** may examine and audit **YOUR** books and records as they relate to this policy at any time during the policy period and up to three years afterward.

H. **Expanded Coverage Territory**

1. If a **SUIT** is brought in a part of the Coverage Territory that is outside the United States of America (including its territories and possessions), Puerto Rico, or Canada, and **WE** are prevented by law, or otherwise, from defending the **INSURED**, the **INSURED** will initiate a defense of the **SUIT**. **WE** will reimburse the **INSURED**, under Section VI. Supplementary Payments and Defense, for any reasonable and necessary expenses incurred for the defense of a **SUIT** seeking damages to which this policy applies, that **WE** would have paid had **WE** been able to exercise **OUR** right and duty to defend.

   If the **INSURED** becomes legally obligated to pay sums because of damages to which this policy applies in a part of the Coverage Territory that is outside the United States of America (including its territories and possessions), Puerto Rico, or Canada, and **WE** are prevented by law, or otherwise, from paying such sums on the **INSURED**'s behalf, **WE** will reimburse the **INSURED** for such sums.

2. All payments or reimbursements **WE** make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the **INSURED** became legally obligated to pay such sums. All payments or reimbursements **WE** make for expenses under Section VI. Supplementary Payments and Defense will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

3. Any disputes between **YOU** and **US** as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico, or Canada.

4. The **INSURED** must fully maintain any coverage required by law, regulation, or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of **CLAIMS**, judgments, or settlements. Failure to maintain such coverage required by law, regulation, or other governmental authority will not invalidate this policy. However, this policy will apply as if the required coverage by law, regulation, or other governmental authority was in full effect.

I. **Independent Counsel**

In the event **YOU** are entitled by law to select Independent Counsel to defend **YOU** at **OUR** expense, the attorney fees and all other litigation expenses **WE** must pay to that counsel are limited to the rates **WE** actually pay to counsel **WE** retain in the ordinary course of **OUR** business in the defense of **CLAIMS** or **SUITS** similar to the one against **YOU**, and to require such counsel to have malpractice insurance coverage. As respects any such counsel, **YOU** agree that **YOU** and that counsel will respond timely to **OUR** request for information regarding the **CLAIM** or **SUIT** to the extent allowable by law. Furthermore, the **INSURED** may at any time, by its signed consent, freely and fully waive its right to select Independent Counsel.

J. **Inspections and Surveys**

1. **WE** have the right to:

   a. Make Inspections and Surveys at any time;

   b. Give **YOU** reports on the conditions **WE** find; and

   c. Recommend changes.

2. **WE** are not obligated to make any inspections, surveys, reports, or recommendations, and any such actions **WE** do undertake relate only to insurability and the premiums to be charged. **WE** do not make safety inspections. **WE** do not

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00087

undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. In addition, **WE** do not warrant that conditions:

    **a.**    Are safe or healthful; or

    **b.**    Comply with laws, regulations, codes, or standards.

**3.**    Paragraphs 1. and 2. of this condition apply not only to **US**, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports, or recommendations.

**4.**    Paragraph 2. of this condition does not apply to any inspections, surveys, reports, or recommendations **WE** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels, or elevators.

**K.**  **Legal Action Against Us**

No person or organization has a right under this policy:

**1.**    To join **US** as a party or otherwise bring **US** into a **SUIT** asking for damages or **POLLUTION CLEAN UP COSTS** from an **INSURED**; or

**2.**    To sue **US** on this policy unless all of its terms have been fully complied with.

A person or organization may sue **US** to recover on an **AGREED SETTLEMENT** or on a final judgment against an **INSURED**; but **WE** will not be liable for damages or **POLLUTION CLEAN UP COSTS** that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.

**L.**  **Maintenance of Underlying Insurance**

During the period of this policy, **YOU** agree:

**1.**    To keep the policies listed in the Schedule of **UNDERLYING INSURANCE** in full force and effect;

**2.**    That the Limits Of Insurance of the policies listed in the Schedule of **UNDERLYING INSURANCE** will be maintained except for any reduction or exhaustion of limits by payment of settlements or judgments covered by **UNDERLYING INSURANCE**;

**3.**    The policies listed in the Schedule of **UNDERLYING INSURANCE** may not be cancelled or not renewed by **YOU** without notifying **US**, and **YOU** agree to notify **US** in the event an insurance company cancels or declines to renew any policy listed in the Schedule of **UNDERLYING INSURANCE**; and

**4.**    The policies listed in the Schedule of **UNDERLYING INSURANCE** shall not be materially changed by endorsement, renewal, or replacement without **OUR** agreement.

If **YOU** fail to comply with these requirements, **WE** will only be liable to the same extent that **WE** would have been had **YOU** fully complied with these requirements.

**M.**  **Nonrenewal**

If **WE** decide not to renew this policy, **WE** will mail or deliver to the first **NAMED INSURED** shown on the Declarations Page written notice of the Nonrenewal not less than 60 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

**N.**  **Other Insurance**

If **OTHER INSURANCE** applies to damages or **POLLUTION CLEAN UP COSTS** that are also covered by this policy, this policy will apply excess of the **OTHER INSURANCE**. Nothing herein will be construed to make this policy subject to the terms, conditions, and limitations of such **OTHER INSURANCE**.

