# EXHIBIT K



## Torus National Insurance Company

Commercial Umbrella Liability
Insurance Policy

**Company Address:**

Harborside Financial Center
Plaza Five, 29th Floor
Jersey City, NJ 07311
(201) 743-7700
www.torusinsurance.com

**To Report a Claim:**

Contact your Insurance Agent, or
Contact the Company at (201) 743-7700 or
send an email to: claims@torusinsurance.com

**To File a Complaint**

Contact your Insurance Agent, or
Contact the Company at (201) 743-7700 or
Contact your State Director of Insurance

BADLANDS-MAHEU-STASSINOS-ND-001278



Harborside Financial Center
Plaza Five, Suite 2900
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com
Report claims to:
claims@torusinsurance.com

## TORUS NATIONAL INSURANCE COMPANY

## HOME OFFICE: WILMINGTON DELAWARE

## COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

**POLICY DECLARATIONS**
**COMMERCIAL UMBRELLA**
**LIABILITY INSURANCE POLICY**

**POLICY NUMBER:** 82068H152ALI
**RENEWAL OF:** 82068H141ALI

**10/16/2015 12:03:35 PM**

1. NAMED INSURED AND MAILING ADDRESS:
   Badlands Consulting, LLC
   204 N. Kendrick Ave
   Glendive, MT 59330

2. THE NAMED INSURED IS A:

   [ ]   CORPORATION   [ ]   SOLE PROPRIETOR   [ ]   PARTNERSHIP   [X]   LLC

   [ ]   JOINT VENTURE   [ ]   OTHER

3. POLICY PERIOD: From: 10/14/2015 To 10/14/2016
   (12:01 A.M. prevailing time at the address stated in Item 1 above)

4. PREMIUM:   ███████   [X]   Flat Charge   [ ]   Adjustable
   Additional TRIPRA Premium

5. MINIMUM EARNED PREMIUM  $ 0

6. LIMITS OF INSURANCE:

   Per  Occurrence Limit           $5,000,000

   Other Aggregate Limit           $5,000,000

   Products/ Completed             $5,000,000
   Operations Aggregate Limit

7. Self Insured Retention          $10,000

8. Retroactive Date (if applicable)   N/A

9. Name and Address of Agent or Broker:

   Risk Placement Services - Excess
   10855 South Riverfront Parkway
   Suite 200
   South Jordan, UT 84095

TN UMB 0002 CW 06 10                                    Page 1 of 2

BADLANDS-MAHEU-STASSINOS-ND-001279



Harborside Financial Center
Plaza Five, Suite 2900
Jersey City, NJ  07311
Tel:  201 743 7700
Fax:  201 743 7701
www.torusinsurance.com
Report claims to:
claims@torusinsurance.com

## TORUS NATIONAL INSURANCE COMPANY

## HOME OFFICE: WILMINGTON DELAWARE

### COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

**10.** Policy Form No. TN UMB 0001 CW 06 10 and endorsements at inception date as per the attached Schedule of Endorsements Form No. TN UMB 0004 CW 06 10:

_____
**Authorized Representative**

**OFFICE:**                                      **ISSUE DATE:**
**Torus National Insurance Company**             **10/16/2015**

BADLANDS-MAHEU-STASSINOS-ND-001280

## TORUS NATIONAL INSURANCE COMPANY

## COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

Various provisions in this Policy restrict coverage.  Read the entire Policy carefully to determine rights, duties, and what is and is not covered.

Throughout this insurance, the words "you" and "your" refer to the Named Insured. The words "we", "us", and "our" refer to Torus National Insurance Company, the company providing this insurance.

In consideration of the payment of premium and in reliance upon the statements in the declarations and in accordance with the provisions of this Policy we agree with you to provide coverage as follows:

### SECTION I – COVERAGE

**A.** We will pay on behalf of the **insured** the **ultimate net loss** in excess of the **retained limit** which the **insured** becomes legally obligated to pay as **damages** because of **bodily injury, property damage** or **personal and advertising injury** to which this insurance applies.

The amount we will pay for **damages** is limited as described in **SECTION II – LIMITS OF INSURANCE.**

**B. 1.** If the **underlying insurance** affords coverage on a **claims made** basis, then this insurance will apply on a **claims made** basis, subject to the following:

    **a.** The injury or **damage** must be caused by an **occurrence** that may take place anywhere in the world;

    **b.** The **claim** for the injury or **damage** must first be made against the **insured** during the Policy Period or any Extended Reporting Period provided herein;  and

    **c. 1)** The **bodily injury** or **property damage**; or

        **2)** The **occurrence** causing the **personal and advertising injury**;

    must take place on or after the Retroactive Date shown in **Item 8.** of the Declarations and before the termination of this Policy;

**2.** This **claims made** coverage does not apply to any injury, **damage**, **occurrence**, **claim**, **suit** or other circumstance:

    **a.** Reported in whole or in part, to us or any other insurer before the beginning of the Policy Period; or

    **b.** If prior to the Policy Period, any **authorized insured** knew that the **bodily injury** or **property damage** had occurred, in whole or in part.  If such **authorized insured**, prior to the Policy Period, knew of such injury, **damage**, **occurrence**, **claim**, **suit** or circumstance, then any continuation, change or resumption of such injury, **damage**, **occurrence**, **claim**, **suit** or circumstance during or after the Policy Period will be deemed to have been known prior to the Policy Period.

BADLANDS-MAHEU-STASSINOS-ND-001281

**C. 1.** If the **underlying insurance** affords coverage on an **occurrence** basis, then this insurance will apply on an **occurrence** basis subject to the following:

    **a.** The injury or **damage** must be caused by an **occurrence** that may take place anywhere in the world; and

    **b. 1)** The **bodily injury** or **property damage**; or,

        **2)** The **occurrence** causing the **personal and advertising injury**;

    must take place during the Policy Period.

**2.** This **occurrence** insurance applies to **bodily injury** or **property damage** only if prior to the Policy Period, no **authorized insured**, knew that the **bodily injury** or **property damage** had occurred, in whole or in part.  If such **authorized insured** knew, prior to the Policy Period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the Policy Period will be deemed to have been known prior to the Policy Period.

**3.** **Bodily injury** or **property damage** which occurs during the Policy Period and, prior to the Policy Period, was not known to have occurred by any **authorized insured**, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the Policy Period.

**D.** For purposes of Paragraphs **B.2.b.** and **C.2.** above, **bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **authorized insured**:

    **1.** Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;

    **2.** Receives a written or verbal demand or **claim** for **damages** because of **bodily injury** or **property damage**; or

    **3.** Becomes aware by other means that **bodily injury** or **property damage** has occurred or has begun to occur.

**E.** **Damages** because of **bodily injury** include **damages** claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

## SECTION II - LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

    **1. Insureds**;
    **2. Claims** made or **suits** brought; or
    **3.** Persons or organizations making **claims** or bringing **suits**.

