

StarStone National Insurance Company

Harborside 5,
185 Hudson Street, Suite 2600,
Jersey City, NJ 07311

t +1 (201)743-7700
f +1 (201)743-7701

www.starstone.com

October 9, 2018

**VIA EMAIL AND U.S. MAIL**

Leslie C. Thorne, Esq.
Haynes Boone LLP
600 Congress Avenue
Suite 1300
Austin, TX78701-3285
leslie.thorne@haynesboone.com

Re: *Stassinos, et al. v. XTO, et al.,* Case No. 1:17-cv-00138
U.S. District Court, District of North Dakota, Western Division ("Stassinos Lawsuit")

*Maheu, et al., v. XTO, et al.,* Case No. 1:17-cv-00102
U.S. District Court, District of North Dakota, Western Division ("Maheu Lawsuit")

Claim No.: 100-60-645
Insured: Badlands Consulting, LLC
Insurer: StarStone National Insurance Company (fkaTorus National Insurance Company)
Policy No.: 82068H152AL1
Policy Term: October 14, 2015 to October 14, 2016

Dear Ms. Thorne:

    This responds to your July 27, 2018 letter on behalf of XTO Energy, Inc. ("XTO") to Torus National Insurance Company now StarStone National Insurance Company ("StarStone) in connection with the June 18, 2016 incident at the Ryan 14x-09E well location near Watford City, McKenzie County, North Dakota (the "Incident"). Your letter also was addressed to Seneca Specialty Insurance Company ("Seneca"). Seneca responded in a letter dated August 20, 2018. I am responding solely on behalf of StarStone.

StarStone National Insurance Company
Registered office: 1209 Orange Street, Wilmington DE, 19801 USA



Your letter asserts that XTO and its contractors are additional insureds under Policy No. 82068H152ALI issued by StarStone to Badlands Consulting, LLP (the "StarStone Umbrella Policy"), and that "given the claims involved, XTO hereby provides notice to Torus that the Torus Umbrella Policy may be involved." Thus, we understand that XTO is providing notice to StarStone of this matter on behalf of itself and its contractors, but is not at this time making a claim under the StarStone Umbrella Policy for a defense or indemnity. Please inform us immediately if our understanding is not correct.

I am writing to advise you of StarStone's present assessment of the coverage available to XTO and its contractors under the StarStone Umbrella Policy. Based on the information reviewed to date, StarStone believes that XTO and its contractors may qualify as additional insureds under the StarStone Umbrella Policy, but that coverage limitations and exclusions would apply to preclude a defense and indemnity in favor of XTO and its contractors under the StarStone Umbrella Policy. If you have additional information relevant to our assessment, please provide it to the undersigned and it will be considered in connection with our ongoing assessment of this matter.

**I.    The Policies**

StarStone issued the Commercial Umbrella Policy to Badlands Consulting, LLC (Badlands") for the period October 14, 2015 to October 14, 2016. The StarStone Umbrella Policy includes the following grant of coverage:

> **SECTION I - COVERAGE**
>
> A.   We will pay on behalf of the **insured** the **ultimate net loss** in excess of the **retained limit** which the insured becomes legally obligated to pay as **damages** because of **bodily injury**, **property damage** or **personal and advertising injury** to which this insurance applies.
>
> The amount we will pay for **damages** is limited as described in **SECTION II - LIMITS OF INSURANCE.**
>
> \*          \*          \*
>
> **SECTION Ill - DEFENSE OF CLAIMS OR SUITS**
>
> 1. We will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend. If we elect to join the defense of such **claims** or **suits**, we will pay all expenses we incur.
>
> 2. We will have the right and duty to defend any **suit** for **damages** which are payable under this Policy (including **damages** wholly or partly within the **retained limit**) but which are not payable by a Policy of **underlying insurance**, or any other available insurance, because:
>
>    a. Such **damages** are not covered; or
>
>    b. The **underlying insurance** has been exhausted by the payment of **claims**.



      \*      \*      \*

The retained limit for the StarStone Umbrella Policy includes "[t]he total applicable limits of **underlying insurance** and any applicable **other insurance** providing coverage to the **insured**[.]" (*See* the definition of Retained Limit at paragraph VI.R.1)  Thus, both underlying insurance and other insurance[1] constitute the retained limit.

