# EXHIBIT 1-C

David E. Harris
SICO HOELSCHER HARRIS LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: (361) 653-3300
Fax: (361) 653-3333
dharris@shhlaw.com

Louie J. Cook
SICO HOELSCHER HARRIS LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: (361) 653-3300
Fax: (361) 653-3333
lcook@shhlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| MARY STASSINOS AND RYANN STASSINOS, ) AS HEIRS AT LAW OF JOHN H. STASSINOS, ) DECEASED, AND AS CO-ADMINISTRATORS ) OF THE ESTATE OF JOHN H. STASSINOS, ) )      Plaintiffs, ) )      vs. ) ) XTO ENERGY, INC.; ) BADLANDS CONSULTING, LLC; ) THOMAS JONES, PETROLEUM EXPERIENCE, ) INC.; ALLAN KOLDEN; WEATHERFORD ) INTERNATIONAL, LLC; WEATHERFORD ) U.S., L.P.; AND KLX ENERGY SERVICES, INC. ) )      Defendants ) | Civil Action No. 17-cv-00138 |
| RICHARD CHADWICK MAHEU; ) JANIE WILLIAMS; JOSEPH C. GUILLEN; ) AND COURTNEY MANN, ) ) ) | Civil Action No. 1:17-CV-102 |

1

| | |
|---|---|
| vs. | ) |
| | ) |
| XTO ENERGY, INC.; | ) |
| BADLANDS CONSULTING, LLC; | ) |
| PETROLEUM EXPERIENCE, INC.; | ) |
| KLX ENERGY SERVICES, LLC; | ) |
| WEATHERFORD INTERNATIONAL, LLC; | ) |
| WEATHERFORD U.S., L.P.; | ) |
| MISSOURI BASIN WELL SERVICE, INC., | ) |
| d/b/a MBIENERGY SERVICES and d/b/a | ) |
| YANKEECONSULTING, LLC; | ) |
| ALLAN KOLDEN, THOMAS JONES, | ) |
| AND CARSON DOKKEN, | ) |
| | ) |
|        Defendants | ) |
| | ) |
| And | ) |
| | ) |
| DANIEL PAVON; AND ANA PAVON | ) |
| | ) |
|        Intervenors | ) |
| | ) |
|        vs. | ) |
| | ) |
| XTO ENERGY, INC.; KLX ENERGY | ) |
| HOLDINGS, LLC AND | ) |
| KLX ENERGY SERVICES, LLC | ) |
| | ) |
|        Defendants. | ) |

## **DANIEL AND ANA PAVON'S MOTION IN INTERVENTION**

Daniel and Ana Pavon, collectively referred to as "the Pavon Family" hereby moves this Court for leave to intervene into this action pursuant to Federal Rule of Civil Procedure 24(b). As grounds therefore, the Pavon Family states as follows:

1.      Federal Rule of Civil Procedure 24(b) provides for permissive intervention when the applicant shows the following elements: (a) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights; (b) an independent ground for jurisdiction; (c) the applicant's claim or defense shares common questions of law or fact with the main suit. *See*

2

*Perry v. Schwarzenegger,* 630 F.3d 898, 905 (9th Cir. 2011). Moreover, along with a Motion in Intervention, the intervenor is required to file and serve the pleading which it seeks to intervene. *U.S. v. Metropolitan St. Louis Sewer Dist.,* 569 F.3d 829, 834 (8th Cir. 2009).

2.      The Pavon Family's Motion to Intervene is timely because intervention by the Pavon Family was filed as soon as practical once The Pavon Family's claims were dismissed on *forum non conveniens* grounds from Harris County, Texas on May 17, 2018 by the First Court of Appeals, Houston. This dismissal took place after approximately a year and a half of litigation in Harris County, Texas and only six months before the parties' trial setting in November of 2018. XTO Energy, Inc. and KLX Energy Services, LLC recommended in their briefing that North Dakota was an alternative forum. The Supreme Court has emphasized that "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Fifth Circuit has also recognized that the requirement of timeliness "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *U.S. Army Corps of Engineers*, 302 F.3d at 1259 (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970). Here, the Pavon Family was successfully litigating their lawsuit until its dismissal on *forum non convienens.* Given the circumstances, The Pavon Family's re-filing within less than thirty days of dismissal from Harris County is timely.

3.      The Pavon Family's intervention will not create any delay.  The Pavon Family was prepared for trial for November of 2018, six months before the May 2019 trial setting in the current action. The Pavon Family had already designated experts, filed numerous motions to compel, responded to summary judgments, as well as taken twenty-eight depositions. At each of these depositions, KLX Energy and XTO were represented by the same Counsel that represents

App. 068

KLX and XTO in the current action. The Pavon Family moreover is not joining any additional defendants to this action. Thus, intervention by the Pavon Family at this juncture will not prejudice the existing parties.

4.      The Pavon Family satisfies the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b)(2) because its' claims against the defendants in the current action have questions of fact in common with the claims and facts at issue in the main action. *See* Fed. R. Civ. P. 24(b)(2). Specifically, the Pavon Family's claims arise from the June 18, 2016 flash-fire that severely injured Richard Chadwick Maheu. The claims by Maheu and Pavon both center around XTO Energy, Inc.'s decision not to kill the well once a downhole problem was identified and how that failure led to both Maheu and Pavon's life-changing injuries.

5.      The Pavon Family has reviewed the Joint Motion to Amend Scheduling and Discovery Plan for Consolidated Cases that was filed on June 6, 2018 and is in agreement with this motion.

6.      Pursuant to the local rules, counsel for the Pavon Family conferred with counsel for the defendants and Plaintiffs. All parties consent to the Pavon Families intervention.

