# EXHIBIT 1-I



September 28, 2018

**VIA CERTIFIED MAIL AND E-MAIL**

Leslie C. Thorne  
Haynes and Boone, LLP  
600 Congress Avenue, Suite 1300  
Austin, TX 78701-3285

Robert A. Carlton  
Haynes and Boone, LLP  
1221 McKinney Street, Suite 2100  
Houston, TX 77010-2007

    RE:    *Richard Chadwick Maheu, et al v.*  
            *XTO Energy Inc., et al*  
            C.A. No. 1:17-CV-102  
            *Mary Stassinos, et al v. XTO Energy Inc., et al*  
            C.A. No. 1-17-CV-138  
            Our File No.:  192.141

Dear Ms. Thorne and Mr. Carlton:

We are writing on behalf of Berkley National Insurance Company ("Berkley"), insurer of Missouri Basin Well Service, Inc. ("MBI"), in response to your correspondence dated June 29, 2018 and July 24, 2018, sent to Berkley on behalf of XTO Energy, Inc. ("XTO"), in connection with the above-referenced lawsuits. In the June 29, 2018 correspondence, XTO tenders the claims of Daniel Pavon, Justin Pyle, Richard Chadwick Maheu, John Stassinos and Joseph Guillen against XTO and, in the case of some of these lawsuits, its contractors, Badlands Consulting, LLC, Petroleum Experience, Inc., Weatherford International, LLC, KLX Energy Services, LLC and KLX Energy Holdings, LLC. XTO asserts that, pursuant to the terms of the Master Service Agreement entered into between XTO and MBI, XTO is entitled to additional insured coverage for itself and its contractors regarding the claims made against them in the lawsuits, under the following Berkley policies issued to MBI.

- Berkley National Insurance Company CGL Policy No. EGL001672010;
- Berkley National Insurance Company CUL Policy No. EUL001670910;

In the July 24, 2018 correspondence, XTO acknowledges its defense and indemnification obligation pursuant to the XTO/MBI MSA, but contends that pursuant to Paragraph 11.4 of the MSA, MBI's insurers are ultimately responsible for defending and indemnifying XTO, MBI and all other members of the XTO Group, and that any defense and indemnity obligation that XTO may owe to MBI must be satisfied by MBI's own insurers.

---



App. 248

The MSA includes the following relevant provisions.

    *II.*    *Definitions*

[\*  \*  \*  \*  \*]

*2.3    "Contractor Group" shall mean individually or in any combination Contractor, its Affiliates, any Subcontractor of Contractor, and their respective directors, officers, employees, representatives, agents, licensees, invitees and assignees.*

[\*  \*  \*  \*  \*]

*2.8    "XTO Group" shall mean individually or in any combination XTO, its Affiliates, co-owners or co-lessees [ ... ] at the Site, joint interest owners, joint venturers, partners, contractors and subcontractors other than Contractor or its Subcontractors and all of their respective directors, officers, employees, representatives, agents, licensees and invitees.*

[\*  \*  \*  \*  \*]

    *X.*    <u>RELEASE, DEFENSE, INDEMNITY AND HOLD HARMLESS</u>

    *10.2    XTO's Obligations*

*10.2.1 XTO hereby agrees to release, defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the XTO Group [ ... ] in any manner incident to, connected with or arising out of the performance of the Work. This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the Contractor Group.*

[\*  \*  \*  \*  \*]

*10.2.3 XTO agrees that its indemnity obligations herein will either be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the Contractor Group and shall provide waivers of subrogation against all members of the Contractor Group; or XTO may be self-*

