IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY, | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| v. | § § | C.A. NO. 1:18-CV-00195 |
| XTO ENERGY, INC., | § § | |
| *Defendant, Counter-Plaintiff and Third-Party Plaintiff,* | § § § | |
| v. | § § | |
| COMMERCE AND INDUSTRY INSURANCE COMPANY, TORUS NATIONAL INSURANCE COMPANY n/k/a STARSTONE NATIONAL INSURANCE COMPANY, and SENECA SPECIALTY INSURANCE COMPANY, | § § § § § § § | |
| *Third-Party Defendants.* | § | |

**DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF XTO ENERGY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST <u>COMMERCE AND INDUSTRY INSURANCE COMPANY</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF UNDISPUTED MATERIALS FACTS ............................................... 3

I.     The Underlying Lawsuits ................................................................................... 3

II.    The Master Service Agreement between XTO and CIIC's Named Insured,
       Missouri Basin .................................................................................................. 7

III.   The Insurance Policies ...................................................................................... 9

       A.     The Berkley Policies ............................................................................. 9

       B.     The CIIC Policy .................................................................................. 11

IV.    Coverage Demands and Denials ...................................................................... 12

V.     The Settlement of the Lawsuits and the Coverage Litigation .......................... 13

ARGUMENT & AUTHORITIES ................................................................................. 14

I.     Summary Judgment Standard. ........................................................................ 14

II.    XTO is an Additional Insured Under the Berkley Policies, and As a Result,
       the CIIC Policy ............................................................................................... 16

III.   The Pollution Exclusion in the CIIC Policy Does Not Bar Coverage for the
       Lawsuits. ........................................................................................................ 16

       A.     The Pollution Exclusion in the CIIC Policy Only Applies to Environmental-
              Type Harms, Not to the Bodily Injury That was the Subject of the Lawsuits. ......... 17

       B.     In the Event the Pollution Exclusion Applies, So Does its Exception ..................... 22

              1.     CIIC Waived the Notice Requirement by Asserting a Late Notice
                     Defense for the First Time In Litigation and Nine Months After
                     Denying Coverage on Other Specific Grounds. ................................. 23

              2.     Even if CIIC Did Not Waive its Late Notice Defense (Which it Did),
                     That Defense Fails Because CIIC Cannot Prove it was Materially
                     Prejudiced. ..................................................................................... 25

       C.     Regardless, the CIIC Policy Incorporates Two Additional Exceptions
              That Independently Restore Coverage: The Hostile Fire Exception
              and The Additional Insured Exception. .......................................................... 28

              1.     The CIIC Policy Incorporates the Exceptions in the Berkley Pollution
                     Exclusion. ....................................................................................... 28

              2.     The Hostile Fire Exception Applies to Provide Coverage for the
                     Underlying Lawsuits. ...................................................................... 31

              3.     The Additional Insured Exception Also Applies. ............................. 35

D.    Alternatively, the CIIC Pollution Exclusion, the Exceptions Discussed
Herein and/or the Commercial General Liability Limitation Endorsement
Are Ambiguous and Must be Construed in Favor of Coverage............................... 38

CONCLUSION ........................................................................................................................ 39

**DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF**
**XTO ENERGY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST**
**COMMERCE AND INDUSTRY INSURANCE COMPANY**

**ii**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Star Ins. Co. v. Grice,*
  854 P.2d 622 (Wash. 1993)........................................................................................35

*Am. States Ins. Co. v. Koloms,*
  687 N.E.2d 72 (Ill. 1997)..........................................................................................19

*American States Insurance Co. v. McGuire,*
  510 So.2d 1227 (Fla. Ct. App. 1987).......................................................................23

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..................................................................................................15

*Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London,*
  387 F.Supp.3d 663 (M.D. La. 2019)....................................................................25, 27

*Armstrong v. Hanover Ins. Co.,*
  130 Vt. 182 (Vt. 1972)..............................................................................................24

*Atlantic Mut. Ins. Co. v. McFadden,*
  595 N.E.2d 762 (Mass. 1992) ...................................................................................19

*Auto–Owners Ins. Co. v. Rodgers,*
  360 So.2d 716 (Ala. 1978) ........................................................................................23

*Belt Painting Corp. v. TIG Ins. Co.,*
  795 N.E.2d 15 (N.Y. 2003)........................................................................................18

*Boren v. State Farm Mutual Auto. Ins. Co.,*
  225 Neb. 503, 406 N.W.2d 640 (Neb. 1987) ............................................................23

*Bosko v. Pitts & Still, Inc.,*
  454 P.2d 229 (Wash. 1969)........................................................................................24

*Brown v. State Farm Mutual Auto. Ins. Co.,*
  776 S.W.2d 384 (Mo. 1989) ......................................................................................23

*Century Indem. Co. v. Aero-Motive Co.,*
  336 F. Supp. 2d 739 (W.D. Mich. 2004), *aff'd*, 155 F. App'x. 833 (6th Cir.
  2005) ..........................................................................................................................27

*Century Sur. Co. v. Hallandale Beach Serv. Station, LLC*,
No. 10-cv-21430, 2011 WL 13174906 (S.D. Fla. Mar. 21, 2011) .......................32, 33, 34, 35

*Council v. Metropolitan Life Ins. Co.*,
256 S.E.2d 303 (N.C. Ct. App. 1979) ......................................................................................24

*Dillingham Corp. v. Employers Mutual Liability Ins. Co.*,
503 F.2d 1181 (9th Cir. 1974) ................................................................................................23

*Doerr v. Mobil Oil Corp.*,
774 So.2d 119 (La. 2000) ........................................................................................................19

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
132 F.3d 526 (9th Cir. 1997) ........................................................................................18, 20, 21

*Federated Rural Electric Insurance Co v. Certain Underwriters at Lloyds, London.*,
293 F. App'x 539 (9th Cir. 2012) ...........................................................................................29

*Finstad v. Steiger Tractor, Inc.*,
301 N.W.2d 392 (N.D. 1981) ......................................................................................25, 26, 27

*First Alabama Bank v. First State Ins. Co.*,
899 F.2d 1045 (11th Cir. 1990) ........................................................................................22, 23

*Fisher v. American Family Mut. Insurance Co.*,
579 N.W.2d 599 (N.D. 1998) ..........................................................................................14, 38

*Gaylord Container Corp. v. CNA Ins. Cos.*,
807 So. 2d 864 (Ct. App. La. 2001).................................................................................18, 20, 21

*General Accident Ins. Group v. Cirucci*,
46 N.Y.2d 862 (N.Y. 1979) ....................................................................................................24

*Great Northern Insurance Co. v. Greenwich Insurance Co.*,
No. CV-05-635, 2007 WL 2458477 (W.D. Penn. Aug. 24, 2007), *vacated on other grounds* .....................................................................................................................34

*Greenwich Ins. Co. v. John Sexton Sand & Gravel Corp.*,
No. 1-12-1263, 2013 WL 950755 (Ill. App. Ct. Mar. 11, 2013) .................................21, 34, 35

*Hasper v. Ctr. Mut. Ins. Co.*,
723 N.W.2d 409 (N.D. 2006) ......................................................................................24, 25, 26

*Hawkins Chemical, Inc. v. Westchester Fire Ins. Co.*,
159 F.3d 348 (8th Cir. 1998) ..................................................................................................35

*Hiland Partners GP Holdings, LLC, et al. v. National Union Fire Insurance Co.*
  *of Pittsburgh, PA*,
  847 F.3d 594 (8th Cir. 2017) .................................................................................16, 21, 25, 27

*J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*,
  936 F.2d 1474 (6th Cir. 1991) ..............................................................................................23

*John Hancock Mutual Life Ins. Co. v. Tuggle*,
  303 F.2d 113 (10th Cir. 1962) ..............................................................................................23

*Johnson Controls, Inc. v. London Market*,
  784 N.W.2d 579 (Wis. 2010).................................................................................................29

*Jones v. Francis Drilling Fluids, Ltd.*,
  642 F. Supp. 2d 643 (S.D. Tex. 2009) .............................................................................18, 21

*Karroll v. Atomergic Chemetals Corp.*,
  194 A.D.2d 715 (N.Y. 1993) .................................................................................................19

*Keggi v. Northbrook Property and Cas. Ins. Co.*,
  13 P.3d 785 (Ariz. 2000).......................................................................................................19

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,
  980 S.W.2d 462 (Tex. 1998).................................................................................................37

*Kent Farms, Inc. v. Zurich Ins. Co.*,
  969 P.2d 109 (Wash. App. 1998), aff'd, 998 P.2d 292 (Wash. App. 2000).............................20

*Lancon v. Employers Nat'l Life Ins. Co.*,
  424 S.W.2d 321 (Tex. Ct. Civ. App. 1968, writ ref'd) ..........................................................24

*Larson v. Occidental Fire and Casualty Co.*,
  79 N.M. 562, 446 P.2d 210 (N.M. 1968).................................................................................23

*Lee v. Evergreen Regency Cooperative & Mgmt. Sys., Inc.*,
  390 N.W.2d 183 (Mich. App. Ct. 1986) ..................................................................................23

*Luria Brothers & Co. v. Alliance Assurance Co.*,
  780 F.2d 1082 (2nd Cir. 1986)...............................................................................................23

*MacKinnon v. Truck Insurance Exchange*,
  73 P.3d 1205 (Cal. 2003) .......................................................................................................20

*In re Matter of Complaint of Settoon Towing, LLC*,
  720 F.3d 268 (5th Cir. 2013) ............................................................................................25, 27

*Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*,
   16 S.W.3d 418 (Tex. App.—Waco 2000, no pet.)........................................................33, 34, 35

*Motorists Mut. Ins. Co. v. RSJ, Inc.*,
   926 S.W.2d 679 (Ky. App.1996) .........................................................................................19

*National American Ins. Co. of California v. Certain Underwriters at Lloyd's
   London*,
   93 F.3d 529 (9th Cir. 1996) .................................................................................................28

*Nautilus Ins. Co. v. Jabar*,
   188 F.3d 27 (1st Cir.1999)...................................................................................................19

*Newman v. Scottsdale Ins. Co.*,
   370 Mont. 133, 301 P.3d 348 (2013) ..................................................................................27

*Noble Energy, Inc. v. Bituminous Casualty Co.*,
   529 F.3d 642 (5th Cir. 2008) ...............................................................................................33

*Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*,
   976 F.2d 1037 (7th Cir.1992) ..............................................................................................19

*Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.*
   35 F.3d 494 (10th Cir. 1994) ...............................................................................................20

*Reineke v. Commonwealth Insurance Co.*,
   202 N.W. 657 (N.D. 1924) .............................................................................................24, 27

