# EXHIBIT 1-J



AIG Company Division
PO Box 10006
Shawnee Mission, KS 66225
www.aig.com

Pranothi Prabhakara
Complex Director
T 212 458 2915
F 877 423 7695
Pranothi.prabhakara@aig.com

October 5, 2018

***VIA E-MAIL*** *–Leslie.Thorne@haynesboone.com*
Leslie Thorne
Haynes and Boone, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701-3285

|        |                                                      |
|--------|------------------------------------------------------|
| **Re:**     | **Richard Chadwick Maheu, et al v. XTO Energy Inc. et al** |
| **Insured:** | **Missouri Basin Well Services Inc.**                 |
| **Claim No:** | **875787946US**                                      |
| **Policy No.:** | **24238279**                                      |

Ms. Thorne:

AIG Claims, Inc. ("AIG") is the claims administrator for Commerce & Industry Insurance Company ("CIIC") with respect to the above referenced policy and claim. I am writing in response to your June 29, 2018, correspondence. Your client, XTO Energy, Inc. ("XTO"), tendered the claims of Daniel Pavon, Justin Pyle, Richard Chadwick Maheu, John Stassinos, and Joseph Guillen, who were injured or killed as a result of an incident occurring at the Ryan 14x-09E well location on or about June 18, 2016, near Watford City, ND. These individuals were employees of XTO contractors, Most Wanted Well Service, L.L.C. ("Most Wanted") and Sherwood Enterprises, Inc. ("SEI"). Two lawsuits have been brought in the United States District Court for the District of North Dakota. The Plaintiffs in these lawsuits asserted claims against XTO and several contractors, including Missouri Basin Well Service, Inc. ("MBI"). XTO has tendered the claims of Plaintiffs against XTO and contractors to Berkley National Insurance Company ("Berkley") for its Primary and Umbrella Policies, and AIG for its Umbrella Policy for MBI.

On November 19, 2015, XTO and MBI entered into a Master Service Agreement ("MSA"). Several provisions from the MSA are outlined below.

II. Definitions.

2.3      "Contractor Group" shall mean individually or in any combination Contractor, its Affiliates, any Subcontractor of Contractor, and their



respective directors, officers, employees, representatives, agents, licensees, invitees and assignees.

…

2.8 "XTO Group" shall mean individually or in any combination XTO, its Affiliates, co-owners or co-lessees … at the Site, joint interest owners, joint ventures, partners, contractors and subcontractors other than Contractor or its Subcontractors and all of their respective directors, officers, employees, representatives, agents, licensees and invitees.

…

X. RELEASE, DEFENSE, INDEMNITY AND HOLD HARMLESS.

10.1 Contractor's Obligations.

10.1.1      Contractor hereby agrees to release, defend, indemnify, and hold the XTO Group harmless from and against any and all claims, demands, and causes of action of every kind and character (including without limitation, fines, penalties, remedial obligations, court costs and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity) (collectively the "Indemnifiable Claims") arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the Contractor Group, and/or loss of or damage to property or interests in property of any one or more members of the Contractor Group in any manner incident to, connected with or arising out of the performance of the Work. This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the XTO Group.

…

10.2 XTO's Obligations.



10.2.1   XTO hereby agrees to release, defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the XTO Group, and/or loss of or damage to property or interests in property of any one or more members of the XTO Group in any manner incident to, connected with or arising out of the performance of the Work.  This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the Contactor Group.

…

10.2.3   XTO agrees that its indemnity obligations herein will either be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the Contractor Group and shall provide waivers of subrogation against all members of the Contractor Group; or XTO may be self-insured.   To the extent that applicable law prohibits monetary limits of insurance required or the indemnitees voluntarily assumed hereunder, the requirements will automatically be revised to conform, to the maximum extent permitted, with applicable law.

…

Pursuant to Paragraph 10.1.1, Contractor (MBI) has the duty to release, defend, indemnify, and hold XTO Group harmless for Indemnifiable Claims arising out of the injury or death of members of the Contactor Group. However, under Paragraph 10.2.1, XTO has the duty to release, defend, indemnify, and hold MBI harmless from Indemnifiable Claims arising out of the injury or death of members the XTO Group.   Here, Plaintiffs were employees of contractors of XTO, Most Wanted and SEI. As defined in Paragraph 10.1.1, Indemnifiable Claims includes claims and causes of action, and the related attorneys' fees incurred by the enforcement of this indemnity. Plaintiffs' claims fall under the definition of Indemnifiable Claims. Therefore, XTO has the duty to defend and indemnify MBI for these claims.



