IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY, | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| v. | § § | C.A. NO. 1:18-CV-00195 |
| XTO ENERGY, INC., | § § | |
| *Defendant, Counter-Plaintiff and Third-Party Plaintiff,* | § § § | |
| v. | § § | |
| COMMERCE AND INDUSTRY INSURANCE COMPANY, TORUS NATIONAL INSURANCE COMPANY n/k/a STARSTONE NATIONAL INSURANCE COMPANY, and SENECA SPECIALTY INSURANCE COMPANY, | § § § § § § | |
| *Third-Party Defendants.* | § | |

**DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF XTO ENERGY, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST BERKLEY NATIONAL INSURANCE COMPANY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT & AUTHORITIES .............................................................................. 4

I.  XTO is Covered to the Full Extent of the Berkley Policies.................................... 4

    A.  Berkley Ignores That The MSA Requires MBI to Add XTO as an
    Additional Insured to All Its Policies "to the Full Extent and Amount"
    of That Coverage............................................................................................ 4

    B.  Berkley's Parade of Arguments to Dodge Section 11.4 Fail as a
    Matter of Law. .............................................................................................. 6

        1.  TOAIA Does Not Restrict Contractual Parties' Ability to
        Secure Broad Additional Insured Protections Under Their
        Counter-Parties' Policies. ............................................................. 6

        2.  XTO's Interpretation of the MSA's Indemnity and Insurance
        Obligations Does Not Result in a Conflict. ................................... 7

        3.  Berkley's "Release" Argument Does Not Add Up....................... 8

        4.  Berkley's Admitted "Minority Position" on the Meaning of
        "Arising Out of Your Operations or Premises" Fails. ................... 8

        5.  The MSA Requires Coverage Under the Berkley
        Umbrella Policy. .......................................................................... 10

II.  The Pollution Exclusion Does Not Bar Coverage. .............................................. 11

    A.  Injuries Caused by an Explosion and Fire Do Not
    Implicate the Exclusion................................................................................ 11

    B.  XTO Did Not Waive the Exceptions Because An Exception is
    Not An Affirmative Defense And, Regardless, XTO Pled the
    Exceptions in Its Answer. ............................................................................ 13

    C.  Even if the Pollution Exclusion Applied, The Hostile Fire Exception
    Would Restore Coverage. ............................................................................ 13

        1.  Berkley Inappropriately Inserts Requirements into the
        Definition of "Hostile Fire" Which Do Not Exist. ...................... 14

        2.  XTO Has Proven that the Fire at the Ryan Well was
        "Uncontrollable."........................................................................ 15

        3.  The Injuries in the Underlying Lawsuits Arose From a
        Hostile Fire................................................................................... 16

    D.  Even if the Hostile Fire Exception Does Not Apply to Restore
    Coverage (Which It Does), the Additional Insured Exception
    Applies to Restore Coverage. ..................................................................... 17

        1.  The Additional Insured Exception Applies to XTO ..................... 17

        2.  MBI Did Not "Occupy" the Ryan Well........................................ 18

    E.  Any Ambiguity Must Be Construed in Favor of XTO. ............................. 20

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aetna Ins. Co. v. Getchell Steel Treating*,
    395 F.2d 12 (8th Cir. 1968) ..................................................................................17

*Am. Casualty Co. v. General Star Indemnity Co.*,
    125 Cal. App. 4th 1510 (Cal. Ct. App. 2005) ...........................................................9

*Am. Star Ins. Co. v. Grice*,
    854 P.2d 622 (Wash. 1993)...................................................................................14

*American States Ins. Co. v. Koloms*,
    687 N.E.2d 72 (Ill. 1997) ......................................................................................12

*Asher v. Unarco Material Handling*,
    No. 06-cv-548, 2011 WL 42999 (E.D. Ky. Jan. 6, 2011)........................................9

*Aubris Res. v. St. Paul Fire & Marine Ins.*,
    566 F.3d 483 (5th Cir. 2009) ..................................................................................8

*Century Sur. Co. v. Hallandale Beach Serv. Station*,
    No. 10-cv-21430, 2011 WL 13174906 (S.D. Fla. Mar. 21, 2011) ...................14, 16

*D & R Full Serv. v. Hardin Cty. Diesel & Auto*,
    2019 WL 5390104 (E.D. Tex. Jan. 22, 2019).........................................................12

*Davis v. LTV Steel Co.*,
    716 N.E.2d 766 (Ohio Ct. App. 1998)....................................................................9

*Eq. Oil Co v. Natl. Fire Ins. Co.*,
    144 F. Supp. 830 (D. Utah 1956), *aff'd*, 247 F.2d 393 (10th Cir. 1957) ...............12

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*,
    256 S.W.3d 660 (Tex. 2008)........................................................................5, 9, 10

*Feeney v. Empire State Ins.*,
    228 F.2d 770 (10th Cir. 1955) ..............................................................................12

*Fisher v. Am. Family Mut. Ins.*,
    579 N.W.2d 599 (N.D. 1998) ................................................................................10

*Gaylord Container Corp. v. CNA Ins. Cos.*,
    807 So. 2d 864 (La. App. 2001)............................................................................12

*Getty Oil Co. v. Insurance Co. of N. Am.*,
    845 S.W.2d 794 (Tex. 1992)...............................................................................5, 7

*Great Northern Ins. Co. v. Greenwich Ins. Co.*,
No. 05-cv-635, 2007 WL 2458477 (W.D. Penn. Aug. 24, 2007), *vacated on other grounds*, *Great Northern Ins. Co. v. Greenwich Ins. Co.*, 2008 WL 2048354 (W.D. Penn. May 12, 2008) ................................................................14, 16

*Greenwich Ins. Co. v. John Sexton Sand & Gravel Corp.*,
2013 WL 950755 (Ill. App. Ct. Mar. 11, 2013) ................................................12

*Gregory v. Tenn. Gas Pipeline*,
948 F.2d 203 (5th Cir. 1991) ................................................................19

*Hawkins Chemical, Inc. v. Westchester Fire Ins. Co.*,
159 F.3d 348 (8th Cir. 1998) ................................................................14

*Ind. Lumbermens Mut. Ins. v. W. Oregon Wood*,
268 F.3d 639 (9th Cir. 2001) ................................................................15

*Ironshore Spec. Ins. v. Aspen Underwriting*,
40 F. Supp. 3d 807 (W.D. Tex. 2014) ................................................8, 10

*Ironshore Specialty Insurance Co. v. Aspen Underwriting*,
788 F.3d 456 (5th Cir. 2015) ................................................................10

*Jones v. Francis Drilling Fluids, Ltd.*,
642 F. Supp. 2d 643 (S.D. Tex. 2009) ................................................12

*Kelley-Coppedge v. Highlands Ins.*,
980 S.W.2d 462 (Tex. 1998) ................................................................18, 19

