IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY, | § § § | |
| *Plaintiff and Counter-Defendant,* | § § | |
| v. | § § | C.A. NO. 1:18-CV-00195 |
| XTO ENERGY, INC., | § § § | |
| *Defendant, Counter-Plaintiff and Third-Party Plaintiff,* | § § § | |
| v. | § § | |
| COMMERCE AND INDUSTRY INSURANCE COMPANY, TORUS NATIONAL INSURANCE COMPANY n/k/a STARSTONE NATIONAL INSURANCE COMPANY, and SENECA SPECIALTY INSURANCE COMPANY, | § § § § § § § | |
| *Third-Party Defendants.* | § | |

**DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF XTO ENERGY, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST COMMERCE AND INDUSTRY INSURANCE COMPANY**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT & AUTHORITIES ......................................................................... 3

    I.    The Pollution Exclusion Does Not Bar Coverage. .................................. 3

          A.    Injuries Caused by an Explosion and Fire Do Not Implicate
the Exclusion.......................................................................... 3

          B.    At Worst, the Pollution Exclusion is Ambiguous As Applied
to these Facts......................................................................... 8

    II.    If the Pollution Exclusion Applies, so Does its Time Element Exception,
as CIIC Waived the Notice Requirement and Cannot Demonstrate
Prejudice ............................................................................................... 9

    III.    The CIIC Policy Incorporates the Berkley Policy's Hostile Fire and
Additional Insured Exceptions, Which Can Be Read Together with
CIIC's Pollution Exclusion ................................................................. 13

    IV.    CIIC's Remaining Arguments are Either Inapplicable or Fail. ........... 16

          A.    The Contractual Liability Exclusion Does Not Bar Coverage
For Tort Claims Against XTO (Although XTO Did Not Move
For Judgment On That Defense)............................................ 17

          B.    Pursuant to the Plain Language of the MSA and Case Law,
XTO's Contractors Qualify as Additional Insureds................. 18

CONCLUSION.................................................................................................. 20

CERTIFICATE OF SERVICE .......................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American States Ins. Co. v. Koloms*,
  687 N.E.2d 72 (Ill. 1997) ......................................................................5, 7

*Apollo Energy v. Certain Underwriters at Lloyd's, London*,
  387 F. Supp. 3d 663 (M.D. La. 2019) ........................................................11

*Atlantic Mut. Ins. Co. v. McFadden*,
  595 N.E.2d 762 (Mass. 1992) ...................................................................6, 7

*Bell Lumber & Pole Co. v. U.S. Fire Ins. Co.*,
  60 F.3d 437 (8th Cir. 1995) .......................................................................11

*Bernhardt v. Hartford Fire Ins. Co.*,
  648 A.2d 1047 (Md. Ct. Spec. App. 1994) ...................................................8

*Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*,
  728 N.W.2d 216 (Iowa 2007) ......................................................................8

*Borsheim Builders Supply, Inc. v. Manger Ins., Inc.*,
  917 N.W.2d 504 (N.D. 2018) ....................................................................18

*Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*,
  112 F.3d 184 (5th Cir. 1997) .......................................................................8

*Ctr. Ins. Co. v. Blake*,
  370 F. Supp. 2d 951 (D.N.D. 2005) .............................................................9

*D.E.M. v. Allickson*,
  555 N.W.2d 596 (N.D. 1996) .......................................................................9

*Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*,
  711 So. 2d 1135 (Fla. 1998) ........................................................................8

*Dogloo, Inc. v. N. Ins. Co. of N.Y.*,
  907 F. Supp. 1383 (C.D. Cal. 1995) ..........................................................12

*Dundee Mut. Ins. Co. v. Balvitsch*,
  540 N.W.2d 609 (N.D. 1995) .....................................................................13

*Enron Oil Trading v. Walbrook Ins. Co.*,
  132 F.3d 526 (9th Cir. 1997) ..............................................................3, 4, 5, 7

*Ernst v. Acuity*,
  704 N.W.2d 869 (N.D. 2005) ........................................................................4

*Essex Ins. Co. v. Tri-Town Corp.*,
  863 F. Supp. 38 (D. Mass. 1994) ..................................................................7

*Finstad v. Steiger Tractor, Inc.*,
  301 N.W.2d 392 (N.D. 1981) ..................................................................10, 11

*Fisher v. Am. Family Mut. Ins. Co.*,
  579 N.W.2d 599 (N.D. 1998) ..........................................................4, 16, 20

*Geico Ins. Co. v. Estate of Schmidt*,
  No. A2-96-120, 1999 WL 33283325 (D.N.D. Mar. 30, 1999) .............................10

*Globe Indem. Co. v. Wolcott*,
  152 F.2d 545 (8th Cir. 1945) .......................................................................16

*Hasper v. Ctr. Mut. Ins. Co.*,
  723 N.W.2d 409 (N.D. 2006) .......................................................................11

*Haugen v. Auto-Owners Ins.*,
  191 N.W.2d 274 (N.D. 1971) ........................................................................4

*Hiland Partners GP Holdings, LLC, et al. v. National Union Fire Ins. Co. of*
  *Pittsburg, P.A.*,
  847 F.3d 594 (8th Cir. 2017) ...........................................................3, 8, 10, 11

*Huether v. Nodak Mutl. Ins.*,
  871 N.W.2d 444 (N.D. 2015) ........................................................................4

*Insituform Technologies. United Nat. Ins. v. Hydro Tank*,
  497 F.3d 445 (5th Cir. 2007) .......................................................................15

*Insituform Techs., Inc. v. Am. Home Assur. Co.*,
  566 F.3d 274 (1st Cir. 2009) .......................................................................15

*Keggi v. Northbrook Property and Cas. Ins. Co.*,
  13 P.3d 785 (Ariz. 2000) ..............................................................................6

*Kent Farms, Inc. v. Zurich Ins. Co.*,
  969 P.2d 109 (Wash Ct. App. 1998) ............................................................6, 7

*Liberty Mutual Fire Insurance Co. v. Zurich American Insurance Co*,
  No. 14-cv7568, 2016 WL 452157, at *2 (S.D.N.Y. Feb. 4, 2016) ......................11

*In re Matter of Complaint of Settoon Towing*,
  720 F.3d 268 (5th Cir. 2013) .......................................................................11

*Motorists Mut. Ins. Co. v. RSJ, Inc.*,
   926 S.W.2d 679 (Ky. App.1996) ..............................................................6

*Nautilus Ins. Co. v. Jabar*,
   188 F.3d 27 (1st Cir.1999) .....................................................................5

*North Star Mut. v. Ackerman*,
   940 N.W.2d 857 (N.D. 2020) ...............................................................14