With respect to Coverage A only, this policy will apply prior to and be **NON-CONTRIBUTORY** to any valid and collectible insurance, other than **UNDERLYING INSURANCE**, if **YOU** have agreed prior to loss, in a written contract or written agreement, in effect during the policy period, that this policy will apply prior to and be **NON-CONTRIBUTORY**, but the insurance provided will not exceed the lesser of:

**1.**    The coverage, terms, and/or limits of this policy;

**2.**    The coverage, terms, and/or limits required by said written contract or written agreement.

This condition will not apply if the **OTHER INSURANCE** is written to be excess of this policy.

MBI00088

**O. Premiums**

The first **NAMED INSURED** shown on the Declarations Page:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums **WE** pay.

**P. Premium Audit**

The premium for this policy as stated on the Declarations Page is a flat premium. It is not subject to adjustment by audit unless a Premium Audit endorsement is attached to this policy.

**Q. Representations**

By accepting this policy, **YOU** agree that:

1. The statements on the Declarations Page are accurate and complete;

2. Those statements are based upon Representations **YOU** made to **US**;

3. **WE** have issued this policy in reliance upon **YOUR** Representations; and

4. **YOUR** failure to disclose all hazards or prior **OCCURRENCES**, **POLLUTION INCIDENTS**, or offenses existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards, prior **OCCURRENCES**, **POLLUTION INCIDENTS**, or offenses is not intentional or willful.

**R. Separation of Insureds**

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this policy to the first **NAMED INSURED**, this policy applies:

1. As if each **NAMED INSURED** were the only **NAMED INSURED**; and

2. Separately to each **INSURED** against whom **CLAIM** is made or **SUIT** is brought.

**S. Transfer of Defense**

When the limits of **UNDERLYING INSURANCE** have been used up in the payment of judgments or settlements, the duty to defend will be transferred to **US**. **YOU** will cooperate in the transfer of control to **US** of any outstanding **CLAIMS** or **SUITS** seeking damages or **POLLUTION CLEAN UP COSTS** to which this policy applies which would have been covered by the **UNDERLYING INSURANCE** had the applicable limit not been used up.

**T. Transfer of Rights of Recovery Against Others to Us and Waiver of Subrogation**

If the **INSURED** has rights to recover all or part of any payment, **WE** have made under this policy, those rights are transferred to **US**. The **INSURED** must do nothing after the **OCCURRENCE**, **POLLUTION INCIDENT**, or offense, to impair them. At **OUR** request, the **INSURED** will bring **SUIT** or transfer those rights to **US** and help **US** enforce them.

However, **WE** agree to waive **OUR** right of recovery against any person or organization with whom **YOU** have agreed, by written contract or written agreement in effect during the policy period and executed before the **OCCURRENCE**, **POLLUTION INCIDENT**, or offense, to waive those rights of recovery.

**U. Use of Titles**

The titles to the various sections, subsections, paragraphs, subparagraphs, and endorsements of this policy are intended solely for ease of reference and do not in any way limit, expand, or otherwise affect the provisions of such sections, subsections, paragraphs, subparagraphs, and endorsements.

**V. When Damages are Payable**

Coverage under this policy will not apply until the **INSURED**, or the **INSURED'S UNDERLYING INSURER** has paid or has become obligated to pay the full amount of the limits of **UNDERLYING INSURANCE** or **SELF-INSURED RETENTION**.

When the amount of damages is determined by an **AGREED SETTLEMENT** or on a final judgment against an **INSURED** obtained after an actual trial, **WE** will promptly pay on behalf of the **INSURED** the amount of damages covered under the terms of this policy. The first **NAMED INSURED** will promptly reimburse **US** for any amount within the **SELF-INSURED RETENTION** paid by **US**.

MBI00089

## IX.   DEFINITIONS

**ACID RAIN** means rain containing high concentrations of acids, including, but not limited to, sulfur dioxide and nitrogen oxides.

**ADVERTISEMENT** means a notice that is broadcast or published to the general public or specific market segments about **YOUR** goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this Definition:
a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
b. Regarding websites, only that part of a website that is about **YOUR** goods, products, or services for the purposes of attracting customers or supporters is considered an **ADVERTISEMENT**.

**AGENT** means a person or persons authorized by **YOU** to act on **YOUR** behalf in relation to **YOUR** oil, gas, or other mineral properties.

**AGREED SETTLEMENT** means a settlement and release of liability signed by **US**, the **INSURED**, and the claimant or the claimant's **LEGAL REPRESENTATIVE**.

**ASBESTOS** means **ASBESTOS** in any form, including, but not limited to, asbestos-containing products, asbestos fibers, and asbestos dust, and including its presence or use in any alloy, by-product, or other material or **WASTE**.

**AUTO** means:
a. A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
However, **AUTO** does not include **MOBILE EQUIPMENT**.

**BELOW GROUND WATER RESOURCES** means any underground source of water, or water contained in any geologic level below the surface, including, but not limited to, aquifers, springs, underground rivers, ground water, or formation water. **BELOW GROUND WATER RESOURCES** does not mean any equipment, device casing, or piping used to bring **BELOW GROUND WATER RESOURCES** above ground.