**B.** The Limits of Insurance of this Policy will apply as follows:

    **1.** The limit stated in **Item 6.** of the Declarations for the Other Aggregate is the most we will pay for all **damages**, except for **damages** covered under the **products-completed operations hazard**, that are subject to an aggregate limit provided by the **Underlying insurance.** The Other Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the **Underlying insurance.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001282

2. The limit stated in **Item 6.** of the Declarations for the Products/Completed Operations Aggregate is the most we will pay for all damages during our Policy Period under the **products-completed operations hazard.**

3. Subject to Paragraphs **1.** and **2.** above, the Per Occurrence Limit stated in **Item 6.** of the Declarations is the most we will pay for all **damages** arising out of any one **occurrence** to which this Policy applies.

4. Subject to Paragraphs **B.1., B.2.** and **B.3.** above, if the Limits of Underlying Policies listed in the Schedule of Underlying Insurance are reduced or exhausted solely by payment of **damages** to which this Policy applies, such insurance provided by this Policy will apply in excess of the reduced Limits of Underlying Policies, or if all Limits of Underlying Policies are exhausted, will apply as **underlying insurance** subject to the same terms, conditions, definitions and exclusions of the **underlying insurance** except for the terms, conditions, definitions and exclusions of this Policy.

5. This Policy applies only in excess of the **Retained Limit.** If however, a policy listed in the Schedule of Underlying Insurance forming a part of this Policy has a limit of insurance:

   a. Greater than the amount shown in such schedule, this Policy will apply in excess of the actual limits of such underlying policy; or

   b. Less than the amount shown in such schedule, this Policy will apply in excess of the amount shown in the schedule of Underlying Insurance forming a part of this Policy.

6. This Policy will not apply in excess of any reduced or exhausted Limits of Underlying Policies to the extent such reduction or exhaustion is caused by payment of **damages** that are not covered under this Policy. This provision applies whether the lack of coverage under this Policy arises:

   a. From a difference between the terms, conditions, definitions and exclusions of this Policy and the **underlying insurance**; or

   b. From injury or damage occurring outside the coverage period of this Policy.

7. Defense costs to which this Policy applies shall not reduce the Limits of Insurance of this Policy, except to the extent defense costs reduce the limits of liability of the **underlying insurance**.

8. The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining our Limits of Insurance.

## SECTION III - DEFENSE OF CLAIMS OR SUITS

1. We will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend. If we elect to join the defense of such **claims** or **suits**, we will pay all expenses we incur.

2. We will have the right and duty to defend any **suit** for **damages** which are payable under this Policy (including **damages** wholly or partly within the **retained limit)** but which are

BADLANDS-MAHEU-STASSINOS-ND-001283

not payable by a Policy of **underlying insurance**, or any other available insurance, because:

    **a.**  Such **damages** are not covered; or

    **b.**  The **underlying insurance** has been exhausted by the payment of **claims**.

**3.**  We may investigate and settle any **claim** or **suit** in **2.** above at our discretion

**4.**  Our right and duty in **2.** above end when we have used up the **applicable limit of Insurance** in the payment of judgments and/or settlements.

**5.**  We will pay, with respect to any **claim** or **suit** we defend in **2.** above:

    **a.**  All expenses we incur.

    **b.**  The cost of appeal bonds and bonds to release attachments, but only for bond amounts within the **applicable limit of insurance**.  We do not have to furnish these bonds.

    **c.**  All reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $250 a day because of time off from work.

    **d.**  All costs taxed against the **insured** in the **suit**.

    **e.**  All interest on the full amount of any judgment that accrues after entry of the judgment  and before we have:

        **1)**  Paid, or offered to pay; or

        **2)**  Deposited in court:

        the part of the judgment that is within the **applicable limit of insurance**.

    **f.**  Prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the **applicable limit of insurance**, we will not pay any prejudgment interest based on that period of time after the offer.

    These payments will not reduce the Limits of Insurance.

**6.**  In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico or Canada where we may be prevented by law or some other factor beyond our control from carrying out the agreements  under **SECTION I – COVERAGE** or **SECTION III - DEFENSE OF CLAIMS OR SUITS** above:

    **a.**  You must arrange to investigate, defend or settle any **claim** or **suit**;

    **b.**  You will not make any settlement without our consent;

    **c.**  We will indemnify you for expenses incurred with our consent.

## SECTION IV - EXCLUSIONS

This insurance does not apply to any liability, **damage**, loss, cost or expense:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001284

A. **ADVERTISING INJURY**

Arising out of:

1. A breach of contract, except an implied contract to use another's advertising idea in the course of advertising your goods, products or services;

2. The failure of goods, products or services to conform with any statement of quality or performance made in the course of advertising your goods, products or services; or

3. The wrong description of the price of goods, products or services stated in the course of advertising your goods, products or services.

B. **ASBESTOS**

Arising out of:

1. The manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos;

2. Any obligation of any **insured** to indemnify any party because of **damages** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos; or

3. Any obligation to defend any **suit** or **claim** against any **insured** that seeks **damages** if such **suit** or **claim** arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos.

C. **CONTRACTUAL LIABILITY**

For which any **insured** assumed liability under a contract or agreement.  However, if insurance for liability assumed under a contract or agreement for **bodily injury, property damage** or **personal and advertising injury** is provided by the **underlying insurance:**

1. This exclusion shall not apply; and

2. The insurance provided by this Policy will not be broader than the insurance coverage provided by the **underlying insurance.**

D. **CROSS SUITS**

Arising out of injury or **damage** to a **Named Insured** that is caused, in whole or in part, by any other **Named Insured**.

E. **EMPLOYMENT PRACTICES LIABILITY**

Arising out of any:

1. Refusal to employ;

2. Termination of employment;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001285

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies acts or omissions;

4. Consequential **bodily injury** or **personal and advertising injury** as a result of **1.** through **3.** above; or

5. Any liability arising from or in any way in connection with the actual, alleged, potential or attempted actions in the course of any employer-employee relationship.

This exclusion applies whether any **insured** may be held liable as an employer or in another capacity and to any of your obligation to share damages with or to repay someone else who must pay damages because of the injury.

## F.  EXPECTED OR INTENDED INJURY

For **bodily injury** or **property damage** expected or intended from the standpoint of an **insured.** This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

## G.  LAWS VARIOUS

Imposed on an **insured**, or an **insured's** insurer:

1. Under any of the following laws: Uninsured motorists, Underinsured motorists, Auto no-fault laws or other first party personal injury laws, or medical expense benefits and income loss benefits laws of any applicable state or jurisdiction.