As you note, the underlying insurance includes Policy No. SPP 0031807 issued by Seneca to Badlands for the policy term of January 20, 2016 to January 20, 2017 ("Seneca Policy"), with per occurrence limits of $1 million.

## II.  Background

On December 2, 2011, XTO and Badlands entered into a Master Service Agreement ("MSA") wherein Badlands agreed to provide certain consulting services to XTO.  We understand the MSA was in effect and applied to Badland's services in connection with the Ryan 14x-09E well location at the time of the Incident.

On June 18, 2016, snubbing operations were taking place at the Ryan 14X-09E well location when hydrocarbon gas was released to the atmosphere resulting in an explosion that killed John Stassinos and injured several other XTO contractors.

On July 6, 2017, Mary and Ryann Stassinos, as heirs and co-administrators of the estate of John Stassinos, filed suit against XTO, Badlands and its employee Tom Jones, Petroleum Experience, Inc. ("PEI") and its employee Allan Kolden, Weatherford International, LLC, Weatherford U.S., LP, KLX Energy Services, LLC ("KLX"), Missouri basin Well Service, Inc. d./b/a MBI Energy Services d/b/a Yankee Consulting, LLC ("MBI") and its employee Carson Dokken, in the U.S. District Court for the District of North Dakota, Western Division, seeking damages relating to the death of Mr. Stassinos.

On May 22, 2017, Richard Chadwick Maheu, an employee of XTO's contractor Most Wanted Well Services ("MWWS"), Janie Williams, Joseph Guillen, an employee of XTO contractor Sherwood Enterprises, Inc. ("SEI"), and Courtney Mann, wife of Guillen, filed suit in the U.S. District Court for the District of North Dakota, Western Division against XTO, Badlands, Mr. Jones, PEI, Mr. Kolden, KLX, Weatherford International, LLC, Weatherford U.S., LP, MBI and Mr. Dokken.  The lawsuit seeks damages as a result of the injuries sustained by Mr. Maheu and Mr. Guillen because of the explosion, as well as related damages for Ms. Williams and Ms. Mann.

In your July 27, 2018 letter to Seneca and StarStone, you requested a defense and indemnity under the Seneca Policy and provided notice to StarStone.  Seneca responded in a letter dated August 20, 2018 in

---

[1] Other insurance includes "a policy of insurance providing coverage that this Policy also provides."



which it stated that it considers XTO and its contractors additional insureds under the Seneca Policy. Seneca also stated that coverage was precluded by the Seneca Policy's pollution exclusion.

### III. Coverage

#### A. Additional Insured Coverage

The Torus Policy includes the following definition applicable to additional insureds:

**SECTION VI – DEFINITIONS**

      \*             \*            \*

**I. Insured means:**

      \*             \*            \*

    7. Any person or organization, other than the **Named Insured**, included as an additional insured under **underlying insurance**, but not for broader coverage than would be afforded under such **underlying insurance**.

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is:

      a. The amount of the insurance required by the contract, less any amounts payable by any **underlying insurance**; or

      b. The limits of insurance of this Policy

    whichever is less; provided that if the amount of insurance required by the contract is wholly within the limits of the underlying insurance, no coverage will be afforded under this Policy to the additional insured.

The StarStone Policy also provides that: "No person or organization is an **insured** under this Policy that is not an **Insured** in the applicable **underlying insurance**." (*See* VI.I.7.b)

As stated by Seneca in its letter of August 20, 2018, Seneca has determined that XTO and its contractors may qualify as additional insureds under the Seneca Policy pursuant to certain limitations. In particular, Seneca determined that XTO and its contractors are additional insureds only to the extent of liability "caused, in whole or in part, by Badland's acts or omissions." Seneca concluded that: "There is no

Case 1:18-cv-00195-DLH-CRH   Document 83-17   Filed 03/02/20   Page 5 of 9



additional insured coverage available to XTO and/or the XTO Group for liability arising out of the acts and omissions of XTO and/or the XTO Group."

To the extent XTO and its contractors are additional insureds under the Seneca Policy, XTO and its contractors would qualify as additional insureds under the StarStone Umbrella Policy, subject to the limitations and exclusions applicable to additional insureds. Thus, XTO and its contractors would be additional insureds under the StarStone Umbrella Policy only to the extent of liability "caused, in whole or in part, by Badland's acts or omissions" and would not be entitled to additional insured coverage for "liability arising out of the acts and omissions of XTO and/or the XTO Group."