7.      For the foregoing reasons, the Court should grant the Pavon Family's motion to intervene in Civil Action No. 1:17-CV-102 permissively pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

By:      /s/ David E. Harris
        David E. Harris
        dharris@shhlaw.com
        Louie J. Cook
        lcook@shhlaw.com
        pledezma@shhlaw.com
        **SICO HOELSCHER HARRIS LLP**
        802 N. Carancahua, Suite 900
        Corpus Christi, Texas 78401

4

Phone:  361-653-3300
Fax:  361-653-3333

**ATTORNEYS FOR THE PAVON FAMILY**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2018  a true and correct copy of the foregoing has been served by the Notice of Electronic Filing, and was electronically filed with the Clerk of the Court via the CM/ECF system, which generates a notice of filing to the following:

Reagan M. Brown
Norton Rose Fulbright US LLP
1301 McKinney St., Suite 5100
Houston, Texas 77010-3095
Reagan.brown@nortonrosefulbright.com

Courtney Presthus
Nick Grant
Ebeltoft Sickler
2272 8th Street West
Dickinson, North Dakota 58601
pmorowski@ndlaw.com
cpresthus@ndlaw.com

Ryan Shaffer
Robert L. Stepans
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
ryan@mss-lawfirm.com
rob@mss-lawfirm.com

Richard H. Honaker
Honaker Law Offices, LC
PO Box 366
Rock Springs, WY 82901
rhonaker@wyoming.com

Jessica Schmidt
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
jmschmidt@hollandhart.com

David S. Maring
Maring Williams Law Office
1661 Capitol Way, Suite 103LL
Bismarck, ND 58501
dmaring@maringlaw.com

James E. Fitzgerald
Michael J. Fitzgerald
The Fiztgerald Law Firm
2108 Warren Ave.
Cheyenne, WY 82001
lawyers@fitzgeraldlaw.com

Joe Teig
Holland & Hart LLP
25 South Willow Street, Suite 200
PO Box 68
Jackson, WY 83001
jteig@hollandhart.com

Todd Koebele
Roland John Wells, III
HKM
30 E. 7th Street, Suite 3200
St. Paul, MN 55101
tkoebele@murnane.com
jwells@hkmlawgroup.com

Paul R. Sanderson
William Behrmann
Evenson Sanderson, PC
1100 College Dr., Suite 5
Bismarck, ND 58501
psanderson@esattorneys.com
wbehrmann@esattorneys.com

Jeffrey Davis
Mary Elizondo Frazier
Gardere Wynne Sewell, L.L.P.
1000 Louisiana, Suite 2000
Houston, Texas 77002
jdavis@gardere.com
mfrazier@gardere.com

Jason R. Vendsel
McGee, Hankla & Backes
2400 E. Burdick Expwy. Ste. 100
PO Box 998
Minot, ND 58702
jvendsel@mcgeelaw.com


/s/ Louie J. Cook_____

6

David E. Harris
Sico Hoelscher Harris LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: (361) 653-3300
Fax: (361) 653-3333
dharris@shhlaw.com

Louie J. Cook
Sico Hoelscher Harris LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: (361) 653-3300
Fax: (361) 653-3333
lcook@shhlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| MARY STASSINOS AND RYANN STASSINOS, )<br>AS HEIRS AT LAW OF JOHN H. STASSINOS, )<br>DECEASED, AND AS CO-ADMINISTRATORS )<br>OF THE ESTATE OF JOHN H. STASSINOS, )<br> )<br>    Plaintiffs, )<br> )<br>    vs. )<br> )<br>XTO ENERGY, INC.; )<br>BADLANDS CONSULTING, LLC; )<br>THOMAS JONES, PETROLEUM EXPERIENCE, )<br>INC.; ALLAN KOLDEN; WEATHERFORD )<br>INTERNATIONAL, LLC; WEATHERFORD )<br>U.S., L.P.; AND KLX ENERGY SERVICES, INC. )<br> )<br>    Defendants )  | Civil Action No. 17-cv-00138 |

_____     _____

| | |
|---|---|
| RICHARD CHADWICK MAHEU; )<br>JANIE WILLIAMS; JOSEPH C. GUILLEN; )<br>AND COURTNEY MANN, )<br> )<br> )  | Civil Action No. 1:17-CV-102 |

1

App. 072

| | |
|---|---|
| vs. | ) |
| | ) |
| XTO ENERGY, INC.; | ) |
| BADLANDS CONSULTING, LLC; | ) |
| PETROLEUM EXPERIENCE, INC.; | ) |
| KLX ENERGY SERVICES, LLC; | ) |
| WEATHERFORD INTERNATIONAL, LLC; | ) |
| WEATHERFORD U.S., L.P.; | ) |
| MISSOURI BASIN WELL SERVICE, INC., | ) |
| d/b/a MBIENERGY SERVICES and d/b/a | ) |
| YANKEECONSULTING, LLC; | ) |
| ALLAN KOLDEN, THOMAS JONES, | ) |
| AND CARSON DOKKEN, | ) |
| | ) |
| Defendants | ) |
| | ) |
| And | ) |
| | ) |
| DANIEL PAVON; AND ANA PAVON | ) |
| | ) |
| Intervenors | ) |
| | ) |
| vs. | ) |
| | ) |
| XTO ENERGY, INC.; KLX ENERGY | ) |
| HOLDINGS, LLC AND | ) |
| KLX ENERGY SERVICES, LLC | ) |
| | ) |
| Defendants. | ) |

## <u>DANIEL AND ANA PAVON'S MEMORANDUM IN SUPPORT OF THEIR MOTION IN INTERVENTION</u>

Daniel and Ana Pavon, collectively referred to as "the Pavon Family" hereby moves this Court for leave to intervene into this action pursuant to Federal Rule of Civil Procedure 24(b). As grounds therefore, the Pavon Family states as follows:

1.      Federal Rule of Civil Procedure 24(b) provides for permissive intervention when the applicant shows the following elements: (a) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights; (b) an independent ground for jurisdiction; (c) the

2

applicant's claim or defense shares common questions of law or fact with the main suit. *See Perry v. Schwarzenegger,* 630 F.3d 898, 905 (9th Cir. 2011). Moreover, along with a Motion in Intervention, the intervenor is required to file and serve the pleading which it seeks to intervene. *U.S. v. Metropolitan St. Louis Sewer Dist.,* 569 F.3d 829, 834 (8th Cir. 2009).

2.      Attached to the motion in intervention as **Exhibit 1** is the Pavon Family's Plea in Intervention which it seeks to intervene in the current action.