> *insured. To the extent that applicable law prohibits monetary limits of insurance required or the indemnities voluntarily assumed hereunder, the requirements will automatically be revised to conform, to the maximum extent permitted, with applicable law.*
>
> [* * * * *]
>
> XI. *Insurance*
>
> *11.1 Coverages. Subject to the provisions of Section 11.2, Contractor will secure and maintain, and will require its Subcontractors to secure and maintain, during the term of this Agreement the following insurance coverages with limits not less than the amounts specified [ ... ]*
>
> [* * * * *]
>
> *11.1.2 Commercial General Liability Insurance INCLUDING CONTRACTUAL LIABILITY, with minimum limits of liability for injury, death or property damage of $1,000,000 combined single limit per occurrence, and an aggregate annual limit of not less than $2,000,000.*
>
> [* * * * *]
>
> *11.2 Actual Insurance. Notwithstanding the minimum coverages specified in Sections 11.1.1 - 11.1.5 above, should Contractor maintain on a general, blanket, comprehensive or similar basis any insurance, including but not limited to excess liability insurance or contractual liability insurance, in amounts greater than such minimums, then the actual insurance which Contractor shall provide hereunder will be such larger amounts carried by Contractor (or indicated in any certificate of insurance furnished by Contractor) and not the minimums referenced in Section 11.1.1 - 11.1.5 above.*

XTO's contracts with Badlands Consulting, LLC ("Badlands"), Petroleum Experience, Inc. ("PEI") and KLX Energy Services, LLC ("KLX"), as well as the employers of Plaintiffs (Most Wanted and SEI), include identical provisions. XTO also agrees in its contract with Weatherford to defend and indemnify Weatherford.

Pursuant to Paragraph 10.2.1, XTO is required to release, defend, indemnify and hold MBI harmless from and against any and all Indemnifiable Claims arising out of, without limitation, physical or mental injury, illness and/or death of any members of the XTO Group. "Indemnifiable Claims" is defined in Paragraph 10.1.1 of the MSA as "any and all claims, demands, and causes of action of every kind and character (including without limitation, fines, penalties, remedial obligations, court costs and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity." This obligation includes claims resulting from any alleged negligence or fault of MBI. Plaintiffs in this matter were employees of Most Wanted and SEI, contractors of XTO, and members of the XTO Group, as that term is defined in Paragraph 2.8. XTO is therefore required to defend and indemnify MBI against all claims

brought against it in these lawsuits.

Pursuant to Paragraph 10.2.3, XTO's indemnity obligations are to be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the Contractor Group, and XTO "shall provide waivers of subrogation against all members of the Contractor Group."

Article XI, which sets forth the insurance coverages to be maintained by MBI, requires CGL coverage with minimum limits of $1 million (Paragraph 11.1.2). However, pursuant to Paragraph 11.2 of Article XI, if insurance, including excess insurance, is maintained with amounts greater than the minimums set forth in Article XI, including Paragraph 11.1.2, then the actual insurance to be provided will be the larger amounts carried, and not the minimums referenced. Therefore, by expressly tying the contractual insurance XTO agrees to provide to insure its defense and indemnification obligations to MBI and other contractors to Article XI, XTO agrees to provide the actual insurance it obtains, not the minimum.

XTO is required to support its indemnity obligations in the amount of the "actual insurance" XTO carries, including any excess coverages. We have been advised that XTO has over $500 million in coverage, and additional protection it contends is self-insurance.

Based upon XTO's assumption in the MSA of the obligation to defend and indemnify MBI against claims of the XTO Group, and to insure those obligations on a primary basis, with such coverage including a waiver of subrogation in favor of MBI, XTO must bear the risk of all claims at issue, at least up to $51 million, the policy limits maintained by MBI.

The mutual indemnifications set out in the MSA are enforceable under the Texas Oilfield Anti-Indemnity Act (TEX. CIV. PRAC. & REM. CODE §§127.003 – 127.007), up to the lowest amount of insurance mutually maintained by the parties ($51 million maintained by MBI). If North Dakota or other law is applicable, the defense and indemnification obligation of XTO is unlimited.

XTO asserts that Paragraph 11.4 of the MSA requires MBI to name XTO and its contractors as additional insureds.

Paragraph 11.4 provides as follows.