*Schmid v. Fireman's Fund Ins. Co.*,
   97 F. Supp. 2d 967 (D. Minn. 2000)....................................................................................35

*Scottsdale Ins. Co. v. Tri-State Ins. Co.*,
   302 F. Supp. 2d 1100 (D.N.D. 2004)..........................................................................14, 15, 39

*Spring Glen Apartments LLP v. Arch Specialty Insurance Co.*,
   307 F. Supp. 3d 975 (D.N.D. 2018)......................................................................................15

*Tow v. Gemini Ins. Corp. (In re ATP Oil & Gas Corp.)*,
   No. 12-cv-36187, 2015 WL 5965600 (Bankr. S.D. Tex. Oct. 9, 2015) ...........................37, 38

*Tri-Etch, Inc. v. Cincinnati Ins Co.*,
   909 N.E.2d 997 (Ind. 2009) ................................................................................................27

*U.S. Fid. & Guar. Co. v. B&B Oil Well Service, Inc.*,
   910 F.Supp. 1172 (S.D. Miss. 1995).....................................................................................37

*Weaver v. Royal Ins. Co. of America*,
674 A.2d 975 (N.H. 1996) ....................................................................................19

*West American Ins. Co. v. Tufco Flooring East, Inc.*,
409 S.E.2d 692 (N.C. 1991), overruled on other grounds by *Gaston County
Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558 (N.C. 2000)..................19

*Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*,
No. 11-cv-80272, 2012 WL 3848569 (S.D. Fla. Sept. 5, 2012)............................27

**Statutes**

FED. R. CIV. P. 56(c) ......................................................................................................14

FED. R. CIV. P. 56(e) ......................................................................................................15

N.D.C.C. § 26-1-32-09 ...........................................................................................17, 23, 25

N.D.C.C. § 26-1-32-09 and *D.E.M* ...........................................................................24, 25

**Other Authorities**

13 CORBIN ON CONTRACTS § 68.2 (2019) ....................................................................25

COUCH ON INS. § 195:57 ...............................................................................................24

1 INSURANCE CLAIMS AND DISPUTES § 1:4 (6th ed.) ...................................................25

Defendant, Counter-Plaintiff and Third-Party Plaintiff XTO Energy, Inc. ("XTO") submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment against Commerce and Industry Insurance Company ("CIIC") (the "Motion").

## PRELIMINARY STATEMENT

This is an insurance coverage dispute stemming from CIIC's wrongful denial of coverage to XTO in connection with wrongful death and bodily injury lawsuits arising from a well explosion and fire. Each of CIIC's coverage defenses is unsupported by the plain terms of the MSA, the CIIC Policy, and/or the relevant case law. The CIIC policy plainly provides coverage and the Court must reject its baseless coverage defenses.

Missouri Basin Well Services, Inc. ("Missouri Basin"), CIIC's named insured, was required under a Master Service Agreement (the "MSA") to name XTO as an additional insured— and the CIIC's policy indeed covers those for whom Missouri Basin was required to secure coverage. Nevertheless, CIIC improperly denied additional insured coverage to XTO under its policy for the lawsuits.

CIIC argues that XTO is an additional insured only to the extent it qualifies as such under the primary and umbrella policies issued by Berkley National Insurance Company ("Berkley"). Because XTO is an additional insured under Berkley's policies it is likewise an additional insured under the CIIC policy.

CIIC also argues that its policy's pollution exclusion bars coverage because the explosion and fire giving rise to the underlying lawsuits were caused by the release of gases. Doc. No. 55, ¶¶ 57, 53. Not so. Courts across the country have repeatedly held the pollution exclusion at issue only applies to environmental-type harms, not to liability arising out of bodily injury. Indeed,

courts have explicitly held that such pollution exclusions do not preclude coverage for bodily injuries stemming from an explosion—the precise situation here.

Further, even if this Court held that the pollution exclusion would otherwise apply to preclude coverage for the lawsuits (which it does not), the time element exception to the CIIC pollution applies to restore coverage.  This exception carves back coverage for claims that meet five criteria.  CIIC does not contest, nor can it, that XTO has met four of those criteria.  Instead, CIIC argues for a total forfeiture based upon a procedural notice provision.  CIIC's argument fails, however, for two reasons.  First, CIIC waived any notice requirement by not providing XTO with a prompt objection to any alleged delayed notice.  Second, even if CIIC did not waive late notice (which it has), a showing of prejudice is required, and there is none here.

Moreover, the CIIC Policy's follow form provision incorporates two additional exceptions—the hostile fire exception and the additional insured exception—in the underlying policy. Each of these exceptions independently applies to restore coverage.  The first provides that the pollution exclusion does not apply to bodily injury "arising out of heat, smoke or fumes from a hostile fire."  Hostile fire is defined as fire "which becomes uncontrollable or breaks out from where it was intended to be."  Here, the underlying claimants' injuries were undoubtedly caused by a hostile fire.  CIIC does not dispute (nor can it) that the bodily injuries in the underlying lawsuits were caused by an explosion and fire.  The hostile fire exception, therefore, clearly applies.

A second exception adopted by the CIIC policy independently applies to restore coverage for bodily injury "for which You may be held liable, if you are a contractor and the owner or lessee of such premises…has been added to Your policy as an Additional Insured with respect to your

ongoing operations performed for that Additional Insured."  Here, "You" refers to Missouri Basin (the named insured under the Berkley policies), undisputedly a contractor.  Because Missouri Basin has been named a defendant in a lawsuit, there is no doubt that Missouri Basin may be held liable for the bodily injury at issue.  Further, there is no dispute that the MSA added XTO (the owner of the Ryan Well) to the CIIC Policy.  Finally, the Ryan Well was not owned, occupied, or rented by Missouri Basin —XTO was the owner and lease operator of the Ryan Well who contracted with Missouri Basin to provide limited services at the Ryan Well.  Therefore, the additional insured exception to the pollution exclusion clearly applies.

Finally, if there is any ambiguity in the policies, the Court must construe the policies in favor of XTO, the insured, as consistent with North Dakota law.

XTO is entitled to summary judgment on CIIC's affirmative defenses and therefore respectfully requests this Court grant  XTO's Motion and dismiss CIIC's affirmative defenses that: (1) XTO's claims are barred because XTO does not qualify as an additional insured under CIIC's policy and the [Berkley policies] (*id.*, ¶¶ 50-51, 53); and (2) XTO's claims are barred by the pollution exclusion in CIIC's policy (*id.*, ¶¶ 57, 53).

## STATEMENT OF UNDISPUTED MATERIALS FACTS[1]

### I.      The Underlying Lawsuits

1.      XTO conducts significant operations throughout North Dakota. Among other things, it owned and was the lease operator of a producing oil and gas well located approximately eight miles east of Watford City, North Dakota at a drilling pad known as Ryan 14X-09E (the "Ryan Well").  Ex. 2 (App. 332, ¶ 3) (Arnold Affidavit).

---

[1] The evidence on which XTO relies in support of its Motion is contained in the Appendix.  Doc. No. 117.  Citations to the evidence in the Appendix appear as "Ex. __ (App. __)".

2.      On or about June 18, 2016, an explosion and fire occurred at the Ryan Well, injuring or killing several people (the "Ryan Well Incident") and resulting in two lawsuits: *Mary Stassinos et al. v. XTO Energy Inc., et al;* Civil No. 1:17-CV-138 (the "*Stassinos* Lawsuit") and *Richard Maheu et al. v. XTO Energy Inc., et al.;* Civil No. 1:17-CV-102 (the "*Maheu* Lawsuit"), both pending in the District of North Dakota, Western Division (collectively, the "Lawsuits").[2] Ex. 4 (App. 823-49) (Stassinos Lawsuit); Ex. 1-B (App. 033-064) (Maheu Lawsuit). The Lawsuits named as defendants XTO and a number of its contractors, including Missouri Basin. *Id.*  The Lawsuits alleged that XTO and all other Defendants were negligent and further sought to hold XTO accountable for the alleged negligence of the various contractors named.  Ex. 1-A (App.019-21); Ex. 1-B (App. 046-47).

3.      The allegations made in the Lawsuits (and the evidence proving certain facts asserted in the Lawsuits) are as follows:

- "On or before June 18, 2016, Defendant XTO was the lease operator of a well near Watford City, North Dakota, known as Ryan 14X-09E (Well Site).  On June 18, 2016, an explosion and fire occurred at the XTO Well Site causing serious injuries to Mr. Stassinos.  Mr. Stassinos received medical treatment for his injuries and suffered conscious pain and suffering, but subsequently died from those serious injuries."  Ex. 4 (App. 827, ¶ 15) (Stassinos Lawsuit.); *see also* Ex. 2-E (App. 422-29) (the "TH Hill Report"); Ex. 2-F (App. 687) (Fire Report).

---

[2] XTO, among others, was also named a defendant in a lawsuit filed by Daniel Pavon in Harris County, Texas, Case No. 201661844-7 (the "*Pavon* Lawsuit").  Justin Pyle intervened in the *Pavon* Lawsuit.  The *Pavon* Lawsuit was dismissed in Texas on *forum non conveniens* grounds.  After dismissal of the *Pavon* Lawsuit, Pavon and Pyle sought and were granted leave to intervene in the *Maheu* Lawsuit.  Pyle also sought and was granted leave to intervene in the *Stassinos* Lawsuit.  As such, the Lawsuits include the claims of Pavon and Pyle.  Ex. 1-C (App. 065-098); Ex. 1-D (App. 099-116).

- "Although the Well Site had become dangerous and hazardous, XTO chose not to "kill" it with appropriate and available fluids and also chose not to isolate the hazardous portion of the tubing with appropriate plugs. Instead of "killing" the Well, XTO chose to remove the tubing from the hole by pulling it out in a process known as "snubbing" in which a machine grabs the tubing and pulls it out a little at a time while maintaining pressure in the hole." Ex. 4 (App. 827, ¶ 17) (Stassinos Lawsuit).

- "Upon information and belief, MBI and/or Yankee Consulting retained Mr. Dokken as an employee, agent, representative, and/or independent contractor to provide Company Man services at the XTO Well Site." Ex. 4 (App. 829, ¶ 25); *see also* Ex. 2-G (App. 696) (Dokken Depo. 10:16 – 11:12) (testimony from Mr. Dokken confirming that he was hired by Missouri Basin to provide consulting services for XTO).