XI.  Insurance.

11.1    Coverages.  Subject to the provisions of Section 11.2, Contractor will secure and maintain, and will require its Subcontractors to secure and maintain, during the term of this Agreement the following insurance coverages with limits not less than the amounts specified . . . .

 …

11.1.2    Commercial   General   Liability   Insurance   INCLUDING CONTRACTUAL LIABILITY, with minimum limits of liability for injury, death or property damage of $1,000,000 combined single limit per occurrence, and an aggregate annual limit of not less than $2,000,000.

…

11.2    Actual Insurance.  Notwithstanding the minimum coverages specified in Sections 11.1.1 – 11.1.5 above, should Contractor maintain on a general, blanket, comprehensive or similar basis any insurance, including but not limited to excess liability insurance or contractual liability insurance, in amounts greater than such minimums, then the actual insurance which Contractor shall provide hereunder will be such larger amounts carried by Contractor (or indicated in any certificate of insurance furnished by Contractor) and not the minimums referenced in Sections 11.1.1 – 11.1.5 above.

…

In accordance with Paragraph 10.2.3, XTO's indemnity obligations are supported by at least the minimum amounts of insurance stated in Article XI, which will be the primary insurance.  In Article XI, Paragraph 11.1.2, the minimum limits are $1,000,000 per occurrence and an aggregate of $2,000,000.  Paragraph 11.2 requires when actual insurance is maintained above the minimum amounts set in Paragraph 11.1.2, the larger amount will apply. Therefore, XTO shall indemnify MBI with the actual insurance it has obtained.



In your correspondence dated July 24, 2018, XTO conditionally accepted MBI's tender of defense and indemnity for this matter, subject to the Texas Oilfield Anti-Indemnity Statue.   The MSA indicated that Texas law will apply.

14.8    Applicable Law.  This Agreement will be governed by the laws of the State of Texas, excluding the Texas rules on conflicts of law. . . .

The Texas Oilfield Anti-Indemnity Act permits mutual indemnity obligations subject to limitations. See TEX. CIV. PRAC. & REM. CODE §§ 127.001 – 127.007.   "[T]he indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee."   TEX. CIV. PRAC. & REM. CODE § 127.005(b).   XTO is responsible for bearing the amount of insurance it has agreed to obtained.

In your July 24 correspondence, you also noted that Section 11.4 of the MSA ultimately makes MBI's insurers responsible for satisfying any defense and indemnity obligations XTO owes MBI.

11.4    Primary Coverage and Additional Insureds.   ALL INSURANCE POLICIES AND COVERAGES LISTED IN THIS ARTICLE XI WILL EXTEND TO AND PROTECT THE XTO GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCES.  ALL INSURANCE POLICIES LISTED IN THIS ARTICLE XI WILL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR SELF-INSRUANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITING THE XTO GROUP. THE LIMITS AND COVERAGES OF THE INSURANCES OBTAINED BY CONTRACTOR WILL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR UNDER THIS AGREEMENT.   ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES WILL NAME THE XTO GROUP AS AN ADDITIONAL INSURED.   ALL OF CONTRACTOR'S INSURANCE POLICIES WILL CONTAIN A WAIVER ON THE PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE XTO GROUP.



Taken as a whole, the provisions of the MSA make it clear that XTO is responsible for defending and indemnifying MBI for Plaintiffs' claims. Paragraph 11.4 references the "LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR UNDER THIS AGREEMENT." Here, Plaintiffs' claims are for liabilities and obligations assumed by XTO pursuant to Paragraph 10.2.1, which XTO has assumed responsibility.

XTO agreed to the MSA provisions, which require XTO to defend and indemnify MBI for the claims brought by Plaintiffs in these lawsuits. It is clear from the language in the MSA that XTO intended to release MBI for any claims, demands, or causes of action arising out of the injuries or death of members of the XTO Group.