*Lancaster v. Ferrell Paving*,
397 S.W.3d 606 (Tenn. Ct. App. 2011) ................................................9

*Lexington Ins. v. ACE Am. Ins.*,
No. 12-cv-0531, 2014 WL 3406512 ................................................8

*Liberty Mutual Fire Insurance v. Lexington Insurance*,
446 S.W.3d 835 (Tex. App.—San Antonio 2014, no pet.) ................................19, 20

*Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*,
No. 4:05-cv-1934, 2013 WL 5101938 (E.D. Mo. Sept. 12, 2013) ................................13

*Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*,
16 S.W.3d 418 (Tex. App.—Waco 2000) ................................................14

*Mikula v. Miller Brewing*,
2005 WI App 92, 281 Wis. 2d 712 ................................................9

*Noble Energy, Inc. v. Bituminous Casualty Co.*,
529 F.3d 642 (5th Cir. 2008) ................................................................14, 15

*Owners Insurance Co. v. Singh,*
 No. 98-CA-108, 1999 WL 976249 (Ohio Ct. App. Sept. 21, 1999).........................................16

*Parks v. Stewart Title Guar. Co.,*
 413 P.3d 812 (Mont. 2018) .........................................................................................................8

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,*
 976 F.2d 1037 (7th Cir. 1992) ...................................................................................................12

*Roberge v. Hannah Marine Corp.,*
 124 F.3d 199 (6th Cir. 1997) .....................................................................................................13

*Schmid v. Fireman's Fund Ins. Co.,*
 97 F. Supp. 2d 967 (D. Minn. 2000)....................................................................................14, 15

*Scottsdale Ins. v. Tri-State Ins.,*
 302 F. Supp. 2d 1100 (D.N.D. 2004)..................................................................................10, 20

*Star Insurance Co. v. Continental Resources.*
 89 F. Supp. 3d 1014 (D.N.D. Feb. 24, 2015).................................................................2, 7, 10

*Stutzka v. McCarville,*
 420 F.3d 757 (8th Cir. 2005) .....................................................................................................10

*Tow v. Gemini Ins. Co.,*
 No. 12-36187, 2015 WL 5965600 (Bankr. S.D. Tex. Oct. 9, 2015)........................................18

*W. Am. Ins. Co. v. Hopkins,*
 No. CA 3108, 1994 WL 559005 (Oh. Ct. App. 1994)....................................................15, 17

*Zurich Am. Ins. v. Southern-Owners Ins.,*
 314 F. Supp. 3d 1284 (Fla. Dist. Ct. 2018)...............................................................................9

**Statutes**

N.D. Code § 9-07-09.......................................................................................................................4

Texas Oilfield Anti-Indemnity Act .................................................................................................6

XTO Energy, Inc. ("XTO") submits this Reply in Support of its Motion for Partial Summary Judgment against Berkley National Insurance Company (the "Motion").

## PRELIMINARY STATEMENT

Berkley's Response is premised upon arguments that are unsupported by the plain terms of the MSA, the Berkley Policies, and case law.[1]  At bottom, Berkley is attempting to rewrite the MSA and its policies to say things they do not say.  The Court should grant XTO's Motion and dismiss Berkley's defenses because XTO has proven as a matter of law that the MSA required MBI to name XTO as an additional insured to the Berkley Policies and that the pollution exclusion does not bar coverage for suits alleging injuries caused by an explosion and fire.

***XTO Is An Additional Insured.***  As Berkley's primary case, *Deepwater Horizon*, acknowledges, contractual duties to indemnify and to secure insurance are separate and independent *unless* otherwise provided.  Here, and unlike in *Deepwater Horizon*, the MSA does not tether MBI's insurance obligation to its indemnity obligation.  Instead, section 11.4 of the MSA obligates MBI to name XTO as an additional insured under all of its policies (including the Berkley Policies), to ***the full extent and amount of such coverage***.  Period.  Thus, Berkley's argument that XTO is only covered by the Berkley Policies to the extent of MBI's indemnity obligation boils down to a request to rewrite the MSA, and it therefore fails as a matter of law.

Berkley's other arguments to circumvent section 11.4 are similarly meritless.  *First*, Berkley cites TOAIA, which establishes a baseline level of insurance that must be secured when parties seek to execute cross-indemnification agreements that cover the indemnitee's sole negligence.  Berkley's reliance on TOAIA is misplaced, however, as the statute does not prohibit parties from contracting to secure additional insurance, above-and-beyond their statutory obligations, which is exactly what MBI did here with section 11.4.

---

[1] Undefined terms have the meaning set forth in XTO's Motion for Partial Summary Judgment.  *See* Doc. No. 111.

*Second*, Berkley's argument that XTO's interpretation of the MSA results in a conflict between the indemnity and insurance provisions fails because it is premised on the false notion that two insurance policies cannot cover the same claim.  As evidenced by one of Berkley's own cases—*Star v. Continental Resources*—there is an entire body of law devoted to determining which policy pays first when two or more policies cover the same claim.

*Third*, Berkley illogically argues that XTO's agreement in section 10.2.1 of the MSA to release MBI from certain claims arising out of bodily injury somehow released MBI from its section 11.4 insurance obligation.  Unsurprisingly, Berkley cites no law to support its argument that a party may enter into a contract that creates and releases the same contractual obligations.

*Fourth*, Berkley's argument that XTO is not an additional insured because it is not vicariously liable for MBI's alleged negligence fails because (a) as Berkley concedes, the overwhelming majority of courts have, under identical policy language, rejected that same argument, and (b) in any event, the underlying plaintiffs did allege that XTO should be found vicariously liable for the acts, omissions, and negligence of certain MBI employees.

*Fifth*, and lastly, Berkley's assertion that the MSA restricts XTO to the limits of the Berkley Primary Policy is contradicted by the plain terms of section 11.4, which provide that MBI was to name XTO as an additional insured to all of its policies, to the full extent and ***amount of such coverage***.  Section 11.4 therefore implicates the Berkley Umbrella Policy secured by MBI.

***The Pollution Exclusion Does Not Bar Coverage.***  The pollution exclusion in the Berkley Policies does not apply because courts across the country have held that, consistent with its drafting history and underwriting intent, the pollution exclusion bars coverage for bodily injuries arising out of *pollution* (*e.g.*, cancer caused by inhalation of paint fumes), but not bodily injuries where a "pollutant" is merely involved (*e.g.*, slip and fall on spilled paint).  Here, the underlying injuries were not caused by pollution, but by an explosion and a fire.  And even if the pollution exclusion

were implicated, two exceptions apply:  the hostile fire exception and additional insured exception.  Berkley's unsupported argument that XTO waived reliance on the exceptions is meritless.  Exceptions are not affirmative defenses that need be pled and—even if they were—XTO did assert the exceptions in its Answer.