*Oasis Petroleum North America, LLC v. Drakin Oilfield Construction, Inc.*,
   No. 4:14-cv-00077 (D.N.D.) .................................................................12

*Quadrant Corp. v. Am. States Ins. Co.*,
   110 P.3d 733 (Wash. 2005) ....................................................................7

*Scottsdale Ins. Co. v. Tri-State Ins. Co.*,
   302 F. Supp. 2d 1100 (D.N.D. 2004) ..................................................5, 9

*Sellie v. North Dakota Ins. Guar. Ass'n*,
   494 N.W.2d 151 (N.D. 1992) ..............................................................4, 5

*Sokoloski v. American West Ins. Co.*,
   980 P.2d 1043 (Mont. 1999) ...................................................................7

*St. Paul Fire & Marine Ins. Co. v. Three D Sales, Inc.*,
   518 F. Supp. 305 (D.N.D. 1981) ............................................................4

*Stutzka v. McCarville*,
   420 F.3d 757 (8th Cir. 2005) ...............................................................12

*Swank Enterprises, Inc. v. United Fire and Casualty Co.*,
   2020 WL 1685746 (D. Mont. Apr. 7, 2020) ........................................7, 8

*Tile Shop Holdings, Inc. v. Allied World Nat'l Assurance Co.*,
   No. 17-cv-776, 2019 WL 2357044 (D. Minn. June 4, 2019) .................15

*Transit Cas. v. Selective Ins. Co.*,
   137 F.3d 540 (8th Cir. 1998) ...............................................................13

*United Fire & Cas. Com. Co. v. Titan Contractors Serv., Inc.*,
   751 F.3d 880 (8th Cir. 2014) .................................................................8

*UnitedHealth Grp. Inc. v. Columbia Cas. Co.*,
   941 F. Supp. 2d 1029 (D. Minn. 2013) ................................................15

*W. Alliance Ins. Co. v. Gill*,
   686 N.E.2d 997 (Mass. 1997) .................................................................7

*West American Ins. Co. v. Tufco Flooring East*,
    409 S.E.2d 692 (N.C. 1991), *overruled on other grounds by Gaston County*
    *Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558 (N.C. 2000)....................................6

**Other Authorities**

13 CORBIN ON CONTRACTS § 68.2 (2019)......................................................................................11

COUCH ON INS. § 193:49 ...............................................................................................................10

Peter Nash Swisher, *Symposium Introduction*, 5 CONN. INS. L.J. 1, 14 (1998)..............................4

XTO Energy, Inc. ("XTO") submits this Reply in Support of its Motion for Partial Summary Judgment against Commerce and Industry Insurance Company ("CIIC") (the "Motion").

## PRELIMINARY STATEMENT

XTO bargained for additional insured coverage for accidents exactly like the underlying explosion. CIIC seeks to deny XTO the benefit of its bargain by achieving a forfeiture of coverage. CIIC's argument hinges on twisting policy language to fit its narrative. By doing so, CIIC strains credibility and at most highlights that its policy language may be ambiguous.

At top, CIIC argues that its <u>pollution exclusion</u> should somehow bar coverage for the underlying injuries when they have nothing to do with <u>pollution</u>.  The underlying injuries were caused by an explosion and fire, not pollution.  Courts across the country have held that, consistent with its drafting history and underwriting intent, the pollution exclusion bars coverage for bodily injuries arising out of pollution (*e.g.*, cancer caused by inhalation of paint fumes), but not bodily injuries where a "pollutant" is merely involved (*e.g.*, an explosion or a slip and fall on spilled paint). Here, the hydrocarbons CIIC brings up time and again did not cause injuries by acting like a pollutant.  Without pollution, there can be no pollution exclusion, and so CIIC's defense to the contrary fails.

Even if the pollution exclusion were to somehow apply, so would its five-pronged time element exception.  CIIC concedes that four prongs—all of the substantive prongs—are satisfied, yet nevertheless seeks a forfeiture pursuant to a procedural notice prong.  But, CIIC waived its ability to rely on that provision and, even if it did not, CIIC must establish that it was prejudiced. To escape prejudice, CIIC casts the procedural notice prong as a "condition precedent," yet North Dakota courts expressly require a showing of prejudice to avoid coverage pursuant to a notice-related condition precedent.  If CIIC wanted to avoid having to show prejudice, it could have added

a "regardless of prejudice" clause to its policy—a clause that is widely available in the marketplace—but it failed to do so.  Thus, CIIC's argument fails.

Two additional exceptions to the pollution exclusion also apply—the hostile fire and additional insured exceptions found in the Berkley Primary Policy to which the CIIC Policy follows form. CIIC argues that those two exceptions somehow conflict with the time element exception and therefore cannot be read into the CIIC Policy via principles of follow form. However, there is no conflict because the three exceptions are harmonious and can be read together.  And, if CIIC wanted to avoid that result, "there's language for that." Specifically, CIIC could have pulled from language used elsewhere in their policy to provide that the time element exception in the CIIC Policy "replaces" the hostile fire and additional insured exceptions in the Berkley Primary Policy.  CIIC cannot receive the benefit of policy language it did not use.

Veering off course, CIIC next argues that XTO is not an additional insured because of a contractual liability exclusion found in the Berkley Primary Policy.  But the exclusion plainly lacks application because XTO is claiming coverage for a direct negligence action, not any breach of contract.  Moreover, the exclusion has nothing to do with XTO's motion (as other insurers have pointed out).  The Court can therefore ignore section VI.A of CIIC's opposition brief if it wishes, although XTO would welcome a ruling on the issue.

In its final twist of policy language, CIIC argues that XTO's contractors are not additional insureds because MBI only contracted *with* XTO, and the additional insured endorsement provides that additional insureds are those persons or organizations "with whom [MBI] agree in a written contract or written agreement to add as an Additional Insured."[1]  CIIC glosses right over MBI's

---

[1] XTO did not move for summary judgment on CIIC's affirmative defense that "XTO's contractors do not qualify as additional insureds," which is found at paragraph 51 of CIIC's Amended Answer. *See* Doc. No. 115.  XTO's Motion does not mention paragraph 51. *See id.* XTO's two passing mentions of paragraph 51 in its Memorandum of Law were scrivener's errors. XTO did not brief the issue, as CIIC pointed out in its opposition brief. CIIC did brief the issue, however, and so XTO briefly responds to CIIC's arguments.

**XTO ENERGY, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                    2

express agreement to add XTO's contractors as additional insureds in the MSA. CIIC's twisted "with" argument has been tried and rejected by courts who have assessed similar contract language and described similar arguments "as an incorrectly cramped reading of the policy language."