**BERKLEY OIL & GAS** means the entity that performs underwriting and claims services for this policy.

**BODILY INJURY** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. **BODILY INJURY** includes mental anguish or other mental injury to that person sustaining physical injury.

**CAPITAL EXPENDITURE** means either money voluntarily spent or a charge voluntarily incurred for additions, improvements, repairs, or betterments to equipment or real property. **CAPITAL EXPENDITURE** includes, but is not limited to, money spent or a charge incurred for

the purpose of complying with any order or request of any regulatory agency that is intended, in whole or in part, to prevent or **MITIGATE** future **POLLUTION INCIDENTS**.

**CLAIM** means a request or demand received by **YOU** for monetary damages or **POLLUTION CLEAN UP COSTS**.

**CONTROL OF WELL ACTIVITIES** means:
a. Controlling or bringing under control;
b. Drilling of any relief, replacement, or substitute well or hole for; or
c. Extinguishing a fire in, at, or from;
any oil, gas, mineral, geothermal, or water well(s) and/or hole where a **CONTROL OF WELL INCIDENT** has taken place.

**CONTROL OF WELL EXPENSES** means costs or expenses of controlling or bringing under control any oil, gas, mineral, geothermal, or water well(s) and/or hole, up to and including, without limitation:
a. Expenses incurred in extinguishing fire in or from such well(s); and
b. Costs and expenses incurred in drilling relief oil, gas, mineral, geothermal, or water well(s);
and/or hole(s) whether or not such relief well(s) or hole(s) is successful.

**CONTROL OF WELL INCIDENT** means an unintended flow of drilling fluid, oil, gas, or water from any oil, gas, mineral, geothermal, or water well(s) and/or hole, that cannot be controlled by a blowout preventer, storm chokes, other equipment, or control measures.

**ELECTRONIC DATA** means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, or any other media which are used with electronically controlled equipment.

**ELIGIBLE POLLUTION INCIDENT** means any **POLLUTION INCIDENT** that meets the following requirements:
a. The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;
b. The **POLLUTION INCIDENT** is abrupt and instantaneous and can be identified as having first commenced on a specific date during the policy period;
c. **YOU** must take reasonable action to end the **POLLUTION INCIDENT** as soon as possible;
d. The **POLLUTION INCIDENT** was known by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and
e. The **POLLUTION INCIDENT** must meet the following requirements:
(1) The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS** no later than 90 days from the

MBI00090

date of knowledge of the commencement of the **POLLUTION INCIDENT**; or

(2) If **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS** no later than 120 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

**EMPLOYEE** includes a **LEASED WORKER**. **EMPLOYEE** does not include a **TEMPORARY WORKER**.

**EMPLOYEE BENEFITS PROGRAM** means any group life insurance, group accident or health insurance, profit sharing plans, pension plans, stock subscription plans, unemployment insurance, social security benefits, workers' compensation, and disability benefits and any other similar plans.

**EXECUTIVE OFFICER** means a person holding any of the officer positions created by **YOUR** charter, constitution, by-laws, or any other similar governing document.

**FUNGI** means any type or form of fungus, including mold or mildew or any mycotoxins, spores, scents, or byproducts produced or released by **FUNGI**.

**GOVERNMENT IDENTIFIED CONTAMINATED SITE** means any premises, site, or location that has been placed on, proposed for placement, or otherwise identified with the National Priorities List of the Comprehensive Environmental Response, Compensation, and Liability Act; Superfund Amendments and Reauthorization Act, or any other similar state or national governmental authority's legislation creating a priority list for the clean up of **POLLUTANTS**.

**HOSTILE FIRE** means one which becomes uncontrollable or breaks out from where it was intended to be.

**IMPAIRED PROPERTY** means tangible property, other than **YOUR PRODUCT** or **YOUR WORK**, that cannot be used or is less useful because:

a. It incorporates **YOUR PRODUCT** or **YOUR WORK**, that is known or thought to be defective, deficient, inadequate, or dangerous; or

b. **YOU** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment, or removal of **YOUR PRODUCT** or **YOUR WORK**, or **YOUR** fulfilling the terms of the contract or agreement.

**INDEMNITEE** means a person or organization that **YOU** have agreed under a written contract or written agreement to indemnify or hold harmless.

**INSURED** means:

a. For Coverage A – Excess Follow Form Liability Insurance, a person or organization qualifying as an **INSURED** in Section III.A.2. of this policy.

b. For Coverage B – Umbrella Liability Insurance, a person or organization qualifying as an **INSURED** in Section III.B.2. of this policy.

**INSURED CONTRACT** means that part of any written contract or written agreement pertaining to **YOUR** business under which any **INSURED** assumes the tort liability of another party to pay damages to a third person or organization, provided the injury or damage occurs, or is caused by an offense that is first committed after the execution of such written contract or written agreement. Tort liability means a liability that would be imposed by law in the absence of any written contract or written agreement.

**LEAD** means **LEAD** in any form, including, but not limited to, lead-containing products, and lead dust, and including its presence or use in any product, alloy, by-product, or other material or **WASTE**.