2. For any obligation of an **insured** under any workers compensation, disability benefits or unemployment compensation law or any similar law.

3. For any obligations incurred or imposed upon an **insured** (or which are imputed to an **insured**) under the Employee Retirement Income Security Act of 1974, Public Law 93-406 and any law amendatory thereof.

## H.  LIQUOR LIABILITY

Arising out of **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

1. Causing or contributing to intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **bodily injury** or **property damage** is provided by the **underlying insurance:**

1. This exclusion shall not apply; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001286

**2.** The insurance provided by this Policy will not be broader than the insurance coverage provided by the **underlying insurance.**

**I.  NUCLEAR**

Arising out of **bodily injury** or **nuclear property damage:**

**1.  a.** With respect to which an **insured** under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Insurance Association,  Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such Policy but for its termination upon exhaustion of its limit of liability; or

**b.** Resulting from the **hazardous properties** of **nuclear material** and with respect to which **1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **2)** the **insured** is, or had this Policy not been issued would be, entitled to indemnity from the United states of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2. Bodily injury** or **nuclear property damage** resulting from the **hazardous properties** of **nuclear material**, if:

**a.** The **nuclear material 1)** is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or **2)** has been discharged or dispersed therefrom;

**b.** The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

**c.** The **bodily injury** or **nuclear property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility,** but if such facility is located within the United States of America, its territories or possessions or Canada, this sub-paragraph **c.** applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.

**3.** As used in this Exclusion **I.**:

**a. Hazardous properties** include radioactive, toxic or explosive properties;

**b. Nuclear facility** means:

**1)** Any **nuclear reactor;**

**2)** Any equipment or device designed or used for

**a)** Separating the isotopes of uranium or plutonium;

**b)** Processing or utilizing **spent fuel**, or

**c)** Handling, processing or packaging **waste**;

**3)** Any equipment or device used for the processing, fabricating or allying of **special nuclear material** if at any time the total amount of such material in the custody of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001287

the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    **4)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste;**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**c.** **Nuclear material** means **source material**, **special nuclear material** or **by-product material;**

**d.** **Nuclear property damage** includes all forms of radioactive contamination of property;

**e.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**f.** **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**g.** **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**h.** **Waste** means any waste material **1)** containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and **2)** resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

## J. PERSONAL AND ADVERTISING INJURY

For **personal and advertising injury:**

**1.** Caused by or at the direction of an **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury.**

**2.** Arising out of oral or written publication of material, if done by or at the direction of an **insured** with knowledge of its falsity.

**3.** Arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period. All **personal and advertising injury** arising out of publication of the same or similar material subsequent to the beginning of the Policy Period is also excluded.

**4.** Arising out of a criminal act committed by or at the direction of any **insured**.

**5.** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights, however, this exclusion does not apply to infringement of copyright, trade dress or slogan in the course of advertising your goods, products or services.

**6.** Committed by an **insured** whose business is:

BADLANDS-MAHEU-STASSINOS-ND-001288

    **a.**  Advertising, broadcasting, publishing or telecasting;

    **b.**  Designing or determining content of websites for others; or

    **c.**  An internet search, access, content, or service provider.

    However, this exclusion **J.6.** does not apply to Paragraphs **1., 2.** and **3.** of definition **N. Personal and adverting injury** in **SECTION VI – DEFINITIONS**.

    For the purposes of this exclusion **J.6.** the placing of frames, borders or links, or advertising, for you or others anywhere on the internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**7.**  Arising out of an electronic chatroom or bulletin board an **insured** hosts, owns, or over which an **insured** exercises control.

**8.**  Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers;

## K.  POLLUTION LIABILITY

**1.**  Arising, in whole or in part, out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

    **a.**  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured;**

    **b.**  At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    **c.**  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom you may be legally responsible;

    **d.**  At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

        **1)**  If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

        **2)**  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants;**

    **e.**  That are, or that are contained in any property that is:

        **1)**  Being transported or towed by, or handled for movement into, onto or from, the covered **auto;**

        **2)**  Otherwise in the course of transit by or on behalf of the **insured**; or

        **3)**  Being stored, disposed of, treated or processed in or upon the covered **auto.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001289

    **f.**  Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the covered **auto;** or

    **g.**  After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by any **insured.**

**2.**  Any loss, cost or expense arising out of any:

    **a.**  Request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants;** or

    **b.**  **Claim** or **suit** by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

However, this paragraph **K. 2.** does not apply to liability for **damages** because of **property damage** that the **insured** would have had in the absence of such request, demand, order or statutory requirement, or such **claim** or **suit** by or on behalf of a governmental authority.

**L.  PRODUCT RECALL**

Incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**1.**  **Your product;**

**2.**  **Your work;** or

**3.**  **Impaired property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**M. PROPERTY DAMAGE**

**1.**  Arising out of **property damage** to:

    **a.**  Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

    **b.**  Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

    **c.**  Property loaned to you;

    **d.**  Personal property in the care, custody or control of an **insured;**

BADLANDS-MAHEU-STASSINOS-ND-001290

    **e.** That particular part of real property on which you or any contractors or subcontractors directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations; or

    **f.** That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

**2.** Sub-paragraphs **a., c.** and **d.** of this exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

**3.** Sub-paragraph **b.** of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

**4.** Sub-paragraphs **c., d., e.** and **f.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**5.** Sub-paragraph **f.** of this exclusion does not apply to **property damage** included in the **products- completed operations hazard.**

## N. PROPERTY DAMAGE TO IMPAIRED PROPERTY

Arising out of **property damage** to **impaired property** or property that has not been physically injured, arising out of:

**1.** A defect, deficiency, inadequacy or dangerous conditions in **your product** or **your work**; or

**2.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its  intended use.

## O. PROPERTY DAMAGE TO YOUR PRODUCT

For **property damage** to **your product** arising out of it or any part of it.

## P. PROPERTY DAMAGE TO YOUR WORK

For **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.** This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## Q. VIOLATIONS OF FAX, EMAIL STATUTES

Arising directly or indirectly out of:

**1.** A violation of the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such laws, by the sending or transmitting of a fax or the placing of a phone call;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001291

2. A violation of the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, by the sending or transmitting of an e-mail;

3. Any other activity that violates the TCPA or the CAN-SPAM Act of 2003, including any amendment of or addition to such laws; or

4. Any activity that violates any other statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communication of material or information.

## R. WAR

However caused, arising, directly or indirectly, out of:

1. War, including undeclared or civil war;

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## S. WATERCRAFT / AIRCRAFT

Arising out of the ownership, maintenance or use, including loading or unloading, or entrustment to others of any watercraft or any aircraft.