**B.   For Additional Insureds, Coverage Is No Broader Than Provided By Seneca.**

The StarStone Umbrella Policy includes the following limitation on additional insured coverage:

> 7. Any person or organization, other than the **Named Insured**, included as an additional insured under **underlying insurance**, but not for broader coverage than would be afforded under such **underlying insurance**.

Therefore, to the extent XTO and its contractors qualify as additional insureds, coverage afforded to XTO and its contractors under the StarStone Umbrella Policy is "not for broader coverage than would be afforded under such **underlying insurance**."

As you know, Seneca in its letter of August 20, 2018 determined that XTO and its contractors are not entitled to coverage due to the application of the pollution exclusion in the Seneca Policy. Therefore, coverage for XTO and its contractors would likewise be excluded under the StarStone Umbrella Policy.

**C.   Pollution Exclusion**

The StarStone Umbrella Policy includes Endorsement 13, which amends the policy and replaces in its entirety SECTION IV - EXCLUSIONS, K. POLLUTION LIABILITY. Endorsement 13 provides, in pertinent part:

This insurance does not apply to any liability, damage, loss, cost or expense:

**EX Q at 5 of 9**



### K. POLLUTION LIABILITY

1. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

    a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

    b. At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom you may be legally responsible;

    d. At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations;

        1) If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

        2) If the operations are the test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**;

    Sub-paragraphs 1.a. and 1.d.1) do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire.

    As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

    e. For liability included within the **products-completed operations hazard**;

    f. that are, or that are contained in any property that is:



       1)     Being transported or towed by, or handled for movement into, onto or from, the covered **auto**;

       2)     Otherwise in the course of transit by or on behalf of the **insured**; or

       3)     Being stored, disposed of, related or processed in or upon the covered **auto**.

    g.     Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the covered **auto**; or

    h.     After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

2. Any loss, cost or expense arising out of any:

    a. Request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    b. **Claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, this paragraph K. 2. does not apply to liability for **damages** because of **property damage** that the **insured** would have had in the absence of such request, demand, order or statutory requirement, or such **claim** or **suit** by or on behalf of a governmental authority.

    The StarStone Umbrella Policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (*See* VI.O.) The hydrocarbon gas clearly satisfies the definition of a "pollutant." *See, e.g., Palmer v. Northland Cas. Co.*, No. CV 15-58-BLG-SPW-CSO, 2016 WL 5820191 (D. Mont. June 8, 2016) (Magistrate Judge Recommendations) and *Palmer v. Northland Cas. Co.*, No. CV 15-58-BLG-SPW, 2016 WL 5820191 (D. Mont. October 5, 2016) (Opinion and Order);



*Hiland Partners GP Holdings, LLC, et al. v. National Union Fire Ins. Co. of Pittsburgh*, PA, 847 F.3d 594 (8th Cir. 2017).

Sub-paragraphs 1.a. and 1.d.1) of the pollution exclusion in the StarStone Umbrella Policy apply to the Incident and all the injuries and losses alleged in the underlying litigation. The hydrocarbon gas was released from the Ryan 14X-09E well location, which "was at the time owned or occupied by, or rented or loaned to" XTO or its contractors. The hydrocarbon gas also was brought onto the location by the operations of XTO and its contractors. The exception for bodily injury or property damage arising out of a hostile fire does not apply because the Incident does not involve a hostile fire, and "but for" the release of pollutants the explosion would not have happened. *See Palmer, supra*, and *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642 (5th Cir. 2008) (pollution that results in explosion not encompassed by hostile fire exception).

### D.   Reservation of Rights

By advising XTO of the coverage issues discussed in this letter, StarStone is not waiving, and is explicitly preserving, its right to reply upon other policy terms, conditions, exclusions and factual matters not referenced in this letter in connection with determining its obligations to XTO and XTO's contractors in the event XTO or its contractors submit to StarStone a specific request or claim for coverage.

Should you have any additional information you would like us to consider at this time, please forward the same to my attention.

Sincerely,

Christine Boberek
Senior Claims Examiner