### ARGUMENTS AND AUTHORITIES

**A.      The Pavon Family's Motion is Timely**

3.      The Pavon Family's Motion to Intervene is timely because intervention by the Pavon Family was filed as soon as practical once the Pavon Family's claims were dismissed on *forum non conveniens* grounds from Harris County, Texas on May 17, 2018 by the First Court of Appeals, Houston. This dismissal took place after approximately a year and a half of litigation in Harris County, Texas and only six months before the parties' trial setting in November of 2018. XTO Energy, Inc. and KLX Energy Services, LLC recommended in their briefing that North Dakota was an alternative forum. The Supreme Court has emphasized that "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Fifth Circuit has also recognized that the requirement of timeliness "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *U.S. Army Corps of Engineers*, 302 F.3d at 1259 (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970). Here, the Pavon Family was successfully litigating their lawsuit until its dismissal on *forum non conveniens.* Given the circumstances, the Pavon Family's re-filing within less than thirty days of dismissal from Harris County is timely.

3

**B.     The Pavon Family's Intervention will not Create any Delay.**

4.       The Pavon Family's intervention will not create any delay.   The Pavon Family was prepared for trial for November of 2018, six months before the May 2019 trial setting in the current action. The Pavon Family had already designated experts, filed numerous motions to compel, responded to summary judgments, as well as taken twenty-eight depositions. At each of these depositions, KLX Energy and XTO were represented by the same Counsel that represents KLX and XTO in the current action. The Pavon Family moreover is not joining any additional defendants to this action. Thus, intervention by the Pavon Family at this juncture will not prejudice the existing parties.

**C.     The Pavon Family Shares Common Questions of Fact With the Current Action.**

5.       The Pavon Family satisfies the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b)(2) because its' claims against the defendants in the current action have questions of fact in common with the claims and facts at issue in the main action. *See* Fed. R. Civ. P. 24(b)(2). Specifically, the Pavon Family's claims arise from the June 18, 2016 flash-fire that severely injured Richard Chadwick Maheu. The claims by Maheu and Pavon both center around XTO Energy, Inc.'s decision not to kill the well once a downhole problem was identified and how that failure led to both Maheu and Pavon's life-changing injuries.

6.       Pursuant to the local rules, counsel for the Pavon Family conferred with counsel for the defendants and Plaintiffs. All parties consent to the Pavon Families intervention.

## I.     CONCLUSION

For the foregoing reasons, the Court should grant the Pavon Family's motion to intervene in Civil Action No. 1:17-CV-102 permissively pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

4

Respectfully submitted,

By:   /s/ David E. Harris
      David E. Harris
      dharris@shhlaw.com
      Louie J. Cook
      lcook@shhlaw.com
      pledezma@shhlaw.com
      **SICO HOELSCHER HARRIS LLP**
      802 N. Carancahua, Suite 900
      Corpus Christi, Texas 78401
      Phone:  361-653-3300
      Fax:  361-653-3333

      **ATTORNEYS FOR THE PAVON FAMILY**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2018  a true and correct copy of the foregoing has been served
by the Notice of Electronic Filing, and was electronically filed with the Clerk of the Court via
the CM/ECF system, which generates a notice of filing to the following:

Reagan M. Brown
Norton Rose Fulbright US LLP
1301 McKinney St., Suite 5100
Houston, Texas 77010-3095
Reagan.brown@nortonrosefulbright.com

Courtney Presthus
Nick Grant
Ebeltoft Sickler
2272 8th Street West
Dickinson, North Dakota 58601
pmorowski@ndlaw.com
cpresthus@ndlaw.com

Ryan Shaffer
Robert L. Stepans
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
ryan@mss-lawfirm.com
rob@mss-lawfirm.com

Richard H. Honaker
Honaker Law Offices, LC
PO Box 366
Rock Springs, WY 82901
rhonaker@wyoming.com

Jessica Schmidt
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
jmschmidt@hollandhart.com

David S. Maring
Maring Williams Law Office
1661 Capitol Way, Suite 103LL
Bismarck, ND 58501
dmaring@maringlaw.com

James E. Fitzgerald
Michael J. Fitzgerald
The Fiztgerald Law Firm
2108 Warren Ave.
Cheyenne, WY 82001
lawyers@fitzgeraldlaw.com

5

Joe Teig
Holland & Hart LLP
25 South Willow Street, Suite 200
PO Box 68
Jackson, WY 83001
jteig@hollandhart.com

Todd Koebele
Roland John Wells, III
HKM
30 E. 7th Street, Suite 3200
St. Paul, MN 55101
tkoebele@murnane.com
jwells@hkmlawgroup.com

Paul R. Sanderson
William Behrmann
Evenson Sanderson, PC
1100 College Dr., Suite 5
Bismarck, ND 58501
psanderson@esattorneys.com
wbehrmann@esattorneys.com

Jeffrey Davis
Mary Elizondo Frazier
Gardere Wynne Sewell, L.L.P.
1000 Louisiana, Suite 2000
Houston, Texas 77002
jdavis@gardere.com
mfrazier@gardere.com

Jason R. Vendsel
McGee, Hankla & Backes
2400 E. Burdick Expwy. Ste. 100
PO Box 998
Minot, ND 58702
jvendsel@mcgeelaw.com


/s/ Louie J. Cook_____

App. 077

David E. Harris
SICO HOELSCHER HARRIS LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: (361) 653-3300
Fax: (361) 653-3333
dharris@shhlaw.com

Louie J. Cook
SICO HOELSCHER HARRIS LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone: (361) 653-3300
Fax: (361) 653-3333
lcook@shhlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION**

| | |
|---|---|
| MARY STASSINOS AND RYANN STASSINOS, )<br>AS HEIRS AT LAW OF JOHN H. STASSINOS, )<br>DECEASED, AND AS CO-ADMINISTRATORS )<br>OF THE ESTATE OF JOHN H. STASSINOS, )<br>                                                              )<br>        Plaintiffs,                                      )<br>                                                              )<br>            vs.                                            )<br>                                                              )<br>XTO ENERGY, INC.;                                )<br>BADLANDS CONSULTING, LLC;          )<br>THOMAS JONES, PETROLEUM EXPERIENCE, )<br>INC.; ALLAN KOLDEN; WEATHERFORD )<br>INTERNATIONAL, LLC; WEATHERFORD )<br>U.S., L.P.; AND KLX ENERGY SERVICES, INC. )<br>                                                              )<br>        Defendants                                    ) | Civil Action No. 17-cv-00138 |