> *11.4   Primary Coverage and Additional Insureds. ALL INSURANCE POLICIES AND COVERAGES LISTED IN THIS ARTICLE XI WILL EXTEND TO AND PROTECT THE XTO GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCES. ALL INSURANCE POLICIES LISTED IN THIS ARTICLE XI WILL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR*

> *SELF-INSURANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITTING THE XTO GROUP. THE LIMITS AND COVERAGES OF THE INSURANCES OBTAINED BY CONTRACTOR WILL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR UNDER THIS AGREEMENT. ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES WILL NAME THE XTO GROUP AS AN ADDITIONAL INSURED. ALL OF CONTRACTOR'S INSURANCE POLICIES WILL CONTAIN A WAIVER ON THE PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE XTO GROUP.*

The only reasonable interpretation of this provision, when giving meaning to all other provisions of the contract, is that MBI was to provide additional insured coverage for claims for which it agreed to defend and indemnify XTO. Only "obligations assumed by Contractor" are referenced in Paragraph 11.4. MBI did not agree to defend and indemnify XTO against claims of Plaintiffs (members of the XTO Group). Rather, XTO explicitly assumes responsibility for these claims, and further "releases" its contractors regarding these claims.

XTO has rightfully acknowledged its defense and indemnity obligations to MBI and Dokken, its employee. With respect to MBI and Dokken, XTO acknowledges that defense and indemnity obligation in correspondence dated July 24, 2018. However, XTO contends in that correspondence that pursuant to Paragraph 11.4 of the MSA, MBI's insurers are ultimately responsible for defending and indemnifying XTO, MBI and all other members of the XTO Group, and that any defense and indemnity obligation that XTO may owe to MBI must be satisfied by MBI's own insurers. As set forth above, neither position is supported by the terms of the MSA.

Since XTO agreed to insure its defense and indemnification obligation to MBI on a primary basis, and waive subrogation for these claims against MBI (and in fact has coverage under its own policy), this resolves responsibility for MBI fault.

Further, in Paragraph 10.2.1 XTO specifies that "XTO hereby agrees to release, defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the XTO Group." Based upon the clear language of this provision, XTO agreed to "release" any and all claims, demands and causes of action of every kind and character arising out of injury to XTO's contractor's employees, including any additional insured claims XTO contends it could assert under Section XI of the MSA. By including this "release" language in Paragraph 10.2.1, XTO unequivocally and "without limitation" expressed its intent to absolve MBI (and the other contractors) of any liability for claims of XTO Group. XTO has expressly "released" any and all claims against MBI arising out of the injuries or death of the XTO Group.

Because XTO has assumed all responsibility for Plaintiffs' claims, and has released MBI from any liability for such claims, and the MSA does not require MBI to name XTO as an additional insured for the claims at issue, and its policies do not provide additional insured coverage to XTO or its contractors for these claims, Berkley must deny XTO's demand for additional insured

5 | Page

**App. 252**

coverage under the above-referenced policies for XTO and its contractors.

There can also be no additional insured coverage for XTO's contractors. As set forth above, the Berkley policy extends additional insured coverage to "[a]ny person or organization with whom YOU [the Named Insured] agree in a written contract or written agreement to add as an Additional Insured on YOUR policy or to provide liability insurance for[.]" Specifically, the Berkley CGL policy issued to MBI includes the following provision.

> B. *Insureds*
>
> *Each of the following is an INSURED with respect to the coverages set forth in Section II.A. Bodily Injury and Property Damage Liability, Section II.C. Personal and Advertising Injury Liability, and Section II.D. Medical Payments of this policy:*
>
> 1. *Additional Insured:*
>
> *Any person or organization with whom YOU agree in a written contract or written agreement to add as an Additional Insured on YOUR policy or to provide liability insurance for, but only with respect to liability arising out of YOUR operations or liability arising out of premises owned by or rented to YOU.*

The Berkley CUL policy, with respect to Coverage A - Excess Follow Form Liability, includes as an insured "[o]ther persons or organizations qualifying as an INSURED in UNDERLYING INSURANCE, but not beyond any limitation imposed under any written contract or agreement."

MBI did not enter into any written contract or agreement with any other XTO contractor. The Named Insured, MBI, entered into a written contract with XTO only, and the Berkley policy therefore does not extend additional insured coverage to the XTO contractors, with which MBI has no contractual relationship.