- "During this dangerous aspect of the snubbing process on June 18, 2016, the final joint of tubing reached the surface and rocketed out of the Well and into the air resulting in an explosion and fire and serious injuries to Mr. Stassinos which, subsequently, resulted in his death." Ex. 4 (App. 830, ¶ 31) (Stassinos Lawsuit); *see also* Ex. 1-B (App. 040, ¶ 32) (Maheu Lawsuit); Ex. 2-E (App. 422-29) (TH Hill Report); Ex. 2-F (App. 687) (Fire Investigation Report).

- "In its discretion, Defendant XTO contracted with Defendant MBI to provide a senior consultant, Defendant Dokken, to supervise operations on XTO's behalf, including supervision of Defendants Kolden and Jones." Ex. 1-B (App. 039, ¶ 27

(Maheu Lawsuit); *see also* Ex. 2-G (App. 696) (Dokken Depo. 10:16 – 11:12) (testimony from Mr. Dokken confirming that he was hired by Missouri Basin to provide services for XTO); Doc. No. 85, at 6 (CIIC Motion) ("Multiple contractors of XTO were involved in the Accident.  MBI employed foreman, Carson Dokken").

- "Through the XTO company men they assigned to the Ryan Well, Defendants MBI, Badlands, and Petroleum Experience regularly reported to, communicated with, provided recommendations to, and followed the orders and directions of Defendant XTO regarding operations and conditions at the Ryan Well."  Ex. 1-B (App. 039, ¶ 27; *see also* Ex. 2-G (App. 696) (Dokken Depo. 10:16 – 11:12) (testimony from Mr. Dokken confirming that he was hired by Missouri Basin to provide services for XTO); Doc. No. 85, at 6 (CIIC Motion) ("Multiple contractors of XTO were involved in the Accident.  MBI employed foreman, Carson Dokken").

- "Instead of acting reasonably and prudently by killing the Ryan Well, Defendants XTO, MBI [Missouri Basin], Dokken, Badlands, Jones, Petroleum Experience, and Kolden instead negligently and recklessly ordered the Most Wanted and SEI crews to conduct snubbing operations in an attempt to pull out of the hole the remaining joints of tubing from the Ryan Well while the Ryan Well was still under dangerously high pressure."  Exhibit 1-B (App. 041, ¶ 35).

- "After receiving the order from Defendants XTO, MBI, Dokken, Badlands, Jones, Petroleum Experience, and Kolden to pull the remaining joints of tubing from the Ryan Well, Most Wanted and SEI foremen asked these Defendants to bleed the Ryan Well down so that their crews would be dealing with lower pressures while

pulling the tubing out of the hole. In response to this request, these Defendants bled the Ryan Well down and lowered the pressure. Then, inexplicably, Defendants XTO, MBI, Dokken, Badlands, Jones, Petroleum Experience, and Kolden ordered the Most Wanted and SEI crews to undergo a time-consuming random urinalysis test. While the crews were undergoing the urinalysis test, Defendants XTO, MBI, Dokken, Badlands, Jones, Petroleum Experience, and Kolden shut the Ryan Well in and negligently and recklessly allowed uncontrolled well bore pressures to build up to a dangerously high level." Exhibit 1-B (App. 041-42, ¶ 37); *see also* Ex. 2-G (App. 696) (Dokken Depo. 106:10 – 107:116) (testimony from Mr. Dokken regarding shutting in the Ryan Well during drug test).

- "As a proximate result of the blow-out, explosion, and fire, and as a proximate result of the acts and omissions of Defendants, one man was killed and others suffered serious, life-threatening burns and injuries." Exhibit 1-B (App. 042, ¶ 39).

- "The blow-out, explosion, fire, and subsequent injuries and damages sustained by Plaintiffs were proximately caused by the negligent and reckless acts and omissions of Defendants who were acting through their agents, representatives, servants, and employees, all of whom were acting within the scope of their employment or agency duties." Exhibit 1-B (App. 045, ¶ 49).

## II. The Master Service Agreement between XTO and CIIC's Named Insured, Missouri Basin

4.      On December 2, 2011, XTO and Missouri Basin (CIIC's insured) entered into a Master Service Agreement wherein Missouri Basin agreed to provide certain services to XTO at the Ryan Well (the "MSA").  Ex. 1-E (App. 117-39) (Missouri Basin MSA).

5.      The MSA required Missouri Basin to secure and maintain commercial general liability policies with at least $1 million limits per occurrence. *Id.* (App. 125).

6.      Section 11.2 of the MSA further provides:

> [S]hould [Missouri Basin] maintain on a general, blanket, comprehensive or similar basis any insurance, including but not limited to excess liability insurance or contractual liability insurance, in amounts greater than such minimums, then the actual insurance which [Missouri Basin] shall provide hereunder will be such larger amounts carried by [Missouri Basin]…and not the minimums referenced in Sections 11.1.1-11.1.5 above.
>
> *Id.*

7.      Section 11.4 of the MSA also provides:

> <u>Primary Coverage and Additional Insureds</u>. ALL INSURANCE POLICIES AND COVERAGES LISTED IN THIS ARTICLE XI WILL EXTEND TO AND PROTECT THE XTO GROUP[3] TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCES. ALL INSURANCE POLICIES LISTED IN THIS ARTICLE XI WILL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR SELF-INSURANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITING THE XTO GROUP. THE LIMITS AND COVERAGES OF THE INSURANCES OBTAINED BY CONTRACTOR WILL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY <u>CONTRACTOR</u> [Missouri Basin] UNDER THIS AGREEMENT. ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES WILL NAME THE XTO GROUP AS AN ADDITIONAL INSURED. ALL OF CONTRACTOR'S INSURANCE POLICIES WILL CONTAIN A WAIVER ON THE PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE XTO GROUP.
>
> *Id.* (App. 125-26).

---

[3] The MSA defines the XTO Group as individually or in any combination XTO, its Affiliates, co-owners or co-lessees (whether of a fee, lease, mineral lease or otherwise) at the Site, joint interest owners, joint venturers, partners, contractors and subcontractors other than Contractor, Contractor Group, or its or their Subcontractors and all of their respective directors, officers, employees, representatives, agents, licensees and invitees. *See* Ex. 1-E (App. 118-19). Because the other defendants named in the Lawsuits were XTO's "contractors and subcontractors other than [Missouri Basin]," those defendants are also encompassed in the definition of "XTO Group."

8.     Pursuant to Section 14.8, the MSA is governed by the laws of the State of Texas. *Id.* (App. 129).

## III.    The Insurance Policies

9.     Berkley National Insurance Company ("Berkley") and CIIC both issued policies to Missouri Basin.  Because the CIIC Policy (defined below) is excess to the Berkley primary and umbrella policies, certain provisions in the Berkley policies are important to understand coverage under the CIIC Policy.

### A.    The Berkley Policies

10.     The first Berkley policy bears Policy Number EGL–001672010 and is a primary-level general liability policy (the "Berkley Primary Policy"). Ex. 1-F (App. 140-97) (Berkley Primary Policy).  The Berkley Primary Policy was issued to Missouri Basin, effective from April 13, 2016 to April 13, 2017, and has a $1,000,000 per occurrence limit.  *See id.* (App. 141).

11.     The second Berkley policy issued to Missouri Basin bears Policy Number EUL-00167910 and is an umbrella policy (the "Berkley Umbrella Policy," and collectively the "Berkley Policies).  Ex. 1-G (App. 198-240) (Berkley Umbrella Policy).  The Berkley Umbrella Policy has a $25 million per occurrence limit and follows the terms and conditions of the Berkley Primary Policy. *See id.* (App. 199, 208).

12.     The Berkley Policies provide liability coverage for damages the insureds must pay because of bodily injury caused by a covered occurrence. Ex. 1-F (App. 152); Ex. 1-G (App. 208).

13.      The Berkley Policies include XTO and the other contractors named as defendants in the Lawsuits as Additional Insureds under the following provision:

> **Additional Insured:**
> Any person or organization with whom **YOU** agree in a written contract or written agreement to add as an Additional Insured on your policy or to

provide liability insurance for, but only with respect to liability arising out of **YOUR** operations or liability arising out of premises owned by or rented to **YOU.**·

In addition, the written contract or written agreement requiring **YOU** to include a person or organization as an Additional Insured must be in effect during the policy period and executed before the **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL AND ADVERTISING INJURY** occurred. Furthermore, the insurance provided will not exceed the lesser of: ·

    a. The coverage, terms, and/or limits of this policy; or

    b. The coverage, terms, and/or limited required by said written contract or written agreement.

. . . .

Ex. 1-F (App. 150-51).

14.    The Berkley Primary Policy also includes the following pollution exclusion:

**Pollution**:

a. Bodily Injury or Property Damage arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants:

    (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured. **However, this Subparagraph (1) does not apply to:**

\*\*\*

    **(b) Bodily Injury or Property for which You may be held liable, if you are a contractor and the owner or lessee of such premises, site, or location has been added to Your policy as an Additional Insured with respect to Your ongoing operations performed for that Additional Insured at that premises, site, or location; and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured;**

    **(c) Bodily Injury or Property Damage arising out of heat, smoke, or fumes from a Hostile Fire;**

\*\*\*

> **Hostile Fire means one which becomes uncontrollable or breaks out from where it was intended to be.**

Ex. 1-F (App.162-63) (emphasis added).[4]

## B.    The CIIC Policy

15.    CIIC issued Commercial Umbrella Policy No. 24238279 to Missouri Basin (the "CIIC Policy"). Ex. 1-H (App.240-310). The CIIC Umbrella Policy has a $25 million limit that "sits on top" of the Berkley Policies, the Berkley primary and umbrella/excess policies discussed above. *See id.* (App. 242).

16.    The CIIC Policy includes a Commercial General Liability Limitation Endorsement that amends the CIIC Policy as follows:

> **Commercial General Liability Limitation Endorsement**
>
> This insurance does not apply to Commercial General Liability.
>
> However, if insurance for Commercial General Liability is provided by a policy listed in Scheduled Underlying Insurance:
>
> 1.    This exclusion shall not apply; and
>
> 2.    Coverage under this policy ***will follow the terms, definition, conditions and exclusions of Scheduled Underlying Insurance***, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.
>
> *Id.* (App. 290). (emphasis added).

17.    The Berkley Primary Policy is identified as the Scheduled Underlying Insurance.

*Id.* (App. 269).   Therefore, the CIIC Policy follows the terms, definitions, conditions and

---

[4] The Berkley Umbrella Policy incorporates the pollution exclusion, and the exceptions thereto, in the Berkley Primary Policy.  Ex. 1-G (App. 208).

exclusions of the Berkley to the extent that those terms, definitions, conditions and exclusions do not conflict with the CIIC Policy.