XTO has the responsibility to defend and indemnify up to its policy limits. Berkley's two policies for MBI should not be available until XTO has offered its limits. AIG's Umbrella Policy will take not take effect until Berkley has exhausted its $26 million limits.

In the DEFINITIONS section of AIG's Umbrella Policy, it defines an insured.

> M. Insured means:
>
> 7. any person or organization, other than the Named Insured, included as an additional insured under Scheduled Underlying Insurance, but not for broader coverage than would be afforded by such Scheduled Underlying Insurance.

The Schedule of Underlying Insurance names Berkley as an insurer for General Liability and Umbrella coverage.

In Berkley's CGL Policy, it identifies an Additional Insured.

> I. NAMED INSUREDS AND INSUREDS
>
> B. Insureds
>
> 1. Additional Insured:
>
> Any person or organization with whom YOU agree in a written contract or written agreement to add as an Additional Insured on YOUR policy or to provide liability insurance for, but only with respect to liability arising out of YOUR operations or liability arising out of premises owned by or rented to YOU.



Berkley's Umbrella Policy also provides coverage for named insureds and insureds.

    A.  Coverage A- Excess Follow Form Liability Insurance

        2.  Other persons or organizations qualifying as an INSURED in UNDERLYING INSURANCE, but not beyond any limitation imposed under any written contract or written agreement.

MBI entered into an agreement with XTO, not any of XTO's contractors. The Berkley policies would likely extend coverage only to XTO, and not to any of XTO's contractors, since MBI did not have a contractual relationship with XTO's contractors. Likewise, if the Berkley policies would not extend coverage, then AIG's Umbrella Policy would not extend coverage.

If it would be decided that there is additional insured coverage, the nature of these lawsuits arises from an explosion and fire caused by escaping pressurized gas. There is a pollution exclusion in AIG's Umbrella Policy.

Q.  Pollution

This insurance does not apply to:

1.  Any Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere at any time; . . .

A similar pollution exclusion has been held to exclude coverage. See Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 847 F.3d 594 (8th Cir. 2017).

Endorsement No. 11 of AIG's Umbrella Policy amends Section V. EXCLUSIONS to include the following exclusion for Commercial General Liability.

This insurance does not apply to Commercial General Liability.



However, if insurance for Commercial General Liability is provided by a policy listed in Scheduled Underlying Insurance:

1.  This exclusion shall not apply; and

2.  Coverage under this policy will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

AIG's Umbrella Policy follows Berkley's underlying policy terms, definitions, and exclusions, subject to AIG's terms, definitions, and exclusions. AIG will not provide broader coverage than the underlying coverage provided by Berkley.

Even if MBI's insurers were ultimately responsible for providing defense and indemnity to XTO, AIG's policy does not take effect until the limits are exhausted by Berkley's two underlying policies. Therefore, AIG denies XTO's demand for coverage.

If you have any questions, please do not hesitate to contact us.

Sincerely,

Pranothi Prabhakara
AIG
Complex Director

cc: robert.carlton@haynesboone.com

App. 326



## EXHIBIT 1

Commerce & Industry Insurance Company Policy No. 24238279, effective from April 13, 2016 to April 13, 2017 contains the following relevant provisions, which we call to your attention without prejudice to our right to rely on any other provisions of the policy:

### Umbrella Prime
### Commercial Umbrella Liability Policy with CrisisResponse

## V. EXCLUSIONS

Q. Pollution

    This insurance does not apply to:

    1. Any **Bodily Injury, Property Damage** or **Personal Injury** and Advertising Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere at any time;

## VII.   DEFINITIONS

M. Insured means:

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance.**

-----------------------

### Endorsement No. 11

### Commercial Umbrella Liability Policy with CrisisResponse
### Commercial General Liability Limitation Endorsement

This policy is amended as follow:

Section V. EXCLUSIONS is amended to include the following additional exclusion:



**Commercial General Liability**

This insurance does not apply to Commercial General Liability.

However, if insurance for Commercial General Liability is provided by a policy listed in **Scheduled Underlying Insurance**:

    1. This exclusion shall not apply; and

    2. Coverage under this policy will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.