Berkley advances three arguments to dodge the hostile fire exception, but those arguments fail.  First, Berkeley argues the hostile fire exception requires a pre-existing fire, but a majority of courts have rejected that very premise.  Second, Berkley argues that the **explosion and fire** were "controllable"—like it happened in a kitchen sink—yet case law and the undisputed facts belie that notion.  And, third, Berkley contends that the injuries sustained by the plaintiffs—injuries that included severe burns—somehow did not arise out of "heat, smoke, or fumes."  Berkley fails to explain how severe burns could be caused by something besides "heat."

Berkley also fails to cite to a single case to support the proposition that the additional insured exception applies only to MBI.  Indeed, the only case that even considers the exception restores coverage for an additional insured.  This makes perfect sense, as the plain language of the additional insured exception in no way restricts reinstatement of coverage to just MBI, the named insured, and in fact specifically mentions additional insureds who own the property at issue (as XTO did here).    Berkley is also wrong when it argues that the exception does not apply because it requires that the named insured not occupy the property at issue and MBI "occupied" the Ryan Well.  MBI did not "occupy" the Ryan Well.  The law is clear that a contractor does not occupy premises when it is simply performing operations there.

Finally, if the Court finds any ambiguity in the Berkley Policies, the Court must construe the policies in favor of XTO, the insured, as consistent with North Dakota law.

## ARGUMENT & AUTHORITIES

**I.      XTO is Covered to the Full Extent of the Berkley Policies.**

Section 11.4 of the MSA provides that MBI's insurance policies—including the Berkley Policies—shall "extend to and protect the XTO Group to the full extent and amount of such coverage."  Doc. No. 120 (App. 125-26).  Berkley has concocted several untenable arguments for why XTO should nevertheless not be covered by its Policies.  Those arguments fail for the reasons set forth below and because courts applying North Dakota law interpret contracts consistent with their plain, ordinary, and commonly understood meaning.  N.D. Code § 9-07-09.

**A.      Berkley Ignores That The MSA Requires MBI to Add XTO as an Additional Insured to All Its Policies "to the Full Extent and Amount" of That Coverage.**

Some service agreements limit the parties' insurance obligations to their indemnity obligations.  Such was the case in *Deepwater Horizon*, the primary case upon which Berkley relies.  The service agreement in this case, however, is not like the service agreement in *Deepwater Horizon*.  XTO and MBI bargained for something very different, and that difference is reflected in section 11.4 of the MSA.  Section 11.4 was so important to the parties that it appears in all capital letters—the only provision to be capitalized in the MSA's insurance section.  It provides that:

> ALL INSURANCE POLICIES AND COVERAGES LISTED IN THIS ARTICLE XI WILL EXTEND TO AND PROTECT THE XTO GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE . . . .  ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES WILL NAME THE XTO GROUP AS AN ADDITIONAL INSURED . . . .

Doc. No. 120 (App. 125-26).

The service agreement in *Deepwater Horizon* did not include any provision that is even remotely analogous to section 11.4; demonstrating as much, excerpted below are the relevant insurance provisions from the service agreement in *Deepwater Horizon*:

<u>**INSURANCE**</u>

20.1      <u>INSURANCE</u>

Without limiting the indemnity obligation or liabilities of CONTRACTOR or its insurer, at all times during the term of this CONTRACT, CONTRACTOR shall maintain insurance covering the operations to be performed under this CONTRACT as set forth in Exhibit C.

\*          \*          \*

**EXHIBIT C**

<u>**INSURANCE REQUIREMENTS**</u>

1.    The insurance required to be carried by CONTRACTOR under this Contract is as follows:

\*          \*          \*

c.    Comprehensive General Liability Insurance, including contractual liability insuring the indemnity agreement as set forth in the Contract and products-completed operations coverage with a combined single limit of not less than $10,000,000 covering bodily injury, sickness, death and property damage. This insurance shall provide that a claim "in rem" or against the Drilling Unit be treated as a claim against the insured.

\*          \*          \*

3.    Vastar, its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers, and agents shall be named as additional insureds in each of CONTRACTOR'S policies, except Workers' Compensation for liabilities assumed by CONTRACTOR under the terms of this Contract.

Doc. 136-1.  As evidenced by the above, the parties to the service agreement in *Deepwater Horizon* bargained for insurance that merely supported their indemnity agreement, whereas, through section 11.4, XTO and MBI bargained for MBI to add XTO as an additional insured to *all* its insurance policies, to the full extent of their limits.

To dodge the scope and meaning of section 11.4, Berkley points to indemnity provisions in the MSA and suggests that there is some common law rule that insurance obligations must parallel indemnity obligations.  Yet, as noted in *Deepwater Horizon* and other cases like it, the indemnity and insurance obligations in a service agreement are separate unless the contract limits the insurance requirements to the indemnity obligations.[2]  470 S.W.3d 452, 468 (Tex. 2015).

Berkley argues that MSA sections 10.1.3 and 10.2.3 have a limiting effect, insofar as they required MBI and XTO to secure insurance backing their respective indemnity obligations.  Doc.

---

[2] *See also Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 804 (Tex. 1992) (holding that "the additional insured provision of the contract does not support the indemnity agreement, but rather is a separate obligation"); *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 670 (Tex. 2008) ("it is unmistakable that the agreement in this case [that] extended direct insured status [to the indemnitee] as an additional insured is separate and independent from [indemnitee's] agreement to forego contractual indemnity for its own negligence").

143 at 18.  What Berkley glosses over, however, is that separate and apart from those obligations, section 11.4 expressly required that MBI add XTO as an additional insured to *all* its insurance policies "to the[ir] fullest extent and amount."  Doc. No. 120 (App. 125-26).  In other words, the MSA required MBI to do two things in two separate provisions:  (1) secure insurance to support its indemnity obligation, and (2) name XTO as an additional insured under all its policies to the full extent of that coverage.  Berkley cannot simply read the second obligation out of the contract.

Berkley argues that, since section 11.4 references "liabilities and obligations assumed by contractor," it must be that section 11.4 merely supports the indemnity obligation.  Doc. 143 at 16. That argument falls flat once one looks beyond Berkley's cherry-picked excerpt, as that sentence in its entirety provides that, "THE LIMITS AND COVERAGES OF THE INSURANCES OBTAINED BY CONTRACTOR WILL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR UNDER THIS AGREEMENT."  Doc. No. 120 (App. 125-26).  All that sentence says is that section 11.4 will not *limit* the indemnity obligations, it does not provide that section 11.4 is limited to the indemnity obligation.  That is particularly true given that the immediately preceding sentence begins with, "ALL INSURANCE POLICIES AND COVERAGES LISTED IN THIS ARTICLE XI WILL EXTEND TO AND PROTECT XTO GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE . . . ."  *Id.*  The parties could not have expressed their intent with any more clarity—XTO was to be fully covered by MBI's insurance policies regardless of MBI's indemnity obligation.