As previewed above, all of CIIC's arguments rely on mischaracterizations and misapplications of policy language—attempts to turn the policy language into something it is not to achieve a forfeiture. At worst for XTO, CIIC's efforts to contort the policy language highlights ambiguity. And North Dakota courts strictly construe ambiguity against the insurer and in favor of the insured. For those reasons, XTO's Motion should be granted.

## ARGUMENT & AUTHORITIES

### I. The Pollution Exclusion Does Not Bar Coverage.

#### A. Injuries Caused by an Explosion and Fire Do Not Implicate the Exclusion.

CIIC argues that the plain language of its <u>pollution</u> exclusion bars coverage; however, the injuries at issue in the Underlying Lawsuits have <u>nothing to do with pollution</u>. The alleged underlying injuries were caused by an explosion and fire—not pollution.[2]

To support its argument, CIIC twists *Hiland Partners GP Holdings, LLC, et al. v. National Union Fire Ins. Co. of Pittsburg, P.A.*[3] to suggest that, there, the Eighth Circuit concluded that a standard pollution exclusion bars coverage for claims arising out of an explosion.[4] Not true. That issue was neither raised nor considered in *Hiland. Id.* Rather, the <u>only</u> issue the *Hiland* court addressed was whether hydrocarbons constitute a "pollutant." *Hiland*, 847 F.3d at 598-99. Therefore, the narrow holding in *Hiland* does not run contrary to the Ninth Circuit's holding in *Enron* or the countless other decisions from courts around the country that pollution exclusions

---

[2] *See* Doc. No. 117, Exhibit 1-B (App. 042, ¶ 39); Ex. 2-F (App. 687) (Fire Report).

[3] 847 F.3d 594 (8th Cir. 2017).

[4] Doc. No. 151 at 24.

should be applied only to injuries caused by pollution. *See Enron Oil Trading v. Walbrook Ins. Co.*, 132 F.3d 526, 531 (9th Cir. 1997); *see also* cases cited at Doc. No. 116 at 18-20.

CIIC attempts to dodge *Enron* and its progeny by arguing that *Enron* was based on the "reasonable expectations" doctrine—a doctrine CIIC alleges North Dakota has not adopted—but *Enron* had nothing to do with the reasonable expectations doctrine.

The "reasonable expectations" doctrine provides that courts may ignore coverage-defeating policy language if it conflicts with the policyholder's "reasonable expectation" of coverage. *See St. Paul Fire & Marine Ins. Co. v. Three D Sales, Inc.*, 518 F. Supp. 305, 311 (D.N.D. 1981).[5]   In *Enron*, the court did not ignore the pollution exclusion in favor of the policyholder's reasonable expectations. 132 F.3d at 530–31. Rather, following the very insurance contract interpretation principles expressly adopted by the North Dakota Supreme Court, the *Enron* court addressed the pollution exclusion head-on by construing it "strictly and narrowly" and from the vantage point of a "reasonable reader."  *Id.* at 530; *see also Ernst v. Acuity*, 704 N.W.2d 869, 872 (N.D. 2005) ("Exclusions from coverage in an insurance contract must be clear and explicit and are to be strictly construed against the insurer."); *Huether v. Nodak Mutl. Ins.*, 871 N.W.2d 444, 447 (N.D. 2015) (holding that policy terms "should be construed to mean what a *reasonable person* in the position of the insured would think it meant"); *Haugen v. Auto-Owners Ins.*, 191 N.W.2d 274 (N.D. 1971) (agreeing with other courts that an insurance policy must be considered "as a whole in the light of all the circumstances and interpret[ed] as a reasonable person in the position of the insured should understand it.").[6]

---

[5] *See also* Peter Nash Swisher, *Symposium Introduction*, 5 CONN. INS. L.J. 1, 14 (1998) ("The reasonable expectations doctrine, which permits courts to ignore express policy language, is perhaps the most notable exception to the traditional rules of insurance contract interpretation.").
[6] *See also Fisher v. Am. Family Mut. Ins. Co.*, 579 N.W.2d 599, 602 (N.D. 1998) (same); *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151, 157 (N.D. 1992) (same).

CIIC conflates the *Enron* court's review of policy language from the vantage point of a "reasonable reader" with the "reasonable expectations doctrine," but the very fact that policy language was reviewed in *Enron* means the reasonable expectations doctrine was not at-play.[7] Indeed, it was with that "reasonable reader" lens—a lens which North Dakota courts also apply— that the *Enron* court held that the pollution exclusion applied only to pollution-related injuries. 132 F.3d at 530–31 (citing *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043–44 (7th Cir.1992); *American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 81 (Ill. 1997); *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 948 (Ind. 1996)).  And, with that same lens, the *Enron* court also found that, because the insurer's interpretation and the reasonable reader's interpretation conflicted, the pollution exclusion was ambiguous and, for that reason, too, the exclusion had to be interpreted in favor of the policyholder. 132 F.3d at 530–31.  Notably, North Dakota identifies ambiguity, and construes it against the insurer, in the same manner. *See, e.g.*, *Scottsdale Ins. Co. v. Tri-State Ins. Co.*, 302 F. Supp. 2d 1100 (D.N.D. 2004) ("Any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured.").

CIIC makes the same faulty reasonable expectations argument that it makes with *Enron* with several of XTO's other cases.  But all of those cases apply North Dakota-sanctioned principles to reach the common-sense conclusion that the pollution exclusion applies only to bodily injuries caused by pollution. *See, e.g.*, *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 31 (1st Cir.1999) ("[I]t is entirely reasonable that an ordinarily intelligent insured would understand this provision to exclude coverage only for injuries caused by traditional environmental pollution."); *Am. States Ins. Co. v.*

---

[7] It was only after reaching its conclusion "that Montana courts would hold that the pollution exclusion does not bar coverage of the claimed loss" that the *Enron* court even mentioned the "reasonable expectations doctrine." 132 F.3d at 530–31.  The doctrine was mentioned to address an "even if" argument—not as the central reason (or even as a reason) for its holding. *See id.*

*Koloms*, 687 N.E.2d 72, 81 (Ill. 1997) (holding that "the overbreadth in the language of the exclusion as well as the manifestation of an ambiguity which results when the exclusion is applied to cases which have nothing to do with 'pollution' in the conventional, or ordinary, sense of the word."); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680–82 (Ky. App.1996) (noting that "terms used in insurance contracts 'should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them.'"); *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992) (when construing language in an insurance policy, we "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered."); *West American Ins. Co. v. Tufco Flooring East*, 409 S.E.2d 692, 699 (N.C. 1991), *overruled on other grounds by Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558 (N.C. 2000) ("When an ambiguity exists, an insurance policy should be construed as a reasonable person in the position of the insured would have understood it to mean.").