**LEASED WORKER** means a person leased to **YOU** by a labor leasing firm under a written agreement between **YOU** and the labor leasing firm, to perform duties related to the conduct of **YOUR** business. **LEASED WORKER** does not include a **TEMPORARY WORKER**.

**LEGAL REPRESENTATIVE** means any person, executor, or trustee appointed by **YOU**, or by operation of law or a court, to act on **YOUR** behalf after **YOUR** death.

**LOADING OR UNLOADING** means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an Aircraft, **AUTO**, or Watercraft;

b. While it is in or on an Aircraft, **AUTO**, or Watercraft; or

c. While it is being moved from an Aircraft, **AUTO**, or Watercraft to the place where it is finally delivered;

but **LOADING OR UNLOADING** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the Aircraft, **AUTO**, or Watercraft.

**MANAGERS** means the individual or individuals designated in **YOUR** governing documents to act as **MANAGER**.

**MEMBERS** means persons or entities designated in **YOUR** governing documents as **MEMBERS** or other such terminology that establishes ownership.

**METATAG** means hidden or embedded text or code that is not seen by persons viewing the website, but that operates to attract search engines to that site.

**MITIGATE** means take the actions necessary to avoid additional damages, loss, cost, or expense.

**MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises **YOU** own or rent;

c. Vehicles that travel on crawler treads;

MBI00091

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
   (1) Power cranes, shovels, loaders, diggers, or drills; or
   (2) Road construction or resurfacing equipment such as graders, scrapers, or rollers;
e. Vehicles not described in Paragraph a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
   (1) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or
   (2) Cherry pickers and similar devices used to raise or lower workers;
f. Vehicles not described in Paragraph a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.   However, self-propelled vehicles with the following types of permanently attached equipment are not **MOBILE EQUIPMENT** but will be considered **AUTOS**:
   (1) Equipment designed primarily for:
       (a) Snow removal;
       (b) Road maintenance, but not construction or resurfacing; or
       (c) Street cleaning;
   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   (3) Air compressors, pumps, and generators including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.

However, **MOBILE EQUIPMENT** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.   Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **AUTOS**.

**NAMED INSURED** means:
a. For Coverage A – Excess Follow Form Liability Insurance, a person or organization qualifying as a **NAMED INSURED** in Section III.A.1. of this policy.
b. For Coverage B – Umbrella Liability Insurance, a person or organization qualifying as a **NAMED INSURED** in Section III.B.1. of this policy.

**NAMED STORM** means a storm system that has been declared a tropical storm or hurricane and assigned a name by the National Hurricane Center or the Central Pacific Hurricane Center of the National Weather Service (hereafter referred to as NHC and CPHC). For purposes of this policy, a **NAMED STORM** begins at the time a Watch or Warning is issued by the NHC or CPHC for the area in which the affected premises are located, and ends 72 hours after the termination of the last Watch or Warning issued for that area by the NHC or CPHC.

**NON-CONTRIBUTORY** means that other available insurance will apply as excess and will not contribute as primary to the insurance provided by this policy.

**NON-OPERATING WORKING INTEREST** means an interest in the ownership of and participation in the operating expenses of an oil, gas, or other mineral property, that is owned by a person or organization who is not designated as **OPERATOR** of that property and who is without operating rights of that property.

**NUCLEAR FACILITY** means any:
a. **NUCLEAR REACTOR;**
b. Equipment or device designed or used for separating the isotopes of plutonium or uranium; processing or utilizing **NUCLEAR SPENT FUEL;** or handling, processing or packaging **NUCLEAR WASTE;**
c. Equipment or device used for the processing, fabricating, or alloying of **NUCLEAR MATERIAL,** if at any time the total amount of such material in the custody of the **INSURED** at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233, or any combination thereof; or two hundred-fifty (250) grams of uranium 235; or
d. Structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **NUCLEAR WASTE;**
and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations.

**NUCLEAR HAZARDOUS PROPERTIES** means radioactive, toxic, or explosive properties.

**NUCLEAR MATERIAL** means by-product material, source material, special **NUCLEAR MATERIAL,** or naturally occurring **RADIOACTIVE MATERIAL,** including, but not limited to, that naturally occurring **RADIOACTIVE MATERIAL** referred to as NORM or the technically enhanced naturally occurring **RADIOACTIVE MATERIAL** referred to as TNORM.   By-product material, source material, or special **NUCLEAR MATERIAL** have the meaning given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

**NUCLEAR PROPERTY DAMAGE** includes all forms of radioactive contamination of property.

**NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**NUCLEAR SPENT FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR.**

**NUCLEAR WASTE** means any **WASTE** material containing **NUCLEAR MATERIAL,** and resulting from the operation by any person or organization of any **NUCLEAR FACILITY** described in Paragraphs a. and b. of the definition of **NUCLEAR FACILITY.**

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00092

**OCCURRENCE** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**OIL OR GAS SITE** means any site, location, or premises at which **YOU** or any person or organization acting on **YOUR** behalf is conducting oil, gas, or other mineral exploration or production activities. **OIL OR GAS SITE** does not include any location used for office or administrative purposes or storage or maintenance of any vehicles or equipment.