This exclusion does not apply to:

1. A watercraft while ashore on premises you own or rent;

2. Liability assumed under any contract or agreement for the ownership, maintenance or use of a watercraft;

3. A watercraft over 50 feet in length which is chartered with crew by or on behalf of any **insured**;

4. A watercraft less than 50 feet long which you own; or

5. A watercraft less than 50 feet long which you do not own and is not being used to carry persons or property for a charge.

This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**, if the **occurrence** which caused the liability, **damage**, loss, cost or expense involved the ownership, maintenance, use or entrustment to others of any watercraft or any aircraft that is owned or operated by or rented or loaned to any **insured**.

## SECTION V – CONDITIONS

## A. APPEALS.

1. If the **insured** or the **insured's underlying insurer** elects not to appeal a judgment which exceeds the **applicable underlying limit**, we may do so.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001292

2. If we do, we will pay all costs of the appeal. We will also pay all costs on appeals related to the defense of the **insured** as provided in **SECTION III - DEFENSE OF CLAIMS OR SUITS.** These sums are in addition to the **applicable limit of insurance.** In no event shall our liability for **ultimate net loss** exceed the **applicable limit of insurance.**

## B. BANKRUPTCY.

Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of any of our obligations under this insurance; however, in the event of bankruptcy or insolvency of any **underlying insurer** or other insurer, this Policy will not apply as a replacement of such bankrupt or insolvent **underlying insurer's** or other insurer's policy, and we will not be liable under this Policy to any greater extent than we would have been liable had the **underlying insurer** or other insurer not become bankrupt or insolvent.

## C. CANCELLATION.

1. The first **Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 60 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first **Named Insured's** last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

5. If this Policy is cancelled, we will send the first **Named Insured** any premium refund due. If we cancel, the refund will be pro rata. If the first **Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If the first **Named Insured** cancels, and a Minimum Earned Premium is set forth in **Item 5.** of the Declarations which exceeds the short rate earned premium, then we will retain the Minimum Earned Premium and return the difference between the Minimum Earned Premium and the annual premium.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

## D. CHANGES.

This contract contains all the agreements between you and us concerning the insurance afforded. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this insurance.

## E. COVERAGE TERRITORY

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001293

The Coverage Territory shall be deemed to be anywhere in the world, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America, provided a **claim** or **suit** for **damages** is brought within the Coverage Territory.

Payments under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U. S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**F.   DUTIES IN THE EVENT OF OCCURRENCE OR OFFENSE, CLAIM OR SUIT.**

    **1.**   You must see to it that we are given prompt written notice of any of the following:

        **a.**   An **occurrence** or which is likely to result in a **claim** under this insurance.

        Notice should include:

        **1)**   How, when and where the **occurrence** or offense took place;

        **2)**   The names and addresses of any injured person and witnesses; and

        **3)**   The nature and location of the **bodily injury**, **property damage** or **personal and advertising injury** arising out of the **occurrence** or offense.

    **2.**   If a **claim** is made or **suit** is brought against any **insured** which is likely to result in a **claim** against this insurance, you must see to it that we receive prompt written notice of the **claim** or **suit**.

    **3.**   The **insured** must:

        **a.**   Cooperate with the **underlying insurers**;

        **b.**   Comply with the terms of the **underlying insurance**; and

        **c.**   Pursue all rights of contribution or indemnity against any person or organization who may be liable to the **insured** because of the **bodily injury**, **property damage** or **personal and advertising injury** with respect to which insurance is provided under this or any policy of **underlying insurance**.

    **4.**   When we believe that a **claim** may exceed the **underlying insurance**, we may join with the **insured** and the **underlying insurer** in the investigation, settlement and defense of all **claims** and **suits** in connection with such **occurrence** or **offense**. In such event, the **insured** must cooperate with us.

**G.   EXAMINATION OF YOUR BOOKS AND RECORDS.**

    We may examine and audit your books and records as they relate to this insurance:

    **1.**   At any time during the Policy Period;

    **2.**   Up to three years afterward; or

    **3.**   Within one year after final settlement of all **claims** under this insurance.

**H.   INSPECTIONS AND SURVEYS.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001294

1.  We have the right but are not obligated to:

    a.  Make inspections and surveys at any time;

    b.  Give you reports on the conditions we find; and

    c.  Recommend changes.

2.  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions are safe or healthful, or comply with laws, regulations, codes or standards.

## I.   LEGAL ACTION AGAINST US.

1.  No person or organization has a right under this insurance:

    a.  To join us as a party or otherwise bring us into a **suit** asking for **damages** from an **insured**; or

    b.  To sue us on this insurance unless all of its terms have been fully complied with.

2.  A person or organization may sue us to recover on an agreed settlement or final judgment against an **insured**. We will not be liable for **damages** that are not payable under the terms of this insurance, or are in excess of the **applicable limit of insurance**.

3.  An agreed settlement means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

## J.   MAINTENANCE OF UNDERLYING INSURANCE.

During the period of this Policy, you agree:

1.  To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2.  That the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of limits by payment of **claims** or **suits** for **damages** covered by **underlying insurance**;

3.  The policies listed in the Schedule of Underlying Insurance may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any policy listed in the Schedule of Underlying Insurance;

4.  Renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001295

**K. OTHER INSURANCE.**

This insurance is excess over any other insurance whether such other insurance is stated to be primary, contributing, excess, contingent, or otherwise. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. This provision does not apply to a Policy bought specifically to apply in excess of this insurance.

**L. OUR RIGHTS TO RECOVER FROM OTHERS.**

1. If we make a payment under this insurance, the **insured** will assist us and the **underlying insurer** in recovering what we paid by using the **insured's** rights of recovery. Reimbursement will be made in the following order:

   a. First, to any interest (including the **insured**) who has paid any amount in excess of the limits of this insurance;

   b. Next to us; and

   c. Then to any interest (including the **insured** and the **underlying insurer**) as are entitled to claim the remainder, if any.

2. A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests according to the ratio of their respective recoveries.

**M. PREMIUM.**

1. You are responsible for the payment of all premiums and will be the payee for any return premiums.

2. If the premium is a flat charge, it is not subject to adjustment except as provided in **4.** of this Paragraph below.

3. If the premium is other than a flat charge, it is an advance premium only. The earned premium will be computed at the end of each year in which this insurance is in force at the rate shown in the Declarations, subject to the Minimum Annual Premium.

4. Additional premium may become payable when coverage is provided for any additional insured in Paragraph **7.** of **SECTION VI – DEFINITIONS,** definition **I. Insured.**

**N. PREMIUM AUDIT.**

1. You must keep records of the information we need for premium computation, and send us copies at such times as we may request.

2. At the close of each audit period we will compute the earned premium for that period and send notice to the first **Named Insured** in **Item 1.** of the Declarations.