_____          _____

| | |
|---|---|
| RICHARD CHADWICK MAHEU;          )<br>JANIE WILLIAMS; JOSEPH C. GUILLEN; )<br>AND COURTNEY MANN,                      )<br>                                                            ) | Civil Action No. 1:17-CV-102 |

**PLAINTIFFS'
EXHIBIT
1**

1

| | |
|---|---|
| vs. | ) |
| | ) |
| XTO ENERGY, INC.; | ) |
| BADLANDS CONSULTING, LLC; | ) |
| PETROLEUM EXPERIENCE, INC.; | ) |
| KLX ENERGY SERVICES, LLC; | ) |
| WEATHERFORD INTERNATIONAL, LLC; | ) |
| WEATHERFORD U.S., L.P.; | ) |
| MISSOURI BASIN WELL SERVICE, INC., | ) |
| d/b/a MBIENERGY SERVICES and d/b/a | ) |
| YANKEECONSULTING, LLC; | ) |
| ALLAN KOLDEN, THOMAS JONES, | ) |
| AND CARSON DOKKEN, | ) |
| | ) |
|     Defendants | ) |
| | ) |
| And | ) |
| | ) |
| DANIEL PAVON; AND ANA PAVON | ) |
| | ) |
|     Intervenors | ) |
| | ) |
|     vs. | ) |
| | ) |
| XTO ENERGY, INC.; KLX ENERGY | ) |
| HOLDINGS, LLC AND | ) |
| KLX ENERGY SERVICES, LLC | ) |
| | ) |
|     Defendants. | ) |

## INTERVENORS' PLEA IN INTERVENTION

COME NOW the above-named Intervenors, by and through their undersigned counsel, and state the following facts constituting their claims for relief against the above-named Defendants.

### I.    PARTIES

1.    Intervenors are residents of Mesa County, Colorado.  Daniel Pavon and Ana Pavon are husband and wife who were married on December 20, 2011 in Glenwood Springs, Garfield County, Colorado.  Collectively Daniel and Ana Pavon will be referred to herein as the Pavon Family.

2

2.      Defendant XTO ENERGY, INC. ("XTO") is a for-profit corporation, incorporated in Delaware, with its principal place of business in Houston, Texas. Defendant XTO ENERGY, INC. may be served with process by delivering the summons and a copy of this Plea in Intervention to its counsel of record, Reagan M. Brown, Norton Rose Fulbright US LLP, 1301 McKinney St., Suite 5100, Houston, Texas 77010-3095.

3.      Defendant KLX ENERGY SERVICES, LLC is a for-profit Limited Liability Company registered under the laws of Delaware. As a Limited Liability Company, KLX ENERGY SERVICES, LLC is treated as an unassociated entity for subject matter jurisdiction purposes under the Federal Rules of Civil Procedure and the United States Code. Therefore, KLX ENERGY SERVICES, LLC shares citizenship with the states of all its members. *Johnson v. Columbia Properties, LP*., 437 F.3rd 894, 897 (9th Cir. 2006) (noting numerous federal circuits who have emphasized this well-established rule). Upon information and belief, the Intervenors believe that one or more of KLX ENERGY SERVICES, LLC'S members reside in Texas and no such members reside in North Dakota.  Defendant KLX ENERGY SERVICES, LLC may be served with process by delivering the summons and a copy of this Plea in Intervention to its attorney of record, Courtney Presthus, Ebeltoft Sickler, 2272 8th Street West, Dickinson, North Dakota 58601.

4.      Defendant KLX ENERGY HOLDINGS, LLC is a for-profit Limited Liability Company registered under the laws of Delaware. As a Limited Liability Company, KLX ENERGY HOLDINGS, LLC is treated as an unassociated entity for subject matter jurisdiction purposes under the Federal Rules of Civil Procedure and the United States Code. Therefore, KLX ENERGY HOLDINGS, LLC shares citizenship with the states of all its members. *Johnson v. Columbia Properties, LP*., 437 F.3rd 894, 897 (9th Cir. 2006)(noting numerous federal circuits

3

who have emphasized this well-established rule). Upon information and belief, the Intervenors believe that one or more of KLX ENERGY HOLDINGS, LLC's members reside in Texas and no such members reside in North Dakota. Defendant KLX ENERGY HOLDINGS, LLC may be served with process by delivering the summons and a copy of this Plea in Intervention to its attorney of record, Courtney Presthus, Ebeltoft Sickler, 2272 8th Street West, Dickinson, North Dakota 5860. Collectively, Defendants KLX ENERGY SERVICES, LLC and KLX ENERGY HOLDINGS, LLC will be known as "KLX Energy".

## II.      JURISDICTION AND VENUE

5.      Based upon the foregoing allegations and traditional notions and fair play of substantial justice, this Court may exercise specific personal jurisdiction over each Defendant.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), based upon the diversity of citizenship of the parties hereto and by the fact that the amount in controversy, exclusive of interest and costs, well exceeds the sum of seventy-five thousand dollars ($75,000.00)

7.      Venue is proper in this Court under 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the Intervenors' claims occurred within this federal juridical district.

8.      Moreover, XTO and KLX Energy moved on *forum non conveniens* grounds to dismiss the Intervenors' prior action which was only six months from trial in Harris County, Texas where both Defendants are "at home" for purposes of personal jurisdiction, in favor of North Dakota. Therefore, under the doctrine of equitable estoppel, XTO and KLX Energy are estopped from challenging venue and jurisdiction in this Court.

## III. FACTS COMMON TO ALL CLAIMS FOR RELIEF

9.      Defendant XTO is the lease operator for the Ryan 14X-09E well pad ("Ryan Well"), located approximately eight miles east of Watford City, North Dakota (the "Site").  In June 2016, multiple contractors with principal offices outside of North Dakota were engaged in the well

App. 081

servicing operations at the Site, including Texas based XTO (as the lease operator), Houston, Texas based Weatherford International, LLC (as the owner and renter of tubing and other equipment which is designed to be moved and would be moved from well to well), Most Wanted Well Service, Inc. ("Most Wanted") (as owner and operator of the snubbing unit which is designed to be moved and is moved from location to location based upon the direction of XTO), Sherwood Enterprises, Inc. ("SEI") (the workover rig owner which is designed to be moved and is moved from location to location based upon the direction of XTO), and Houston based KLX ENERGY (provider of the check valves for the bottom hole assembly which is designed to be and is moved from well to well). Intervenor Daniel Pavon was an employee of SEI. As an employee of SEI, Daniel's job duties did not entail monitoring the condition of the subject pipe and/or the check valves.