Additionally, a court may find that any liability at issue did not arise out of the operations of MBI, or out of any premises owned by or rented to MBI, as required by the additional insured provision of the Berkley policy.

Further, while at all times denying any additional insured coverage is provided to XTO or its contractors, the policies at issue preclude coverage for these claims.

This lawsuit arises out of a blowout, explosion and fire, which allegedly occurred when a hole in a joint was exposed, allowing uncontrolled pressures, fluids and gases through the hole and into the atmosphere. The pollution exclusion of the Berkley CGL policy issued to MBI applies to exclude coverage for claims arising out of this incident. See, e.g., *Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 847 F.3d 594, 597 (8th Cir. 2017).

The policy excludes coverage, in part, for the following.

> 13. *Pollution:*
>
>     a. *BODILY INJURY or PROPERTY DAMAGE arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of POLLUTANTS:*
>
>         1) *At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any INSURED.*

The alleged "bodily injury" sustained by plaintiffs herein clearly arose out of the release or escape of fluids and gases, which qualify as pollutants, at or from a site which was owned or occupied by, or rented or loaned to, XTO, which alleges it was an insured.

The Berkley policy also contains the following applicable exclusion.

> 2. *Contractual Liability:*
>
>    *BODILY INJURY or PROPERTY DAMAGE for which the INSURED is obligated to pay damages by reason of the assumption of liability in a contract or agreement.*

This exclusion applies to any claim by XTO that Berkley is responsible for XTO's defense and indemnity obligation to MBI and/or the other XTO contractors. XTO's defense and indemnity obligations are contractual in nature, and therefore excluded from coverage.

We note that the "insured contract" exception to this exclusion. "Insured contract" is defined in the policy, in relevant part, as "[t]hat part of any written contract or written agreement pertaining to YOUR business under which YOU assume the liability of another party to pay for BODILY INJURY or PROPERTY damage to a third person or organization." YOU refers only to the Named Insured (MBI). This exception therefore does not apply to any obligations of XTO, or liability of another assumed by XTO.

The following exclusion contained in the Berkley policy may also apply to exclude coverage for some or all of the claims at issue.

> 9. *Expected or Intended Injury:*
>
>    *BODILY INJURY or PROPERTY DAMAGE expected or intended from the standpoint of the INSURED.*

Plaintiffs have alleged that XTO's intentional and reckless conduct caused and/or contributed to the incident at issue. This exclusion may apply to exclude coverage for such claims.

Berkley also re-asserts that XTO is obligated to fully release, defend, indemnify and hold harmless MBI for all claims made by Plaintiffs in these lawsuits, and to insure these obligations with its insurance coverage, on a primary basis.

Please note that this letter is not intended to be a comprehensive statement of all terms, conditions, exclusions and/or endorsements in the policies that may apply. Nothing herein should be considered a waiver of any rights under the policies, at law or that are otherwise available. Berkley expressly reserves all rights, including, but not limited to, the right to update and/or modify its coverage opinion.

It is our intention by referencing the above policy language, to provide you with Berkley's position as to XTO's demand for additional insured coverage. To reiterate, please understand that Berkley is declining XTO's demand for additional insured coverage, for itself and its contractors. We recommend that you refer to the actual policies for a complete review of the referenced policy language. Berkley reserves its rights under the policies to supplement its position, should any additional information be provided that may affect our understanding of the underlying facts. If there is any information which you believe may affect our analysis, or if you believe our recitation of the pertinent facts set forth in this letter is incorrect, inaccurate or incomplete, please advise, and provide us with relevant information for our further consideration.

Should you have any questions concerning the matters raised in this correspondence, please feel free to contact the undersigned. Please note, however, our position remains as stated in this letter unless we advise you specifically in writing otherwise.

Regards,

*Suzanne Roberts /eg*
Suzanne Roberts
Vice President – Technical Risk Strategy & Claim Litigation
Berkley Oil & Gas (a Berkley Company)
P.O. Box 420029
Houston, TX 77242
Direct Dial: (832) 308-6966
Fax: (866) 326-2792
Email: sroberts@berkleyoil-gas.com