18.     The CIIC Policy includes XTO and the other contractors named as defendants in the Lawsuits as Additional Insureds because the CIIC Policy covers "any person or organization…included as an additional insured under [The Berkley Policies]." *Id.* (App. 289).

19.     The CIIC Policy also includes a pollution exclusion that provides as follows:

**Time Element Pollution:**

This insurance does not apply to:

1.     Any Bodily Injury or Property Damage…arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants anywhere at any time;…

***

However, Paragraph 1 of this exclusion will not apply to Bodily Injury or Property Damage arising out of any discharge, dispersal, seepage, migration, release or escape of Pollutants that meets all of the following conditions:

   i.   It was abrupt and neither expected nor intended by the Insured…

   ii.  It commenced on a demonstrable, specific date during the Policy Period;

   iii. Its commencement became known to the Insured within (7) calendar days;

   iv.  Its commencement was reported in writing to us within (21) calendar days of becoming known to the Insured; and

   v.   Reasonable effort was expended by the Insured to terminate the discharge, dispersal, seepage, migration, release, or escape of Pollutants as soon as conditions permitted.

*Id.* (App. 308-09).

## IV.   Coverage Demands and Denials

20.     XTO first received a copy of the CIIC Policy on June 4, 2018 through a document production in connection with the Lawsuits.  Ex. 1 (App. 005, ¶ 10) (Kuhn Aff.).

21.     Shortly thereafter, on June 29, 2018, XTO sent a letter to CIIC demanding defense and indemnity for itself and the rest of the "XTO Group" in connection with the Lawsuits. *Id.* (App. 005, ¶ 11).

22.     On October 5, 2018, CIIC sent XTO a letter denying coverage for the Lawsuits (the "Denial Letter").   (Ex. 1-J) (App. 318-28) (Denial Letter).  The Denial Letter stated that CIIC coverage was not available because the Berkley Policies were not exhausted. *Id.* (App. 324).  CIIC also asserted that, if the Berkley Policies did not cover XTO, then CIIC would not cover XTO. *Id.* (App. 325).  CIIC also referenced (but did not invoke) a Pollution Exclusion in its letter. *Id.* (App. 325, 327).   Notably, the version CIIC referenced includes two exceptions—the hostile fire exception and the additional insured exception.  *Id.*

## V.     The Settlement of the Lawsuits and the Coverage Litigation

23.     On or about October 12, 2018, all defendants in the Lawsuits and their insurance carriers participated in a mediation with the plaintiffs in the Lawsuits.  At that mediation, XTO was able to secure settlements with all but one of the underlying plaintiffs.  After the mediation, XTO settled with the last remaining underlying plaintiff. Ex. 1 (App. 005, ¶ 13) (Kuhn Aff.).

24.     All known insurance carriers for the defendants named in the Lawsuits, with the exception of Berkley and CIIC, actively engaged in the mediation and settlement of the Lawsuits. *Id.* (App. 005, ¶¶ 13-14).  Furthermore, all known insurance carriers for the defendant named in the Lawsuits, with the exception of Berkley and CIIC, agreed to provide their respective limits to settle the Lawsuits. *Id.* (App. 005, ¶ 14).

25.     While the terms of the settlement agreements are confidential, the total amount of the settlements far exceed the total limits of the Berkley and CIIC Policies.  *Id.* (App. 006, ¶ 16). CIIC is aware of the amounts paid in settlement of the Lawsuits.

26.     Berkley filed this action on September 28, 2018.  Doc. No. 1 (Berkley Complaint).

27.     XTO filed its Answer, Counterclaim and Third-Party Complaint on November 7, 2018 and named CIIC, among others, as a third-party defendant.  Doc. No. 7 (XTO Answer, Counterclaim and Third-Party Complaint).

28.     CIIC filed its Answer to XTO's Third-Party Complaint on January 23, 2019. Doc. No. 35.  CIIC filed its Amended Answer on May 13, 2019.  Doc. No. 55.  In its Amended Answer, CIIC expressly adopts and incorporates by reference the defenses and affirmative defenses asserted by Berkley, including that the pollution exclusion in the Berkley and CIIC policies bar coverage for the Lawsuits.  *Id.* at ¶ 53.

## ARGUMENT & AUTHORITIES

### I.     Summary Judgment Standard.

Summary judgment is appropriate where the relevant evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   Under North Dakota law[5], the "interpretation of an insurance policy, including whether it is ambiguous, is a question of law" to be resolved by the court.  *Fisher v. American Family Mut. Insurance Co.*, 579 N.W.2d 599, 602 (N.D. 1998); *Scottsdale Ins. Co. v. Tri-State Ins. Co.*, 302 F. Supp. 2d 1100, 1103 (D.N.D. 2004).

---

[5] North Dakota law governs the interpretation of the Berkley Policies and CIIC Policy as the policies were issued to Missouri Basin, a North Dakota resident, in North Dakota.  The explosion that is at issue in the underlying Lawsuit also occurred in North Dakota.  However, the interpretation of the MSA will be governed under Texas law as provided under Section 14.8 of the MSA.  Ex. 1-E (App. 129) (MSA).

Once the movant has discharged its initial burden to demonstrate the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  A fact is "material" to preclude summary judgment only if it will "affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be denied."  *Id.*  at 249-50 (citations omitted).

Moreover, in the context of a dispute involving an insurance policy, all doubts regarding the interpretation of ambiguous policy terms are resolved in favor of the insured.  *Scottsdale Ins. Co. v. Tri-State Ins. Co.*, 302 F. Supp. 2d 1100 (D.N.D. 2004) ("Any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured."); *Spring Glen Apartments LLP v. Arch Specialty Insurance Co.*, 307 F. Supp. 3d 975 (D.N.D. 2018) ("Should a court uncover any ambiguous terms within the policy, the  meaning of those terms out to be interpreted in favor of the insured.").

Here, the issues presented center on policy interpretation and are ripe for summary judgment by the Court.  CIIC has based its denial of coverage on an improper interpretation of the CIIC Policy.  XTO therefore requests that this Court grant XTO's Motion and dismiss CIIC's affirmative defenses that: (1) XTO's claims are barred because XTO does not qualify as an additional insured under CIIC's policy and the [Berkley policies] (*id.*, ¶¶ 50-51, 53); and (2) XTO's claims are barred by the pollution exclusion in CIIC's policy (*id.*, ¶¶ 57, 53).

## II.     XTO is an Additional Insured Under the Berkley Policies, and As a Result, the CIIC Policy

CIIC asserts that XTO is only insured to the extent it is an additional insured under the Berkley policies and further incorporates Berkley's position that its policies do not cover XTO. Doc. No. 55, ¶ 50.  The CIIC Policy covers "any person or organization…included as an additional insured under [The Berkley Policies]."   Therefore, if XTO is an additional insured under the Berkley Policies, it is also an additional insured under the CIIC Policy.  XTO has filed a Motion for Partial Summary Judgment against Berkley seeking a ruling on Berkley's declaratory claim and affirmative defense that XTO is not an additional insured under its policies.  *See* Doc. No. 110 (Berkley Motion); Doc. No. 111 (Berkley Memorandum).  XTO fully incorporates the arguments made therein at Section II.B by reference.  *See* Doc. No. 111.  To the extent the Court holds XTO is an additional insured under the Berkley Policies, XTO requests the Court enter an order dismissing CIIC's affirmative defense that XTO is not an additional insured under the CIIC Policy.

## III.     The Pollution Exclusion in the CIIC Policy Does Not Bar Coverage for the Lawsuits.

CIIC's assertion that its pollution exclusion bars coverage of the Lawsuits lacks merit. CIIC relies predominantly on a single case for its assertion that the pollution exclusion applies: *Hiland Partners GP Holdings, LLC, et al. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 847 F.3d 594 (8th Cir. 2017).  The *Hiland* holding concerns one issue only: Whether "condensate" was a pollutant that triggered the CGL policy's pollution exclusion.  That issue has no bearing on the case at bar.  Here, XTO does not dispute whether the gases released from the Ryan Well are pollutants.  Instead, XTO argues that the pollution exclusion in the CIIC Policy applies only to environmental-type harms, not bodily injury from an explosion.  And, even if the pollution exclusion were initially triggered (which it is not), the CIIC Policy includes a time

element exception which applies to restore coverage. CIIC does not dispute that four of the exception's five conditions were met, nor could it. Instead, CIIC argues that the exception does not apply because XTO did not provide written notice to CIIC within 21 days of the Ryan well incident. Doc. No. 85, ¶ 22. However, CIIC waived any notice requirement pursuant to N.D.C.C. 26-1-32-09 by not providing XTO with a prompt objection to any alleged delayed notice. Even if CIIC did not waive late notice (which it has), a showing of prejudice is required, and there is none here. Moreover, CIIC Policy's follow form provision incorporates two exceptions—the hostile fire exception and the additional insured exception—in the Berkley Primary Policy's pollution exclusion. Each of these exceptions is triggered here. Alternatively, the CIIC Policy is ambiguous and the court must construe coverage in favor of XTO.

### A.     The Pollution Exclusion in the CIIC Policy Only Applies to Environmental-Type Harms, Not to the Bodily Injury That was the Subject of the Lawsuits.

Courts across the country have held that similar (and in some cases identical) pollution exclusions apply only to environmental-type harms, not the type of injuries alleged in the Lawsuits. Here, it is undisputed that the injuries giving rise to the Lawsuits were caused by an explosion, fire and blunt force, not "exposure to hydrocarbons vapors" or some other pollution exposure type of injury. Ex. 4 (App. 830, ¶ 31) (Stassinos Lawsuit) ("[T]he final joint tubing reached the surface and rocketed out of the Well and into the air resulting in an explosion and fire and serious injuries to Mr. Stassinos which, subsequently, resulted in his death."); Exhibit 1-B (App. 042, ¶¶ 40-41) (Maheu Lawsuit) ("Plaintiff Maheu was hit by the explosion and flames of the flash fire, and was thrown down a flight of stairs, his body engulfed in flames. Plaintiff sustained severe full-thickness burns on sixty to seventy (60-70%) of his body…"). CIIC does not dispute that the injuries were caused by an explosion and fire. Doc. No. 85, p. 2 ("Here, the undisputed facts show

that injuries at issue in the underlying lawsuits arose out of the escape of oil and/or gas from the well that caused <u>an explosion and fire that resulted in the injuries</u>.").