## B.    Berkley's Parade of Arguments to Dodge Section 11.4 Fail as a Matter of Law.

### 1.    TOAIA Does Not Restrict Contractual Parties' Ability to Secure Broad Additional Insured Protections Under Their Counter-Parties' Policies.

Berkley makes a similar stretch with its argument that section 11.4 cannot be read to extend coverage to XTO beyond MBI's indemnity obligation because the Texas Oilfield Anti-Indemnity Act ("TOAIA") allows for mutual indemnity obligations only if they are supported by insurance.

Berkley fails to mention that TOAIA does not restrict parties from going above-and-beyond their duty to secure insurance backing their indemnity obligation. *See Getty Oil*, 845 S.W.2d at 807 ("[W]e decline to expand the language of our Anti–Indemnity statute to encompass insurance procurement provisions that are not actually indemnity agreements and that do not directly support indemnity agreements."). That is exactly what MBI and XTO did here, as section 11.4 required MBI to go above-and-beyond TOAIA and add XTO as an additional insured to *all* its insurance policies (up to their limits). Doc. No. 120 (App. 125-26). Berkley cites no case law to the contrary.

### 2. XTO's Interpretation of the MSA's Indemnity and Insurance Obligations Does Not Result in a Conflict.

Berkley then asserts that XTO's interpretation of the MSA results in a conflict of sections 10.2.2, 10.2.3, and 11.4. That is not so. Sections 10.2.2 and 10.2.3 require XTO to support its indemnity obligation to MBI with insurance. Section 11.4 has nothing to do with, and is untethered to, any indemnity obligation. It is instead a simple standalone obligation—MBI must name XTO as an additional insured to the full extent of its coverage. Doc. No. 120 (App. 125-26).

Berkley is thus stuck with the following argument: in a situation where XTO must indemnify MBI, do 10.2.2 and 10.2.3 (requiring XTO's insurance to cover MBI) conflict with 11.4 (requiring MBI's insurance to cover XTO)? The answer is of course "no," as all that would mean is that two insurance policies cover the same loss. There is an entire body of law devoted to determining which insurer has the "priority of coverage" in such instances; in fact, as Berkley concedes, one of its primary cases was a "priority of coverage" dispute—*Star Insurance Co. v. Continental Resources*. 89 F. Supp. 3d 1014 (D.N.D. Feb. 24, 2015). The court in *Continental Resources* did not find an irreconcilable conflict when two policies responded to the same loss; rather, it simply determined which should pay first. *Id.* Thus, Berkley's "conflict" argument fails.

And, even if there was a "conflict," and thereby an ambiguity, such an ambiguity would be interpreted in favor of coverage, and not against the purported drafter, as Berkley asserts. *See*

*Parks v. Stewart Title Guar. Co.*, 413 P.3d 812, ¶ 12 (Mont. 2018) ("When a policy incorporates an instrument . . . the instrument is construed in favor of coverage if it is ambiguous").[3]

### 3.   Berkley's "Release" Argument Does Not Add Up.

Grasping at straws, Berkley then argues that XTO's agreement in the MSA to "release, defend, indemnify and hold [MBI] harmless from and against any and all Indemnifiable Claims" somehow equates to XTO releasing MBI from its section 11.4 obligation to add XTO as an additional insured.  That is nonsensical.  As a preliminary matter, here, XTO is making no claim against MBI.  Moreover, the MSA defines "Indemnifiable Claims" as certain "claims . . . arising out of . . . physical or mental injury, illness and/or death"—"Indemnifiable Claims" have nothing to do with insurance.  Doc. No. 120 (App. 122).  Lastly, and perhaps most importantly, why would the MSA simultaneously create an obligation and then release the party from that same obligation?  The equivalent would be arguing that the releases in a settlement agreement somehow release the settling defendant from having to make the settlement payment.  That makes no sense.

### 4.   Berkley's Admitted "Minority Position" on the Meaning of "Arising Out of Your Operations or Premises" Fails.

The Policy provides that XTO is an "Additional Insured . . . with respect to liability arising out of [MBI's] operations or liability arising out of premises owned by or rented to [MBI]."  Doc. No. 112-7 (App. 150-51).  XTO has proffered significant undisputed evidence demonstrating that the Underlying Lawsuits arise out of MBI's operations (and that the various underlying plaintiffs

---

[3] *See also Lexington Ins. v. ACE Am. Ins.*, No. 12-cv-0531, 2014 WL 3406512, at *22 (S.D. Tex. July 7, 2014 (the "Court should construe the [services agreement] in favor of providing the [policyholders] with coverage"); *Ironshore Spec. Ins. v. Aspen Underwriting*, 40 F. Supp. 3d 807, 815–16 (W.D. Tex. 2014) ("If the language [of the MSA] is ambiguous, the Court would apply the doctrine of contra proferentem and construe the contract against the insurer"); *Aubris Res. v. St. Paul Fire & Marine Ins.*, 566 F.3d 483, 489 (5th Cir. 2009) (rules of insurance policy interpretation applied to MSA where the policy's additional insured endorsement incorporated a section of the MSA by reference).

The case Berkley cites to the contrary, *Gonzalez v. Mission Am. Ins. Co.*, is inapposite, as that case did not involve an ambiguity in a contract incorporated into an insurance policy; rather, it involved an ambiguity in an insurance policy, and the Texas Supreme Court construed that ambiguity in favor of coverage and against the insurer.  795 S.W.2d 734, 737 (Tex. 1990).

were attempting to hold XTO responsible for MBI's operations), yet Berkley argues that, despite what the policy language says, XTO is covered only in a situation of strict vicarious liability.

As an initial matter, the underlying plaintiffs did allege that XTO is vicariously liable for the negligence of MBI.  For example, underlying plaintiff Daniel Pavon alleged that "XTO is vicariously liable and responsible to the Pavon Family for the . . . negligence" of the "Company Men."  Doc. No. 112-4, Ex. 1-C at 25, ¶ 35.  Pavon defined "Company Men" as, among other persons, Carson Dokken, who was an employee of MBI at the time of the accident.  *See id.* ¶ 10.