CIIC's attempt to distinguish *Kent*, *Keggi*, and *Tufco*—three additional cases cited by XTO—as cases that only considered whether the substance in question fell under the definition of "pollution" is simply incorrect.  Each of those cases explicitly held that the pollution exclusion applies only to bodily injuries arising out of pollution, *i.e.*, environmental-types harms.  *Kent Farms, Inc. v. Zurich Ins. Co.*, 969 P.2d 109, 111 (Wash Ct. App. 1998) (finding "under a reasonable reading of the policy, the pollution exclusion could be construed to limit claims only for traditional environmental damages…"); *Keggi v. Northbrook Property and Cas. Ins. Co.*, 13 P.3d 785, 792 (Ariz. 2000) ("We conclude that the purpose of the [pollution exclusion]…demonstrate[s] that the language nevertheless should not be interpreted to preclude coverage for bacterial contamination absent evidence that the actual contamination arose from traditional environmental pollution."); *Tufco, Inc.*, 409 S.E.2d at 699 ("The last reason the

pollution exclusion does not deny coverage to Tufco for Perdue's claim is because the pollution exclusion applies only to discharges into the environment.").

Neither have *Kent*, *Enron* and *Atlantic Mut. Ins.* been superseded by cases finding absolute pollution exclusions to be unambiguous.  To the contrary, each of the cases is still "good law," as even opinions cited by CIIC have acknowledged.  For example, *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 742 (Wash. 2005) did not supersede *Kent*.  Instead, the court found that, as to the specific facts of ***that*** case, the pollution exclusion was unambiguous.  *Id.* at 742.  However, as to the *Kent* ruling, the court went on to note that "the absolute pollution exclusion clause can be ambiguous with regard to the facts of one case but not another."  *Id.*

*Essex* likewise did not supersede *Atlantic Mut. Ins.*  In *Essex*, a Massachusetts federal court found that a pollution exclusion applied to bar coverage for injuries caused by the discharge of carbon monoxide from a malfunctioning Zamboni.  *Essex Ins. Co. v. Tri-Town Corp.*, 863 F. Supp. 38, 41 (D. Mass. 1994). Even so, the court noted that it was "troubled by what appears to be Essex's ability to continually limit the scope of coverage while constantly increasing premiums." *Id.*  After *Essex*, the Massachusetts Supreme Court remedied such concerns and upheld the holding in *Atlantic Mut. Ins.,* reasoning that the "exclusion should not reflexively be applied to accidents arising during the course of normal business activities simply because they involve a 'discharge, dispersal, release or escape' of an 'irritant or contaminant.'"  *W. Alliance Ins. Co. v. Gill*, 686 N.E.2d 997, 999 (Mass. 1997) *citing to Koloms*, 687 N.E.2d 72 (Ill. 1997).

Nor has the *Enron* case been superseded by *Sokoloski* or *Swank*. For one, *Sokoloski* did not involve bodily injury claims, but rather claims that property was damaged by soot and smoke. *Sokoloski v. American West Ins. Co.*, 980 P.2d 1043 (Mont. 1999). *Swank*, on the other hand, involved injuries caused by inhalation and/or direct dermal contact with chemicals in paint

coatings, *i.e.*, injuries caused by pollution. *Swank Enterprises, Inc. v. United Fire and Casualty Co.*, 2020 WL 1685746 (D. Mont. Apr. 7, 2020).

Finally, CIIC's attempt to cite its own cases applying the pollution exclusion falls flat, as each of those cases applied the exclusion because the damages there were actually caused by pollution—unlike the case at hand. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1137 & n. 2 (Fla. 1998) (finding pollution exclusion applied to damage caused by indoor air contamination from ammonia spill and insecticide accidently sprayed on bystanders); *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co.*, 112 F.3d 184, 188 (5th Cir. 1997) (finding pollution exclusion applied to injuries sustained by employee who inhaled phenol gas); *Bernhardt v. Hartford Fire Ins. Co.*, 648 A.2d 1047, 1051 (Md. Ct. Spec. App. 1994) (finding pollution exclusion applied for claims arising out of death of man caused by inhalation of carbon monoxide fumes); *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 221 (Iowa 2007) (finding pollution exclusion applied to claim arising out of inhalation of carbon monoxide fumes); *United Fire & Cas. Com. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 886 (8th Cir. 2014) (finding pollution exclusion applied to injuries sustained by inhalation of concrete sealant).

In sum, XTO's and CIIC's cases stand for a simple and unremarkable proposition—the pollution exclusion should bar coverage for environmental-type injuries caused by pollution but should not bar coverage for injuries where a "pollutant" is merely involved.  Here, the injuries were caused by an explosion and not pollution.  Thus, the pollution exclusion should not apply.

### B.     At Worst, the Pollution Exclusion is Ambiguous As Applied to these Facts.

As CIIC concedes, North Dakota has not determined whether the pollution exclusion is ambiguous or whether it applies only to environmental-type harms.  Doc. No. 151 at 31; *see also Hiland*, 847 F.3d at 598 ("North Dakota has not addressed whether pollution exclusions like the one in this case are ambiguous.").  To the extent the Court finds the CIIC pollution exclusion, time

element exception, additional insured exception and/or the hostile fire exception[8] ambiguous, the Court must construe the CIIC Policy against CIIC and in favor of coverage to XTO.  *Scottsdale Ins. Co. v. Tri-State Ins. Co.*, 302 F. Supp. 2d 1100 (D.N.D. 2004) ("Any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured.); *Ctr. Ins. Co. v. Blake*, 370 F. Supp. 2d 951 (D.N.D. 2005) (same).

**II.    If the Pollution Exclusion Applies, so Does its Time Element Exception, as CIIC Waived the Notice Requirement and Cannot Demonstrate Prejudice**

If the pollution exclusion were to apply, so would its time element exception, which carves back coverage for pollution that commences during a certain "time."   The exception has five criteria, some of which are substantive and some of which are procedural.  CIIC does not dispute that four criteria, including all the substantive criteria, are satisfied.[9]  Nevertheless, CIIC argues for a forfeiture based upon XTO's alleged noncompliance with a procedural notice component.[10]

CIIC ignores that, under N.D.C.C. § 26-1-32-09 and North Dakota common law, CIIC waived its ability to avoid coverage based upon a procedural notice provision.[11]  CIIC also ignores that, in any event, under North Dakota law, an insurer must demonstrate prejudice to avoid coverage based upon a notice provision, and here CIIC has made no showing of prejudice.[12]

---

[8] The time element exception is discussed in Section II and the additional insured and hostile fire exceptions are discussed in Section III.