**OIL OR GAS SITE CONTRACTOR** means any person or entity that has been contracted by **YOU** or on **YOUR** behalf to operate, maintain, test, or gauge any well, tank, or other equipment related to any of **YOUR** oil, gas, or other mineral properties.

**OPERATOR** means any person or entity that is designated to manage, control, and operate oil, gas, or other mineral properties.

**OTHER INSURANCE** means a policy of insurance providing coverage that this policy also provides. **OTHER INSURANCE** includes any type of self-insurance or other mechanisms by which an **INSURED** arranges for funding of legal liabilities. **OTHER INSURANCE** does not include **UNDERLYING INSURANCE** or a policy of insurance specifically purchased to be excess of this policy providing coverage that this policy also provides.

**OUR** means the company listed on the Declarations Page of this policy that insures **YOU**.

**PAYMENT OBLIGATION** means those sums which the **INSURED** becomes legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.

**PERSONAL AND ADVERTISING INJURY** means injury, including consequential **BODILY INJURY**, arising out of one or more of the following offenses:

    a. False arrest, detention, or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in **YOUR ADVERTISEMENT**; or

    g. Infringing upon another's copyright, trade dress, or slogan in **YOUR ADVERTISEMENT**.

**POLLUTANTS** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and **WASTE**.

**POLLUTION CLEAN UP COSTS** means reasonable and necessary expenses incurred to:

    a. Investigate an **ELIGIBLE POLLUTION INCIDENT**;

    b. Abate, remove, dispose, treat, neutralize, or immobilize **POLLUTANTS**; or

    c. Monitor for the effect of the **POLLUTANTS** related to an **ELIGIBLE POLLUTION INCIDENT** and subsequent to such event;

that are submitted to **US** within one year of completion of any particular work of cleaning up **POLLUTANTS** related to an **ELIGIBLE POLLUTION INCIDENT**.

Reasonable and necessary expenses shall not include:

    a. Any additional loss, cost, or expense incurred for the processing, reclamation, recovery, separation, or salvage of oil or gas in order to sell, distribute, use, or store the oil or gas;

    b. Any loss, cost, or expense for the removal of wreckage or debris of **YOUR** oil or gas platform, arising from a **NAMED STORM**; or

    c. **YOUR CONTROL OF WELL EXPENSES**.

**POLLUTION INCIDENT** means the emission, discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**.

**PRODUCTS-COMPLETED OPERATIONS HAZARD**

    a. Includes all **BODILY INJURY** and **PROPERTY DAMAGE** occurring away from premises **YOU** own or rent and arising out of **YOUR PRODUCT** or **YOUR WORK** except:

        (1) Products that are still in **YOUR** physical possession; or

        (2) Work that has not yet been completed or abandoned. However, **YOUR WORK** will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in **YOUR** contract has been completed;

            (b) When all of the work to be done at the job site has been completed if **YOUR** contract calls for work at more than one job site; or

            (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include **BODILY INJURY** or **PROPERTY DAMAGE** arising out of:

        (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by **YOU**, and that condition was created by the **LOADING OR UNLOADING** of that vehicle by any **INSURED**;

        (2) The existence of tools, uninstalled equipment, or abandoned or unused materials; or

        (3) Products or operations for which the classification in **OUR** rules indicates that such products or completed operations are not subject to Products-Completed Operations Hazard Limit.

MBI00093

**PROFESSIONAL SERVICES** means technical or unique functions performed by persons or organizations whose occupation is the rendering of such services and for which such services are rendered pursuant to a license, certificate, or other credential issued by federal, state, or local governments. **PROFESSIONAL SERVICES**, include, but are not limited to: accounting; architecture; dentistry; engineering; funeral and embalming services; landscape architecture; land surveying; legal; medicine, including nursing and allied health professions; optometry; pharmacy; real estate; real estate appraising; preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or supervisory or inspection activities performed as part of any related architectural or engineering activities.

**PROPERTY DAMAGE** means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **OCCURRENCE** that caused it.

For the purposes of this policy, **ELECTRONIC DATA** is not tangible property.

**RADIOACTIVE MATERIAL** means any solid, liquid, or gaseous substance which emits radiation, including, but not limited to, naturally occurring **RADIOACTIVE MATERIAL** (NORM) or technically enhanced naturally occurring **RADIOACTIVE MATERIAL** (TNORM).

**SELF-INSURED RETENTION** means the amount of damages applicable to each **OCCURRENCE** for which the **INSURED** is responsible that is shown on the Declarations Page.

**SILICA** means silicon dioxide (occurring in crystalline, amorphous, and impure forms), silica particles, and silica dust, or silica compounds.

**SILICA-RELATED DUST** means a mixture or combination of **SILICA** and other dust or particles.

**SUIT** means a civil proceeding where **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** to which this policy applies are alleged. **SUIT** includes:
a. An arbitration proceeding in which damages or **POLLUTION CLEAN UP COSTS** are claimed and to which the **INSURED** must submit or does submit with **OUR** consent; or
b. Any other alternative dispute resolution proceeding in which damages or **POLLUTION CLEAN UP COSTS** are claimed and to which the **INSURED** submits with **OUR** consent.