3. The due date for audit premium is the date shown as the due date on the bill.

4. If the sum of the advance and audit premiums paid for the Policy Period is greater than the earned premium, we will return the excess to you subject to the minimum premiums.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001296

**O. SEPARATION OF INSUREDS.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to you in this insurance, this insurance applies:

1.  As if each **Named Insured** were the only **Named Insured**; and

2.  Separately to each **insured** against whom **claim** is made or **suit** is brought.

**P. SERVICE OF SUIT.**

Pursuant to any statute of any state, territory or District of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **insured** or any beneficiary hereunder, arising out of this Policy.

**Q. TITLES OF PARAGRAPHS.**

The titles of paragraphs in this Policy are included for descriptive purposes only and do not form part of this Policy for the purposes of its construction or interpretation.

**R. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS INSURANCE.**

1.  Your rights and duties under this insurance may not be transferred after a loss, without our written consent, except in the case of death of an individual **Named Insured**.

2.  If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**S. WHEN LOSS IS PAYABLE.**

1.  If we are liable under this insurance, we will pay for **ultimate net loss** after:

    a.  The **insured's** liability is established by court decision; or

    b.  There is written agreement between the claimant, the **insured**, any **underlying insurer** and us; and

    c.  The amount of the **retained limit** is paid by or on behalf of the **insured.**

2.  We will pay all **claims** within thirty days provided all terms of this insurance are met.

3.  The **insured** will reimburse us for any payment we make for **damages** which are within the **retained limit**.

**SECTION VI – DEFINITIONS**

**A. Applicable limit of insurance** means the maximum amount we pay as **damages** in accordance with **SECTION II – LIMITS OF INSURANCE**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001297

**B. Authorized insured** means:

    **1.** The person(s) and organization(s) specifically described under **SECTION VI-DEFINITIONS**, sub-paragraphs **I. 2. a.** through **I. 2. e.** for any **Named Insured**; or

    **2.** Any employee authorized by you to give or receive notice of an **occurrence, claim** or **suit.**

**C. Auto** means:

    **1.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

    However, **auto** does not include **mobile equipment.**

**D. Bodily injury** means physical injury, sickness, disability or disease. **Bodily injury** shall also mean mental injury, mental anguish, humiliation, shock or death resulting directly from such physical injury, sickness, disability or disease.

**E. Claim** means a written demand in which **damages** are alleged, including cross-claims, lawsuits, arbitrations and any other alternative dispute resolution proceeding.

**F. Claims made** means coverage provided under any **underlying insurance** that applies to injury or **damage** caused by an **occurrence** where **a)** the injury or **damage** takes place on or after the Retroactive Date shown in the Declarations and before the termination of the Policy; and **b)** in which the **claim** for such injury or **damage** is first made against any insured during the Policy Period or any Extended Reporting Period applicable under this Policy.

**G. Damages** means a monetary judgment, award or settlement. **Damages** shall not include fines, taxes or penalties, nor other amounts deemed uninsurable as a matter of law.

**H. Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

    **1.** It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    **2.** You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment, or removal of **your product** or **your work;** or your fulfilling the terms of the contract or agreement.

**I. Insured** means:

    **1.** The **Named Insured**; and

    **2.** If you are designated in the Declarations as:

        **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001298

b.  A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.  A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

3.  Your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

4.  Your volunteer workers only while performing duties related to the conduct of your business.

5.  Any person (other than your employee or volunteer worker) or organization while acting as real estate manager for you.

6.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

7.  Any person or organization, other than the **Named Insured,** included as an additional insured under **underlying insurance**, but not for broader coverage than would be afforded under such **underlying insurance**.

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is:

    a.  The amount of the insurance required by the contract, less any amounts payable by any **underlying insurance;** or

    b.  The limits of insurance of this Policy

    whichever is less; provided that if the amount of insurance required by the contract is wholly within the limits of the **underlying insurance**, no coverage will be afforded under this Policy to the additional insured.

Notwithstanding paragraphs **1.** through **7.** above:

a.  No person or organization is an **insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not shown as a **Named Insured** in **Item 1.** of the Declarations; and

b.  No person or organization is an **insured** under this Policy that is not an **insured** in the applicable **underlying insurance**. However, this provision does not apply to any organization qualifying as a **Named Insured** under definition **K.,** Paragraphs **2.** and **3.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001299

**J.  Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

　　**1.**  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

　　**2.**  Vehicles maintained for use solely on or next to premises you own or rent;

　　**3.**  Vehicles that travel on crawler treads;

　　**4.**  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

　　　　**a.**  Power cranes, shovels, loaders, diggers or drills; or

　　　　**b.**  Road construction or resurfacing equipment such as graders, scrapers or rollers;

　　**5.**  Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

　　　　**a.**  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

　　　　**b.**  Cherry pickers and similar devices used to raise or lower workers;

　　**6.**  Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

　　However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

　　　　**a.**  Equipment designed primarily for:

　　　　　　**(1)**  Snow removal;

　　　　　　**(2)**  Road maintenance, but not construction or resurfacing; or

　　　　　　**(3)**  Street cleaning;

　　　　**b.**  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

　　　　**c.**  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

　　However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001300

**K. Named Insured** means:

    **1.** Any person or organization designated in **Item 1.** of the Declarations;

    **2.** Any organization other than a partnership, joint venture or limited liability company in which you have an ownership or majority interest as of the effective date of this Policy will be deemed to be a **Named insured**.

    **3. a.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and in which you maintain ownership or majority interest, will also be deemed to be a **Named insured**. However, coverage, for such newly acquired or formed organization:

        **1)** Is afforded only until the 90th day after you acquire or form the organization or the end of the Policy Period, whichever is earlier;

        **2)** Does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization; and

        **3)** Does not apply to **personal and advertising injury** arising out of an offense committed before you acquired or formed the organization.

    **b.** Subject to provisions **1), 2)** and **3)** above of this Paragraph **3.**, any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and in which you maintain ownership or majority interest , during the Policy Period may be added as an **insured** only by written endorsement to this Policy.

    **c.** We may, at our option, make an additional premium charge for any organization you acquire or form during the Policy Period.

**L. Occurrence** means:

    **1.** With respect to **bodily injury** or **property damage** liability,  an accident including continuous or repeated exposure to substantially the same general harmful conditions.

    **2.** With respect to **personal and advertising injury**, a covered offense. All **damages** that arise from the same act, publication or general conditions are considered to arise out of the same **occurrence**, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

**M. Other insurance** means a policy of insurance providing coverage that this Policy also provides. **Other insurance** includes any type of self-insurance or other mechanisms by which an **insured** arranges for funding of legal liabilities.

**Other insurance** does not include underlying insurance or a policy of insurance specifically purchased to be excess of this Policy providing coverage that this Policy also provides.