10.      XTO had working for it at the Ryan Well, employees, agents, and/or borrowed servants whom XTO directed and controlled. Allan Kolden, Tom Jones, Carson Dokken, and Ethan Bailey (hereinafter referred to as the ("XTO Company Men") acted at XTO's request, on behalf of XTO's wishes, and in furtherance of XTO's business at the Ryan 14X-09E well.

11.      As explained by Carson Dokken in his deposition, the XTO Company Men are barred from making critical decisions (including the decision to kill and/or snub out of the Ryan Well), but instead, present options to XTO whom makes all critical operational and safety decisions and orders the XTO Company Men to carry out those operational and safety decisions. The XTO Company Men then carry out XTO's operational and safety commands to XTO's exact specifications.

12.      The XTO Company Men rely upon XTO to direct their work and control the details in which operations on the Ryan Well are completed as well as to provide advice and control over

5

critical safety and operational decisions. For example, as explained by XTO Company Men Tom Jones and Carson Dokken, XTO's control extends to almost every aspect of the Ryan Well, from the cleanout schedule at the Ryan Well to whether workers and contractors on Site are permitted to have facial hair.

13.      All critical operational and safety recommendations by the XTO Company Men are directed by XTO personnel and engineers, including but not limited to XTO employees Bryan Lien, Clifford Dahl, and Cole Carveth. Only upon express authorization from XTO, may the Company Men commence any critical operation (such as killing or snubbing out of the well) on the Ryan Well. The decisions to commence these operations is made solely at the discretion of XTO and cannot be overridden by the XTO Company Men. No evidence exists that in the past or presently the XTO Company Men have disobeyed express orders from XTO and it is understood that doing so would be grounds for termination from future XTO employment opportunities.

14.      Furthermore, the XTO Company Men are bound by XTO's policies and procedures on Site that control the means and method of the XTO Company Men's work. These Standard Operating Procedures  ("SOP's") include rules ranging from ensuring that no gas is released on Site to ensuring that adequate lighting was in place.

15.      The XTO Company Men do not have authority to hire and/or choose the majority of the contractors which the XTO Company Men work with on Site. For example, the XTO Company Men have no authority to hire (or fire) KLX Energy, Weatherford International, LLC, Most Wanted Well Service, LLC and Sherwood Enterprises, LLC, just to name a few contractors on Site.

16.      These XTO Company Men moreover are clothed with the authority of XTO and act on XTO's behalf. For example, XTO Company Man Carson Dokken wears a hard hat with an XTO

6

logo on it while at the Site. The XTO Company Men use XTO emails and are required to communicate XTO's operational plans to the workers on Site.

17.     At all times relevant to the accident that forms the basis of this lawsuit, these XTO Company Men were acting in the course and scope of their employment with XTO and in the furtherance of the business of their employer. As such, Defendant XTO is liable and responsible to the Plaintiffs for their employees, agents, and/or borrowed servants' acts, omissions, negligence.

Defendant XTO oversaw, directed, and controlled operations at the Site, and it was aware that there were problems with operations on the well.

18.     XTO Company Men Allan Kolden and Carson Dokken reported to XTO a loss in differential pressure across the mud motor while drilling on plug #13 to at least two high-level XTO employees, including Cole Carveth and Clifford Dahl. The loss of differential pressure across the mud motor while drilling on plug #13 meant that the full pump output is not going through the mud motor, but was rather being partially or fully diverted somewhere else. The loss in differential pressure was a good indication that there is a hole somewhere in the tubing string, a fact KLX Energy noted in its Job Logs on June 17th, 2016.

19.     XTO Senior Completion Foreman Bryan Lien notes that XTO should have recognized the loss in differential pressure as a strong indication that there was a hole in the tubing. The hole was likely caused by XTO while XTO was drilling out the prior frac plugs. Despite this loss in pressure, XTO ordered that the men on site continue to flow the well. XTO planned to pull the drill string which contained a hole in the last joint of tubing out of the Ryan Well while the well was under pressure.

7

20.     Upon recognition of the problems downhole, the XTO Company Men informed XTO that there was likely a hole in the tubing, that the check valves had failed, and/or that the bottom hole assembly had twisted off. Given the difficulties downhole, the XTO Company Men gave XTO a menu of options and recommendations regarding the subject well, including that the Ryan Well should be killed. The ultimate decision however as to whether the kill the well or engage in dangerous snubbing operations laid solely in the hands of XTO—whom has superior information and knowledge regarding the operations of the Ryan Well.

21.     Instead of killing the well so that the tubing and down hole assembly could be safely removed from the well without gas pressure at the surface, Defendant XTO ordered a snubbing operation to commence at the Site by commanding the XTO Company Men to instruct SEI and Most Wanted to extract the tubing under pressure.  The operational plan implemented by XTO required SEI and Most Wanted to raise the hole in the 2-3/8 tubing high enough above the surface of the wellbore to clear the frac-valve (which cuts off pressure in the well to the surface) and attempt to close the frac-valve behind the bottom hole assembly. Given that the bottom hole assembly was still attached and the location of the hole in the 2-3/8 tubing, this operational plan ensured that the hole in the 2-3/8 tubing would be exposed above the wellbore leading to a release of highly flammable natural gas around the operators working the snubbing unit. If the check valves provided by KLX Energy failed, this natural gas release would become a continuous release instead of a decreasing release of the gas contained within the volume of the drill string.

22.     A total lack of communication between the XTO decision makers allowed XTO's directed plan to commence without considering whether the bottom hole assembly could safely

8

fit within the blow out preventer while trying to pull the last 2-3/8 joint of tubing out of the hole high enough shut the frac valve.