These bodily injuries are simply not the type of environmental harm the pollution exclusion was meant to address—as courts across the country have acknowledged.  For example, in a strikingly similar case, the Ninth Circuit found that a similar pollution exclusion was ambiguous and therefore construed the policy in favor of coverage.  *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997).  In *Enron*, a pipeline exploded as a result of an injection of foreign substances into the crude oil carried by the pipeline. In finding that the "pollution exclusion" did not bar coverage, the Ninth Circuit held that the terms of the policy send an "unmistakable message to the reasonable reader that the exclusion deals with environmental-type harms." *Id.* at 530-31.  Accordingly, the Ninth Circuit held that the pollution exclusion did not apply to the explosion or the resulting loss.

Many other courts have reached similar conclusions, construing the pollution exclusion as ambiguous and refusing to apply the exclusion in circumstances similar to the case at hand.  *See, e.g., Belt Painting Corp. v. TIG Ins. Co.,* 795 N.E.2d 15 (N.Y. 2003) (reasoning the terms "discharge" and "dispersal" are "terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste," and therefore, those terms do not clearly and unequivocally exclude a personal injury claim.); *Gaylord Container Corp. v. CNA Ins. Cos.*, 807 So. 2d 864, 872 (Ct. App. La. 2001) ("We hold that when a fortuitous event such as an explosion occurs, and that event incidentally involves a chemical agent, the absolute pollution exclusion operates to exclude coverage for environmental damage only."); *Jones v. Francis Drilling Fluids, Ltd.*, 642 F. Supp. 2d 643, 667 (S.D. Tex. 2009) (holding that, because an

underlying lawsuit sought damages for a worker's injuries sustained by an explosion, and not environmental cleanup costs, the pollution exclusion did not apply); *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 31 (1st Cir.1999) (reasonable interpretation of exclusion is that it applies only to environmental pollution); *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir.1992) (literal interpretation of pollution exclusion's terms would be overbroad and would render judicial limitations on insurance policies meaningless); *Keggi v. Northbrook Property and Cas. Ins. Co.*, 13 P.3d 785, 791 (Ariz. 2000) (exclusion intended only to exclude coverage for traditional environmental pollution); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 81 (Ill. 1997) (pollution exclusion does not apply to "toxic torts" but is restricted to instances of classic pollution such as groundwater or soil contamination from industrial operations); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680–82 (Ky. App.1996) (total pollution exclusion uses terminology from environmental law and the historical objective of the exclusion was to avoid coverage for environmental catastrophes); *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 135 (La. 2000), corrected, 782 So.2d 573 (La.2001) (absolute pollution exclusion not intended to exclude coverage for all interactions with irritants or contaminants and should be construed to exclude coverage only for environmental pollution); *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992) (pollution exclusion's terms are terms of art in environmental law); *Weaver v. Royal Ins. Co. of America*, 674 A.2d 975, 977 (N.H. 1996) (where phrase "discharge, dispersal, release or escape" was not defined, it should be construed against the insurer); *Karroll v. Atomergic Chemetals Corp.*, 194 A.D.2d 715 (N.Y. 1993) (exclusion reasonably interpreted to apply only to environmental pollution); *West American Ins. Co. v. Tufco Flooring East, Inc.*, 409 S.E.2d 692, 699 (N.C. 1991), overruled on other grounds by *Gaston*

*County Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558 (N.C. 2000) (terms such as "discharge, dispersal, release, or escape" are environmental terms of art meant to apply to environmental pollution); *Kent Farms, Inc. v. Zurich Ins. Co.*, 969 P.2d 109, 111–12 (Wash. App. 1998), aff'd, 998 P.2d 292 (Wash. App. 2000) (reasonable reading of the exclusion limits it to traditional environmental damages); *MacKinnon v. Truck Insurance Exchange,* 73 P.3d 1205, 1209 (Cal. 2003) (recognizing split of authority but observing that "considering those jurisdictions that have taken a definitive position, as represented by a published opinion of the state supreme court, the narrower interpretation of the pollution exclusion appears to be in the majority."); *Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.* 35 F.3d 494 (10th Cir. 1994) (holding carbon monoxide from residential heater not excluded, applying Colorado law).

These courts all acknowledge that if the pollution exclusion is construed broadly to exclude the bodily injuries at issue here, such an interpretation would contravene the very purpose of a CGL policy. The liability imposed on XTO due to these bodily injuries was precisely the type of risks it expected its liability policy to cover. Instead, CIIC urges this Court to construe the pollution exclusion in a manner that would defeat the very purpose of the CIIC Policy. This Court should refuse to do so.

In addition to the numerous courts rejecting the pollution exclusion's applicability to non-environmental injuries, courts also have repeatedly held that pollution exclusions should not be applied to exclude coverage for injuries caused by explosions specifically. In addition to *Enron*, the court in *Gaylord* refused to apply a total pollution exclusion to exclude coverage for an explosion that occurred when a railcar filled with nitrogen tetroxide exploded on the way to a factory. *Gaylord Container Corp. v. CNA Ins. Cos.*, 807 So. 2d 864, 872 (Ct. App. La. 2001). The

insured sought coverage under its policies for many personal injury suits stemming from the explosion. The *Gaylord* court concluded that the total pollution exclusion did not bar coverage because the insured was not seeking a defense or indemnity "for suits that relate to environmental cleanup claims arising out of the" explosion, but instead for personal injury claims arising out of an accident. *Id.* at 872.

The court in *Jones v. Francis Drilling Fluids, Ltd.*, 642 F. Supp. 2d 643, 667 (S.D. Tex. 2009) also agreed that a total pollution exclusion did not apply to a chemical explosion that caused a worker's injuries. The *Jones* court reasoned that the pollution exclusion was intended only to apply to long-term, catastrophic environmental pollution, not to a one-time explosion in which the insured was not seeking damages for clean up, but rather for the injuries sustained by the worker. *Id.* at 668; *see also Greenwich Ins. Co. v. John Sexton Sand & Gravel Corp.*, No. 1-12-1263, 2013 WL 950755, at ¶ 25 (Ill. App. Ct. Mar. 11, 2013) (holding that the pollution exclusion did not apply to an explosion).[6] Here, like the insureds in *Enron, Gaylord* and *Jones*, XTO is not seeking defense or indemnity for pollution caused by the Ryan Well explosion; it is seeking coverage for personal injuries arising from an accident. These bodily injuries caused by an explosion are not barred under CIIC's pollution exclusion.

The explosion and bodily injuries alleged in the Lawsuits are not the type of environmental-type harms the CIIC's pollution exclusion was intended to address. Thus, the pollution exclusion does not apply to preclude coverage.

---

[6] The *Hiland* case did involve an explosion; however, the insured failed to argue that the pollution exclusion does not apply to explosions or non-environmental bodily injury. Instead, as noted above, the *Hiland* court was merely asked to determine whether "condensate" was a pollutant that triggered the CGL's policy's pollution exclusion. *Hiland*, 847 F.3d at 599.

**B.      In the Event the Pollution Exclusion Applies, So Does its Exception.**

The CIIC Policy includes an exception to its pollution exclusion.  Ex. 1-H (App. 308-09) (CIIC Policy).  That exception carves back coverage for claims that meet certain criteria.  Those criteria are five-fold:  (i) the underlying incident was "neither expected nor intended"; (ii) the incident occurred during the policy period; (iii) the Insured became aware of the incident within seven days of its occurrence; (iv) the Insured notified CIIC within twenty-one days; and (v) the Insured made a reasonable effort to mitigate the situation.  *Id.* (App. 308).  CIIC does not dispute, nor could it dispute, that (i),[7] (ii),[8] (iii),[9] and (v)[10] are satisfied.  Doc. No. 85, at 22.  Instead, it argues for a total forfeiture based upon condition (iv), a procedural notice provision.[11]  *Id.*

As set forth in more detail below, CIIC's cannot deny coverage based on any procedural notice defense for two reasons.  *First*, CIIC, by North Dakota statute and under North Dakota common law, waived the right to disclaim coverage on notice grounds because it asserted its late notice defense for the first time in litigation and nine months after denying coverage on other specific grounds.  *Second*, even if CIIC has not waived its late notice defense, and it has, CIIC must prove but cannot prove that it has been prejudiced by any alleged late notice.

---

[7] Doc. No. 85, at 5 (CIIC Motion) (defining the incident as the "Accident."); Ex. 2 (App. 333, ¶ 6) (Arnold Aff.); Ex. 4 (App. 832, ¶ 44) (Stassinos Lawsuit) ("XTO negligently breached the duties owed to Mr. Stassinos by its negligence/fault…"); Ex. 1-B (Maheu Lawsuit) (Defendant XTO, acting through its agents, representatives, and employees, breached the duties owed to Plaintiffs, and the negligence of Defendant XTO proximately caused the injuries and damages sustained by Plaintiffs."); Ex. 2-F (App. 687) (Fire Report) (describing Tom Jones' eyewitness testimony that while the contractors where trying to decide what to do, "nobody touched any controls or moved anything, when he heard a very loud "clank" noise this was followed by a loud hissing and an explosion that all occurred in a couple of seconds or less.").

[8] Ex. 1-H (App. 242) (CIIC Policy); Ex. 2 (App. 332, ¶ 4) (Arnold Aff.); Doc. No. 85, at 5.

[9] Ex. 2 (App. 332, ¶ 4) (Arnold Aff.).

[10] *Id.*

[11] Notably, XTO first received a copy of the CIIC Policy on June 4, 2018.  Ex. 1 (App. 005, ¶ 10) (Kuhn Aff.).  In other words, XTO could not have known of any notice requirements under the CIIC Policy until *after* CIIC argues the notice period expired.