Regardless, XTO would be covered even where it is not vicariously liable because the policy language does not say that additional insureds are only covered for "vicarious liability." And that is exactly why the vast majority of courts have rejected Berkley's argument:

> Having reviewed numerous cases construing additional insured endorsements similar or identical to the one before us, we agree with the majority view that under a plain and common sense reading of [the] policy . . . the additional insured's coverage is not limited to instances of vicarious liability for the negligence of the named insured.  **In our opinion, the [argument to the contrary] simply reads a limitation into the contract that is unsupported by a plain reading of the policy.**

*Lancaster v. Ferrell Paving*, 397 S.W.3d 606, 617 (Tenn. Ct. App. 2011) (emphasis added); *Evanston*, 256 S.W.3d at 666 ("The insurer easily could have limited coverage by including in its endorsement terms such as 'vicarious liability' . . . ."); *Zurich Am. Ins. v. Southern-Owners Ins.*, 314 F. Supp. 3d 1284, 1304 (Fla. Dist. Ct. 2018) ("Courts have determined that in the absence of clear policy language limiting coverage to vicarious liability, the additional insured was entitled to coverage for its own negligence."); *Am. Casualty Co. v. General Star Indemnity Co.*, 125 Cal. App. 4th 1510, 1511 (Cal. Ct. App. 2005) (same).[4]

---

[4] The lone case Berkley cites in favor of the clear minority position—*Davis v. LTV Steel Co.*, 716 N.E.2d 766, 769 (Ohio Ct. App. 1998)—was considered and rejected in *Lancaster* and in two other decisions.  *Mikula v. Miller Brewing*, 2005 WI App 92, ¶ 24, 281 Wis. 2d 712, 730; *Asher v. Unarco Material Handling*, No. 06-cv-548, 2011 WL 42999, at *7 (E.D. Ky. Jan. 6, 2011).

At best for Berkley, the additional insured provision is ambiguous as to whether XTO is covered only in a situation of vicarious liability.  Under North Dakota law, ambiguous policy language is construed against the insurer.  *See Fisher v. Am. Family Mut. Ins.*, 579 N.W.2d 599, 602 (N.D. 1998); *Scottsdale Ins. v. Tri-State Ins.*, 302 F. Supp. 2d 1100, 1107 (D.N.D. 2004).

### 5.      The MSA Requires Coverage Under the Berkley Umbrella Policy.

The MSA provides that "ALL INSURANCE POLICIES . . . WILL EXTEND TO AND PROTECT XTO GROUP **TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE** . . . ."  Doc. No. 120 (App. 125-26) (emphasis added).  Because MBI secured not only a primary policy but an umbrella policy from Berkley, the umbrella limits are available to XTO.

Berkley cites *Star Insurance Co. v. Continental Resources*, 89 F. Supp. 3d 1014 (D.N.D. Feb. 24, 2015) and *Ironshore Specialty Insurance Co. v. Aspen Underwriting*, 788 F.3d 456 (5th Cir. 2015) for the proposition that a service agreement can restrict the limits of insurance that must be made available to the additional insured.  While true, the MSA in this case does not restrict the limits of insurance that must be made available to XTO; rather, it provides the opposite—that XTO must be covered "TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE."  Doc. No. 120 (App. 125-26).  Notably, the service agreements in *Star* and *Ironshore* expressly restricted the limits that must be made available to the additional insured and they did not contain any language that is even remotely similar to section 11.4; thus, those cases are inapposite, and Berkley's argument fails.[5]

---

[5] *See* Doc. No. 135-2 (Service Agreement in *Ironshore*); Aff. of G. Van Houten, Ex. A (Aug. 14, 2020).  Exhibit A is the service agreement from *Star*.  The Court may take judicial notice of Exhibit A because it was attached as an exhibit to federal court filing.  *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

The service agreement from *ATOFINA* is unavailable on the electronic docket.  The decision itself does not mention a clause like section 11.4; and, if there was such a clause, it would have been discussed.  256 S.W.3d 660–77.

Berkley's related argument that the MSA only "required" $1,000,000 in insurance fails because the MSA expressly provides that XTO shall be covered "TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE."

## II.     The Pollution Exclusion Does Not Bar Coverage.

Berkley's arguments that the pollution exclusion bars coverage for the Underlying Lawsuits all fail.  First, the underlying injuries were not caused by a pollutant, but by an explosion and fire.  Courts across the country have held that the pollution exclusion does not apply to facts almost identical to those here.  Second, even if the pollution exclusion applied to bar coverage (which it does not), the Berkley Policy's pollution exclusion has two exceptions that would restore coverage—the hostile fire and the additional insured exceptions.

### A.     Injuries Caused by an Explosion and Fire Do Not Implicate the Exclusion.

The alleged underlying injuries were undisputedly caused by an explosion and fire—not pollution. In *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, the Ninth Circuit held that pollution exclusions operate to exclude coverage for "pollution-related injuries," and therefore did not bar coverage for circumstances almost identical to the case at bar.  132 F.3d 526, 531 (9th Cir. 1997).  Attempting to refute this directly on-point authority, Berkley contends that, in *Hiland Partners GP v. Nat'l Union Fire Ins. Co.*, the Eighth Circuit held that the pollution exclusion bars coverage for all bodily injury claims that are even remotely connected to a pollutant (*e.g.*, slip and fall on paint), as opposed to only bodily injuries claims that are directly related to pollution (*e.g.*, cancer caused by paint dumped into a river). 847 F.3d 594, 599–600 (8th Cir. 2017).  Not so.

Contrary to Berkley's statement, that issue was never before the Eighth Circuit in *Hiland*, as the insured never raised the argument. *Id.*  Rather, the only issue the *Hiland* court addressed was whether hydrocarbons constitute a "pollutant." *Hiland*, 847 F.3d at 598-99.  Therefore, the narrow holding in *Hiland* does not run contrary to the Ninth Circuit's holding in *Enron* or the countless other decisions from courts around the country that pollution exclusions should be applied only to injuries caused by pollution (*i.e.*, harm to the environment). *Enron*, 132 F.3d at 531; *see also* cases cited at Doc. No. 111 at 28-29.

Despite Berkley's protestations to the contrary, the facts and the reasoning applied by the Ninth Circuit in *Enron* are entirely analogous to this case.  Factually, *Enron* involved an explosion caused by the injection of a butane-natural gas mix into crude oil carried by a pipeline.  132 F.3d at 526.  Despite the involvement of "pollutants," the *Enron* court found that a pollution exclusion like Berkley's did not apply.[6]  *Id.* at 530-31.  The Ninth Circuit reasoned that the pollution exclusion applies "to only those hazards traditionally associated with environmental pollution," and that to hold otherwise would render the exclusion "virtually limitless."  *Id.* at 530-31.  Here, like in *Enron*, the damages alleged in the Lawsuits were not caused by environmental pollution but an explosion, fire, and blunt force trauma.[7]  Thus, the pollution exclusion does not apply.

The *Enron* court is not alone.  Even Berkley concedes that courts across the country have concluded that explosions are not traditional environmental harms in which the pollution exclusion was intended to apply.  *See* Doc. No. 143, n. 9.  Along with the Ninth Circuit, the courts in *Greenwich*, *Gaylord* and *Jones* all support the proposition that pollution exclusions lack application to explosion-related injuries, as these courts all agree that when a fortuitous event, such as an explosion or fire causes the injury, the pollution exclusion does not apply.[8]  Perhaps recognizing that the same reasoning applies equally here, Berkley is left to argue that XTO's cited

---

[6] Berkley is wrong to rely on the difference in the pollution exclusion language in *Enron* and that in the Berkley Policy. Doc. No. 143 at 27.  Although not identical, both exclusions bar coverage for "pollutants."  And, the *Enron* court based its reasoning on similar holdings by other courts that analyzed an identical pollution exclusion as that found in the Berkley Policy.  *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043-44 (7th Cir. 1992) (pollution exclusion excluding coverage for injuries arising out of "the actual, alleged or threatened discharge, dispersal, release or escape of pollutants" did not bar coverage of the underlying lawsuit.); *American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 81 (Ill. 1997) (same).