[9] *See* XTO's Br. at 22 [Doc. No. 116].

[10] *See* CIIC's Opp. at 32–33 [Doc No. 151].

[11]  *See D.E.M. v. Allickson*, 555 N.W.2d 596, 599 (N.D. 1996) (holding that insurer was "estopped from raising insufficiency of notice as a defense" because "an insurer which denies liability on specified grounds may not subsequently attempt to deny coverage on different grounds").  In passing, CIIC asserts that it "timely apprised XTO that the Pollution Exclusion in CIIC Policy barred coverage" by providing such a notification approximately eight months after XTO provided notice of the underlying claim and after this litigation was commenced. CIIC's Opp. at 19–20, 33 [Doc No. 151].  CIIC ignores that, even if an eight-month delay was "timely," CIIC's initial response did not mention late notice.  *See* XTO's Br. at 24 [Doc. No. 116].  CIIC did not mention late notice until it served its responses to XTO's interrogatories.  *See id.*

[12] *See* CIIC's Opp. at 32–33 [Doc No. 151].

CIIC argues that it can simply ignore that blackletter North Dakota law because the notice provision in the exception is a "condition."   That argument makes no sense because notice provisions in insurance policies are always conditions.  13A COUCH ON INS. § 193:49 (noting that "many jurisdictions now require proof of prejudice in order for an insurer to avoid liability in the event of an unreasonable or unexcused delay, even under a notice provision which is a condition precedent to recovery").

The North Dakota Supreme Court has expressly recognized this principle, remarking that, "although the policy may speak of the notice provision in terms of 'condition precedent,' . . . it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit coverage, even though there is no likelihood that it was prejudiced by the breach."  *Finstad v. Steiger Tractor, Inc.*, 301 N.W.2d 392, 398 (N.D. 1981) (citing *Cooper v. Gov't Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870 (1968)).  Moreover, and contrary to CIIC's assertions, the North Dakota Supreme Court has also remarked that, with respect to a notice-related defense, "[t]he burden of persuasion is the carrier's."  *Id.* (citing *Cooper v. Gov't Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870 (1968)); *see also Geico Ins. Co. v. Estate of Schmidt*, No. A2-96-120, 1999 WL 33283325, at *4 (D.N.D. Mar. 30, 1999) (refusing to hand insurer a forfeiture because it "failed to meet its burden with respect to establishing prejudice").

CIIC's argument is not saved by its cases, all of which are inapposite.  As noted in XTO's opposition brief, in *Hiland*—an Eighth Circuit decision that CIIC desperately wants this case to be—the policyholder did not argue that the insurer waived its ability to avoid coverage on the notice condition.  *Hiland Partners GP Holdings v. Nat'l Union Fire Ins. Co.*, 847 F.3d 594, 601 (8th Cir. 2017). The policyholder also did not argue that, and thus the court did not consider whether, a prejudice standard should apply. *Id.* Indeed, the word prejudice does not appear once in the opinion.  *Id.*  CIIC wishes *Hiland* considered the issues before the Court, but it did not.

*Bell Lumber*, a case applying Minnesota law, is similarly inapposite. *Bell Lumber & Pole Co. v. U.S. Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir. 1995). *Bell Lumber* involved a substantive "sudden and accidental" exception to the pollution exclusion, whereas here CIIC seeks a forfeiture pursuant to a procedural notice provision. *Id.* *Bell Lumber* is therefore inapplicable.[13]

CIIC's last two cases, both of which applied Louisiana law, are akin to *Hiland* in that they did not consider the issue of waiver. *See Apollo Energy v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663 (M.D. La. 2019*); In re Matter of Complaint of Settoon Towing*, 720 F.3d 268 (5th Cir. 2013). And, with respect to prejudice, those cases came out the way they did because Louisiana law, unlike North Dakota law, does not require a showing of prejudice when an insurer seeks to disclaim coverage based upon a notice-related condition precedent. *Apollo Energy*, 387 F. Supp. 3d at 675–76; *Settoon Towing*, 720 F.3d at 276–80. As noted above, pursuant to *Finstad* and its progeny, under North Dakota law, insurers must show prejudice to avoid coverage pursuant to a notice-related condition precedent. *See Hasper v. Ctr. Mut. Ins. Co.*, 723 N.W.2d 409, 415 (N.D. 2006) (holding that prejudice is required even when "the policy may speak of the notice provision in terms of 'condition precedent'").

CIIC's cases are also inapposite because they do not address the foundational principle underpinning North Dakota's notice-prejudice rule—the abhorrence of forfeitures of insurance coverage. *Hasper*, 723 N.W.2d at 415 ("The law abhors a forfeiture"). The North Dakota Supreme Court carved that rule in stone in *Finstad* when it held that, because insurance is not "a truly consensual arrangement and [is] widely available only on a take-it-or-leave it basis[,]" an insurer "may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice." 301 N.W.2d at 398.

---

[13] It is axiomatic that an insurer may forfeit coverage only upon "an uncured material breach"; not upon any breach. 13 CORBIN ON CONTRACTS § 68.2 (2019) (citing RESTATEMENT (SECOND) OF CONTRACTS § 242 (1981)).

If CIIC wanted to take North Dakota's notice-prejudice rule out of the equation, it could have included a provision in its policy providing as much. To do so, some insurers have embedded a "regardless of prejudice" clause into identical exceptions to pollution exclusions. For example, one of the insurance policies at issue in *Oasis Petroleum North America v. Drakin Oilfield Construction, Inc.* included a nearly-identical five criteria exception to its pollution exclusion that was followed by a "regardless of prejudice" clause:

> As a condition precedent to coverage under this endorsement, you must provide conclusive documentation of strict compliance with requirements 1 through 5 in Section III.A. above, regardless of whether we are prejudiced by the failure to meet these requirements.

*See* Aff. of C. Green at Ex. A (emphasis added).[14]  Notably, that "regardless of prejudice" clause was available to CIIC as it was created by Insurance Services Office, Inc., which is "an organization that develops standard forms for the insurance industry." *Dogloo, Inc. v. N. Ins. Co. of N.Y.*, 907 F. Supp. 1383, 1389 (C.D. Cal. 1995).  The CIIC Policy itself is based upon an Insurance Services Office, Inc. policy form.  *See* Ex. 1-H.  CIIC should not receive the benefit of policy language that it failed to include in its policy.