**TEMPORARY WORKER** means a person who is furnished to **YOU** to substitute for a permanent **EMPLOYEE** on leave or to meet seasonal or short-term workload conditions.

**UNDERLYING INSURANCE** means the policy or policies of insurance listed in the Schedule of **UNDERLYING INSURANCE** forming a part of this policy.

**UNDERLYING INSURER** means any insurer who provides any policy of insurance listed in the Schedule of **UNDERLYING INSURANCE**.

**US** means the company listed on the Declarations Page of this policy that insures **YOU**.

**VOLUNTEER WORKER** means a person who is not **YOUR EMPLOYEE**, and who donates his or her work and acts at the direction of and within the scope of duties determined by **YOU**, and is not paid a fee, salary, or other compensation by **YOU** or anyone else for their work performed for **YOU**.

**WAR** means a declared **WAR**, undeclared **WAR**, or civil **WAR**; warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**WASTE** means discarded, unusable, or unwanted substances or materials and includes materials to be disposed of, recycled, reconditioned, or reclaimed. Fluids or substances at **YOUR OIL OR GAS WASTE SITE**, including, but not limited to, drilling mud, saltwater, and produced fluids, injected or recovered from the **WELL BORE** at **YOUR OIL OR GAS SITE**, will not be included in the meaning of **WASTE**.

**WE** means the company listed on the Declarations Page of this policy that insures **YOU**.

**WELL BORE** means any oil, gas, mineral, geothermal or water well, hole, or formation; strata; or area; along with any permanently attached casing, tubing, or piping in or through which exploration for or production of any substance is carried on.

**YOU** means the **NAMED INSURED**(S).

**YOUR** means belonging to the **NAMED INSURED**.

**YOUR PRODUCT**
a. Means:
   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:
      (a) **YOU**;
      (b) Others trading under **YOUR** name; or
      (c) A person or organization whose business or assets **YOU** have acquired; and
   (2) Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.
b. Includes:
   (1) Warranties or representations made at any time with

*Includes copyrighted material of Insurance Services Office, Inc., with its permission*
© Berkley Oil & Gas, 2014

MBI00094

respect to the fitness, quality, durability, performance, or use of **YOUR PRODUCT**; and

    (2) The providing of or failure to provide warnings or instructions.

c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

**YOUR WORK**

a.  Means:

    (1) Work or operations performed by **YOU** or on **YOUR** behalf; and

    (2) Materials, parts, or equipment furnished in connection with such work or operations.

b.  Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of **YOUR WORK**; and

    (2) The providing of or failure to provide warnings or instructions.

*Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission*
© Berkley Oil & Gas, 2014

MBI00095

## X.    INDEX

Acid Rain.................................................9, 21
Agreed Settlement .............................19, 20, 21
Aircraft................................................13, 22
Asbestos ....................................................9, 21
Auto.........................7, 9, 10, 13, 15, 21, 22, 23
Breach of Contract...................................13
Capital Expenditures.........................10, 11, 21
Contractual Liability....................................13
Control of Well Activities.......................17, 21
Control of Well Expenses.................13, 21, 24
Control of Well Incident.....................13, 17, 21
Coverage Territory ...............................3, 6, 18
Criminal Acts................................................13
Damage to Impaired Property...................13
Damage to Property ................................5, 13
Damage to Your Product ...........................10
Damage to Your Work ..............................14
Definitions .................................................21
Duties in the Event of a Pollution Incident ..........17
Duties in the Event of Occurrence .............17
Duty to Defend ..............................7, 8, 18, 20
Electronic Data...............................10, 21, 25
Eligible Pollution Incident...........3, 4, 7, 8, 13, 21, 24
Employee ........................3, 4, 5, 6, 14, 22, 25
Employment-Related Practices.....................10
Excess .................3, 4, 6, 7, 8, 9, 12, 16, 19, 22, 23, 24
Executive Officer...........................3, 4, 5, 6, 22
Expected or Intended Injury ......................14
Fines or Penalties .................................8, 14
Fungi or Bacteria.................................11, 22
Government Identified Contaminated Site........11, 22
Impaired Property ............................12, 13, 22
In Rem .........................................................6
Insured Contract ...................................3, 22

Lead ...........................................................9, 22
Leased Worker...............................................22
Legal Representative ............................6, 21, 22
Limits of Insurance .................3, 6, 7, 8, 19, 20
Loading or Unloading ..........................13, 22, 24
Medical Expense ..........................................11
Mobile Equipment ...............................15, 21, 22, 23
Named Insured(s) ..............4, 5, 16, 19, 20, 23, 25
Named Storm..........................................7, 23, 24
Non-Contributory .....................................19, 23
Non-operating Working Interest.............5, 17, 22, 23
Nuclear.......................................................11, 23
Oil or Gas Site..................................22, 24, 25
Oil or Gas Site Contractor.....................17, 21, 24
Operator(s).....................................17, 21, 23, 24
Other Insurance ...........................3, 8, 19, 24
Payment Obligation.....................................3, 24
Premium Audit.................................................20
Products-Completed Operations Hazard .............7, 14, 24
Professional Services .............................15, 25
Radioactive Material ........................9, 23, 25
Self-Insured Retention ...........................3, 16, 20, 25
Silica ...........................................................9, 25
Supplementary Payments....................1, 3, 7, 8, 18
Temporary Worker.................................14, 22, 25
Underlying Insurance ..........3, 4, 6, 7, 16, 19, 20, 24, 25
Underlying Insurer.................................16, 20, 25
Volunteer Worker...................................5, 6, 14, 25
War .............................................................12, 25
Waste ..............................11, 21, 22, 23, 24, 25
Watercraft ............................................6, 13, 22
Well Bore ........................................................25
Your Product ...................10, 12, 13, 22, 24, 25, 26
Your Work .......................12, 13, 14, 22, 24, 26