**N. Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001301

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner,  of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.  Oral or written publication, in any manner,  of material that violates a person's right of privacy;

6.  The use of another's advertising idea in your advertisement; or

7.  Infringing upon another's copyright, trade dress or slogan in your advertisement.

O.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

P.  1.  **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

   a.  Products that are still in your physical possession; or

   b.  Work that has not yet been completed or abandoned.

2.  **Your work** will be deemed completed at the earliest of the following times:

   a.  When all of the work called for in your contract has been completed;

   b.  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c.  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3.  **Products-completed operations hazard** does not include **bodily injury** or **property damage** arising out of:

   a.  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any **insured**; or

   b.  The existence of tools, uninstalled equipment or abandoned or unused materials.

Q.  **Property damage** means:

BADLANDS-MAHEU-STASSINOS-ND-001302

1.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

For the purposes of this insurance, **electronic data** is not tangible property. As used in this definition, **electronic data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

R.  **Retained limit** means:

1.  The total applicable limits of **underlying insurance** and any applicable **other insurance** providing coverage to the **insured**; or

2.  The **self insured retention** applicable to each **occurrence** that results in **damages** not covered by **underlying insurance** nor any applicable **other insurance** providing coverage to the **insured.**

S.  **Self insured retention** is the amount stated in **Item 7.** of the Declarations as such.

T.  **Suit** means a civil proceeding in which **damages** because of **bodily injury, property damage** or **personal and advertising injury** to which this insurance applies are alleged. **Suit** includes:

1.  An arbitration proceeding alleging such **damages** to which the **insured** must submit or does submit with our consent; or

2.  Any other alternative dispute resolution proceeding in which such **damages** are claimed and to which the **insured** submits with our consent.

U.  **Ultimate net loss** means the amount actually paid or payable due to a **claim** for which the **insured** is liable either by a settlement to which we agreed or a final judgment. Such amount will include proper adjustments for recoveries and salvage.

V.  **Underlying insurance** means the policies listed in the Schedule of Underlying Insurance forming a part of this Policy.

W.  **Underlying insurer** means any insurer which provides a policy listed in the Schedule of Underlying Insurance.

X.  **Your product:**

1.  Means:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

1)  You;

2)  Others trading under your name; or

3)  A person or organization whose business or assets you have acquired; and

BADLANDS-MAHEU-STASSINOS-ND-001303

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products, and

  **2.** Includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product;** and

    **b.** The providing of or failure to provide warnings or instructions, and

  **3.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**Y. Your work;**

  **1.** Means:

    **a.** Work operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations, and

  **2.** Includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work;** and

    **b.** The providing of or failure to provide warnings or instructions.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its Authorized Representative and countersigned on the Declarations Page by a dully authorized agent of the Insurer.

_____      _____

President                          Secretary

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001304

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 0 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SCHEDULE OF ENDORSEMENTS**

| FORM NO.: | ENDORSEMENT NAME: |
|---|---|
| TNUMB0242CW | AUTO COVERAGE – EXCLUSION OF TERRORISM |
| TNUMB0032MT | CANCELLATION AND NONRENEWAL - MONTANA CHANGES |
| TNUMB0044MT | CONFORMITY WITH STATUTES - MONTANA CHANGES |
| TNUMB0202MT | REPRESENTATIONS OR FRAUD - MONTANA CHANGES |
| TNUMB0074CW | DESIGNATED WORK EXCLUSION |
| TNML0002CW | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| TNUMB0247CW | EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| TNUMB0248CW | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM |
| TNUMB0107CW | FUNGI OR BACTERIA EXCLUSION |
| TNUMB0120CW | LEAD CONTAMINATION EXCLUSION |
| TNUMB0166CW | POLLUTION EXCLUSION (HOSTILE FIRE) |
| TNUMB0180CW | PROFESSIONAL LIABILITY – ENGINEERS, ARCHITECTS OR SURVEYORS EXCLUSION |
| TNUMB0217CW | SILICA EXCLUSION |

BADLANDS-MAHEU-STASSINOS-ND-001305

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 2 |
| Endorsement Effective Date: | 10/14/2015 |

### COMMERCIAL UMBRELLA INSURANCE POLICY

## SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | INSURER<br>POLICY PERIOD<br>POLICY NUMBER | APPLICABLE LIMITS |
|---|---|---|
| BUSINESS<br>AUTOMOBILE<br>LIABILITY | On file with company<br>10/14/2015 - 10/14/2016<br>On file with company | BI & PD LIMIT<br>COMBINED SINGLE LIMIT<br>$1,000,000 |
| COMMERCIAL<br>GENERAL<br>LIABILITY<br>COVERAGES<br>A AND B | On file with company<br>10/14/2015 - 10/14/2016<br>On file with company | $1,000,000<br>EACH OCCURRENCE<br>$2,000,000<br>OTHER AGGREGATE<br>$1,000,000<br>PRODUCTS COMPLETED<br>OPERATIONS AGGREGATE<br>$1,000,000<br>PERSONAL AND<br>ADVERTISING INJURY |

[ ] GENERAL AGGREGATE APPLIES PER LOCATION
[ ] GENERAL AGGREGATE APPLIES PER PROJECT

*The above Schedule applies to any renewals or replacements thereof

BADLANDS-MAHEU-STASSINOS-ND-001306

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 3 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## AUTO COVERAGE – EXCLUSION OF TERRORISM

The Policy is amended as follows:

Any endorsement addressing acts of terrorism (however defined) in any **underlying insurance** does not apply to this Commercial Umbrella Liability Insurance. The following provisions addressing acts of terrorism apply with respect to this Commercial Umbrella Liability Insurance:

**A.** The provisions of this endorsement:

    **1.** Apply only to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **auto** that is a covered auto under this Policy; and

    **2.** Supersede the provisions of any other endorsement addressing terrorism attached to this Policy only with respect to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **auto** that is a covered auto.

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are printed in bold text:

    **1. Terrorism** means activities against persons, organizations or property of any nature:

        **a.** That involve the following or preparation for the following:

            **(1)** Use or threat of force or violence; or

            **(2)** Commission or threat of a dangerous act; or

            **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

        **b.** When one or both of the following applies:

            **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

            **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

    **2. Any injury or damage** means any injury or damage covered under any Policy or **underlying insurance** to which this endorsement is applicable, and includes but is not limited to **bodily injury**, **property damage**, **personal and advertising injury**, **injury** or **environmental damage** as may be defined in any applicable Policy or **underlying insurance**.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for **any injury or damage** caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. **Any injury or damage** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. ***But this exclusion applies only***

TN UMB 0242 CW 06 10                                                   Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001307

**when one or more of the following are attributed to an incident of terrorism:**

1. The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material; or

3. The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of **terrorism,** there is no coverage under this Policy.

In the event of any incident of **terrorism** that is not subject to this Exclusion, coverage does not apply to **any injury or damage** that is otherwise excluded under this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001308

| | |
|---|---|
| **Named Insured:** | Badlands Consulting, LLC |
| **Policy No:** | 82068H152ALI |
| **Endorsement No:** | 4 |
| **Endorsement Effective Date:** | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## CANCELLATION AND NONRENEWAL - MONTANA CHANGES

The Policy is amended as follows:

With respect to coverage provided by this endorsement, the provisions of the Policy apply unless modified by the endorsement.