23.    Before XTO ordered the XTO Company Men to order this dangerous operation, XTO failed to consider whether the frac valve could be closed while containing the pipe and bottom hole assembly inside the blow out preventer. It is significant to note that XTO's engineer at the time for the Ryan Well, Cole Carveth, testified that XTO's failure to consider whether the bottom hole assembly would fit inside the blow out preventer was a mistake. Carveth moreover went on to testify that basic math demonstrated the approximate forty-seven feet of the last joint of 2-3/8th tubing and bottom hole assembly could not fit inside the seventeen feet of controlled area. Therefore, the operational plan implemented and ordered by Clifford Dahl required approximately 30 feet of pressurized pipe to be raised above the wellbore.  These critical safety decisions by XTO were made in Sidney Montana, Denver Colorado, and Texas by XTO employees including, but not limited to Clifford Dahl and Cole Carveth.

24.    At all relevant times hereto, Clifford Dahl and Cole Carveth were XTO employees under the course and scope of their employment with XTO and in the furtherance of XTO's business. Therefore, XTO is liable for the acts and/or omissions of both Clifford Dahl and Cole Carveth under the doctrine of *respondeat superior.*

25.    KLX Energy provided the bottom hole assembly for the Ryan Well. KLX Energy also provided a tool hand to assist those on site with operating and understanding the bottom hole assembly. The two subs within the bottom hole assembly contained valves that were designed to allow the flow of fluid from the up-hole direction and prevent the flow of fluid from the downhole direction.

26.     Given the loss in differential pump pressure across the mud motor while attempting to tag plug #13, KLX Energy, at this time in the exercise of reasonable care, was aware or should have been aware that frac sand and other debris could be flowing through a hole in the 2-3/8 tubing. This would result in sand and other debris potentially contaminating the fluids being pumped through the check valves, and potentially impairing the check valves' function. If the KLX Energy check valves became clogged with frac-sand and other debris, the check valves would not be able to hold pressure. This failure to hold pressure could exacerbate the already dangerous uncontrolled release of gas created by XTO's operational plan of raising a hole above the wellbore when the frac valves could not be closed given the length of the bottom hole assembly.

27.     Moreover, after a plug was placed in the 2-3/8 tubing, KLX Energy was unable to verify that all three check valves were functioning properly and as intended. This inability to verify the condition of the check valves ensured that KLX Energy had no way to guarantee SEI and Most Wanted that the check valves would perform as intended during the commencement of XTO's dangerous operational plan.

28.     During the snubbing operation at the Site on June 18, 2016, XTO's decision to raise the hole in the final 2-3/8th joint of tubing above the annular and leaks in the check valves caused a high pressure natural gas release, which resulted in an explosion and flash fire ("the subject incident"). As a result of the subject incident, one man was killed and three were seriously injured, including catastrophic burn injuries to Intervenor Daniel Pavon.

29.     Intervenor Daniel Pavon, 28 at the time of the fire, sustained life-altering severe full-thickness third and fourth degree burns on seventy to eighty percent of his body. These burns resulted in Pavon spending approximately ten months in an intensive burn care unit where Pavon underwent over twenty surgeries including amputations on every finger of his dominant hand,

multiple debridement and skin grafts, and numerous blood transfusions. Today, Daniel endures several significant ongoing medical conditions and complications as a result of his injuries. To date, Pavon has not been able to return to any form of gainful employment and continues to require substantial medical, surgical, and rehabilitative care and treatment for his injuries.

30.     As a proximate result of Defendants' acts and omissions referred to in his Plea in Intervention, Daniel Pavon has incurred special and general damages for physical, pecuniary, and emotional injuries and losses. These damages include, but are not limited to: (a) past, present, and future pain and suffering; permanent physical impairments and disability, scarring and disfigurement; mental anguish; emotional distress; fear of injury, loss or illness; humiliation; inconvenience; loss of enjoyment of life, loss of consortium with his son, Daniel Pavon, Jr. as well as Daniel Pavon, Jr.'s loss of consortium with his father, and other non-pecuniary losses to be proven at trial; along with (b) past, present, and future economic damages arising from medical and hospitalization care and treatment, from custodial care, from rehabilitation services, from vocational rehabilitation services, from loss of earnings and loss of earning capacity, from cost of substitute domestic services, from loss of employment opportunities, and other economic losses to be proven at trial. Intervenor Ana Pavon has suffered both economic and non-economic damages as a result of the loss of consortium of her husband, Daniel Pavon.

31.     The blow-out, explosion, fire, and subsequent injuries and damages sustained by Intervenors were proximately caused by the negligent and reckless acts and omissions of Defendants who were acting through their agents, representatives, servants, and employees, all of whom were acting within the scope of their employment or agency duties. Defendant XTO, acting through its agents, representatives, servants, and employees, knew or reasonably should have known of the hazards and unreasonable risks of harm at the Ryan Well on June 17th and

11

18th, 2016. XTO was ultimately responsible for the negligent and reckless decision not to kill the Ryan Well and, instead, to negligently and recklessly order the dangerous removal of tubing under pressure, which resulted in the blow-out, explosion, and fire.

32.     Defendants' conduct, as described herein, was willful, wanton, oppressive, and malicious, and was done with reckless disregard for the safety and interests of the individuals working at the Ryan Well on June 18, 2016, including Intervenor Daniel Pavon and his spouse, Ana Pavon. Defendant business entities can only act through their subsidiaries, members, officers, employees, agents, and representatives. As parent companies or direct employers of those who set policy and were involved in the operations at the Ryan Well, Defendants are each vicariously liable for the acts and omissions of their respective subsidiaries, members, officers, employees, agents, and representatives who were acting within the scope of their agency or employment at relevant times. 31.     After the subject incident occurred, the worksite was disassembled, and the snubbing unit was taken to Fort Worth, Texas for inspection, disassembly, and possible testing.  Additionally, the subject tubing and check valves were relocated to Houston, Texas for further inspection and testing. The removal of these fixtures from the Site did not cause any injury to the Ryan Well. The critical physical evidence in this case is located in Texas and the critical safety decision not to kill the well was made in Sidney, Montana and Texas by Clifford Dahl and other XTO personnel.

**IV. CLAIMS FOR RELIEF**

**Claim Number 1**
**Negligence of XTO**

32.     Intervenors incorporate the facts and allegations stated in the preceding paragraphs as if fully restated herein.