1.    **CIIC Waived the Notice Requirement by Asserting a Late Notice Defense for the First Time In Litigation and Nine Months After Denying Coverage on Other Specific Grounds.**

Under both North Dakota statutory and common law, CIIC has waived the notice provision because it initially denied coverage on other very specific grounds, and only nine months later, during litigation, did it raise its late notice defense.  Consistent with North Dakota's bedrock public policy against forfeitures of insurance coverage, N.D.C.C. § 26-1-32-09 provides that "[d]elay in the presentation to an insurer of notice or proof of loss is waived if the delay is caused by any act of the insurer, ***or if the insurer fails to make a prompt and specific objection***." (emphasis added)

North Dakota courts have found a similar rule under the common law.  In *D.E.M. v. Allickson*, the North Dakota Supreme Court held that an insurer was "estopped from raising insufficiency of notice as a defense" because "an insurer which denies liability on specified grounds may not subsequently attempt to deny liability on different grounds."  555 N.W.2d 596, 599 (N.D. 1996).  In *D.E.M.*, the insurer had raised myriad defenses to coverage in its pre-suit letters to the insured, but not one of those defenses pertained to notice.  *Id.* at 597–599.  The North Dakota Supreme Court rejected the insurer's subsequent attempt to raise a notice-related defense, citing the rule that "when one specific ground of forfeiture is urged against a policy of insurance . . . all other grounds are waived."  *Id.*  To support that "widely followed" rule, the North Dakota Supreme Court cited eighteen appellate decisions issued across the country.  *Id.* at 599–600.[12]

---

[12] *See J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1489 (6th Cir. 1991) (Michigan law); *First Alabama Bank v. First State Ins. Co.*, 899 F.2d 1045, 1063 (11th Cir. 1990) (Alabama law); *Luria Brothers & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1090 (2nd Cir. 1986) (New York law); *Dillingham Corp. v. Employers Mutual Liability Ins. Co.*, 503 F.2d 1181, 1185 (9th Cir. 1974) (Oregon law); *John Hancock Mutual Life Ins. Co. v. Tuggle*, 303 F.2d 113, 117 (10th Cir. 1962) (Texas law); *Auto–Owners Ins. Co. v. Rodgers*, 360 So.2d 716, 719 (Ala. 1978); *American States Insurance Co. v. McGuire*, 510 So.2d 1227, 1229 (Fla. Ct. App. 1987); *Lee v. Evergreen Regency Cooperative & Mgmt. Sys., Inc.*, 390 N.W.2d 183, 185 (Mich. App. Ct. 1986); *Brown v. State Farm Mutual Auto. Ins. Co.*, 776 S.W.2d 384, 386–388 (Mo. 1989); *Boren v. State Farm Mutual Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640, 643 (Neb. 1987); *Larson v. Occidental Fire and Casualty Co.*, 79 N.M. 562, 446 P.2d 210, 212 (N.M.

Notably, the rule espoused by N.D.C.C. § 26-1-32-09 and *D.E.M.* is consistent with North Dakota's strong preference to avoid forfeitures of insurance coverage, which it "abhors." *Hasper v. Ctr. Mut. Ins. Co.*, 723 N.W.2d 409, 415 (N.D. 2006) (citations omitted); *see also Reineke v. Commonwealth Insurance Co.*, 202 N.W. 657 (N.D. 1924) (holding that "[a]n objection to certain defects in the proof of loss constitutes a waiver of all others"). Allowing an insurer to dodge coverage because of a technical defect *raised only at the eleventh hour* would result in a forfeiture and would hand that insurer an undeserved windfall. *See Hasper*, 723 N.W.2d at 415(recognizing that, North Dakota has, both through statute and common law, enacted a rule providing that an insurer waives any late notice defense if it fails to promptly raise that defense).[13]

Here, CIIC raised a late notice defense for the first time only in litigation, nine months after denying coverage on entirely different and very specific grounds. Doc. No. 85, at 22. CIIC's initial denial letter, dated October 5, 2018, stated that coverage was not available because the requisite underlying insurance was not exhausted. Ex. 1-J (App. 324) (Denial Letter). CIIC also asserted that it, if that underlying insurance did not cover XTO, then it also would not cover XTO. *Id.* (App. 325). CIIC also referenced (but did not invoke) a Pollution Exclusion in its letter. *Id.* CIIC did not, however, assert late notice; indeed, the word "notice" does not appear in CIIC's denial letter. *Id.* (App. 318-28). CIIC did not raise a late notice defense until it served its responses to XTO's interrogatories. Ex. 3-A (App. 804) (CIIC Resp. to Interrog., Rog. No. 2). Pursuant to

---

1968); *General Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862 (N.Y. 1979); *Council v. Metropolitan Life Ins. Co.*, 256 S.E.2d 303 (N.C. Ct. App. 1979); *Lancon v. Employers Nat'l Life Ins. Co.*, 424 S.W.2d 321, 322–323 (Tex. Ct. Civ. App. 1968, writ ref'd); *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182 (Vt. 1972); *Bosko v. Pitts & Still, Inc.*, 454 P.2d 229 (Wash. 1969).

[13] North Dakota's rule is, again, consistent with the national majority rule. *See* 13A COUCH ON INS. § 195:57 (noting that, "[g]enerally, when an insurer denies coverage on specific grounds, it waives the right later to assert additional defenses to coverage, including lack of timely notice").

N.D.C.C. § 26-1-32-09 and *D.E.M.*, CIIC waived any right it may have had to raise a late notice defense when it failed to assert that defense in its initial denial letter.  Indeed, per the text of N.D.C.C. § 26-1-32-09, "[d]elay in the presentation to an insurer of notice . . . is waived . . . if the insurer fails to make a prompt and specific objection."  That is exactly what happened here, and for that reason the time element exception to the Pollution Exclusion applies.[14]

**2.    Even if CIIC Did Not Waive its Late Notice Defense (Which it Did), That Defense Fails Because CIIC Cannot Prove it was Materially Prejudiced.**

Even if CIIC could raise a late notice defense, and for the reasons stated in the preceding section it cannot, such a defense fails because CIIC has not satisfied its burden of proving, nor can it satisfy its burden of proving, that it has been prejudiced.  It is black letter North Dakota law that, to deny coverage under an occurrence-based policy for late notice, the insurer must satisfy its burden of proving "appreciable prejudice" and a "material breach."  *Finstad v. Steiger Tractor, Inc.*, 301 N.W.2d 392, 398 (N.D. 1981); *see also Hasper*, 723 N.W.2d at 415.[15]

The policy rationale for North Dakota's notice-prejudice rule is the same as the policy rationale for the aforementioned waiver doctrine—to avoid forfeitures of insurance coverage.  *See id.*  Indeed, in *Finstad*, the North Dakota Supreme Court held that, because insurance is not "a truly consensual arrangement and [is] available only on a take-it-or-leave-it basis[,]" an insurer

---

[14] CIIC cites three cases for the proposition that courts have held similar pollution exceptions "unambiguous and applied them according to their terms."  Doc. No. 85, at 22.  In *Hiland*, the only case applying North Dakota law, the policyholder did not argue that N.D.C.C. § 26-1-32-09 or *D.E.M.* applied, and the court did not consider the statute or that case; thus, *Hiland* is inapposite.  847 F.3d at 601.  CIIC's other two cases did not apply North Dakota law and thus do not control the inquiry.  *See In re Matter of Complaint of Settoon Towing, LLC*, 720 F.3d 268, 278 (5th Cir. 2013); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F.Supp.3d 663, 677 (M.D. La. 2019).

[15] It is axiomatic that a party may discharge its duties under a contract only upon "an uncured material breach"; not upon any breach.  13 CORBIN ON CONTRACTS § 68.2 (2019) (citing RESTATEMENT (SECOND) OF CONTRACTS § 242 (1981)); *see also* 1 INSURANCE CLAIMS AND DISPUTES § 1:4 (6th ed.) ("[U]nexcused delay in providing notice to a true excess insurer might not forfeit the coverage unless the insurer can establish that it was prejudiced by the delay.  Such an equitable result might be justified, if for no other reason, based upon the well-established doctrine that an immaterial breach of contract by one party does not excuse performance by the other party.").

**DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF**                          **Page 25**
**XTO ENERGY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST**
**COMMERCE AND INDUSTRY INSURANCE COMPANY**

"may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice." *Id.* The North Dakota Supreme Court reemphasized that principle twenty-five years later, in *Hasper*, when it remarked that the *Finstad*, court had "stress[ed] that allowing the insurer to avoid coverage without a showing of prejudice would work a forfeiture." *Hasper*, 2006 ND 220, ¶ 13.

*Finstad* involved an occurrence-based policy that contained a strict twenty-day notice provision. *Finstad*, 301 N.W.2d at 394. On July 12, 1975, an accident occurred, but the policyholder did not provide its insurer with notice until November 1978, some three years and four months later. *Id.* The insurer later moved for summary judgment on the ground that the policyholder failed to serve its "notice of claim within the period set forth in the . . . policy." *Id.* The trial court granted the insurer's motion for summary judgment. *Id.*

Acknowledging the public policy against forfeitures, the North Dakota Supreme Court reversed. *Id.* at 398. Specifically, the court held that, with late notice defenses raised by insurers, "what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for." *Id.* The court went on to remark that, it "would be unfair to insureds" to "find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach." *Id.* Therefore, unless an insurer can satisfy its burden of proving "a breach of the notice provision and a likelihood of appreciable prejudice," it may not disclaim coverage for late notice. *Id.*

Since *Finstad*, federal courts sitting in North Dakota have continued to uphold the notice-prejudice rule. In 1999, the *Geico Insurance Co. v. Estate of Schmidt* court held that Geico could not deny coverage "even though they may not have been properly notified." No. A2-96-120, 1999

DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF
XTO ENERGY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
COMMERCE AND INDUSTRY INSURANCE COMPANY

Page 26

WL 33283325, at *4 (D.N.D. Mar. 30, 1999).  That was because Geico "failed to meet its burden with respect to establishing prejudice."  *Id.*  Geico argued it was prejudiced because it lost its "opportunity to interview" a key witness; the court was unpersuaded and rejected Geico's defense. *Id.*[16]

Like the insurers in *Finstad* and *Geico*, CIIC seeks to disclaim coverage based upon alleged late notice.  Doc. No. 85, at 22.  Yet, CIIC has not, and cannot, satisfy its burden of establishing "appreciable prejudice."  *Finstad*, 301 N.W.2d at 398.  CIIC cannot meet its burden for two independent reasons.

First, when a carrier expressly denies coverage not because of late notice but on other grounds, it cannot, as a matter of law, establish prejudice.  *See, e.g.*, *Newman v. Scottsdale Ins. Co.*, 370 Mont. 133, 301 P.3d 348, 360–61 (2013) (holding that when an insurer makes "a conscious decision to deny coverage . . . from the outset, based upon its asserted policy exclusions and defenses, . . . not only is the prejudice argument irrelevant in the face of waiver, it is wholly unsupported in the record"); *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, No. 11-cv-80272, 2012 WL 3848569, at *8 (S.D. Fla. Sept. 5, 2012) (holding that when an insurer denies coverage "on a ground other than late notice, the presumption of prejudice arising from the late notice was effectively rebutted").[17]  That is because if an insurer takes the position that it is not

---

[16] CIIC's three cases have no bearing on North Dakota's public policy against forfeitures and resultant notice-prejudice rule.  Doc. No. 85, at 22.  In *Hiland*, the only case applying North Dakota law, the policyholder did not allege a lack of prejudice and the court did not consider the issue; thus, the case is inapposite.  847 F.3d at 601.  CIIC's other two cases did not apply North Dakota law, but Louisiana and Texas law, and thus are also inapposite.  *See In re Matter of Complaint of Settoon Towing, LLC*, 720 F.3d at 278; *Apollo Energy, LLC*, 387 F.Supp.3d at 677.  The fact is, the North Dakota Supreme Court has clearly articulated a public policy against forfeiture, and it will not impose a forfeiture where there is not "appreciable prejudice" and a "material breach."  *See Finstad*, 301 N.W.2d at 398.  The roots of that public policy date back nearly one hundred years.  *See Reineke*, 52 N.D. at 324.  CIIC cannot argue around that now with out-of-state cases like *Settoon Towing* and *Apollo Energy*.