[7] Doc. No. 112, Ex. 2 (App. 261) (Arnold Aff., ¶14).  Further, Berkley could have included an exclusion for injury arising from well blowouts and fires, yet it did not.  *See Feeney v. Empire State Ins.*, 228 F.2d 770 (10th Cir. 1955) (discussing exclusion for "blowout or cratering of an oil or gas well"); *Eq. Oil Co v. Natl. Fire Ins. Co.*, 144 F. Supp. 830, 832 (D. Utah 1956), *aff'd*, 247 F.2d 393 (10th Cir. 1957) (same); *D & R Full Serv. v. Hardin Cty. Diesel & Auto*, 2019 WL 5390104, at *2 (E.D. Tex. Jan. 22, 2019) (same).

[8] *Gaylord Container Corp. v. CNA Ins. Cos.*, 807 So. 2d 864, 872 (La. App. 2001) ("[w]hen a fortuitous event such as an explosion occurs, and that event incidentally involves a chemical agent, the absolute pollution exclusion of a commercial general liability (CGL) policy operates to exclude coverage for environmental damage only); *Jones v. Francis Drilling Fluids, Ltd.*, 642 F. Supp. 2d 643 (S.D. Tex. 2009) (same); *Greenwich Ins. Co. v. John Sexton Sand & Gravel Corp.*, 2013 WL 950755, at *7 (Ill. App. Ct. Mar. 11, 2013) ("explosion-related allegation [in the underlying] lawsuit" fell outside the absolute pollution exclusion in the insured's policies).

cases apply the law of states outside of North Dakota and should therefore be ignored entirely. To the contrary, the court should look to these well-reasoned opinions and reach the same conclusion, especially because no court applying North Dakota law has addressed this issue.

### B. XTO Did Not Waive the Exceptions Because An Exception is Not An Affirmative Defense And, Regardless, XTO Pled the Exceptions in Its Answer.

Berkley's assertion that XTO waived its reliance on the exceptions to the pollution exclusion is meritless. First, although an insurer's reliance on an exclusion is an affirmative defense that must be pled, there is no case law providing that an exception is. Indeed, Berkley's single cited case—*Roberge v. Hannah Marine*, 124 F.3d 199 (6th Cir. 1997)—does not stand for that proposition at all. *Roberge* does not even concern insurance, exclusions, or exceptions.

Second, Berkley argues that it did not have "fair notice" that XTO would rely on the exceptions. Such an argument is disingenuous at best given XTO asserted in its Answer that the exceptions to the pollution exclusion entitled XTO to coverage: "Berkley . . . knowingly misrepresented that *certain exceptions to the pollution exclusion* contained in the Berkley Policy . . . did not apply to provide coverage for the damages asserted in the Lawsuits." *See* Doc. No. 7 (Answer at ¶ 89) (emphasis added).[9] Therefore, Berkley's contention that XTO "never pleaded nor disclosed reliance on any exceptions" is baseless.

### C. Even if the Pollution Exclusion Applied, The Hostile Fire Exception Would Restore Coverage.

The Berkley Policy's pollution exclusion includes a hostile fire exception that restores coverage for injuries that arise "out of heat, smoke or fumes from a hostile fire . . . . [A] hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be."

---

[9] The fact that the exceptions were not listed in the "affirmative defense" section is of no moment. The "Eighth Circuit has held that 'when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal.'" *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:05-cv-1934, 2013 WL 5101938, at *8 (E.D. Mo. Sept. 12, 2013).

Doc. No. 112, Ex. 1-F (App. 163).  Berkley attempts to avoid this exception by arguing that it does

not apply because (1) the fire did not precede the alleged pollution; (2) the explosion at the Ryan

Well was "controllable;" and (3) the injuries were not caused by smoke, heat or fumes.  Berkley's

arguments are unsupported by the plain language of the Berkley Policy and relevant case law.

### 1.    Berkley Inappropriately Inserts Requirements into the Definition of "Hostile Fire" Which Do Not Exist.

Berkley relies on *Noble Energy, Inc. v. Bituminous Casualty Co.*, 529 F.3d 642 (5th Cir.

2008) for its contention that "the hostile fire exception only applies if a pre-existing fire causes the

pollution."  Doc. No. 143 at 29.  Berkley ignores that there is no such requirement in the hostile

fire exception.  Indeed, the *Noble* holding is the minority view as ***numerous*** courts across the

country have rejected its holding and instead construed the hostile fire exception to apply under

similar sets of facts to those at issue here.  *See, e.g.*, *Century Sur. Co. v. Hallandale Beach Serv.*

*Station*, No. 10-cv-21430, 2011 WL 13174906, * 2 (S.D. Fla. Mar. 21, 2011) (rejecting *Noble* and

holding that, under almost identical facts, the hostile fire exception applied to restore coverage for

an explosion.); *Great Northern Ins. Co. v. Greenwich Ins. Co.*, No. 05-cv-635, 2007 WL 2458477,

at *11 (W.D. Penn. Aug. 24, 2007), *vacated on other grounds*, *Great Northern Ins. Co. v.*

*Greenwich Ins. Co.*, 2008 WL 2048354, at *2 (W.D. Penn. May 12, 2008) (holding that the term

"becomes uncontrollable" can be interpreted to include both "controllable fires that subsequently

become uncontrollable and fires that are uncontrollable from their inception," as such, the

exception was ambiguous, and the policy had to be construed in favor of coverage).[10]

---

[10] *See also Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418 (Tex. App.—Waco 2000) (same); *Schmid v. Fireman's Fund Ins. Co.*, 97 F. Supp. 2d 967 (D. Minn. 2000) (holding the hostile fire exception applied when an unaligned flame in a natural gas heater emitted carbon monoxide into the air causing bodily injury because, even though the fire could be "controlled," *i.e.*, turned off, the fire was still in an unintended location); *Am. Star Ins. Co. v. Grice*, 854 P.2d 622 (Wash. 1993) (holding a hostile fire exception was ambiguous and that "the ability of the pollution exclusion to limit coverage is itself limited by the hostile fire clause which provides an exception to that exclusion"); *Hawkins Chemical, Inc. v. Westchester Fire Ins. Co.*, 159 F.3d 348 (8th Cir. 1998) (applying Minnesota law) (holding hostile fire exception to pollution exclusion applied and insurer was required to defend and indemnify insured for fire which destroyed a warehouse sending toxic fumes into the air).