In sum, CIIC's argument that it need not prove prejudice fails, as insurers in North Dakota must always show prejudice to achieve a forfeiture pursuant to a notice-related condition precedent. If CIIC wanted to avoid North Dakota's notice-prejudice rule it could have utilized policy language available in the marketplace that allows for a forfeiture without a showing of prejudice.  CIIC did not utilize that language, however, and thus North Dakota's notice-prejudice and anti-forfeiture rules prevail.  Because CIIC has made no showing of prejudice, its argument against the application of the exception to the pollution exclusion fails as a matter of law.

---

[14] Exhibit A to the Affidavit of Carla Green is a copy of the insurance policy at issue in *Oasis Petroleum North America, LLC v. Drakin Oilfield Construction, Inc.*, No. 4:14-cv-00077 (D.N.D.). That policy was attached as Exhibit C to the affidavit of S. DiLibertro, which was filed in support of Defendant's Motion for Summary Judgment. The Court may take judicial notice of Exhibit A because it was attached as an exhibit to federal court filing. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

### III.   The CIIC Policy Incorporates the Berkley Policy's Hostile Fire and Additional Insured Exceptions, Which Can Be Read Together with CIIC's Pollution Exclusion

In addition to the time element exception, the CIIC Policy incorporates, via its "follow-form" provision, both the hostile fire and additional insured exceptions found in the Berkley Primary Policy.[15]  CIIC does not dispute that its policy is a follow-form policy that incorporates the terms and conditions of the Berkley Primary Policy, but CIIC nevertheless argues that the hostile fire and additional insured exceptions are exceptions to the rule and are not incorporated into the CIIC Policy.[16]  CIIC's motivation is obvious—in the event the pollution exclusion applies, the hostile fire and additional insured exceptions would carve back coverage and avoid a forfeiture. CIIC, of course, desperately wants to avoid having to provide the bargained-for coverage.

CIIC hangs its hat on the follow-form provision's language that provides that the terms and conditions of the Berkley Primary Policy will be incorporated "subject to" the terms and conditions of the CIIC Policy.[17]  Yet, the parties agree that, pursuant to that "subject to" language, if the terms and conditions of the Berkley Primary Policy and the CIIC Policy conflict, the terms and conditions of the CIIC Policy will prevail.[18]  What the parties disagree on, however, is whether there is a conflict between the exceptions in the Berkley Primary Policy and the exception in the CIIC Policy. CIIC, of course, wants a conflict because it wants a forfeiture.

It is bar-exam contract law that courts "attempt to harmonize the various provisions of contract" and thereby "read them to avoid a conflict."  *Transit Cas. v. Selective Ins. Co.*, 137 F.3d 540, 545 (8th Cir. 1998).[19]  Consistent with that foundational principle, North Dakota courts have

---

[15] Ex. 1-H (App. 290) (CIIC Policy).

[16] *See* CIIC's Opp. at 34–37 [Doc No. 151].

[17] *Id.* at 34–35.

[18] *Id.* at 35–36.

[19] *See also Dundee Mut. Ins. Co. v. Balvitsch*, 540 N.W.2d 609, 612 (N.D. 1995) ("Statutes must be considered as a whole and in relation to other provisions, with each provision harmonized, if possible, to avoid conflicts.").

remarked that, when construing insurance contracts, "the whole of a contract is to be taken together to give effect to every part." *North Star Mut. v. Ackerman*, 940 N.W.2d 857, 861 (N.D. 2020).

In violation of those bedrock rules, CIIC would have the Court hunt for a conflict where there is none.  Specifically, CIIC argues that the hostile fire and additional insured exceptions found in the Berkley Primary Policy conflict with the time element exception in the CIIC Policy, and thus the hostile fire and additional insured exceptions cannot be read into the CIIC Policy via principles of follow form.  But there is no conflict because all three exceptions can easily be read together.  To avoid that obvious result, CIIC engages in a results-orientated analysis that conflates the conflict analysis:  It argues that, if the Court incorporates the hostile fire and additional insured exceptions then there would be coverage, whereas if the Court does not incorporate the hostile fire and additional insured exception then there would not be coverage, and, ipso facto, conflict.  *See* CIIC's Opp. at 36 [Doc No. 151]. But courts do not engage in a results-oriented analysis to determine whether there is a conflict; rather, they look at the text of the contract, and here there is no textual reason for not reading all three exceptions together—as in, via principles of follow form, the CIIC Policy actually has three discrete exceptions to the pollution exclusion:  (1) hostile fire; (2) additional insured; and (3) time element.  If the elements of any one of these exceptions are met, coverage is restored.

This is not a situation where the Berkley Primary Policy includes a time element exception with certain elements and the CIIC Policy includes a time element exception with different elements.  In that case, a conflict might arise.  But here, the three exceptions concern entirely different scenarios.  There is nothing in the time element exception that would undermine—much less disallow—consideration of whether a hostile fire had occurred (the subject of the hostile fire exception) or whether the owner of the subject premises had been named as an additional insured (the subject of the additional insured exception).   The time element exception is silent on those

issues because it goes to a different concern—the timing of the incident at issue.  Thus, the time element exception no more conflicts with the hostile fire and additional insured exceptions than the hostile fire and additional insured exceptions conflict with each other.  Not at all.

The fact that these exceptions can be easily harmonized is where CIIC's cases depart from the present factual record.  For example, in *Tile Shop*, the primary policy provided that "the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured alleging any Wrongful Act occurring prior to August 20, 2012," whereas the excess policy provided that the insurer shall not be liable for "<u>any</u> Loss in connection with <u>any</u> claim alleging, arising out of, <u>based upon, or attributable to any</u> wrongful act(s) committed, attempted, or allegedly committed or attempted prior to August 20, 2012."  *Tile Shop Holdings, Inc. v. Allied World Nat'l Assurance Co.*, No. 17-cv-776, 2019 WL 2357044, at *5 (D. Minn. June 4, 2019) (emphasis in original).  Far from merely adding an exception, the excess policy in *Tile Shop* changed the exact words of the subject exclusion, and so there was no way to read the primary policy and excess policy together.  *See id.*  CIIC's other cases are likewise inapposite.[20]

If CIIC wanted to avoid application of the Berkley Primary Policy's exceptions, it could have contracted for something different.  Specifically, CIIC could have used language to provide that the time element exception in the CIIC Policy "replaces" the exceptions in the Berkley Primary

_____

[20] *UnitedHealth* did not actually determine whether there was a conflict, but the court did provide some helpful guidance on this issue with the following hypothetical:

> "So, for example, if the Antitrust Endorsement provides coverage for punitive damages, but the Executive Risk and First Specialty policies exclude such coverage, then the Executive Risk and First Specialty policies do not provide coverage for punitive damages."

*UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 941 F. Supp. 2d 1029, 1053 (D. Minn. 2013). The equivalent here would be if the CIIC Policy provided, expressly, that it was not incorporating the hostile fire and additional insured exceptions.  There is no such language, however, and so *UnitedHealth* is inapposite.  *Insituform Technologies* contains dicta that CIIC takes out of context to advance its prerogative, but that case was about whether a carve back in an excess-level endorsement "governs the entire endorsement or merely the portion of the endorsement that [is entitled] 'Following Form Hazards.'"  *Insituform Techs., Inc. v. Am. Home Assur. Co.*, 566 F.3d 274, 277 (1st Cir. 2009).  To be clear, it was not a case about whether the exceptions in a primary policy were compatible with the exceptions in a follow-form excess policy.  *See id.  United National* involved the same inapposite scenario as *Insituform Technologies*. *United Nat. Ins. v. Hydro Tank*, 497 F.3d 445, 453 (5th Cir. 2007), *opinion am.*, 525 F.3d 400 (5th Cir. 2008)

Policy.[21]  Instead, at the end of the subject exception, the CIIC Policy provides that, "[a]ll other terms, definitions, conditions, and exclusions of this policy remain unchanged."  That clause necessarily encompasses the CIIC Policy's follow form clause, and thereby the Berkley Primary Policy exceptions.[22]  CIIC offers no availing argument to the contrary.

At best for CIIC, the CIIC Policy is ambiguous with respect to its incorporation of the hostile fire and additional insured exceptions.  That is especially the case because "clear and precise language could have been . . . employed" by CIIC to achieve its desired result. *Globe Indem. Co. v. Wolcott*, 152 F.2d 545, 549 (8th Cir. 1945).  In North Dakota, ambiguous language is construed against the insurer.  *See Fisher v. Am. Family Mut.*, 579 N.W.2d 599, 602 (N.D. 1998).  Thus, CIIC's forfeiture attempt, where "[i]t accepts on the one hand a full premium payment and on the other it proposes to give nothing for such payment," fails.  *Globe*, 152 F.2d at 549.[23]

## IV.    CIIC's Remaining Arguments are Either Inapplicable or Fail.

As set forth in XTO's Motion, XTO seeks summary judgment on, among other issues, CIIC's affirmative defense that "XTO's claims are barred because XTO does not qualify as an additional insured under CIIC's policy and the Berkley policies."  *See* Doc. No. 115.  In response to XTO's arguments on the additional insured issue, CIIC first refers to Berkley's briefing on the matter and offers no substantive response of its own.  *See* CIIC's Opp. at 37 [Doc. No. 151].

---

[21] Doc. No. 117-9, Ex. 1-H (App. 308) The CIIC Policy endorsement at issue provides that only Paragraph Q in the CIIC Policy "is deleted in its entirety and replaced by the following…."  It makes no reference whatever to the provisions in the Berkley policy to which the CIIC Policy follows form. CIIC could have used similar language to provide that the endorsement deletes and replaces the pollution exclusion, and exceptions thereto, in the followed Berkley Policy – but did not do so.

[22] *Id.* (App. 309) (CIIC Policy).

[23] CIIC fails to address the substantive application of the hostile fire and additional insured exceptions, and instead refers the Court to Berkley's briefing on the matter. *See* CIIC's Opp. at 36–37 [Doc No. 151]. Accordingly, XTO respectfully refers the Court to its corresponding briefing in that Berkley motion sequence. *See* XTO's Mem. of Law in Supp. of its Motion for Partial Summ. J. at 31-39 [Doc. No. 111]; XTO's Reply in Further Supp. of its Motion for Partial Summ. J. at 13-20 [Doc. No. 159].

CIIC then veers off course with two additional arguments, both of which pertain to issues that are entirely outside the scope of, and have nothing to do with, XTO's Motion. First, CIIC argues that XTO is not an additional insured because of a contractual liability exclusion found in the Berkley Primary Policy, yet that exclusion lacks any application here and has nothing to do with XTO's motion in the first place.[24]  And, second, CIIC argues that XTO's contractors are not additional insureds, yet that issue, too, is beyond the scope of XTO's motion (and again, substantively erroneous).  For those reasons and the reasons set forth below, CIIC's two additional defenses fail.

### A.     The Contractual Liability Exclusion Does Not Bar Coverage For Tort Claims Against XTO (Although XTO Did Not Move For Judgment On That Defense).

Confoundingly, CIIC argues in section VI.A of its opposition that XTO is not an additional insured because of a contractual liability exclusion found in the Berkley Primary Policy.  But that exclusion has nothing to do with XTO's motion and, in any event, has no application to this case.[25]  Indeed, XTO cannot even discern how its additional insured status even connects to the contractual liability exclusion, as XTO is seeking direct coverage for tort claims made directly against it.

As an initial matter, XTO admittedly did not move for judgment on CIIC's contractual liability exclusion defense, so it is not clear why CIIC raised the exclusion in its response papers. *See* Doc. No.  115.  Regardless, because the exclusion clearly does not apply to the case at hand, XTO invites the Court to rule on the issue.

---

[24] CIIC's contractual liability defense is pled at paragraph 52 of its Amended Answer.  *See* Doc. No. 55 at 10, ¶ 52. Yet, XTO moved for summary judgment on those CIIC defenses pled at paragraphs 50, 51, and 53.  *See* XTO's Br. at 39 [Doc. No. 116].  Tellingly, this contractual liability exclusion, which again is found in the Berkley Primary Policy, was not raised by Berkley in its motion papers. *See* Pl. Berkley Nat'l Ins. Co.'s Memo. of Law in Resp. to XTO's Mot. for Partial Summ. J. at 8, n.1 [Doc. No. 143]. In fact, Berkley aptly noted that "XTO is not moving for summary judgment on Berkley's claims and affirmatives defenses that . . . even if XTO were an additional insured, it would have no coverage . . . due to the . . . contractual liability exclusions." *Id.*
[25] *See* CIIC's Opp. at 37–40 [Doc. No. 151].

The contractual liability bars coverage for liability assumed in a contract, but XTO was directly sued for negligence (not breach of contract) in the *Stassinos* and *Maheu* lawsuits discussed by CIIC in its opposition.[26]  Thus, the exclusion has no application because XTO does not seek insurance coverage for obligations it assumed in a contract, but for direct claims of tort liability brought against it.  *See Borsheim Builders Supply, Inc. v. Manger Ins., Inc.*, 917 N.W.2d 504, 512 (N.D. 2018) (holding "that the 'contractual liability' exclusion does not apply . . . because the [underlying] claims against [CSI] are direct claims of tort liability").[27]  In the event the Court is inclined to consider this issue, it should therefore reject CIIC's defense and dismiss it from this case.