MBI00096

Policy Number: EUL001670910

Transaction Number: 001

Effective Date: 04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# North Dakota Changes – Cancellation and Nonrenewal

This endorsement modifies insurance provided under the following:

Energy Commercial Umbrella Liability Policy

If **YOU** are an individual and a covered **AUTO** **YOU** own is of the private passenger type, and this policy covers six or less private passenger type **AUTOS**:

A.  The following replaces Section VIII. Conditions, Subsection C. Cancellations:

**Cancellation**

1.  **YOU** may cancel the policy by returning it to **US** or by giving **US** advance notice of the date Cancellation is to take effect.

2.  When this policy is in effect less than 60 days and is not a renewal or continuation policy, **WE** may cancel for any reason by mailing written notice of Cancellation at least 10 days before the effective date of Cancellation.

3.  When this policy is in effect 60 days or more or is a renewal or continuation policy, **WE** may cancel only for one or more of the following reasons:

a.  Nonpayment of premium;

b.  **YOU** or any driver who either lives with **YOU** or customarily uses a covered **AUTO** has had their driver's license suspended or revoked during the policy period;

> However, **WE** may not cancel for this reason if the operator whose license is suspended or revoked is excluded from coverage under this policy.

c.  This policy has been written for a period of more than a year or without a fixed expiration date. **WE** may cancel for this reason only at an anniversary of its original effective date;

d.  If the covered **AUTO** is:

(1)  So mechanically defective that its operation might endanger public safety;

(2)  Used in carrying passengers for hire or compensation; provided, however, that the use of an **AUTO** for a car pool is not use of an **AUTO** for hire or compensation;

(3)  Used in the transportation of flammables or explosives or for an illegal purpose;

(4)  An authorized emergency vehicle; or

(5)  Altered by an **INSURED** during the policy period so as to substantially increase the risk;

e.  **YOU** move to a state where we are not licensed to do business;

f.  Failure to pay dues or fees where payment of the dues or fees is a prerequisite to obtaining or continuing automobile insurance coverage;

g.  A determination by the Commissioner that the continuation of the policy would place **US** in violation of the law or would be hazardous to the interests of policyholders, creditors, or the public; or

h.  Fraud or material misrepresentation made by or with the knowledge of any **INSURED** in obtaining the policy, continuing the policy, or in presenting a **CLAIM** under the policy.

---

**EUL6618 03 10**   *Includes copyrighted material of Insurance Services Office, Inc.,*   **Page 1 of 3**
*with its permission.*
© Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00097

4. If this policy is cancelled, **YOU** may be entitled to a premium refund. If so, **WE** will send **YOU** the refund. However, making or offering to make the refund is not a condition of Cancellation. If **YOU** cancel, the refund, if any, will be computed in accordance with **OUR** customary short rate procedure. If **WE** cancel, the refund, if any, will be computed pro rata.

5. The effective date of Cancellation stated in the notice shall become the end of the policy period.

6. If **WE** cancel for any reason described in Paragraphs A.3.a. through h. above, **WE** will mail written notice of Cancellation at least:

a. 10 days before the effective date of Cancellation if **WE** cancel for nonpayment of premium; or

b. 30 days before the effective date of Cancellation if **WE** cancel for any other reason described in Paragraphs A.3.b. through h.

   The notice of Cancellation will state the reason(s) for Cancellation.

B. The following replaces Section VII. General Conditions, Subsection N. Nonrenewal:

   **Nonrenewal**

1. If **WE** decide not to renew or continue this policy **WE** will mail **YOU** written notice of Nonrenewal, stating the reason(s) for Nonrenewal, at least 30 days before the end of the policy period. If the policy period is other than one year, **WE** will have the right not to renew or continue it only at an anniversary of its original effective date. If **WE** offer to renew or continue and **YOU** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **YOU** have not accepted **OUR** offer.

2. If **WE** fail to mail proper notice of Nonrenewal and you obtain other insurance this policy will end on the effective date of that insurance.