**SECTION V – CONDITIONS**, condition **C. CANCELLATION** does not apply. The following Condition applies instead:

**ENDING THIS POLICY**

**A. Cancellation**

1. The first **Named Insured** shown in the Declarations may cancel the Policy by mailing or delivering to us advance written notice of cancellation.

2. **Midterm Cancellation**

   a. When this Policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel for any reason. If we cancel for nonpayment of premium, we will mail at least 10 days written notice to the first **Named Insured**. If we cancel for any other reason, we will mail at least 45 days written notice to the first **Named Insured**.

   b. When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

      (1) Nonpayment of premium;

      (2) If you are an individual and your driver's license or motor vehicle registration or that of a driver who lives with you and customarily uses the covered **auto** has been suspended or revoked during the Policy Period, or if the Policy is a renewal, during its Policy Period or the 180 days immediately preceding its effective date;

      (3) Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

      (4) Substantial breaches of contractual duties, conditions or warranties;

      (5) Determination by the Commissioner of Insurance that continuation of the Policy would place us in violation of the Montana Insurance Code;

      (6) Financial impairment of us; or

      (7) Such other reasons that are approved by the Commissioner of Insurance.

   If we cancel for nonpayment of premium, we will mail at least 10 days written notice, stating the reason for cancellation, to the first **Named Insured**. If we cancel for any other reason, we will mail at least 45 days written notice to the first **Named Insured**.

   In this case, our notice will state that upon written request of the first **Named Insured**, mailed or delivered to us not less than 15 days prior to the effective date of cancellation, we will specify the reason for cancellation.

TN UMB 0032 MT 06 10                                                        Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001309

**3. Anniversary Cancellation**

If this Policy has been written for a period of more than a year or without a fixed expiration date, we may cancel at the anniversary of its original effective date for any reason. If we cancel, we will mail you at least 45 days written notice.

**4.** Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

**5.** If this Policy is canceled, we will send the first **Named Insured** any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

However, when a financed insurance policy is canceled, we will send any refund due to the premium finance company on a pro rata basis.

**B. Mailing Of Notices**

We will mail or deliver our notice of cancellation or nonrenewal to the first **Named Insured's** last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C. SECTION V – CONDITIONS** is amended to include the following condition:

**NONRENEWAL**

**1.** If we decide not to renew or continue this Policy, we will mail to the first **Named Insured** and agent, if any, notice at least 45 days before the end of the Policy Period. Our notice will state that upon written request of the first **Named Insured**, mailed or delivered to us not later than 1 month following the termination date of the Policy, we will notify the first **Named Insured** in writing, within 15 days of the request of the reason or reasons for nonrenewal.

If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current Policy Period. Failure to apply the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**2.** We need not mail or deliver this notice if:

    **a.** You have purchased insurance elsewhere;

    **b.** You have accepted replacement coverage;

    **c.** You have requested or agreed to nonrenewal; or

    **d.** This Policy is expressly designated as nonrenewable.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001310

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 5 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## CONFORMITY WITH STATUTES - MONTANA CHANGES

The Policy is amended as follows:

**A. SECTION V – CONDITIONS** is amended to include the following condition:

### CONFORMITY WITH MONTANA STATUTES

The provisions of this Policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this Policy.

**B.** Any provision of this Policy  (including endorsements which modify the Policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001311

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 6 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## REPRESENTATIONS OR FRAUD - MONTANA CHANGES

The Policy is amended as follows:

With respect to coverage provided by this endorsement, the provisions of the Policy apply unless modified by the endorsement.

**SECTION V – CONDITIONS** is amended to include the following condition:

**REPRESENTATIONS OR FRAUD**

We will not pay for loss or **damage** in a case of fraud committed by you or any other **insured**, whether before or after the loss and relating to coverage of the loss under this Policy.

We will not pay for any loss or **damage** in any case if fraud is committed by you or any other **insured** in the application for this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001312

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 7 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## DESIGNATED WORK EXCLUSION

The Policy is amended as follows:

**SECTION IV – EXCLUSIONS,** is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

Arising out of the designated work or operations in the Schedule below including:

1.  Work or operations performed by or on your behalf;

2.  Materials, parts or equipment furnished in connection with such work or operations;

3.  Warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in **1.** or **2.**  above; or

4.  The providing of or failure to provide warnings or instructions.


### SCHEDULE

Description of Work or Operations:

All construction, repair, and remodeling of physical structures in the states of NY, CO, AR, HI and SC


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001313

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE
DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT
DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY
COVERAGE UNDER THE POLICY.

| | |
|---|---|
| **Named Insured:** | Badlands Consulting, LLC |
| **Policy No:** | 82068H152ALI |
| **Endorsement No:** | 8 |
| **Endorsement Effective Date:** | 10/14/2015 |

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

Terrorism Premium (Certified Acts) $     18

This premium is the total Certified Acts premium attributable to the following Coverage
Part(s), Coverage Form(s) and/or Policy(s):
Commercial Umbrella Insurance Policy

Additional information, if any, concerning the terrorism premium:

Information required to complete this Schedule, if not shown above, will be shown in the
Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you
with a notice disclosing the portion of your premium, if any, attributable to coverage for
terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium
attributable to such coverage is shown in the Schedule of this endorsement or in the policy
Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism
losses insured under the federal program. The federal share equals 85% of that portion of the
amount of such insured losses that exceeds the applicable insurer retention. However, if
aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the
Treasury shall not make any payment for any portion of the amount of such losses that
exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and
we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be
liable for the payment of any portion of the amount of such losses that exceeds $100 billion,
and in such case insured losses up to that amount are subject to pro rata allocation in
accordance with procedures established by the Secretary of the Treasury.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001314

| Named Insured: | Badlands Consulting, LLC |
| Policy No: | 2013-10-14 |
| Endorsement No: | 9 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

The Policy is amended as follows:

Any endorsement addressing acts of terrorism (however defined) in any **underlying insurance** does not apply to this Commercial Umbrella Liability Insurance. The following provisions addressing acts of terrorism apply with respect to this Commercial Umbrella Liability Insurance:

**SCHEDULE**

| Certified Acts of Terrorism Retained Amount | $ 0 |

A. Coverage provided by this Policy for damages arising out of a **certified act of terrorism** applies in excess of the Certified Acts of Terrorism Retained Amount described in Paragraph **B.** below.