12

App. 089

33.     Defendant XTO, among other things, had a non-delegable duty to exercise reasonable care when making operational decisions regarding the conditions downhole and communicating with XTO personnel in order to determine the length of the bottom hole assembly before ordering the snubbing operation. Further, Defendant XTO had a non-delegable duty to workers at the Site to adequately advise them of the downhole conditions, advise them of the precise length and nature of the bottom hole assembly, advise them of the likelihood and/or possibility of a hole in the tubing, to provide adequate well control and other safety equipment, to investigate the cause of the underbalanced pressure at the well and to warn and/or instruct those at the well about the hazards and dangerous conditions related to the snubbing operations.  Defendant XTO moreover had a non-delegable duty to implement a safe operational plan given that Defendant XTO was in a position superior to that of Intervenor Daniel Pavon to be aware of the dangers of continuing the snubbing operation instead of killing the well.

34.     Defendant XTO breached its duties by ordering that operations to remove the pressurized pipe proceed at the Site instead of killing the well.  Based on what it knew prior to the incident, Defendant XTO should have killed the well instead of attempting the snubbing operations under unreasonably dangerous conditions, or otherwise provided the necessary tools, equipment and information to safely diagnosis the issue and perform the snubbing operations if such were even possible.

35.     At all times relevant to the incident that forms the basis of this lawsuit, the XTO Company Men were acting in the course and scope of their employment with XTO and in the furtherance of the business of their employer. As such, Defendant XTO is vicariously liable and responsible to the Pavon Family for their employees, agents, and/or borrowed servants' acts, omissions, and negligence.

36.    Moreover, the Pavon Family specifically allege that at all relevant times, the XTO Company Men were acting in their capacities as agents and/or servants for Defendant XTO (their principal) and were acting within the course and scope of said agency or servitude and upon instructions and commands. Moreover, XTO expressly ratified the XTO Company Men to commence snubbing operations instead of killing the Ryan Well. Therefore, XTO is liable for the actions of the XTO Company Men.

37.    At all relevant times, the XTO Company Men were acting as borrowed servants of Defendant XTO. XTO had control over the XTO Company Men, the work the XTO Company Men were performing, and directed the work of the XTO Company Men well beyond a mere suggestion of details for cooperation. The work by the XTO Company Men was being performed by XTO and the XTO Company Men were paid by XTO. Therefore, Defendant XTO is responsible and liable for the actions of the XTO Company Men under the doctrine of borrowed servant.

38.    At all relevant times, Cole Carveth and Clifford Dahl were XTO employees acting in the course and scope of their employment with XTO and in the furtherance of XTO's business. As such, XTO is liable and responsible for the actions of Cole Carveth and Clifford Dahl under the doctrine of *respondeat superior.*

39.    XTO's conduct as described herein was wilful, wanton, oppressive, and malicious and was done with the reckless disregard for the safety and interest of the individuals working at the Ryan Well on June 18, 2016, including Daniel Pavon.

40.    XTO's business entities can only act through their subsidiaries, members, officers, employees, agents, and representatives. As parent companies or direct employers of those who set policy and were involved in the operations at the Ryan Well, XTO is vicariously liable for the

14

acts and omissions of their respective subsidiaries, members, officers, employees, agents, and representatives who were acting within the scope of their agency or employment at relevant times.

41.     The foregoing acts and omissions, individually or collectively, were a direct, producing, and proximate cause of the subject incident, the catastrophic burn injuries to Daniel Pavon and the Pavon Family's injuries and damages.

**Claim Number 2**
**Gross Negligence of XTO**

42.     Incorporating the paragraphs above, the foregoing acts and omissions demonstrate more than momentarily lapses of judgment, and instead demonstrate a conscious disregard for the safety of Daniel Pavon and others working the rig on the day of the incident given the facts and circumstances surrounding the subject incident.

43.     When viewed objectively from the standpoint of Defendant XTO at all times relevant to the subject occurrence, XTO's acts and omissions involved an extreme degree of risk to those working on and around the rig, considering the probability and magnitude of the potential harm to others.  Specifically, Defendant XTO had actual, subjective awareness of the extreme risks associated the subject snubbing operations, including the known and suspected problems with the drilling operations on the subject rig and the substantial risk of a gas release and catastrophic fire.  Defendant XTO was familiar with the extreme degree of risk associated with the drilling operations that led to the subject incident.   For example, in September 2014, Defendant XTO was performing workover operations on a well in Mannsville, Oklahoma. During the operations, the rig experienced a high-pressure event that forced pipe out of the well and caused injuries that ultimately led to the death of one worker.

15

44.     Also, Defendant XTO had previously experienced a blowout of a well during snubbing operations performed by Most Wanted.  On or about November 23, 2015, an oilfield worker suffered fractures and lacerations from a fall while escaping from a snubbing basket during a blowout without an adequate individual escape line. The November 2015 incident occurred approximately four miles south of County Road 53 in Watford City, North Dakota, which is only a few miles from where the subject incident occurred.

45.     Instead of killing the well, Defendant XTO proceeded with conscious indifference to the rights, safety, and/or welfare of those working on or near the subject rig, including Pavon. These acts and/or omissions is evidence of a reckless temperament by XTO as well as a lack of care, that is practically willful in its nature.

**Claim Number 3**
**Negligence of KLX**

46.     Intervenors incorporate the facts and allegations stated in the preceding paragraphs as if fully restated herein.

47.     Defendant KLX Energy had a duty to supply the check valves for the bottom hole assembly and other equipment that were suitable for the anticipated drilling operations at the Site. As part of that duty, Defendant KLX Energy had a responsibility to provide equipment that was not defective and suitable for its intended use. Moreover, KLX Energy failed to provide adequate services and/or training to properly maintain and/or provide a safe bottom hole assembly.

48.     Part of this duty required that KLX Energy inform Sherwood Enterprises and Most Wanted of the possibility that the check valves were compromised and that the check valves could not be properly tested due to the hole in the tubing.

49.     Defendant KLX Energy knew or should have known that the check valves for the bottom hole assembly and other equipment it provided for use at the Site had likely become contaminated with frac sand and other debris after XTO caused a hole to form in the 2-3/8 tubing. Defendant KLX Energy moreover should have informed SEI and Most Wanted that due to the hole in the tubing, KLX Energy could not verify whether the check valves would function as intended. KLX Energy's failure to act in both of these respects constitutes negligence.