[17] *See also Tri-Etch, Inc. v. Cincinnati Ins Co.*, 909 N.E.2d 997, 1005 (Ind. 2009) (insurer not prejudiced if "the other defenses would have caused the insurer, if given timely notice, to do nothing with respect to the Claim"); *Century*

liable under the policy, then it experiences no prejudice by late notice—it merely denies coverage at a later date. *See National American Ins. Co. of California v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 538, (9th Cir. 1996).

Second, CIIC cannot establish that, but for the alleged late notice, the Ryan Well Incident would have been resolved in such a way that CIIC would owe less under the CIIC Policy. To be clear, the Ryan Well Incident resolved for far in excess of the limits of CIIC Policy, and it resolved for that amount with the consent and participation of several of CIIC's co-insurers. Ex. 1 (App. 006, ¶ 16) (Kuhn Aff.). Indeed, CIIC representatives attended the mediation with the underlying plaintiffs and did not oppose the settlements. *Id.* (App. 006, ¶ 15). Thus, CIIC cannot establish that the alleged late notice prejudiced it in any way the exception to the Pollution Exclusion applies, and CIIC must cover the Lawsuits.

## C. Regardless, the CIIC Policy Incorporates Two Additional Exceptions That Independently Restore Coverage: The Hostile Fire Exception and The Additional Insured Exception.

### 1. The CIIC Policy Incorporates the Exceptions in the Berkley Pollution Exclusion.

By endorsing its Policy with a follow-form provision, the CIIC Policy adopts, independently of its time element exception, both the hostile fire exception and the additional insured exception found in the Berkley Primary Policy. The CIIC Policy's Commercial General Liability Limitation Endorsement provides that the CIIC Policy "will follow the terms, definitions, conditions and exclusions of [the Berkley Policy], subject to the…terms, definitions, conditions and exclusions of this policy. Ex. 1-H (App. 290) (CIIC Policy). Accordingly, the CIIC Policy

---

*Indem. Co. v. Aero-Motive Co.*, 336 F. Supp. 2d 739 (W.D. Mich. 2004), *aff'd*, 155 F. App'x. 833 (6th Cir. 2005) (finding no prejudice because insurer "has not shown that it would have proceeded any differently" had timely notice been provided, as insurer would still have denied coverage).

follows Berkley's pollution exclusion to the extent it does not conflict with CIIC's pollution exclusion – and it does not.  Both the Berkley pollution exclusion and the CIIC pollution exclusion preclude coverage for "Bodily Injury or Property Damage arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants."  Ex. 1-F (App. 162); Ex. 1-H (App. 308).  However, the two policies also include non-conflicting exceptions that determine when the pollution exclusion will not apply.

As noted *supra*, the CIIC pollution exclusion includes a time element exception.  The Berkley Policy also includes several exceptions that dictate when the pollution exclusion will not apply, including the hostile fire exception and additional insured exception.  Because the exceptions in CIIC's pollution exclusion and Berkley Policy do not conflict, the CIIC Policy incorporates both the hostile fire exception and the additional insured exception.  *Federated Rural Electric Insurance Co v. Certain Underwriters at Lloyds, London.*, 293 F. App'x 539 (9th Cir. 2012) (finding coverage under similar follow form language because, where the underlying policy and excess policy do not conflict, they must be read together to determine the scope of coverage); *Johnson Controls, Inc. v. London Market*, 784 N.W.2d 579 (Wis. 2010) (holding that under a similar follow form provision, if the umbrella policy is silent or does not conflict with the primary policy, coverage is available).

The record also indicates CIIC's intent to incorporate the exceptions in Berkley's pollution exclusion.  Notably, in its initial denial letter, CIIC references a version of the pollution exclusion in its Policy that includes both the hostile fire exception and the additional insured exception, indicating to its insured, XTO, that it intended to include such exceptions:

If it would be decided that there is additional insured coverage, the nature of these lawsuits arises from an explosion and fire caused by escaping pressurized gas. There is a pollution exclusion in AIG's Umbrella Policy.

Q. Pollution

This insurance does not apply to:

1.   Any Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere at any time; . . .

A similar pollution exclusion has been held to exclude coverage. See Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 847 F.3d 594 (8th Cir. 2017).

Ex. 1-J (App. 325) (CIIC Denial Letter).

While CIIC makes no note of it, the version of the pollution exclusion in Section V.Q (the section cited above) carves back coverage for bodily injury "arising out of heat smoke or fumes from a Hostile Fire." Ex. 1-H (App. 253) (CIIC Policy). The second exception—the additional insured—exception is also included in Section V.Q. *Id.* CIIC's reference to this pollution exclusion in its initial communications with XTO shows its intent to include such exceptions in the CIIC Policy.

This is further bolstered by the fact that CIIC explicitly incorporates Berkley's pollution exclusion (and its exceptions) in both its discovery responses and Amended Answer. Ex. 3-A (App. 802-03) (CIIC Resp. to Interrog., Rog. No. 2); Doc. No. 55, at 11, ¶ 53 (CIIC Answer). CIIC's Amended Answer states that it "expressly adopts and incorporates by reference herein the defenses and affirmative defenses asserted by Berkley National Insurance Company" and that "XTO's claims are barred by the terms, limits, *exclusions*, conditions, definitions, and

endorsements in CIIC's policy and the scheduled underlying insurance [Berkley] referenced in the policy." Doc. No. 53, at 11, ¶ 53(emphasis added). CIIC's Responses to Interrogatories likewise note that CIIC incorporates by reference Berkley's Answer to its Interrogatory regarding each and every exclusion or other provision in the Berkley Policy on which coverage is denied. Ex. 3-A (App. 802-03). Berkley asserts its pollution exclusion both as a defense in its complaint and its answer to the referenced interrogatory.

Because the exceptions in CIIC's and Berkley's pollution exclusions do not conflict, the CIIC Policy incorporates both the hostile fire exception and the additional insured exception.

### 2. The Hostile Fire Exception Applies to Provide Coverage for the Underlying Lawsuits.

The first exception provides that the pollution exclusion does not apply where the injury "arises out of heat, smoke or fumes from a hostile fire…[A] hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be." Ex. 1-F (App. 163); Ex. 1-H (App. 290). Here, CIIC does not dispute that an explosion caused an uncontrollable fire that resulted in the injuries that are the subject of the Lawsuits. Doc. No. 78, p. 24 ("The completion crew continued to remove the tube from the well resulting in an explosion and fire, killing and severely injuring several workers.") (emphasis added); *see also* Ex. 2 (App. 332, ¶ 4; App. 334 ¶ 14) (Arnold Aff.). The contractors who witnessed the incident testified regarding the explosion and uncontrollable fire that caused the injuries:

Tom Jones, a contractor for Badlands Consulting, LLC, gave the following statement to the North Dakota Fire Marshall:

> To his knowledge, Jones stated, nobody touched any controls or moved anything, when he heard a very loud 'clank' noise this was followed by a loud hissing and **an explosion that all occurred in a couple of seconds or less. Jones stated, he was**

> **blown back by the flash explosion.  When he looked up, Jones stated, all he could see were guys on the rig that were on fire.**  Ex. 2-F (App. 687).

Lyman Yazzie, a contractor for Colter Energy, gave the following account in a witness statement:

> Then a minute or two after another loud bang occurred and **a second later the whole floor ignited and created a huge fire** from the blowing gas.  Ex. 2-B (App. 339).

Ociel Rodriguez, a contractor for Weatherford International, LLC, testified regarding the explosion and injuries as follows:

> [I]t was like a big (noise) and then all of a sudden at that second you hear a bang, boom and then like **everything there just you could see the flames** and then after that like **the fire expands wide in the air**…. He was burned from head to toes wide open. Ex. 2-D (App. 389).

These circumstances clearly bring the claims within the hostile fire exception even if the pollution exclusion would otherwise apply.  North Dakota has yet to interpret the applicability of the hostile fire exception.  However, courts interpreting identical hostile fire exceptions and similar facts have held that the hostile fire exception applied.  For instance, in *Hallandale*, employees of the insured-gas station were injured while working on underground gasoline storage tanks. *Century Sur. Co. v. Hallandale Beach Serv. Station, LLC*, No. 10-cv-21430, 2011 WL 13174906, *2 (S.D. Fla. Mar. 21, 2011).  As they worked, a container storing four gallons of acetone spilled, and the fumes migrated to the employee's customized lights. *Id.* When the acetone reacted with the customized lights, a violent oxidation reaction occurred – the gas exploded, creating a fireball that injured several of the employees. *Id.*

The policy included an identical pollution exclusion which barred coverage for "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants…"  *Id.* at 3. The policy also contained the

hostile fire exception which provided the exclusion did not apply to "bodily injury…arising out of heat, smoke or fumes from a 'hostile fire.'" *Id.* Hostile fire was likewise defined as a fire "which becomes uncontrollable or breaks out from where it was intended to be." *Id.*

The insurer argued that the exception did not apply, focusing on the word "becomes" and asserting that because a fire must "become uncontrollable" for it to be considered a hostile fire, the insurer argued there must first be a pre-existing, controlled fire before it can become uncontrollable. *Id.* at 4. The insured, on the other hand, focused on the word "uncontrollable," and noted that the fire became uncontrollable immediately after breaking out. The court found that nothing in the exception's language indicated that there must have been a pre-existing, controlled fire, and held the hostile fire exception applied to restore coverage. *Id.*

In reaching this conclusion, the court rejected the insurer's citation to *Noble Energy, Inc. v. Bituminous Casualty Co.*, 529 F.3d 642 (5th Cir. 2008), in which the Fifth Circuit held that a "hostile fire" exception "applies only if a pre-existing fire causes the pollution," noting that nothing in the plain language of the hostile fire exception mentions a pre-existing fire or demands that the fire "cause" the pollution. *Id.* The court further noted that the court in *Noble* did not explain how it reached its conclusion, and thus, found the court's holding unavailing. *Id.*

One key reason the *Hallandale* court rejected the *Noble* holding was the *Noble* court's decision to completely ignore an earlier Texas case, which, contrary to *Noble*, held that the hostile fire exception was ambiguous and must be construed in favor of coverage. *Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418 (Tex. App.—Waco 2000, no pet.). In *Safe Tire*, a Texas appellate court ruled that the hostile fire exception applied in a case involving damage to neighboring people and property caused by smoke after an uncontrolled, accidental and unintended

fire broke out in a pile of rubber chips and wire at a scrap rubber recycling facility. There, the insurer had argued that the hostile fire exception only applied "if Safe Tire intentionally set a controlled fire in an appropriate location on its premises which becomes uncontrollable or breaks out from its place of origin." The court disagreed and found a "friendly fire" was not required under the language of the exception, but rather, it was more reasonable to include "any 'accidental' or 'unintended' fire," as these are "not restrained, directed or regulated by someone." The court held the definition of "hostile fire" was ambiguous and adopted the interpretation put forth by the insured.