Berkley also erroneously cites *Ind. Lumbermens Mut. Ins. v. W. Oregon Wood*, 268 F.3d 639 (9th Cir. 2001) to suggest that the Ninth Circuit—like the *Noble* Court—requires a pre-existing fire. *Lumbermens*, however, has nothing to do with whether a fire needs to pre-exist pollution. The Ninth Circuit in *Lumbermens* held that a fire need only be "uncontrollable"—a premise no one disputes. *Id.* at 644.

The other cases Berkley cites are also inapposite. For example, in *W. Am. Ins. Co. v. Hopkins*, No. CA 3108, 1994 WL 559005, at *4 (Oh. Ct. App. 1994), the court held the hostile fire exception did not apply because the policy required that the fire occur at premises owned, rented or occupied by the insured, but the fire at issue occurred five miles from the insured's property. *Id.* at *1-2. This is not the case here. Doc. No. 112, Ex. 2 at App. 259, ¶ 4; Doc. No. 78 at 6.

### 2.    XTO Has Proven that the Fire at the Ryan Well was "Uncontrollable."

Berkley's argument that the Ryan Well explosion was "controllable" is laughable. Indeed, Berkley's bolded definition of "uncontrollable" does not refute that the Ryan Well fire was "uncontrollable"—it supports it. *Schmid v. Fireman's Fund Ins. Co.*, 97 F. Supp. 2d 967, 972 (D. Minn. 2000) ("In the context of a fire, **an uncontrollable fire is one that a person cannot contain, guide, or extinguish**.") (emphasis added). Berkley argues that XTO's allegations that the fire was "uncontrollable" are insufficient, but then proceeds to make bare, unsupported allegations that the fire-ball explosion at the Ryan Well was somehow "controllable" ***from its inception***. Doc. No. 143 at 31 (emphasis added). This argument is nonsensical and unsupported by the facts.

First, XTO did not make bare allegations but instead submitted numerous statements and deposition testimony from witnesses that clearly show that a person <u>could not</u>, and <u>did not</u> contain, guide or extinguish the fire at the Ryan Well. *See* Doc. No. 111 at 31-32. Second, each witnesses' description of the explosion proves that this was not a controllable fire from its inception:

- To his knowledge, Jones stated, nobody touched any controls or moved anything, when he heard a very loud 'clank' noise this was followed by a loud hissing and

an explosion that all occurred in a couple of seconds or less. **Jones stated, he was blown back by the flash explosion.** When he looked up, Jones stated, all he could see were guys on the rig that were on fire.  Doc. No. 112, Ex. 2-F (App. 614) (emphasis added); Doc. No. 112, Ex. 2-F (App. 614) (Fire Report).

- Then a minute or two after another loud bang occurred and **a second later the whole floor ignited and created a huge fire** from the blowing gas.  *Id.*, Ex. 2-B (App. 266) (emphasis added).

- [I]t was like a big (noise) and then all of a sudden at that second you hear a bang, boom and then like **everything there just you could see the flames** and then after that like **the fire expands wide in the air**…. He was burned from head to toes wide open. *Id.*, Ex. 2-D (App. 316, 35:11-22) (emphasis added).

Berkley's argument that the fire was controllable because the fire was eventually extinguished is likewise illogical.  Even uncontrollable fires can and will eventually be extinguished—this however, does not support Berkley's baseless contention that the fire was controllable as it exploded[11] and injured the underlying plaintiffs.[12]

### 3. The Injuries in the Underlying Lawsuits Arose From a Hostile Fire.

Berkley's argument that the underlying injuries were not caused by heat from the explosion, *i.e.*, the hostile fire, defies logic and common sense.  The bodily injuries sustained by the plaintiffs in the Underlying Lawsuits included serious, life-threatening burns caused by the Ryan Well explosion.  Doc. No. 112, Exhibit 1-B (App. 042, ¶ 39); Ex. 2-F (App. 614) (Fire Report).  **A burn is caused by heat**.  *See* Oxford Dictionary (defining a burn as "an injury or a mark caused by fire, *heat*, or acid.) (emphasis added); Cambridge Dictionary (defining a burn as "a place where fire or *heat* has damaged or hurt something.") (emphasis added).  The cases cited by Berkley did not involve burns caused by a fire nor do they support Berkley's senseless argument that burns are not caused by heat.  *Owners Insurance Co. v. Singh*, No. 98-CA-108, 1999 WL

---

[11] *Century Sur. Co. v. Hallandale Beach Serv. Station*, No. 10-cv-21430, 2011 WL 13174906, * 2 (S.D. Fla. Mar. 21, 2011) (explosion was an uncontrollable fire.); *Great Northern Ins. Co. v. Greenwich Ins. Co.*, No. 05-cv-635, 2007 WL 2458477, at * 11 (W.D. Penn. Aug. 24, 2007) (explosion was an uncontrollable fire).

[12] *Bernhardt* lacks any application here.  In *Bernhardt*, the Court held the hostile fire definition did not apply because the underlying claims related to fumes from a furnace, and the fire never left the furnace it was intended to be in. *Bernhardt*, 648 A.2d 1047, 1049 (Md. App. Ct. 1994).

976249, at *4 (Ohio Ct. App. Sept. 21, 1999) (holding there was no evidence that a flame from a furnace caused the insured's carbon monoxide poisoning).[13]

### D. Even if the Hostile Fire Exception Does Not Apply to Restore Coverage (Which It Does), the Additional Insured Exception Applies to Restore Coverage.

#### 1. The Additional Insured Exception Applies to XTO.

Berkley's interpretation of the Additional Insured Exception (or as referred to by Berkley—the Contractor Exception) is not supported by the plain language of the Berkley Policy. The Additional Insured exception in <u>no way</u> limits reinstatement of coverage to MBI. The Additional Insured exception provides that the pollution exclusion does not apply to:

> Bodily Injury or Property Damage for which You [the named insured] may be held liable, if You are a contractor and the owner or lessee of such premises, site, or location has been added to Your policy as an Additional Insured with respect to Your ongoing operations performed for that Additional Insured at that premises, site or location; and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured. Doc. No. 112, Ex. 1-F (App. 163).

The exception does not state or imply that coverage is only reinstated to the named insured, MBI. Rather, the exception reinstates coverage for *any* bodily injury claims otherwise barred by the pollution exclusion if certain conditions are met. One of those conditions is that the named insured be a contractor that may be held liable for the bodily injury (undisputedly the case here), but nothing in the provision limits its application to only the contractor/named insured. Indeed, the provision specifically requires that the owner or lessee of a premises be an additional insured under the Berkley Policy. Why would it require that the owner/lessee be an additional insured only to deny reinstatement of coverage to that same additional insured? Berkley's argument lacks any basis in the text or in logic.