### B. Pursuant to the Plain Language of the MSA and Case Law, XTO's Contractors Qualify as Additional Insureds.

XTO did not move for summary judgment on CIIC's affirmative defense that "XTO's contractors do not qualify as additional insureds," which is found at paragraph 51 of CIIC's Amended Answer.[28]  XTO's Motion does not mention paragraph 51.[29]  XTO's two passing mentions of paragraph 51 in its Memorandum of Law were scrivener's errors.  XTO did not brief the issue, as CIIC pointed out in its opposition brief.[30]  CIIC did brief the issue, however, and so XTO briefly responds to CIIC's arguments.

Substantively, and contrary to CIIC's assertions, MBI expressly agreed to name XTO's contractors as additional insureds in all of its policies.  The MSA provides that "ALL INSURANCE POLICIES . . . WILL EXTEND TO AND PROTECT THE **XTO GROUP** TO

---

[26] *See* Ex. 4 (App. 827, ¶¶ 42–45) (Stassinos lawsuit, alleging that "XTO negligently breached the duties owed to Mr. Stassinos . . . "); Ex. 1-B (App. 040, ¶ 32) (Maheu lawsuit, alleging that "the negligence of Defendant XTO proximately caused the injuries and damages sustained by Plaintiffs").
[27] *See* XTO's Br. at 3–7 [Doc. No. 116].
[28] *See* Doc. No. 115.
[29] *See id.*
[30] *See* CIIC's Opp. at 39 [Doc No. 151].

THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE."   Ex. 1-E (App. 117-39) (emphasis added).  The MSA broadly defines "XTO GROUP" as "XTO, its Affiliates . . . partners, **contractors** and subcontractors . . . and all of their respective directors, officers, employees, representatives, agents, licensees, and invitees."  *Id.* (emphasis added).  Thus, there is no question that MBI agreed to name XTO's contractors as additional insureds in the CIIC Policy.

To dodge coverage nonetheless, CIIC embraces an absurd reading of the Berkley Primary Policy to which it follows form. CIIC notes that the Berkley Primary Policy provides that additional insureds are those persons or organizations "with whom [MBI] agree in a written contract or written agreement to add as an Additional Insured."[31]  CIIC then goes off the rails by arguing that MBI only contracted *with* XTO, and so only XTO (and not its contractors) is an additional insured, regardless of the fact that MBI expressly agreed to add XTO's contractors as additional insureds in the MSA.[32]

CIIC's twisted "with whom" argument has been tried and rejected by courts considering identical contract language and fact patterns.  In *Ownbey v. Aker Kvaerner Pharmaceuticals Inc.*, the underlying contract was between the named insured and "ImClone," yet required the named insured to procure additional insured coverage for another entity, "Kvaerner Process."  2:07-cv-2190, 2017 WL 3872377, at *6 (D.N.J. Sept. 1, 2017).  Kvaerner Process then sought additional insured coverage.  *Id.*  The court "acknowledge[d] that because Kvaerner Process was not a party to the contract between ImClone and [the named insured], an argument might be made that Kvaerner Process was not a party "with whom" [the named insured] agreed in writing to provide additional insured coverage."  *Id.*  The court rejected that argument, however, noting that, like

---

[31] *See* CIIC's Opp. at 40 [Doc No. 151].

[32] *See id.*

here, the underlying "contract expressly and unambiguously requires [the named insured] to obtain additional insured coverage for Kvaerner Process." *Id.*

The court in *Liberty Mutual Fire Insurance Co. v. Zurich American Insurance Co.* rejected the same argument, describing the insurer's argument "as an incorrectly cramped reading of the policy language." No. 14-cv7568, 2016 WL 452157, at *2 (S.D.N.Y. Feb. 4, 2016). In *Liberty Mutual*, the City of New York sought coverage as an additional insured when the named insured, NASDI, signed an agreement with Conti that provided for extending additional insured coverage to not only Conti but also the City. *Id.* Rejecting the same argument made here, the court held that "since NASDI promised to procure additional insurance coverage for both Conti and the City in its written contract with Conti, the City is covered as an additional insured." *Id.*[33]

In short, and consistent with *Ownbey* and *Liberty Mutual*, XTO's contractors are indeed additional insureds. That is exactly what the MSA calls for. CIIC's reading to the contrary is "an incorrectly cramped reading of the policy language" that contravenes what the MSA "expressly and unambiguously requires." At best for CIIC, the CIIC Policy is ambiguous on this issue, and ambiguity is construed against the insurer. *See Fisher*, 579 N.W.2d 599, 602 (N.D. 1998). On those bases, CIIC's affirmative defense should therefore be rejected as a matter of law.

## CONCLUSION

XTO respectfully requests that the Court grant XTO's Motion in its entirety.

---

[33] CIIC's single cited case, *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, a split decision rendered over a strong dissent, is distinguishable in that, relying on New York's strict (and unique) rules of policy interpretation, the majority refused to examine the underlying contract (here, the MSA), deeming it inadmissible "extrinsic evidence." 31 N.Y.3d 131, 137 (N.Y. 2018). Those same rules of interpretation do not apply here, as evidenced by CIIC's (and all other parties') frequent citations to the MSA, a document incorporated into the CIIC Policy. *See generally* CIIC's Opp. [Doc No. 151]. Moreover, in *Gilbane*, and unlike here, the party seeking additional insured coverage was not a "contractor" of the signor of the underlying contract (*i.e.*, a party in privity), but rather a third-party joint venture hired to serve as a construction manager. *Id.* at 134. Against that backdrop, the dissent (which was joined by another justice) pointed out that the majority reached the wrong conclusion "focus[ing] on a single word in the blanket additional insured endorsement at issue while ignoring others." *Id.* at 137. CIIC makes the same mistake here.

**XTO ENERGY, INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated:  August 31, 2020.

Respectfully submitted,

*/s/ Leslie C. Thorne*
Leslie C. Thorne
Texas State Bar No. 24046974
leslie.thorne@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:      (512) 867-8400
Telecopier:     (512) 867-8470

Ernest Martin, Jr.
Texas State Bar No. 13063300
ernest.martin@haynesboone.com
Carla Green
Texas State Bar No. 24097762
carla.green@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT
XTO ENERGY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to all parties of record pursuant to the ECF guidelines and the Federal Rules of Civil Procedure on this 31st day of August 2020.

/s/ *Leslie C. Thorne*
Leslie C. Thorne