C. The following is added to Section VII. General Conditions:

   **Mailing of Notices**

   Any notice of Cancellation or Nonrenewal will be mailed to **YOUR** last known address. However, **WE** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

For all other circumstances not described above, the following Conditions apply:

D. The following replaces Section VIII. Cancellation, Subsection C. Cancellation, Paragraphs 2. and 3:

   **Cancellation**

   2.  a.  If this policy has been in effect for less than 90 days, **WE** may cancel the policy for any reason by mailing to the first **NAMED INSURED**, and agent, if any, written notice of Cancellation at least 10 days before the effective date of Cancellation.

       b.  If this policy has been in effect for 90 days or more, is a renewal of a policy **WE** issued, is a policy issued for a term longer than one year or is a continuous policy, **WE** may cancel the policy only for one or more of the following reasons:

(1) Nonpayment of premiums;

(2) Misrepresentation or fraud made by the **INSURED** or with the **INSURED**'s knowledge in obtaining the policy or in pursuing a **CLAIM** under the policy;

(3) The **INSURED**'s actions that have substantially increased or substantially changed the risk insured;

(4) The **INSURED**'s refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that **WE** should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance which provided **US** with coverage for a significant amount of the underlying risk insured;

(7) A determination by the insurance commissioner that the continuation of the policy could place **US** in violation of North Dakota insurance laws;

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at sixty-two years of age or older or to any person who is disabled according to social security standards; or

   **WE** will mail written notice of Cancellation to the first **NAMED INSURED**, and agent, if any, at least:

(a) 10 days before the effective date of Cancellation for nonpayment of premium; or

MBI00098

**(b)** 30 days before the effective date of Cancellation for any other reason.

However, for policies with terms longer than one year or continuous policies, notice of Cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs 2.b.(1) through (8) above.

If **WE** cancel for a reason listed in Paragraphs 2.b.(1) through (8) above, the notice of Cancellation will state **OUR** reasons for Cancellation.

3. **WE** will mail **OUR** notice, by first class mail, to the first **NAMED INSURED** and agent, if any, at the last mailing address known to **US**.

E. The following replaces Section VIII. General Conditions, Subsection N. Nonrenewal:

**Nonrenewal**

1. If **WE** elect not to renew this policy, **WE** will mail to the first **NAMED INSURED** shown on the Declarations Page, and agent, if any, a notice of intention not to renew at least 30 days prior to the expiration date of the policy.  The notice of Nonrenewal will state **OUR** reason for Nonrenewal.

2. **WE** will mail **OUR** notice, by first class mail, to the first **NAMED INSURED** and agent, if any, at the last mailing address known to **US**.

3. **WE** need not mail or deliver this notice if **YOU** have:

a. Insured elsewhere;

b. Accepted replacement coverage; or

c. Requested or agreed to Nonrenewal.

MBI00099

Policy Number:                                                  Transaction Number:

Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States

This endorsement modifies insurance provided under the following:

Energy Commercial Umbrella Liability Policy

**A.** The following is added to Section VII. Exclusions, Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance:

This policy does not apply to:

<u>Terrorism:</u>

**ANY INJURY OR DAMAGE** arising, directly or indirectly, out of a **CERTIFIED ACT OF TERRORISM**, or out of an **OTHER ACT OF TERRORISM** that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the Coverage Territory. However, with respect to an **OTHER ACT OF TERRORISM**, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, **WE** will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an **OTHER ACT OF TERRORISM** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** For the purposes of this endorsement, the following definitions are added to Section IX. Definitions:

**1.** **ANY INJURY OR DAMAGE** means any injury or damage covered under this policy including, but not limited to, **BODILY INJURY, PROPERTY DAMAGE, POLLUTION CLEAN UP COSTS,** or **PERSONAL AND ADVERTISING INJURY** as may be defined in this policy.

---

            *Includes copyrighted material of Insurance Services Office, Inc.,*
*with its permission.*
© Berkley Oil & Gas, 2015

MBI00100

2.  **CERTIFIED ACT OF TERRORISM** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **CERTIFIED ACT OF TERRORISM** include the following:

a.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b.  The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c.  The act is a violent act or an act that is dangerous to human life, property, or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    3.  **OTHER ACT OF TERRORISM** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a **CERTIFIED ACT OF TERRORISM**.

    Multiple incidents of an **OTHER ACT OF TERRORISM** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this policy.

MBI00101

Policy Number: EUL001670910

Transaction Number: 001

Effective Date: 04/13/2016

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# North Dakota Changes – Examination of Your Books and Records

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy
Energy Commercial Umbrella Liability Policy

The Examination of Your Books and Records provision in the General Conditions Section of each policy is replaced by the following:

**Examination Of Your Books And Records**

1. Except as provided in Paragraph 2. below, **WE** may examine and audit **YOUR** books and records as they relate to this policy at any time during the policy period and up to three years afterward.

2. Any audit conducted to determine the premium due or to be refunded must be completed within 180 days after:

   a. The expiration date of the policy; or

   b. The anniversary date, if this is a continuous policy or a policy written for a term longer than one year;

   unless **YOU** agree in writing to extend the audit period.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.* © Berkley Oil & Gas Specialty Services, LLC, 2010

MBI00102

Policy Number: EUL001670910

Transaction Number: 001

Effective Date: 04/13/2016

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of **YOUR** policy. You should read **YOUR** policy and review **YOUR** Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as Specially Designated Nationals and Blocked Persons. This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that **YOU** or any other **INSURED**, or any person or entity claiming the benefits of this policy has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this policy will be considered a blocked or frozen contract and all provisions of this policy are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

*Includes copyrighted material of Insurance Services Office, Inc.,*
                                        *with its permission.*
                                    © Berkley Oil & Gas Specialty Services, LLC, 2013

MBI00103