B. **SECTION II – LIMITS OF INSURANCE**, is amended to include the following:

The Certified Acts of Terrorism Retained amount refers to the amount stated in the SCHEDULE of this endorsement. This amount may consist of a self-insured retention, **underlying insurance** or a combination thereof.

The Certified Acts of Terrorism Retained Amount applies:

1. Only to **damages** arising out of a **certified act of terrorism** covered under this Policy; and

2. Separately to each **certified act of terrorism**.

We will pay those sums covered under this Policy only after your Certified Acts of Terrorism Retained amount has been exhausted by means of payments for judgments or settlements. Defense expenses shall not erode the Certified Acts of Terrorism Retained Amount.

C. **SECTION IV – EXCLUSIONS**, is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

**TERRORISM**

For **any injury or damage** arising, directly or indirectly, out of an **other act of terrorism** that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the coverage territory. However, this exclusion applies only when one or more of the following are attributed to such act:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001315

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an **other act of terrorism** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

D. **SECTION VI – DEFINITIONS,** is amended to include the following definitions:

1. For the purposes of this endorsement, **any injury or damage** means any injury or damage covered under any Policy or **underlying insurance** to which this endorsement is applicable, and includes but is not limited to **bodily injury, property damage, personal and advertising injury,** injury or environmental damage as may be defined in any applicable Policy or **underlying insurance.**

2. **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

    a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

    b. The act resulted in damage:

        (1) Within the United States (including its territories and possessions and Puerto Rico); or

        (2) Outside of the United States in the case of:

            (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

            (b) The premises of any United States mission; and

    c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001316

3. **Other act of terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a **certified act of terrorism**.

   Multiple incidents of an **other act of terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

E. In the event of an **other act of terrorism** that is not subject to this exclusion, coverage does not apply to any liability, **damage**, loss, cost or expense that is otherwise excluded under this Policy.

F. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001317

| Named Insured: | Badlands Consulting, LLC |
| Policy No: | 82068H152ALI |
| Endorsement No: | 10 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

The Policy is amended as follows:

Any endorsement addressing acts of terrorism (however defined) in any **underlying insurance** does not apply to this Commercial Umbrella Liability Insurance. The following provisions addressing acts of terrorism apply with respect to this Commercial Umbrella Liability Insurance:

A. **SECTION IV – EXCLUSIONS**, is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

**TERRORISM PUNITIVE DAMAGES**

For damages arising, directly or indirectly, out of a **certified act of terrorism** that are awarded as punitive damages.

B. **SECTION VI – DEFINITIONS**, is amended to include the following definition:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001318

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 11 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## FUNGI OR BACTERIA EXCLUSION

The Policy is amended as follows:

**A. SECTION IV – EXCLUSIONS,** is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

1. Which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

2. Arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effect of, **fungi** or bacteria, by any **insured** or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a food product intended for consumption.

**B. SECTION VI – DEFINITIONS,** is amended to include the following definition:

**Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001319

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 12 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

### LEAD CONTAMINATION EXCLUSION

The Policy is amended as follows:

**SECTION IV – EXCLUSIONS,** is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

Arising out of:

1. The manufacture, mining, use, sale, installation, handling, removal, distribution, application, inhalation, ingesting, existence or consumption of, or exposure to lead or any products containing lead;

2. Any request, demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead;

3. Any **claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead; or

4. The payment for the investigation or defense of any loss, injury or **damage** or any cost, fine or penalty, or for any expense or **claim** of **suit** related to **1.**, **2.** or **3.** above.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001320

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 13 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## POLLUTION EXCLUSION
## (HOSTILE FIRE)

The Policy is amended as follows:

**SECTION IV – EXCLUSIONS, K. POLLUTION LIABILITY,** is deleted in its entirety and replaced with the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

### K. POLLUTION LIABILITY

1. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

   b. At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom you may be legally responsible;

   d. At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

      1) If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

      2) If the operations are the test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in  any way respond to, or assess the effects of, **pollutants**;

      Sub-paragraphs **1.a.** and **1.d.1)** do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire.

      As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

   e. For liability included within the **products-completed operations hazard**;

BADLANDS-MAHEU-STASSINOS-ND-001321

    **f.**  that are, or that are contained in any property that is:

        **1)**  Being transported or towed by, or handled for movement into, onto or from, the covered **auto**;

        **2)**  Otherwise in the course of transit by or on behalf of the **insured**; or

        **3)**  Being stored, disposed of, related or processed in or upon the covered **auto**.

    **g.**  Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the covered **auto**; or

    **h.**  After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

**2.**  Any loss, cost or expense arising out of any:

    **a.**  Request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants;** or

    **b.**  **Claim** or **suit** by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

However, this paragraph **K. 2.** does not apply to liability for **damages** because of **property damage** that the **insured** would have had in the absence of such request, demand, order or statutory requirement, or such **claim** or **suit** by or on behalf of a governmental authority.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001322

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 14 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## PROFESSIONAL LIABILITY – ENGINEERS, ARCHITECTS OR SURVEYORS EXCLUSION

The Policy is amended as follows:

**SECTION IV –EXCLUSIONS,** is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

Arising out of professional services performed by or for any **insured** including:

1.  The preparing, approving, or the failure to prepare or approve:  maps, drawings, opinions, reports, surveys, change orders, designs or specifications.

2.  Supervisory, inspection, or engineering services; or the failure to provide those services.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

BADLANDS-MAHEU-STASSINOS-ND-001323

| Named Insured: | Badlands Consulting, LLC |
|---|---|
| Policy No: | 82068H152ALI |
| Endorsement No: | 15 |
| Endorsement Effective Date: | 10/14/2015 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

### SILICA EXCLUSION

The Policy is amended as follows:

**SECTION IV – EXCLUSIONS,** is amended to include the following exclusion:

This insurance does not apply to any liability, **damage**, loss, cost or expense:

1.  Arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation, ingestion or respiration of silica or products or substances containing silica or silicon dioxide in any form including, but not limited to, silica dust, sand or otherwise, or work involving the use of or handling of silica or silicon dioxide in any form, even if other causes are alleged to contribute to or aggravate such loss, **claim** or **occurrence**.

2.  Arising from or related to:

    a.  Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with the events described in Paragraph **1.**;

    b.  Any obligation to indemnify, defend, share damages with or repay someone else who must pay damages because of events described in Paragraph **1.**; and

    c.  Any fines or penalties imposed because of events described in Paragraph **1.**

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BADLANDS-MAHEU-STASSINOS-ND-001324