50.     The foregoing acts and omissions, individually or collectively, were a proximate cause of the subject incident, the catastrophic burn injuries to Intervenor Daniel Pavon, and the Intervenors' injuries and damages.

<u>**Claim Number 4**</u>
**Negligent Infliction of Emotional Distress**
**All Defendants**

51.     All of the allegations contained in the preceding paragraphs of this Plea in Intervention are incorporated by reference herein as if the same were set forth in full.

52.     Defendants' negligent conduct created an unreasonable risk of causing emotional distress to Intervenors.

53.     Defendants' negligent conduct was a proximate cause of the June 18, 2016 blow-out, explosion, and fire at the Ryan Well, of the injuries and damages sustained by the Intervenors.

54.     Intervenor Pavon was working within the immediate vicinity of the explosion and fire and sustained severe mental and emotional shock as a result of his sensory and contemporaneous observation of the flash-fire and catastrophic injuries to his co-workers and friends.

55.     Intervenor Pavon maintained a close friendship with several of the crew members present, including Chad Maheu, a Most Wanted crew member who received life-altering burns to the majority of his body surface.

56.     Intervenor Pavon suffered and continues to suffer from severe emotional distress as a result of the shock, fright, and stress he experienced during and after the explosion and fire.

57.     Intervenor Pavon also suffers from severe mental and emotional anguish and distress as a result of the injuries he suffered, as a result of the extensive, painful, and frustrating treatment for those injuries that he has undergone and continues to undergo, and as a result of the permanent scarring, disfigurement, loss of ears, parts of digits on his dominant hand, vision, as well as other impairments and disabilities which he has been left with and continues to experience every day.

**Claim Number 5**
**Ana Pavon: Loss of Consortium**

58.     All the allegations contained in the preceding paragraphs of this Plea in Intervention are incorporated by reference herein as if the same were set forth in full.

59.     As set forth herein, Defendants' acts and omissions caused Daniel Pavon to suffer serious and disabling physical and emotional injuries. As a proximate result, Intervenor Ana Pavon has suffered a loss of the consortium of her husband, which loss includes the loss of Daniel's services, companionship, affection, tenderness, love, advice, guidance, and intimate relations, for which she is entitled to an award of general damages for loss of consortium.

**Claim Number 6**
**Vicarious Liability of XTO**

60.     All of the allegations contained in the preceding paragraphs of this Plea in Intervention are incorporated by reference herein as if the same were set forth in full.

61.     XTO, as the owner and lease operator of the Ryan Well, retained and exercised control and was ultimately responsible for the contractor hierarchy XTO established to conduct all operations at the Ryan Well.

18

62.     XTO, as the owner and lease operator of the Ryan Well, retained and exercised control over the scope and details of the work performed at the Ryan Well by other entities and individuals conducting operations at the Ryan Well (The XTO Company Men), including the methods, manner and detail of operations that caused injuries and damages to Intervenors in June of 2016.

63.     XTO is liable for its own negligent acts and omissions, including its negligent exercise of the control it retained over work done by the XTO Company Men.

WHEREFORE, Intervenors pray for judgment against Defendants as follows:

1. Judgment against Defendants for special damages in the amounts consistent with the allegations contained herein and to be established by the evidence at trial and determined just by a jury.

2. Judgment against Defendants for general damages in the amounts consistent with the allegations contained herein and to be established by the evidence at trial and determined just by a jury.

3. Judgment against Defendants for Intervenors' attorney fees and cost incurred in prosecuting the is action.

4. Such other and further relief as the Court deems just and equitable.

## V.     JURY DEMAND

Pursuant to the Seventh Amendment of the Constitution of the United State and Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues.

Respectfully submitted,

By:   /s/ David E. Harris
David E. Harris
dharris@shhlaw.com
Louie J. Cook
lcook@shhlaw.com
pledezma@shhlaw.com
**SICO HOELSCHER HARRIS LLP**
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Phone:  361-653-3300
Fax:  361-653-3333

**ATTORNEYS FOR PAVON INTERVENORS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 12, 2018  a true and correct copy of the foregoing has been served

by the Notice of Electronic Filing, and was electronically filed with the Clerk of the Court via

the CM/ECF system, which generates a notice of filing to the following:

Reagan M. Brown
Norton Rose Fulbright US LLP
1301 McKinney St., Suite 5100
Houston, Texas 77010-3095
Reagan.brown@nortonrosefulbright.com

Courtney Presthus
Nick Grant
Ebeltoft Sickler
2272 8th Street West
Dickinson, North Dakota 58601
pmorowski@ndlaw.com
cpresthus@ndlaw.com

Ryan Shaffer
Robert L. Stepans
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
ryan@mss-lawfirm.com
rob@mss-lawfirm.com

Richard H. Honaker
Honaker Law Offices, LC
PO Box 366
Rock Springs, WY 82901
rhonaker@wyoming.com

Jessica Schmidt
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
jmschmidt@hollandhart.com

David S. Maring
Maring Williams Law Office
1661 Capitol Way, Suite 103LL
Bismarck, ND 58501
dmaring@maringlaw.com

20

James E. Fitzgerald
Michael J. Fitzgerald
The Fiztgerald Law Firm
2108 Warren Ave.
Cheyenne, WY 82001
lawyers@fitzgeraldlaw.com

Joe Teig
Holland & Hart LLP
25 South Willow Street, Suite 200
PO Box 68
Jackson, WY 83001
jteig@hollandhart.com

Todd Koebele
Roland John Wells, III
HKM
30 E. 7th Street, Suite 3200
St. Paul, MN 55101
tkoebele@murnane.com
jwells@hkmlawgroup.com

Paul R. Sanderson
William Behrmann
Evenson Sanderson, PC
1100 College Dr., Suite 5
Bismarck, ND 58501
psanderson@esattorneys.com
wbehrmann@esattorneys.com

Jeffrey Davis
Mary Elizondo Frazier
Gardere Wynne Sewell, L.L.P.
1000 Louisiana, Suite 2000
Houston, Texas 77002
jdavis@gardere.com
mfrazier@gardere.com

Jason R. Vendsel
McGee, Hankla & Backes
2400 E. Burdick Expwy. Ste. 100
PO Box 998
Minot, ND 58702
jvendsel@mcgeelaw.com


/s/ Louie J. Cook