The *Safe Tire* and *Hallandale* courts are not alone. The Western District of Pennsylvania held that an identical hostile fire exception applied to an oil and gas well explosion. *Great Northern Insurance Co. v. Greenwich Insurance Co.*, No. CV-05-635, 2007 WL 2458477, at * 11 (W.D. Penn. Aug. 24, 2007), *vacated on other grounds*. In *Greenwich*, there was a natural gas well blowout. After the blowout, a fire ignited. *Id.* at *2. During the course of the blowout, a large amount of crude oil, gas and combustible material was spread via smoke over the surrounding area of the well, causing damage to automobiles, homes and property owned by third parties. *Id.* The insurer argued that the exception did not apply because the fire did not "become" uncontrollable, but instead was "uncontrollable from its inception." *Id.* at 11. Also relying on *Safe Fire*, the court concluded the term "becomes uncontrollable" can be interpreted to include both "controllable fires that subsequently become uncontrollable and fires that are uncontrollable from their inception," as such, the exception was ambiguous, and the policy had to be construed in favor of coverage. *Id.* at 12.

Several other courts have also construed the hostile fire exception in favor of the insured. *See, e.g., Schmid v. Fireman's Fund Ins. Co.*, 97 F. Supp. 2d 967 (D. Minn. 2000) (holding the hostile fire exception applied when an unaligned flame in a natural gas heater emitted carbon monoxide into the air causing bodily injury because, even though the fire could be "controlled," *i.e.* turned off, the fire was still in a location not intended.); *Am. Star Ins. Co. v. Grice*, 854 P.2d 622 (Wash. 1993) (holding a hostile fire exception was ambiguous and that "the ability of the pollution exclusion to limit coverage is itself limited by the hostile fire clause which provides an exception to that exclusion."); *Hawkins Chemical, Inc. v. Westchester Fire Ins. Co.*, 159 F.3d 348 (8th Cir. 1998) (applying Minnesota law) (holding hostile fire exception to pollution exclusion applied and insurer was required to defend and indemnify insured for fire which destroyed a warehouse sending toxic fumes into the air).

Here, the injuries that are the subject of the Lawsuits clearly fall within the hostile fire exception. Indeed, while CIIC fails to acknowledge the hostile fire exception, CIIC does not dispute that an explosion and fire caused the injuries. Doc. No. 78, p. 24. Like the hostile fire exception found in *Safe Tire*, *Hallandale* and *Greenwich*, nothing in the hostile fire exception's language indicates that there must have been a pre-existing, controlled fire. Because the hostile fire exception applies to restore any coverage lost through the pollution exclusion, CIIC's Motion must be denied.

### 3.     The Additional Insured Exception Also Applies.

The pollution exclusion in the Berkley Policies also contains an additional insured exception, which the CIIC Policy follows, that provides in pertinent part:

> However, this Subparagraph (1) [to the pollution exclusion] does not apply to:
> ***

> (b) Bodily Injury or Property for which You may be held liable, if you are a contractor and the owner or lessee of such premises, site, or location has been added to Your policy as an Additional Insured with respect to Your ongoing operations performed for that Additional Insured at that premises, site, or location; and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured;

Because "You" refers to Missouri Basin, the Policy's named insured, the exception applies if (1) Missouri Basin is a contractor; (2) XTO is the owner or lessee of the Ryan Well; (3) Missouri Basin may be held liable for the bodily injuries; (4) Missouri Basin added XTO as an additional insured to the CIIC Policy; and (5) the Ryan Well was not owned, occupied, rented or borrowed by Missouri Basin.  It is undisputed the first two requirements are met:  CIIC itself admits that MBI is a contractor (*see* Doc. No. 85 at 2, "MBI entered into a master service agreement ("MSA") with XTO, wherein MBI agreed to perform certain work as a contractor for XTO."); Ex. 1-E (App. 117-39) (MSA)) and XTO was the owner and lease operator of the Ryan Well (*see* Doc. No. 73 "XTO Energy, Inc. was the owner and lease operator of [the Ryan Well]."; Ex. 2 (App. 332, ¶ 3) (Arnold Aff.).

The last three conditions are likewise met.  Because Missouri Basin has been named a defendant in the Lawsuits, there is no doubt that Missouri Basin may be held liable for the bodily injuries.  Ex. 4 (App. 823-49) (Stassinos Lawsuit); Ex. 1-B (App. 033-64) (Maheu Lawsuit).  Further, MBI was required by the MSA to name XTO as an additional insured and, because XTO is an additional insured under the Berkley Policies,[18] XTO is also an additional insured under the CIIC Policy.  Ex. 1-E (App. 125-26) (MSA); Ex. 1-H (App. 262) (CIIC Policy).  Lastly, the Ryan

---

[18] The CIIC Policy includes as an insured "any person or organization, other than [Missouri Basin], included as an additional insured in the policies listed in Scheduled Underlying Insurance." Ex. 1-H (App. 262).  The Berkley Policies are listed as the Scheduled Underlying Insurance. *Id.* (App. 268).

Well was not owned, occupied, rented or loaned to Missouri Basin (and CIIC does not contend otherwise). XTO owned and controlled the Ryan Well – Missouri Basin was contracted by XTO only to perform limited work at the Ryan Well. Ex. 2 (App. 332, ¶ 3) (Arnold Aff.) ("As owner and lease operator of the Ryan Well, XTO did not rent or loan the Ryan Well to any third-party."); Ex. 85, at 2 ("Third-Party Plaintiff XTO was the owner and lease operator of a producing oil and gas well in North Dakota."); *see also U.S. Fid. & Guar. Co. v. B&B Oil Well Service, Inc.*, 910 F.Supp. 1172, 1178 (S.D. Miss. 1995) (holding occasional and limited work performed by a subcontractor at well sites operated and controlled by others does not amount to occupancy); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 463–64 (Tex. 1998) (finding a the term "occupied" in a pollution exclusion did not encompass the insured's operations on a third-party's premises). Therefore, the additional insured exception to the pollution exclusion clearly applies.

While case law is sparse regarding this exception, at least one court has analyzed this additional insured exception and held under similar circumstances that the exception applied to provide coverage. The policy in *Tow v. Gemini Ins. Corp. (In re ATP Oil & Gas Corp.)*, No. 12-cv-36187, 2015 WL 5965600, at * 8 (Bankr. S.D. Tex. Oct. 9, 2015) included an identical additional insured exception that provided the pollution exclusion did not apply to "Bodily Injury or Property Damage for which You may be held liable, if You are a contractor and the owner, or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured." The developer – ATP – sought additional insured coverage under its subcontractor Greystar's policy. *Id.* at 3. The MSA between Greystar and ATP required Greystar

to name ATP as an additional insured under Greystar's liability policies.[19]  *Id.*  Greystar's employee was injured on ATP's platform and filed suit against ATP.  *Id.* at 3-4.  Greystar's insurer argued, among other things, that the pollution exclusion barred coverage for the suit.  *Id.* at 5.  The insurer also argued that the additional insured exception did not apply because Greystar was not a named defendant in the underlying Lawsuit.  *Id.* at 26.  The court disagreed and held the language "may be held liable" in the additional insured exception was broad and applied if Greystar could be in any way held liable, either as a named defendant in the underlying lawsuit or through the indemnification provision of the MSA.  *Id.* at 27.

Here, Missouri Basin is a named defendant in the Lawsuits – therefore, there is no question that Missouri Basin "may be held liable" for the Lawsuits.   Because all conditions under the exception are met, it therefore applies to restore coverage for XTO.  CIIC's motion for summary judgment on its affirmative defense must be denied.

> **D.     Alternatively, the CIIC Pollution Exclusion, the Exceptions Discussed Herein and/or the Commercial General Liability Limitation Endorsement Are Ambiguous and Must be Construed in Favor of Coverage.**

Under North Dakota law, when interpreting an insurance policy, a court is required to construe any exclusion  or coverage limitation narrowly in favor of the insured.  *See Fisher v. Am. Family Mut. Ins. Co.*, 579 N.W.2d 599, 602 (N.D. 1998).  Furthermore, where the language of an insurance policy is ambiguous—i.e. it is capable of at least two reasonable interpretations, one favorable to the insured and one favorable to the insurer—the court should resolve all ambiguities in favor of the insured. *Id*.

---

[19] The MSA was analyzed under Louisiana law and the policy was analyzed under Texas law.

To the extent the Court finds the pollution exclusions, exceptions, or the Commercial General Liability Limitation Endorsement ambiguous, the Court should construe those provisions against CIIC and in favor of coverage to XTO. *Scottsdale Ins. Co. v. Tri-State Ins. Co.*, 302 F. Supp. 2d 1100 (D.N.D. 2004) ("Any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured").

## CONCLUSION

For the reasons set forth above, XTO respectfully requests the Court grant XTO's Motion and dismiss CIIC's affirmative defenses that: (1) XTO's claims are barred because XTO does not qualify as an additional insured under CIIC's policy and the [Berkley policies] (*id.*, ¶¶ 50-51, 53); and (2) XTO's claims are barred by the pollution exclusion in CIIC's policy (*id.*, ¶¶ 57, 53).[20]

Dated:  April 24, 2020

Respectfully submitted,

*/s/ Leslie C. Thorne*
Leslie  C. Thorne
Texas State Bar No. 24046974
leslie.thorne@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:      (512) 867-8400
Telecopier:     (512) 867-8470

---

[20] XTO has sought its own attorneys' fees and reserves all rights under Federal Rule of Civil Procedure 54(d).

Ernest Martin, Jr.
Texas State Bar No. 13063300
ernest.martin@haynesboone.com
Carla Green
Texas State Bar No. 24097762
carla.green@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT
XTO ENERGY, INC.**

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that a true and correct copy of the foregoing was sent to all parties of record pursuant to the ECF guidelines and the Federal Rules of Civil Procedure on this 24th day of April, 2020.

       /s/ *Leslie C. Thorne*        
       Leslie C. Thorne