---

[13] The other cases cited by Berkley do not involve bodily injuries from a hostile fire. *Aetna Ins. Co. v. Getchell Steel Treating*, 395 F.2d 12 (8th Cir. 1968) (analyzing a provision in the policy that covered damage to a building and electrical panel if caused by an "ensuing fire."); *Hopkins*, 1994 WL 559005, at *4 (hostile fire exception did not apply when insured dumped gasoline into a sewer that eventually caused a fire five miles away from the insured's property.)

Notably, Berkley does not cite to a single case to support its reading of the additional insured exception.  To the contrary, the only case interpreting the provision applied it to restore coverage to an additional insured.  *Tow v. Gemini Ins. Co.*, No. 12-36187, 2015 WL 5965600 (Bankr. S.D. Tex. Oct. 9, 2015).  Berkley's only retort is that *Tow* misunderstood the provision— an unsupported argument that ignores the opinion's thorough reasoning.  The policy in *Tow* included an identical additional insured exception as that found in the Berkley Policies.  The developer, ATP, sought additional insured coverage under its subcontractor Greystar's policy.  The court found that the additional insured exception applied in because (1) Greystar, the named insured, was a contractor, (2) Greystar could be held liable, and (3) ATP was named an additional insured under Greystar's policy.  The *Tow* court did not restrict coverage to just Greystar, indeed, the court found that the exception applied to restore coverage to ATP—the additional insured.  Such is the case here, as (1) MBI is a contractor, (2) MBI is undisputedly liable for the bodily injuries (it is a named defendant); and (3) XTO is an additional insured under the Berkley Policies.

Regardless, Berkley's reliance on a (misplaced) belief the *Tow* court misinterpreted the additional insured exception at worst supports the notion that the additional insured exception has more than one reasonable interpretation and is therefore ambiguous.  As such, this Court should construe the additional insured exception in favor of coverage.

### 2. MBI Did Not "Occupy" the Ryan Well.

Berkley's argument that MBI "occupied" the Ryan Well—and therefore did not satisfy the exception's conditions—is also unsupported by its cases or the facts.  A contractor does not "occupy" a premises simply because it is performing work there.  *Kelley-Coppedge v. Highlands Ins.*, 980 S.W.2d 462 (Tex. 1998).  Berkley's cases do not hold otherwise:  In both *Pioneer*

*Exploration*[14] and *Aspen Ins. UK*,[15] the courts found the insureds "occupied" the premises because the insureds were the oil and gas companies that held the mineral leases on the premises.  Here, XTO—not MBI—was the lease operator of the Ryan Well,[16] thus, those cases do not support Berkley's argument.  Berkley's other cases fare no better in supporting its position.  In *Antrim*,[17] the issue of whether the insured "occupied" the premises was not before the court; instead the court analyzed whether the insured's ownership of surface rights triggered the pollution exclusion for pollution that occurred in a mine below the insured's surface property.[18]

Berkley also relies heavily on *Liberty Mutual Fire Insurance v. Lexington Insurance*, 446 S.W.3d 835 (Tex. App.—San Antonio 2014, no pet.); however, *Liberty* supports XTO's argument that MBI never "occupied" the well.  The *Liberty* court agreed with the Texas Supreme Court's ruling in *Kelley*[19] that the term "occupied by" does not encompass [the insured's] operations on a third party's premises.  In other words, for the insured to "occupy" a property, the insured must be using that property for its own benefit, rather than merely conducting operations on the property for the benefit of the owner.[20]  The *Liberty* court found the insured held or kept the premises for its benefit and was not merely conducting operations of behalf of the owner because: (1) the insured had a right under a lease to be on the premises to conduct its operations; (2) the owner was only allowed on the premises under very limited conditions (default, inspections, etc.); (3) the insured controlled access to the premises; (4) the insured could grant its employees and third parties permission to enter the premises; and (5) the insured could keep others out of the premises.

---

[14] 767 F.3d 503, 513–14 (5th Cir. 2014).
[15] 400 Fed. App'x. 960 (5th Cir. 2010).
[16] Doc. No. 112, Ex. 2 (App. 261) (Arnold Aff. ¶ 3).
[17] 436 Pa. Super. 522, 530 (Pa. 1994).
[18] Berkley also cites to *Gregory v. Tenn. Gas Pipeline*, 948 F.2d 203, 207 (5th Cir. 1991).  However, the court in *Gregory* found that the insured-city occupied a lake that was created by the city, partially owned by the city, and was maintained by the city for its water supply.  MBI neither created, owned or maintained the Ryan Well for its benefit.
[19] *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462 (Tex. 1998)
[20] *Id.* at 467.

Here, unlike the insured in *Liberty*, MBI was merely conducting operations at the Ryan Well on behalf of XTO—the owner.   Pursuant to the MSA, XTO contracted with MBI to perform certain work; however, XTO was not obligated to order work from MBI nor was MBI obligated to accept work from XTO.  Doc. No. 120 at App. 118.  Further, XTO maintained and controlled access to the Ryan Well and, indeed, XTO provided MBI with access.  *Id.*, at App. 120 (Section 4.2, XTO's Responsibilities).  The testimony of MBI's employee, Carson Dokken, also makes clear that MBI was conducting operations on behalf of XTO:

> Q:      Okay.  And tell me what your typical routine would be when you are on-site [at the Ryan Well], Carson.
>
> A:      We do a walk around of location and go—go over any of the things, like, looking for safety stuff and go over that kind of stuff or what kind of stuff—[do] what *they* want us to do, say, the well work, go over what—the engineers of our procedure we're doing.
>
> Q:      And when you say "they," who do you mean by they?
>
> A:      Engineers, *XTO*.[21]

As such, MBI did not "occupy" the Ryan Well because MBI was only conducting operations on behalf of XTO—the owner of the Ryan Well.

**E.      Any Ambiguity Must Be Construed in Favor of XTO.**

To the extent the Court finds the Berkley Pollution Exclusion, the hostile fire exception and/or the additional insured exception ambiguous, the Court must construe the Berkley Policies against Berkley and in favor of coverage to XTO.  *Scottsdale Ins. Co. v. Tri-State Ins. Co.*, 302 F. Supp. 2d 1100 (D.N.D. 2004) ("Any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured.).

**CONCLUSION**

XTO respectfully requests that the Court grant XTO's Motion in its entirety.

---

[21] Doc. No. 112, Ex. 2-G (App. 624) (Dokken Depo., 15:1-10) (emphasis added).

Dated:  August 14, 2020.

Respectfully submitted,

*/s/ Leslie Thorne*
Leslie Thorne
Texas State Bar No. 24046974
leslie.thorne@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Telecopier:    (512) 867-8470

Ernest Martin, Jr.
Texas State Bar No. 13063300
ernest.martin@haynesboone.com
Carla Green
Texas State Bar No. 24097762
carla.green@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT
XTO ENERGY, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent to all parties of record pursuant to the ECF guidelines and the Federal Rules of Civil Procedure on this 14th day of August 2020.

/s/ *Leslie Thorne*